## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

JANE DOE, I.H., an individual,        **CASE NO.:**
      Plaintiff,

   v.

SALESFORCE,
BACKPAGE.COM, LLC,
CARL FERRER, Individually,
MICHAEL LACEY, Individually,
JOHN BRUNST, Individually,
SCOTT SPEAR, Individually,
GOSAI 9, LLC., d/b/a Quality Inn,
GOSAI 9, LLC., d/b/a Days Inn by Wyndham,
MGM HOTELS LLC., d/b/a Holiday Inn & Suites,
JOHN DOE, the person, or entity that owned the
property located at 31199 Longwood Drive, Brooksville, Florida,
BRIAN J. GRIGUERE, Individually,
JOSEPH A. EASTON, Individually,
JAMES W. HANCOCK, Individually,
JASON M. RAULERSON, Individually,
LUIGI BARILE, Individually,
LAWRENCE E. KEMBLE, Individually,
MATTHEW C. DOYLE, Individually,
SHAWN C. HENSON, Individually
LACHMAN KALADEEN, Individually,
WYNDHAM HOTELS AND RESORTS, LLC
CHOICE HOTELS INTERNATIONAL, INC.
IHG HOTELS AND RESORTS
        Defendants.

_____/

1

## VERIFIED COMPLAINT FOR DAMAGES AND JURY DEMAND

COMES NOW the Plaintiff JANE DOE I.H., ("I.H.") by and through the undersigned counsel, and her Verified Complaint for Damages and Jury Demand against Defendants: Salesforce, Backpage.com, LLC., Carl Ferrer, Michael Lacey, John Brunst, Quality Inn, Days Inn, Holiday Inn & Suites, John Doe, and Brian J. Griguere, Joseph A. Easton, James W. Hancock, Jason M. Raulerson, Luigi Barile, Lawrence E. Kemble, Matthew C. Doyle, Shawn C. Henson, and Lachman Kaladeen,  Wyndham Hotels and Resorts, LLC, Choice Hotels International, Inc., and IHG Hotels and Resorts, makes the following averments.

### PARTIES

1.     Jane Doe (I.H.) is a natural person who is currently a resident of Pinellas County, Florida and is a survivor of sex trafficking. She is now over the age of majority and is otherwise sui juris. The Plaintiff was born on June 20, 2000, in St. Petersburg, Florida. I.H.'s father was in and out of prison for most of her life and was never present. She was raised by her mother, who was an alcoholic and user of methamphetamine and cocaine. In 2016, Plaintiff was relocated to 31199 Longwood Drive, Brooksville, Florida 34602, by her mother. I.H. was in the 11th grade and would have graduated the following year. Upon relocation to Brooksville, Florida, I.H.'s mother refused to enroll her in school. Shortly after her arrival at her new home in Brooksville, I.H. found herself in a home with no electricity and no food to eat. Conditions worsened for the Plaintiff when her mother introduced and encouraged the Plaintiff's use of methamphetamine, cocaine, and alcohol.

During her time at the home located at 3119 Longwood Drive, Brooksville, Florida 34602, the Plaintiff was forced by her mother into providing sexual services to "customers", hereinafter described as ("Johns") in exchange for monetary income. The Plaintiff was 15 years old when her mother began listing the Plaintiff on Backpage.com, LLC., for sexual services. The Plaintiff has suffered lifelong mental, emotional, and physical damages as a result of the actions of the Defendants listed herein. Jane Doe (I.H.) files this civil lawsuit seeking compensation for the harm she suffered as a result of being sex trafficked and sold for sexual services on public platforms including but not limited to Backpage and Salesforce and through the Hotel Defendants and John Doe, was repeated raped, sexually assaulted, used, abused, humiliated and whose young life was destroyed by the Johns named herein.

2.     Due to the sensitive, private, and potentially retaliatory nature of these allegations, this complaint identifies I.H. by her initials, only. Plaintiff will move the court to proceed under a pseudonym in all filings, and all public Court proceedings, and to limit the disclosure of information about Plaintiff's identity to protect Plaintiff and Plaintiff's identity.

3.     Typically, pleadings must include the names of all parties involved. However, exceptions exist when revealing the issues may lead to retaliation or harm to the Plaintiff. For good cause, the Court can issue an order to protect a party or person from undue harm and burdens. To preserve her privacy and safety, the Plaintiff should not be required to disclose her identity. The Plaintiff's interest in privacy significantly outweighs the standard practice of judicial transparency, and the Defendants will not be

disadvantaged. The Plaintiff is willing to disclose her identity to the Defendants solely for the purpose of investigating her claims, provided that a protective order is in place. She requests only the redaction of her personally identifying information from the public docket and assurances that the Defendants will not use or publish her identity in a way that could jeopardize her personal life, future safety, employment prospects, or privacy rights, especially given her history as a victim of multiple sexual abuses and assaults.

4.    Defendant Backpage.com, LLC ("Backpage") was a Delaware Limited Liability Corporation registered to do business and doing business in Florida at the time of the damages outlined in this cause. All references to Backpage include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. The term also includes any director, officer, agent (either with direct/actual authority and implied/apparent authority), employee, person, firm, or corporation acting on behalf of Backpage now or at any time relevant to the claims herein. In April 2018, Backpage was shut down by the United States Department of Justice as part of a 93-count indictment of the company and seven executives and former owners for facilitating prostitution under the U.S Travel Act, money laundering, and conspiracy. Backpage.com ceased operations at that time.

5.    All references to "Backpage" herein include Defendants Backpage.com, LLC, Carl Ferrer, Michael Lacey, John Brunst, and Scott Spear.

6.    Defendant Carl Ferrer is a resident of Texas who at all times material hereto was conducting business in Florida. Defendant Ferrer was the CEO of Backpage.com,

4

LLC, which functioned as a front for Ferrer's illegal activities. At all times material hereto, Defendant Ferrer transacted business in Hernando County, Florida, as well as the State of Florida. Carl Ferrer is over the age of majority and is otherwise sui juris.

7.     Defendant Michael Lacey is a resident of Arizona and at all times material hereto, was conducting business in Florida. Defendant Lacey was the co-founder of Backpage.com, LLC, which functioned as a front for Lacey's illegal activities. At all times material hereto, Defendant Lacey transacted business in Hernando County, Florida, as well as the State of Florida. Michael Lacey is over the age of majority and is otherwise sui juris.

8.     Defendant John Brunst is a resident of Arizona and at all times material hereto, was conducting business in Florida. Defendant Brunst was the co-founder and CFO of Backpage.com, LLC, which functioned as a front for Brunst's illegal activities. At all times material hereto, Defendant Brunst transacted business in Hernando County, Florida, as well as the State of Florida. John Brunst is over the age of majority and is otherwise sui juris.

9.     Defendant Scott Spear is a resident of Arizona and at all times material hereto, waws conducting business in Florida. Defendant Spear was the Vice President of Backpage.com, LLC, which functioned as a front for Spear's illegal activities. At all times material hereto, Defendant Spear transacted business in Hernando County, Florida, as well as the State of Florida. Scott Spear is over the age of majority and is otherwise sui juris.

10. Defendant Salesforce.com, Inc. ("Salesforce") is a foreign corporation organized under the laws of Delaware with its principal place of business in California. Salesforce is registered to do business in the State of Florida. Salesforce is a software

provider focusing on service platforms. Salesforce does business in a systematic and continuous manner throughout this District and Division. All references to Salesforce include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. The term also includes any director, officer, agent (either with direct/actual authority and implied/apparent authority), employee, person, firm, or corporation acting on behalf of Salesforce now or at any time relevant to the claims herein.

11.    Defendant, GOSAI 9, LLC., d/b/a Quality Inn is registered to do business in the State of Florida, including its location at 1125 North Young Blvd, Chiefland, Florida.

12.    Defendant, GOSAI 9, LLC., d/b/a Days Inn by Wyndham is registered to do business in Florida, including its location at 809 NW 21st Ave, Chiefland, Florida.

13.    Defendant, MGM HOTELS LLC., d/b/a. Holiday Inn Suites – Ocala Conference Center is registered to do business in Florida, including its location at 3600 SW 38th Ave, Ocala, Florida 32274.

14.    References herein to "Hotel Defendants" refer to Defendants, GOSAI 9, LLC and MGM Hotels, LLC, owners of the Hotels used by the Defendants to sex traffic the Plaintiff, as more fully set out herein.

15.    Defendant, Wyndham Hotels and Resorts LLC, is based in Parsippany, New Jersey, and is licensed to do business in Florida. Wyndham claims to be the largest hotel franchisor in the world with 9100 locations and does business in numerous Florida locations, including the Days Inn located at 809 NW 21st Avenue, Chiefland, Florida.

16.    Defendant Choice Hotels International, Inc. is based in North Bethesda Maryland, and is licensed to do business in Florida. Choice has over 7000 franchises worldwide, including the Quality Inn at 1125 North Young Blvd, Chiefland, Florida.

17.    Defendant IHG Hotels and Resorts (InterContinental Hotels Group) is a British multinational hospitality company with headquarters in Windsor, England, and claims more than 6000 hotels and resorts, including the Holiday Inn – Ocala Conference Center.

18.    Wyndham Hotels and Resorts ("Wyndham"), Choice Hotels International ("Choice"), and IHG Hotels and Resorts ("IHG") are collectively referred to herein as "Branded Hotels."

19.    Defendant, Bryan Joseph Giguere, is over the age of majority and is otherwise sui juris and was in direct violation of Florida Statute 784.03. This statute makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result, Bryan Joseph Giguere was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-FXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

20.    Defendant Joseph A. Easton is over the age of majority and is otherwise sui juris and was in direct violation of Florida Statute 784.03. This statute makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result, Joseph Easton was charged

with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-FXMX, and should be made to pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

21.     Defendant James W. Hancock is over the age of majority and is otherwise sui juris and was in direct violation of Florida Statute 784.03. This statute makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally causes bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, James W. Hancock was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-EXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

22.     Defendant Jason M. Raulerson is over the age of majority and is otherwise sui juris. Jason M. Raulerson was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Jason M. Raulerson was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-JXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

8

23.    Defendant Luigi Barile is over the age of majority and is otherwise sui juris. Luigi Barile was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Luigi Barile was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-CXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

24.    Defendant Lawrence E. Kemble is over the age of majority and is otherwise sui juris. Lawrence E. Kemble was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Lawrence E. Kemble was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-GXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

25.    Defendant Matthew C. Doyle is over the age of majority and is otherwise sui juris. Matthew C. Doyle was in direct violation of Florida Statute 784.03 which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement

in the trafficking of the Plaintiff herein, Matthew C. Doyle was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-CXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. (**See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".**)

26.     Defendant Shawn C. Henson is over the age of majority and is otherwise sui juris. Shawn C. Henson was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein Shawn C. Henson was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-BXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. (**See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".**)

27.     Defendant Lachman Kaladeen is over the age of majority and is otherwise sui juris. Lachman Kaladeen was in direct violation of Florida Statute 784.03 which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein Lachman Kaladeen was charged with Human Trafficking and sex with a minor, among other sex crimes against the Plaintiff (I.H.) in Hernando County Case Number: 2019-CF-944-HXMX and should be made to pay the

Plaintiff for the everlasting damages he has caused her. (**See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".**)

28.    Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. 1595 and is thus entitled to bring a civil action against the "perpetrators" of any violation of the TVPRA.

29.    The Defendants violated 18 U.S.C. §1595 by seeking out and obtaining sex from the Plaintiff, who was a minor at the time, through the acts and omissions detailed in this Complaint. They did so knowing, or with reckless disregard for the fact, that the victim would be subjected to force, coercion, or fraud. Each Defendant, as a "perpetrator," committed violations of 18 U.S.C. §1595(a) that, in conjunction with other unlawful acts and omissions described in this Complaint, caused the Plaintiff to suffer significant physical and psychological injuries and other damages. These harms were a direct and proximate result of being trafficked and sexually exploited at the Defendants' hotel properties.

## JURISDICTION AND VENUE

30.    This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1331 because this action arises in the Constitution, laws, or treaties of the United States, namely, the TVPRA, 18 U.S.C. Section 1595. Additionally, this Court has supplemental jurisdiction over the Plaintiff's claims that do not arise under federal law because each claim, "so relate to claims in the action within [this Court's] original jurisdiction that they form part of the same controversy under Article III of the United

States Constitution" 28 U.S.C Section 1367(a). The venue is proper in this district pursuant to 28 U.S. C. Section 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action was brought. Defendants reside and/or conduct business within this District pursuant to 28 U.S.C Section 1391 (b), and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

31. In addition, Plaintiff invokes the supplemental jurisdiction of this Court with respect to claims based on laws of the State of Florida or any other jurisdiction pursuant to 28 U.S.C. Section 1367.

32. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, led to injuries that occurred in the judicial district where this action is brought forth.

33. At least one individual Defendant is a resident of Hernando County, Florida.

## INTRODUCTION

## SEX TRAFFICKING UNDER FEDERAL LAW

34. The Plaintiff, I. H., was a victim of sex trafficking. At the age of 15 years old, her mother "pimped her out" to men ranging in age from young adult to men over the age of 75. Beginning before November 2016 and lasting through May 2017, the Plaintiff was subjected through coercion, threats, and intimidation to perform sex acts including oral sex, and vaginal intercourse for money which was turned over to her mother. As a result of

being subjected to sex trafficking and forced sexual encounters with numerous men, the Plaintiff suffered catastrophic injuries to her mind and body, including but not limited to, contacting chronic sexually transmitted diseases HSV-1 and HSV-2, being rendered potentially infertile due to HPV and stage 3 AIS and other sexually transmitted diseases at the hands of the perpetrators and defendants herein.

35.    "Sex trafficking" is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act." The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age."

### Backpage and Salesforce's Role in Sex Trafficking.

### A. Backpage Engaged in Sex Trafficking.

36.    Backpage was founded in 2004 as an online marketplace for various goods and services. However, in 2008, when Craigslist, the leading online marketplace, introduced measures to reduce the number of sex ads on its platform, Backpage experienced significant growth. This growth was driven by strategically optimizing its geographic focus and capitalizing on the influx of ads from Craigslist users looking for alternative platforms.

37.    During the late 2000s, it became apparent that classified ad

platforms and social media sites were facilitating and profiting from commercial sex and trafficking.

38.    In 2008, Backpage had been publicly identified by law enforcement, United States Attorneys General, and every state Governor as the biggest and most notorious sex trafficking and pimping website in the United States.

39.    Backpage nonetheless worked to expand its role in online sex trafficking. Backpage's gross revenues increased from $5.3 million in 2008, to $11.7 million in 2009, and to $29 million in 2010.

40.    By 2008, Backpage implemented a policy for its moderators to modify the text of adult advertisements to disguise the true nature of the transactions. By October 2010, Backpage's executives formalized a process for manually and automatically deleting incriminating words and phrases, primarily through a feature called the "Strip Term from Ad Filter." When users, like I.H.'s trafficker, submitted an adult ad with these "stripped" words, the Strip Term from Ad Filter would delete the specific word, allowing the rest of the ad to be published. Although this filter didn't change the actual nature of the transaction, it made Backpage's adult ads appear "cleaner than ever." Manual editing involved removing language similar to what the Strip Term from Ad Filter automatically eradicated, including terms suggestive of sexual exploitation and assault of sex trafficking victims like I.H. By late 2010, the company was editing "70 to 80% of ads" in the adult section either manually or automatically.

41.    Alongside its automatic Strip Term Filter and manual editing efforts, Backpage also modified its electronic filters to assist traffickers in posting seemingly

14

harmless ads that facilitated sexual exploitation. Initially, when users attempted to post an ad containing a forbidden word, they received an error message identifying the problematic term to "assist" them in revising it. By November 2010, Backpage implemented a system that would "strip out a term after the customer submits the ad and before the ad appears in the moderation queue." This meant that if an ad contained a prohibited word associated with human trafficking, the term would be automatically removed before any moderator review. Once the Strip Term from Ad Filter deleted the term, moderators would receive the ad and could address other potential indicators of sexual exploitation. This process effectively concealed the illicit nature of many ads, including those used to exploit and traffic victims like I.H., by systematically removing terms related to sex trafficking and sexual exploitation before the ads reached the moderators.

42.    The sanitization process described was not carried out unintentionally or without awareness by Backpage. The company knew that its sanitization efforts were encouraging and assisting human traffickers and exploiters, including those victimizing I.H. According to the Senate Subcommittee Report, Backpage moderators reported that everyone at the company knew the adult section ads were for prostitution. Despite this knowledge, Backpage used the sanitization process to shield itself from potential criminal investigations while enhancing sex traffickers' ability to exploit victims undetected.

43.    Furthermore, this sanitization process was deliberately instituted as a systematic procedure, demonstrating a clear company policy aimed at helping human traffickers evade law enforcement and perpetuate the victimization and sexual assault of

15

individuals, including I.H., and other women against their will. In December 2009, Backpage organized a training session for their moderators on the sanitization process. Importantly, the presentation clarified that terms and code words indicating illegal activities required the removal of ads or words. Backpage followed through on this commitment, fully implementing the company-wide sanitization process in early 2010. In an April 2010 email note to himself titled "Adult clean up tasks," CEO Carl Ferrer affirmed that staff were "moderating ads on a 24/7 basis." In a section labeled "Additional Steps," Ferrer acknowledged that "text" could be further cleaned up as users became more inventive.

44. Backpage went beyond just discussing how to enhance the sanitization process for human trafficking advertisements; they actively updated the list of banned terms. To reduce the need for manually removing the same phrases repeatedly, Backpage instructed moderators to compile lists of phrases to regularly remove. They provided a spreadsheet listing coded terms set for automatic deletion. This document showed that certain words, among others, were removed from adult ads by the Strip Term from Ad Filter before publication:

        a. Lolita

        b. Teenage

        c. Rape

        d. Young

        e. GFE (Girl Friend Experience)

45.    When an adult ad containing any of the prohibited words was submitted, Backpage's Strip Term from Ad Filter would quickly remove the specific word, allowing the rest of the ad to be published after moderator review. It is important to understand that the Strip Term from Ad Filter did not change the actual age of the person being sold for sex or the true nature of the transaction. This was not the intention of Backpage.

46.    By July 2010, Backpage was commending its moderation staff for their editing efforts. Ferrer distributed an agenda for a July 2010 meeting with The Backpage Defendants' Phoenix staff, praising moderators for their work on "adult content" and encouraging them to continue their efforts. It is believed that Backpage employed a team of 20 moderators working around the clock to remove any explicit images and code words related to paid sex.

47.    By 2010, Backpage was the unchallenged leader in online advertising for human trafficking and exploitation of women and children. The National Association of Attorneys General described Backpage as a "hub" of "human trafficking, especially the trafficking of minors."

48.    In September 2010, 21 state attorneys general called on Village Voice Media, the owner of Backpage at the time, to shut down its adult services section. Backpage declined this request and continued to profit from the exploitation of women and children. During this period, the company positioned itself as a defender of free speech, challenging and attempting to discredit anyone or any entity that criticized its practices.

49.    Backpage profited from the exploitation of women and children for an extended period. Anyone who visited Backpage.com or searched for information about the

company would quickly see that it primarily facilitated the sale of sex, rather than acting as a general online marketplace. In fact, Backpage.com became the largest and most notorious promoter of commercial and coerced sex in the history of the internet. It dominated online sex trafficking until Federal Law Enforcement authorities shut it down on April 6, 2018.

50.    Between 2013 and 2015, over 99% of Backpage's revenue came from adult advertisements. In 2012, Backpage generated around $71 million in revenue. From January 2013 to May 2015, the company earned approximately $346 million, with nearly $340 million originating from adult advertisements.

51.    In 2013, despite the widespread recognition of Backpage's activities, Salesforce entered into the first of several contracts with Backpage. In return for its technology and assistance, Backpage compensated Salesforce. These contracts were specifically designed to support Backpage's rapid growth, enabling it to meet increasing customer demands and expand its platform into an international hub for sex trafficking. From 2013 until federal authorities shut down Backpage in 2018, Salesforce actively aided and facilitated Backpage's trafficking operations by providing its CRM software, support services, and development assistance. Salesforce granted Backpage access to a variety of products and features, including its top-tier Enterprise Edition and the advanced marketing technology, Pardot.

52.    Salesforce proactively and independently equipped Backpage with the necessary tools to operate and expand, along with the support needed to utilize those tools effectively. With a robust CRM strategy in place, a business like Backpage could gather comprehensive customer data and use it to optimize communications and business

operations. Consequently, Salesforce's software and support influenced every aspect of Backpage's business, including customer service, sales, and marketing.

53.     Salesforce actively provided unique technological tools and resources to Backpage, supporting its online sale of sex, sex trafficking, and forced prostitution, including the trafficking of Plaintiff I.H. Salesforce also offered personalized support for these tools, enabling Backpage to engage in these illicit activities. By supplying technology, implementation skills, and ongoing support, Salesforce played a crucial role in helping Backpage scale its operations and increase its trafficking activities. These affirmative actions by Salesforce facilitated Backpage's sex trafficking operations. From 2013 to 2018, Salesforce and Backpage maintained a continuous business relationship, establishing a pattern of conduct or implicit agreement that jointly facilitated a venture knowingly advertising the trafficking of victims through Backpage, including Plaintiff I.H.

54.     Backpage could not have become a leading entity in human trafficking and child sexual exploitation without Salesforce's assistance, expertise, and ongoing support. Salesforce either knew or should have known that its collaboration with Backpage was linked to violations of anti-trafficking laws.

55.     When Salesforce formed a business partnership with Backpage, it knew—or at the very least, should have been aware—that Backpage was a habitual violator of human rights, a criminal enterprise violating state and federal laws, and a significant facilitator of human trafficking and the sexual exploitation of minors.

56.     Salesforce became aware of Backpage's illegal trafficking operations through direct interactions with Backpage representatives. During the initial negotiations

around November 6, 2013, a Certified Salesforce Consulting Partner met with Backpage CEO Carl Ferrer and another senior Backpage executive to introduce themselves and assess Backpage's needs and objectives. The Consulting Partner reported to a Salesforce executive in an email on November 7, 2013, that he "spent most of the time learning of [Backpage] as a business," highlighting the need for security and advanced integration.

57.    Additionally, it was widely known that Backpage was a trafficking website during its relationship with Salesforce. Before and during 2014, Backpage frequently appeared in the news. These articles covered various aspects but consistently highlighted that Backpage.com was the leading platform for facilitating sex trafficking and other forms of human exploitation.

58.    Furthermore, throughout the relationship between Backpage and Salesforce, Backpage was frequently under public investigation for criminal activities. Salesforce's partnership with Backpage persisted through several nationwide law enforcement operations, numerous civil lawsuits against Backpage, and a highly publicized Senate hearing.

59.    While Salesforce was conducting business with Backpage, Backpage's CEO, Carl Ferrer, was arrested in Texas on October 6, 2016, for pimping underage children. Despite Ferrer's arrest, Salesforce renewed its contract with Backpage just a month later, on November 17, 2016, with Carl Ferrer still involved.

60.    Salesforce did not end its relationship with Backpage until April 2018, when the Justice Department shut down the Backpage.com website and effectively made it impossible for Salesforce to continue doing business with Backpage.

61.    Salesforce maintained a relationship with Backpage during a time when it was undeniably engaged in human trafficking. Salesforce actively and continuously supported Backpage, knowing that its software and services facilitated the trafficking activities on the platform. By doing so, Salesforce contributed to the success of Backpage's trafficking operations.

62.    Salesforce had the opportunity to learn, and indeed did learn, about Backpage's illegal business practices once their partnership was established. Despite this knowledge, Salesforce chose to continue profiting from its involvement in Backpage's illicit commercial sex trafficking activities. Therefore, Salesforce had actual awareness and understanding of Backpage's involvement in human trafficking, sexual exploitation of women, men, and children, and prostitution.

63.    Alternatively, Salesforce had at least constructive knowledge—it knew or should have known—that Backpage was involved in illegal activities, including human trafficking and the promotion of commercial sex. The illicit nature of Backpage's business was widely reported in popular news sources. Salesforce should have been aware of Backpage's operations. Any review of Backpage's online activities and business requirements, or even a simple Google search, would have shown that Backpage was engaged in the online sale of sex through human trafficking. It is unlikely that Salesforce was ignorant of Backpage's business activities at any time after their collaboration began. Thus, even if Salesforce was not initially aware of Backpage's illegal practices, it was in a position to learn about them once the partnership was established.

64.     Furthermore, Salesforce was aware—and it was widely reported during the relevant period—that Backpage was involved not only in the illegal sale of commercial sex but specifically in the unlawful trafficking of individuals. In other words, Salesforce knew or should have known that many individuals advertised on Backpage were not engaging in sex acts willingly but were coerced or forced into doing so by traffickers. Additionally, Salesforce knew or should have known that many of these individuals were minors. Despite this knowledge, Salesforce decided to continue its business dealings with Backpage and knowingly derived benefits from participating in a venture involved in criminal sex trafficking.

**B. Salesforce knowingly benefitted from participating in a venture with Backpage. § 18 U.S.C. 1595.**

65.     With full awareness of Backpage's trafficking operations, Salesforce actively chose to establish and sustain a relationship—and to financially benefit—by conducting business with Backpage, which operated as the largest sex trafficking platform in history.

66.     During Backpage's operation and profit from trafficking victims on its website, significant funds were directed towards paying Salesforce for its technology and ongoing support.

**C. Plaintiff (I.H.) was trafficked on Backpage.com with Salesforce's support and participation. § 18 U.S.C. 1595.**

67.     Tragically, before Backpage was seized by the Department of Justice, Plaintiff I.H., then a 16-year-old minor, was trafficked by advertisements on Backpage

from January 2017-May 2017. As a result, she was forced to engage in unlawful sex acts, often multiple times a day. If she did not, she would not have any food to eat or any electricity in the home. She was forced by the coercion of her own mother, and, of course, the "Johns" themselves. Throughout I.H.'s trafficking, Salesforce participated in the venture with Backpage to assist Backpage in expanding its trafficking business.

68.     I.H. was trafficked on Backpage in Florida. I.H.'s trafficker would take photos of her and post ads on Backpage. I.H.s trafficker would then communicate with individuals responding to the ads and set up "dates" for I.H.

69.     During the period that Plaintiff was trafficked by and through Backpage, Salesforce was the sole provider, customizer, owner, manager and operator of the platform and technology that allowed Backpage to traffic persons and promote prostitution of others including Plaintiff.

70.     As a result of being trafficked, I.H. suffered significant physical, psychological, and emotional injuries and damage that will negatively affect her for the rest of her life. As a direct and proximate result of Defendants' wrongful actions, Plaintiff was forced to live out the nightmare that Defendants created until they were all arrested in May of 2019. She is now struggling to take back her life. She is still and will forever live with the damage caused by those involved in her trafficking. She contracted several sexually transmitted diseases, including HPV, HSV-1, and HSV-2. She has undergone several surgeries to treat her sexually transmitted diseases. She faces the possibility of a cancer diagnosis and is dealing with infertility problems. She will also undergo continued treatment, monitoring and counseling and possible additional surgeries as a result of these

diseases contracted from the Johns with whom she was compelled to engage in sexual activities.

### Hotel Defendants and Branded Hotels Role in Sex Trafficking.

### D. Hotel Defendants Were Complicit In Sex Trafficking Of Plaintiff.

71.    Hotels and motels in general play a significant role in sex-trafficking and have a unique position to be able to identify and prevent sex trafficking on their premises.

72.    As pertains to the Hotel Defendants and Branded Hotel Defendants named herein, at the times alleged in this Complaint, the Plaintiff was sex-trafficked, assaulted, prostituted, and sold for sex on their premises with their actual or constructive knowledge.

73.    As a hotel operator, Hotel and Branded Hotel Defendants controlled the training, policies, and implementation of anti-trafficking policies, protocols, rules, and guidelines for their properties where the Plaintiff was trafficked.

74.    At all times relevant herein, upon information and belief, the Hotel Defendants and Branded Hotel Defendants had knowledge of the prevalence of sexual trafficking in the hotel industry, nonetheless, Hotel Defendants and Branded Hotel Defendants failed to prevent or endeavor to prevent the Plaintiff from being trafficked at their Hotel, all so the Defendants could profit financially.

75.    Hotel Defendants and Branded Hotel Defendants knew or should have known that sex traffickers use threats, coercion, manipulation, and other means to compel women, including the Plaintiff herein, to engage in commercial sex acts on hotel premises.

76.    The passage of TVPRA IN 2008, and the numerous other legislative and judicial responses to this crisis put the Hotel Defendants and Branded Hotel Defendants on

notice that there is a likelihood that illegal acts involving sex-trafficking are occurring on their hotel premises, which would warrant a reasonable hotel operator to be even more vigilant and proactive in countering criminal conduct.

77.    The Hotel Defendants participated in these criminal activities by renting rooms to individuals that the defendants knew or should have known were involved in sex-trafficking involving the Plaintiff.

78.    The Hotel Defendants financially benefited from the sex-trafficking occurring on their premises by virtue of renting a hotel room for money for the purpose of allowing or promoting sex trafficking.

79.    The Branded Hotel Defendants benefited financially by receiving franchise and other fees from the Hotel Defendants, and in a broader sense, benefited from the overall profits and profitability of the Brand.

80.    The Hotel Defendants and Branded Hotel Defendants, as owners, operators, managers, and controllers of the subject hotels, knew or should have known, based on numerous well-documented indicators of sex-trafficking, that sex-trafficking or other criminal activities were occurring and would continue to occur at the subject hotel due to their malfeasance, negligence or intentional disregard for the safety and well-being of its customers, guests, and persons using their facilities.

81.    The Hotel Defendants and Branded Hotel Defendants knew or should have known that they have a duty to properly train hotel employees including front desk staff, housekeeping, security, and management to identify and respond to "red flags" of criminal activity such as sex-trafficking. As long ago as 2012, 5 years before the events that form

25

the basis of this complaint occurred, the American Hotel Lodging Association (AHLA) and ECPAT-USA (Child trafficking organization now known as PACT – Protect All Children from Trafficking), provided training materials, videos and other guidelines for training and managing hotel employees as to the threats of indications of child and/or sex trafficking.

82.　　Hotel Defendants, individually and by and through their actual agents, servants, employees, and/or staff were aware of and/or should have been aware of several warning signs at their hotels that indicated the presence of sex-trafficking, including as to the Plaintiff herein, but not limited to:

    a.　Persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior.

    b.　Persons lacking freedom of movement or being constantly monitored.

    c.　Victims dressed in sexually explicit or provocative manner.

    d.　People requesting additional housekeeping services such as towels, and linens but at other times denying staff entry to the room.

    e.　Few or no personal possessions during check-in or within the room.

    f.　Sex paraphernalia in rooms (condoms, lubricants, lotions)

    g.　Large amounts of items such as used condoms, empty lube bottles, sex toys, and bodily fluids on sheets and towels.

    h.　Payments for rooms in cash, cash substitutes, or prepaid credit cards.

    i.　Checking in with local ID or local address.

    j.　Other red flags.

83.     As a result of the Hotel Defendant's failure to act, negligence, and greed, Hotel Defendant's allowed their subject hotels to be used for the carrying out of sex-trafficking in violation of TVPRA (18 USC 1595).

84.     While the Hotel Defendants and Branded Hotel Defendants profited from the room occupancy, including rental fees, food and beverage sales, ATM fees, and increased property values, the Plaintiff was being subjected to repeated dangerous conditions as a sex-trafficked victim resulted in bodily injuries, sexual exploitation, emotional distress, mental harm, pain and suffering at the hands of her sex-traffickers and the men she was sold to for sex.

85.     The Plaintiff sues the Hotel Defendants and Branded Hotel Defendants for violations of TVPRA, knowingly benefitting from sex-trafficking they knew or should have known was occurring on their premises in violation of 18 U.S.C. 1591 (a) and (b) by enabling, harboring, facilitating, and financially benefitting from sex-trafficking in which the Plaintiff was trafficked for sex, sexually exploited, and victimized in violation of TVPRA.

### E. Branded Hotels Complicit in Sex-Trafficking

86.     Defendants Wyndham Hotels & Resorts (Days Inn), Choice Hotels International (Quality Inn) and IHG Hotels & Resorts (Holiday Inn) own the respective franchising rights and brands and entered into contracts with the Hotel Defendants.

87.     By virtue of that contractual relationship, the Hotel Defendants obtain the use of the name, brand, good-will, and reputation of the Branded Hotels.

88.    The Hotel Defendants also agree to abide by certain standards, procedures, policies, and conduct to maintain their franchise with the Branded Hotels.

89.    In return, the Branded Hotels receive franchise fees, commissions, and other remuneration from the Hotel Defendants.

90.    Each of the Branded Hotels had actual and/or constructive knowledge of the blight of sex trafficking and the use of their franchised hotels and motels in the furtherance of sex traffickers before the Plaintiff was sex trafficked on their properties.

91.    As mentioned above, the hotel and motel industry, related trade groups, anti-sex trafficking groups, and governmental agencies published and provided numerous ways for hotel management and employees to identify illegal conduct including prostitution, drug usage and sales and child trafficking and child sex-trafficking. The Branded Hotels and the Hotel Defendants were aware or should have been aware of these guidelines or red flags before the Plaintiff suffered her injuries on their properties.

92.    Any hotel manager or employee witnessing the Plaintiff, her trafficker or her sex customers would or should have become aware of numerous identifiers of the abuse inflicted upon the Plaintiff, yet none of the Hotel Defendants came to her aid or chose her life and well-being over the daily room rent and profits.

93.    The Branded Hotels are in a unique position of being aware of the use of their franchisee's facilities for illegal conduct including prostitution and sex-trafficking, but also in a position to enforce rules, policies, procedures, training, and conduct of the franchised hotels management and employees.

94.    Each of the Branded Hotels has published anti-trafficking policies and commitments to efforts to combat sex trafficking.

95.    Wyndham touts its commitment to combat human trafficking by donating 1 million Wyndham Rewards Points to Polaris in 2020 and 10 million Wyndham Rewards Points since 2008. Polaris operates the U.S. National Human Trafficking Hotline.

96.    Wyndham Reward Points are worth about 8 cents each. 8 million points over a 12-year period equates to about $53,333.00 per year. Divided by the 9100 facilities operated as Wyndham properties, this donation amounts to about $5.86 per facility per year.

97.    Another way at looking at Wyndham's disingenuous approach to a commitment to fight sex trafficking is that rooms can be rented at various Wyndham resorts based on tiers of 30,000, 15,000, or 7500 Wyndham Rewards Points per night. (The only one listed at 7500 per night on the Wyndham website is in Jerusalem, Israel.) The 1 million point self-serving donation by Wyndham in 2020 would buy, at most, only 133 nights worldwide for Polaris to use for its purposes.

98.    Wyndham also publishes a Human Rights Policy Statement. Wyndham's policy is to be "supportive of laws duly enacted to prevent and punish the crime of sexual exploitation of children and that Wyndham Hotels and Resorts will cooperate with law enforcement authorities to address such instances of exploitation of which the company becomes aware."

99.    Wyndham does not identify any efforts it makes as a franchisor and owner of the Days Inn brand to train, supervise, manage, educate, and control its franchise locations

about child sex trafficking, how to recognize when child trafficking or prostitution is going on at the hotel premises, nor how to respond to evidence of child trafficking or prostitution.

100.   At all times relevant herein, Wyndham failed to properly train, supervise, manage, educate, and control the Days Inn management or employees located at 809 NW 21st Ave., Chiefland, Florida about child sex trafficking, how to recognize when child trafficking or prostitution is going on at the hotel premises, nor how to respond to evidence of child trafficking or prostitution.

101.   Choice Hotels published a Human Rights Policy in 2008 that "condemns human trafficking and child exploitation and commits to raising awareness of this issue among the owners and staff of our franchised hotels." As of 2015, Choice was a member of the ECPAT-USA Tourism Child-Protection Code of Conduct. ECPAT-USA is now known as PACT (Protect All Children from Trafficking)

102.   Choice also donates to Polaris through its Choice Privileges redemption Program. Choice claims to have provided on-line "Combating Human Trafficking in Your Hotel" to the management and staff at their franchised hotels which includes the Quality Inn located at 1125 N. Young Blvd, Chiefland, Florida.

103.   At all times relevant herein, Choice failed to properly train, supervise, manage, educate, and control the Quality Inn management or employees located at 1125 N. Young Blvd. Chiefland Florida about child sex trafficking, how to recognize when child trafficking or prostitution is going on at the hotel premises, and how to respond to evidence of child trafficking or prostitution.

104.    IHG published a Modern Slavery Statement in 2017 in accordance with the requirements of the UK Modern Slavery Act of 2014. Beginning in 2013 and again in 2017, IHG carried out assessments of "higher risk locations" and identified high profile events such as the Super Bowl for heightened awareness and increased vigilance by hotel management and staff.

105.    At all times relevant herein, IHG failed to properly train, supervise, manage, educate, and control the Holiday Inn – Ocala Conference Center management or employees located at 3600 SW 38th Ave., Ocala, Florida about child sex trafficking, how to recognize when child trafficking or prostitution is going on at the hotel premises, nor how to respond to evidence of child trafficking or prostitution.

## COUNT I
## CAUSE OF ACTION AGAINST BACKPAGE

**Sex Trafficking under 18 U.S.C. § 1595,**

106.    Plaintiff incorporates the allegations in paragraphs 1-105 and further alleges that Backpage violated the Federal Human Trafficking Statute found at 18 U.S.C. § 1595 and 18 U.S.C. § 1595.

107.    I.H. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1595, as she was trafficked and sold for commercial sex against her will.

108.    Backpage repeatedly and for years violated sex trafficking laws by knowingly advertising women, minors, and those forced into sex trafficking for sale on its website, including Plaintiff. Backpage even created its own content by copying ads from

Craigslist and other competitor websites and posting the ads on its own site as part of its business scheme to further its trafficking venture.

109.    Backpage knowingly benefitted, by receiving financial and other things of value, through its participation in a venture it knew or should have known involved the trafficking, recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, and/or soliciting of Plaintiff and otherwise furthered the sex trafficking of victims as more fully described elsewhere in this complaint.

110.    Backpage received substantial financial benefits from the trafficking described in this complaint including, but not limited to, advertising and other ancillary fees from traffickers who utilized the Backpage.com website.

111.    Backpage knew that it was advertising minors and those forced into sex trafficking for commercial sex on its website.

112.    Backpage likewise knew or should have known it was participating in a venture involving the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits, in violation of the TVPRA, 18 U.S.C. § 1595 and 1591, and 1590.

113.    Backpage had notice, both actual and constructive, as a result of the conduct outlined in this complaint.

114.    Backpage participated in a venture with, among others, Salesforce, and Plaintiff's traffickers. Each of the venturers shared a common purpose— advertising, soliciting, and trafficking women and children and the making of profits. Backpage profited from the trafficking of Plaintiff.

32

115.    There was a continuous business relationship between Salesforce, the traffickers, and Backpage such that the parties had established a pattern of trafficking conduct or could be said to have a tacit agreement. Backpage took affirmative action in furtherance of the venture by continually supporting the trafficking of women and children, all the while ignoring the obvious signs of Plaintiff's trafficking, including her being publicly posted for sale on Backpage's website. Backpage's TVPRA violations caused injuries and damages to Plaintiff.

116.    Backpage knowingly benefitted from participating in a venture it knew was engaged in illegal sex trafficking by engaging in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of Plaintiff for commercial sexual exploitation.

117.    Backpage knew that its repeated failures to address known risks of human trafficking would increase the overall volume of illegal commercial sexual exploitation and victimization, as well as the profits for Backpage, yet knowingly benefitted from facilitating the trafficking of persons on its website.

118.    In the alternative, Backpage had constructive knowledge and notice of a venture involving human trafficking that was operating on Backpage.com.

119.    Plaintiff thereby alleges, and the evidence will establish, that Backpage directly facilitated sex trafficking through the posting of advertisements for sex trafficking.

a.  providing, assisting, supporting, and facilitating a forum for Plaintiff's trafficker to post her for trafficking.

b. failing to stop online posting of Plaintiff and other human or sex trafficking victims.

c. accepting advertising fees through www.backpage.com from human traffickers, including Plaintiff's trafficker, despite actual and/or constructive knowledge that those advertisements were for illegal activities, such as, but not limited to human trafficking, prostitution, and/or sexual exploitation of minors and other victims forced into commercial sex.

d. designing and implementing The Strip Term from Ad Filter to automatically sanitize advertisements intended to promote human trafficking, prostitution, and/or the sexual exploitation of victims in an effort to maximize advertising revenue, customer satisfaction, and avoid law enforcement detection of illegal acts to evade law enforcement attention.

e. designing and implementing, in order to maximize revenue, a manual moderation system intended to sanitize posted content advertising human trafficking, prostitution, and/or the sexual exploitation of victims to give those ads the appearance of promoting legal escort services as opposed to illegal services.

f. implementing a corporate policy to maximize revenue of sanitizing advertisements promoting human trafficking, prostitution, and/or sexual exploitation of victims instead of removing those advertisements from Backpage or reporting those advertisements to the proper law enforcement officers.

34

g. knowingly implementing a corporate policy in order to maximize profit from the adult section of Backpage.com that discouraged moderators and employees of Backpage from contacting the authorities and/or advocacy groups when advertisements on Backpage.com clearly promoted human trafficking, prostitution, and/or sexual exploitation of victims.

h. knowingly refusing to pull down advertisements (after Backpage had internally sanitized the ad either manually or with the use of the Strip Term from Ad Filter) that clearly demonstrated victims were being exploited and trafficked for sex.

i. knowingly refusing to pull down advertisements after reports and/or complaints that the advertisement was being used to exploit a victim.

120. Backpage knowingly benefitted from participating in a venture that it knew or should have known was engaged in illegal sex trafficking by engaging in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of Plaintiff for commercial sexual exploitation.

WHEREFORE, Plaintiff demands judgment against Defendant Backpage for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT II
## CAUSE OF ACTION AGAINST SALESFORCE

**Sex Trafficking Under 18 U.S.C. § 1595**

121.   Plaintiff realleges and incorporates the allegations in paragraphs 1 through 105 above.

122.   Salesforce violated the federal anti-trafficking statute—the TVPRA and its reauthorizing statutes—under 18 U.S.C. §§ 1591 and 1595.

123.   Plaintiff, I.H. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1595, as she was trafficked and sold for commercial sex against her will.

124.   Salesforce knowingly benefitted, by receiving financial and other things of value across multiple contracts with Backpage, through its participation in a venture it knew or should have known involved the trafficking, recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, and/or soliciting of Plaintiff and otherwise furthered the sex trafficking of victims as more fully described elsewhere in this complaint.

125.   Salesforce knowingly received substantial financial benefits from facilitating trafficking through Backpage, including but not limited to, fees and revenues arising from its relationship with Backpage and Backpage-related entities.

126.   More specifically, Salesforce affirmatively and knowingly participated in, assisted, supported, and facilitated the Backpage sex trafficking venture on an ongoing basis by, at a minimum, the following:

   a. providing, assisting, supporting, and facilitating a world-renowned Customer Relationship Management (CRM) system with support services that were then used by Backpage to operate at maximum efficiency and profitability.

b. providing, assisting, supporting, and facilitating the trafficking operations of Backpage.com using sophisticated software and related technologies. Salesforce provided support to Backpage in the use of these technologies and had knowledge of the way Backpage operated with these enhanced capabilities.

c. providing, assisting, supporting, and facilitating Backpage with capabilities and support for direct marketing campaigns, coupled with information gathering such as tracking clicks and tracking internet activity of the sex traffickers to help Backpage manage and track the effectiveness of Backpage's marketing efforts. Salesforce helped Backpage collect and monitor data about the sex traffickers that were using Backpage to ensure improved outreach to those traffickers and improved customer service. These steps were designed to aid in the success of Backpage.com's trafficking operations.

d. providing, assisting, supporting, and facilitating more personalized outreach with automation using "dynamic content" and automated messaging to target traffickers and sex buyers.

e. providing, assisting, supporting, and facilitating enhanced customer targeting using data from existing traffickers on Backpage and creating cross-selling and upselling opportunities.

f. providing, assisting, supporting, and facilitating the collection of electronically stored information on user and platform interactions and social media interactions, including user preferences ("likes"), to advertise more effectively to traffickers and sex buyers.

37

g.  providing, assisting, supporting, and facilitating surveillance and analysis of customer and user activity with regard to access to ads by tracking "clicks" (mouse clicks), collection of contact information, evaluation of purchasing habits, and correlating outreach and marketing efforts with same.

h.  providing, assisting, supporting, and facilitating account planning including customer follow-up, account reminders, modification of marketing and sales plans, and cross-function customer service capabilities to improve outreach and services to traffickers.

i.  providing, assisting, supporting, and facilitating a custom Application Programming Interface (API) for use by Backpage employees, which is a software intermediary that allows two applications to talk to each other. This capability was for use by Backpage and did not enable computer access by the public or non-Backpage personnel.

j.  providing, assisting, supporting, and facilitating cutting edge customer analytics to provide analysis of the behaviors of traffickers and sex buyers.

k.  providing, assisting, supporting, and facilitating the creation of a secure SMS (text messaging) platform and confidential messaging capabilities for exclusive use of Backpage customers and users to facilitate secure and private communications between sex traffickers and sex buyers.

l.  providing, assisting, supporting, and facilitating the ongoing, active monitoring mechanism for Backpage's efforts to track its success, gain information from

customers and traffickers, and further automate and develop Backpage's operations.

m. providing, assisting, supporting, and facilitating a secure, custom Payment Processing Interface (PPI) and/or Payment Gateway to connect payment technology and payment processing networks to facilitate transactions between traffickers and sex buyers.

n. providing, assisting, supporting, and facilitating the credit card processing system and account tracking capabilities provided by Salesforce to accept payments from traffickers.

o. providing, assisting, supporting, and facilitating efficiency enhanced with automation, such as cutting the time it takes to email and nurture leads, scoring leads using customer parameters set by the customer using artificial intelligence (AI), and handling customer questions using automation such as chatbots.

p. providing, assisting, supporting, and facilitating a secure storage database with redundancy and backup capabilities.

q. providing, assisting, supporting, and facilitating enhanced accessibility by use of technology permitting constant communications in support of customers and users.

r. providing, assisting, supporting, and facilitating Backpage's ability to expand its trafficking operation both domestically and abroad by offering technology and support that was essential to the growth of Backpage.com.

s.  providing, assisting, supporting, and facilitating technology that created a breeding ground for sex traffickers to stalk and entrap survivors on Backpage.com.

t.  providing, assisting, supporting, and facilitating Backpage in its capability to maintain control of access to the Backpage.com platform and/or users and customers and thereby to enhance Backpage's efforts to evade detection from law enforcement.

u.  providing, assisting, supporting, and facilitating additional acts that constitute participation in a sex trafficking venture with Backpage.

127.    Each of the acts of Salesforce in providing, assisting, supporting, and facilitating Backpage was for internal Backpage use and operation only and was inaccessible to public internet users. Salesforce had both actual and constructive knowledge and notice of a venture involving human trafficking through Backpage by way of actions that enticed, harbored, provided, obtained, advertised, maintained, patronized, or solicited victims of trafficking, including Plaintiff.

128.    Plaintiff further alleges, and the evidence will establish, that Backpage operated and participated in a venture that was engaged in human trafficking and that Salesforce facilitated that venture.

129.    Thus, Plaintiff alleges that Salesforce's own, independent conduct was a substantial factor in her trafficking, sexual abuse, and continuing damages.

130.    Plaintiff further alleges that, but for the contributions, technology, and overall support by Salesforce of Backpage, Backpage would not have achieved the general success

40

it garnered, Backpage would not have escaped increased law enforcement scrutiny, Backpage would have foundered in the financial and payment markets, Backpage would have been unable to maintain its operational efficiency, and Plaintiff would not have been subjected to the criminal conduct at the hands of her traffickers and their accomplices.

131.    Salesforce knew that Backpage would achieve markedly greater success in its business operations with the use of Salesforce software and support and that Backpage relied on Salesforce to grow and function. With the foreknowledge of the nature of the operations conducted by Backpage, Salesforce had actual knowledge—or at least constructive knowledge—that by providing technology and support to Backpage, it enabled Backpage to operate and markedly enhanced the success of Backpage's trafficking operation.

132.    Salesforce participated in a venture that trafficked Plaintiff and other persons as a result of a continuous business relationship between the traffickers and Backpage and Salesforce such that the traffickers, Backpage, and Salesforce have established a pattern of trafficking conduct.

133.    Salesforce knowingly benefitted from participating in a venture it knew or should have known was engaged in illegal sex trafficking by engaging in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of Plaintiff for commercial sexual exploitation.

WHEREFORE, Plaintiff demands judgment against Defendant SALESFORCE for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT III
## CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a QUALITY INN

**Sex Trafficking of Children 18 USC 1591 and 1595**

134.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

135.    On or about March 3, April 7, and May 12, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Shawn Christopher Henson in rooms located at the Quality Inn at 1125 North Young Blvd, Chiefland, Florida.

136.    The Quality Inn located at 1125 North Young Blvd, Chiefland, Florida benefitted financially from the sex trafficking occurring on their premises by virtue of receiving rent for the room and other financial benefits.

137.    By allowing, promoting, or ignoring sex-trafficking on the premises of the Quality Inn, Defendant Quality Inn participated in the sex-trafficking venture that they knew of should have known was illegal, immoral, and contributed to, caused, and allowed the injuries to the Plaintiff as enumerated below.

138.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

**WHEREFORE,** Plaintiff demands judgment against Defendant GOSAI 9, LLC d/b/a Quality Inn for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT IV
## CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a QUALITY INN

**Intentional Infliction of Emotional Distress**

139.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

140.    As set out in detail above, Defendant GOSAI 9, LLC d/b/a QUALITY INN, provided the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

141.    Defendant GOSAI 9, LLC d/b/a QUALITY INN, intentionally and/or recklessly allowed their rooms to be used for illegal activities including the sex-trafficking of the Plaintiff.

142.    Allowing their rooms and facilities to be used for these purposes is outrageous, shocks the conscious and is unacceptable in a civil society.

143.    As a direct and proximate result of being sex-trafficked, raped, and used by the other Defendants in rooms provided by Defendant GOSAI 9, LLC d/b/a QUALITY INN, Plaintiff suffered and still suffers from extreme and severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant GOSAI 9, LLC d/b/a Quality Inn, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT V
## CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a DAYS INN

**Sex Trafficking of Children 18 USC 1591 and 1595**

43

144.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

145.    On or about April 7, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Shawn Christopher Henson in rooms located at the Days Inn at 809 NW 21st Avenue, Chiefland, Florida.

146.    The Days Inn located at 809 NW 21st Avenue, Chiefland, Florida benefitted financially from the sex trafficking occurring on their premises by virtue of receiving rent for the room and other financial benefits.

147.    By allowing, promoting, or ignoring sex-trafficking on the premises of the Days Inn, Defendant Days Inn participated in the sex-trafficking venture that they knew or should have known was illegal, immoral, and contributed to, caused and allowed the injuries to the Plaintiff as enumerated below.

148.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

**WHEREFORE,** Plaintiff demands judgment against Defendant GOSAI 9 LLC d/b/a Days Inn for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

### COUNT VI
### CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a DAYS INN

**Intentional Infliction of Emotional Distress**

149.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

150.    As set out in detail above, Defendant GOSAI 9, LLC d/b/a DAYS INN, provided the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

151.    Defendant GOSAI 9, LLC d/b/a DAYS INN, intentionally and/or recklessly allowed their rooms to be used for illegal activities including the sex-trafficking of the Plaintiff.

152.    Allowing their rooms and facilities to be used for these purposes is outrageous, shocks the conscious and is unacceptable in a civil society.

153.    As a direct and proximate result of being sex-trafficked, raped, and used by the other Defendants in rooms provided by Defendant GOSAI 9, LLC d/b/a DAYS INN, Plaintiff suffered and still suffers from extreme and severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant GOSAI 9, LLC d/b/a Days Inn, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT VII
## CAUSE OF ACTION AGAINST MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER

### Sex Trafficking of Children 18 USC 1591 and 1595

154.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

155.    On or about February 5, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Luigi Barile in rooms located at the Holiday Inn & Suites Ocala Conference Center, 3600 SW 38th Avenue, Ocala, Florida.

156.    The Holiday Inn & Suites Ocala Conference Center, 3600 SW 38th Avenue, Ocala Florida benefitted financially from the sex trafficking occurring on their premises by virtue of receiving rent for the room and other financial benefits.

157.    By allowing, promoting or ignoring sex-trafficking on the premises of the Holiday Inn & Suites Ocala Conference Center, Defendant Holiday Inn & Suites Ocala Conference Center participated in the sex-trafficking venture that they knew of should have known was illegal, immoral and contributed to, caused and allowed the injuries to the Plaintiff as enumerated below.

158.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

WHEREFORE, Plaintiff demands judgment against Defendant MGM HOTELS, LLC d/b/a Holiday Inn & Suites Ocala Conference Center for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT VIII
## CAUSE OF ACTION AGAINST MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER

**Intentional Infliction of Emotional Distress**

46

159.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

160.    As set out in detail above, Defendant MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER, provided the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

161.    Defendant MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER, intentionally and/or recklessly allowed their rooms to be used for illegal activities including the sex-trafficking of the Plaintiff.

162.    Allowing their rooms and facilities to be used for these purposes is outrageous, shocks the conscious and is unacceptable in a civil society.

163.    As a direct and proximate result of being sex-trafficked, raped, and used by the other Defendants in rooms provided by Defendant MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER, Plaintiff suffered and still suffers from extreme and severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT IX
## CAUSE OF ACTION AGAINST JOHN DOE

**Sex Trafficking of Children 18 USC 1591 and 1595**

164.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

165.    Plaintiff's sex-trafficker, her mother, rented, leased, or otherwise occupied a residence located at 31199 Longwood Drive, Brooksville, Florida.

166.    The plaintiff was sex-trafficked multiple times at the residence located at 31199 Longwood Drive, Brooksville, Florida. According to the Application and Affidavit for Arrest Warrants entered in the criminal case in Hernando County (case 2019-CF-000944, HCSO No: 2017-18444 and OSP No,: 2017-0191-TPA), sex-trafficking of the Plaintiff occurred between January 2017 and May 2017 with the following perpetrators: Luigi Barile, Bryan Joseph Giguere, James William Hancock, Joseph Andrew Easton, Latchman Kaladeen, Matthew Christopher Doyle and Jason Michael Raulerson, and upon information and belief, many others.

167.    At all times material to this matter, John Doe was the owner of the residence and real property located at 31199 Longwood Drive, Brooksville, Florida.

168.    John Doe benefited financially from the sex trafficking occurring within his property by virtue of rent or other consideration paid by Plaintiff's mother and sex-trafficker to allow the Plaintiff and her mother to use the premises for illegal activity, to wit: sex trafficking of a minor.

169.    At all times material to this matter, John Doe knew or should have known that illegal activities were occurring within his property. The same red flags or warnings that were enumerated regarding the Hotel Defendants apply to this landlord, John Doe, as well.

48

170.    By allowing, promoting, or ignoring sex trafficking on the premises and property owned by John Doe, Defendant John Doe participated in the sex trafficking venture that they knew or should have known was illegal, and immoral and contributed to, caused, and allowed the injuries to the Plaintiff as enumerated below.

171.    Pursuant to 18 U.S.C 1595 (a), Defendant John Doe is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

**WHEREFORE**, Plaintiff demands judgment against Defendant John Doe for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT X
## CAUSE OF ACTION AGAINST SHAWN CHRISTOPHER HENSON

**Sex Trafficking of Children 18 USC 1591 and 1595**

172.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

173. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, ...in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

174.    18 U.S.C. Section 1595 (Civil Remedy) provides that:

"An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

175.    That between November 2016 and May 17, 2017, and upon information and belief on or about March 3, 2017, April 7, 2017 and May 5, Defendant SHAWN CHRISTOPHER HENSON, engaged, perpetrated and participated in commercial sex acts with the Plaintiff, a minor under the age of 18 at a motel in Chiefland, Florida in violation of 18 U.S.C. Section 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant SHAWN CHRISTOPHER HENSON for illegal sex-trafficking of a minor, the Plaintiff, in violation of 18 U.S.C. Section 1595 and demands compensatory damages, punitive damages, attorney's fees and costs and for any and all other relief as is just under the premises.

<b>COUNT XI</b><br><b>CAUSE OF ACTION AGAINST SHAWN CHRISTOPHER HENSON</b>

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

176.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

177.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

178.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

179.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

180.    On or about March 3, 2017, April 7, 2017, and May 12, 2017, Defendant SHAWN CHRISTOPHER HENSON intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

181.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant SHAWN CHRISTOPHER HENSON for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XII
## CAUSE OF ACTION AGAINST SHAWN CHRISTOPHER HENSON

**Intentional Infliction of Mental Distress**

182.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

183.   Defendant SHAWN CHRISTOPHER HENSON intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

184.   Defendant SHAWN CHRISTOPHER HENSON intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

185.   The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant SHAWN CHRISTOPHER HENSON will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

186.   As a direct and proximate result of being sex-trafficked, raped and battered by Defendant SHAWN CHRISTOPHER HENSON, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant SHAWN CHRISTOPHER HENSON for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

## COUNT XIII
## CAUSE OF ACTION AGAINST LUIGI BARILE

**Sex Trafficking of Children 18 USC 1591 and 1595**

187.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as

if fully set out herein.

188. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud,

or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, …in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

189.    18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

190.    That between November 2016 and May 17, 2017, and upon information and

belief on or about February 5 and February 15, 2017, Defendant LUIGI BARILE, engaged,

perpetrated, and participated in commercial sex acts with the Plaintiff, a minor under the

age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant LUIGI BARILE for

illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages,

punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XIV
## CAUSE OF ACTION AGAINST LUIGI BARILE

### Battery. F.S. 784.03 and 772.102(1)(a)(14)

191.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

192.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

193.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

194.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

195.    That between November 2016 and May 17, 2017, and upon information and belief on or about February 5 and February 15, 2017, Defendant LUIGI BARILE

intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

196. The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant LUIGI BARILE for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XV
## CAUSE OF ACTION AGAINST LUIGI BARILE

**Intentional Infliction of Mental Distress**

197. Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

198. Defendant LUIGI BARILE intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

199. Defendant LUIGI BARILE intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

200. The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant LUIGI BARILE will, and in this case

did suffer physical injuries including sexually transmitted diseases and severe emotional distress

201.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant LUIGI BARILE, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant LUIGI BARILE for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

**COUNT XVI**
**CAUSE OF ACTION AGAINST BRYAN JOSEPH GIGUERE**

**Sex Trafficking of Children 18 USC 1591 and 1595**

202.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

203. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, ...in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

204.    18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or

56

conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

205.    That between November 2016 and May 17, 2017, and upon information and belief on or about April 17, 2017, Defendant BRYAN JOSEPH GIGUERE, engaged, perpetrated, and participated in commercial sex acts with Plaintiff, a minor under the age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant BRYAN JOSEPH GIGUERE for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XVII
## CAUSE OF ACTION AGAINST BRYAN JOSEPH GIGUERE

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

206.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

207.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

208.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the

Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

209.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

210.    That between November 2016 and May 17, 2017, and upon information and belief on or about April 17, 2017, Defendant BYRAN JOSEPH GIGUERE intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

211.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant BRYAN JOSEPH GIGUERE for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XVIII
## CAUSE OF ACTION AGAINST BRYAN JOSEPH GIGUERE

**Intentional Infliction of Mental Distress**

212.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

213.   Defendant BYRAN JOSEPH GIGUERE intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

214.   Defendant BRYAN JOSEPH GIGUERE intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

215.   The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant BRYAN JOSEPH GIGUERE will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

216.   As a direct and proximate result of being sex-trafficked, raped and battered by Defendant BRIAN JOSEPH GIGUERE, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant BRYAN JOSEPH GIGUERE for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

## COUNT XIX
## CAUSE OF ACTION AGAINST JAMES WILLIAM HANCOCK

**Sex Trafficking of Children 18 USC 1591 and 1595**

217.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

218. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, ...in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

219.    18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

220.    That between November 2016 and May 17, 2017, and upon information and belief on or about April 15, 2017, Defendant JAMES WILLIAM HANCOCK, engaged, perpetrated, and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant JAMES WILLIAM HANCOCK for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XX
## CAUSE OF ACTION AGAINST JAMES WILLIAM HANCOCK

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

221.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

222.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

223.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

224.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

225.    That between November 2016 and May 17, 2017, and upon information and belief on or about April 15, 2017, Defendant JAMES WILLIAM HANCOCK intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused

bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

226.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant JAMES WILLIAM HANCOCK for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XXI
## CAUSE OF ACTION AGAINST JAMES WILLIAM HANCOCK

**Intentional Infliction of Mental Distress**

227.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

228.    Defendant JAMES WILLIAM HANCOCK intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

229.    Defendant JAMES WILLIAM HANCOCK intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

230.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant JAMES WILLIAM HANCOCK will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

231.   As a direct and proximate result of being sex-trafficked, raped and battered by Defendant JAMES WILLIAM HANCOCK, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant JAMES WILLIAM HANCOCK for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

**COUNT XXII**
**CAUSE OF ACTION AGAINST JOSEPH ANDREW EASTON**

**Sex Trafficking of Children 18 USC 1591 and 1595**

232.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

233.   18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, ...in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

234.   18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court

of the United States and may recover damages and reasonable attorney's fees."

235.    That between November 2016 and May 17, 2017, and upon information and belief on or about May 14, 2017, Defendant JOSEPH ANDREW EASTON, engaged, perpetrated and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18 U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant JOSEPH ANDREW EASTON for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XXIII
## CAUSE OF ACTION AGAINST JOSEPH ANDREW EASTON

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

236.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

237.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

238.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

239.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

240.    That between November 2016 and May 17, 2017, and upon information and belief on or about May 14, 2017, Defendant JOSEPH ANDREW EASTON intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

241.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant JOSEPH ANDREW EASTON for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

**COUNT XXIV**
**CAUSE OF ACTION AGAINST JOSEPH ANDREW EASTON**

**Intentional Infliction of Mental Distress**

242.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

243.    Defendant JOSEPH ANDREW EASTON intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

244.    Defendant JOSEPH ANDREW EASTON intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

245.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant JOSEPH ANDREW EASTON will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

246.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant JOSEPH ANDREW EASTON, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant JOSEPH ANDREW EASTON for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

### COUNT XXV
### CAUSE OF ACTION AGAINST LAWRENCE EDWARD KEMBLE

**Sex Trafficking of Children 18 USC 1591 and 1595**

247.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

248. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, …in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

249. 18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

250. That between November 2016 and May 17, 2017, and upon information and belief on or about May 6, 2017, LAWRENCE EDWARD KEMBLE, engaged, perpetrated and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18.U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant LAWRENCE EDWARD KEMBLE for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

### COUNT XXVI
### CAUSE OF ACTION AGAINST LAWRENCE EDWARD KEMBLE

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

251.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

252.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

253.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

254.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

255.    That between November 2016 and May 17, 2017, and upon information and belief on or about May 6, 2017, Defendant LAWRENCE EDWARD KEMBLE intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

256.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant LAWRENCE EDWARD KEMBLE for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

**COUNT XXVII**
**CAUSE OF ACTION AGAINST LAWRENCE EDWARD KEMBLE**

**Intentional Infliction of Mental Distress**

257.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 104 as if fully set out herein.

258.    Defendant LAWRENCE EDWARD KEMBLE intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

259.    Defendant LAWRENCE EDWARD KEMBLE intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

260.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant LAWRENCE EDWARD KEMBLE will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

261.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant LAWRENCE EDWARD KEMBLE, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant LAWRENCE EDWARD KEMBLE for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

**COUNT XXVIII**
**CAUSE OF ACTION AGAINST LATCHMAN KALADEEN**

**Sex Trafficking of Children 18 USC 1591 and 1595**

262.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

263.    18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, ...in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

264.    18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has

engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

265.    That between November 2016 and May 17, 2017, and upon information and belief on or about March 12, 2017, Defendant LATCHMAN KALADEEN, engaged, perpetrated, and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant LATCHMAN KALADEEN for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XXIX
## CAUSE OF ACTION AGAINST LATCHMAN KALADEEN

### Battery. F.S. 784.03 and 772.102(1)(a)(14)

266.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

267.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

268.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

269.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

270.    That between November 2016 and May 17, 2017, and upon information and belief on or about March 12, 2017, Defendant LATCHMAN KALADEEN intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

271.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant LATCHMAN KALADEEN for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XXX
## CAUSE OF ACTION AGAINST LATCHMAN KALADEEN

**Intentional Infliction of Mental Distress**

272.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

273.    Defendant LATCHMAN KALADEEN intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

274.    Defendant LATCHMAN KALADEEN intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

275.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant LATCHMAN KALADEEN will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

276.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant LATCHMAN KALADEEN, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant LATCHMAN KALADEEN for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

## COUNT XXXI
## CAUSE OF ACTION AGAINST MATTHEW CHRISTOPHER DOYLE

**Sex Trafficking of Children 18 USC 1591 and 1595**

277.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

73

278.    18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, ...in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

279.    18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

280.    That between November 2016 and May 17, 2017, and upon information and belief on or about March 22, 2017, Defendant MATTHEW CHRISTOPHER DOYLE, engaged, perpetrated and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18 U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant MATTHEW CHRISTOPHER DOYLE for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XXXII
## CAUSE OF ACTION AGAINST MATTHEW CHRISTOPHER DOYLE

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

281.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

282.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

283.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

284.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

285.    That between November 2016 and May 17, 2017, and upon information and belief on or about March 22, 2017, Defendant MATTHEW CHRISTOPHER DOYLE intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the

touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

286.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant MATTHEW CHRISTOPHER DOYLE for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

**COUNT XXXIII**
**CAUSE OF ACTION AGAINST MATTHEW CHRISTOPHER DOYLE**

**Intentional Infliction of Mental Distress**

287.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

288.    Defendant MATTHEW CHRISTOPHER DOYLE intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

289.    Defendant MATTHEW CHRISTOPHER DOYLE intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

290.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant MATTHEW CHRISTOPHER DOYLE will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

76

300.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant MATTHEW CHRISTOPHER DOYLE, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant MATTHEW CHRISTOPHER DOYLE for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

### COUNT XXXIV
### CAUSE OF ACTION AGAINST JASON MICHAEL RAULERSON

**Sex Trafficking of Children 18 USC 1591 and 1595**

301.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

302. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, ...in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

303.    18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has

engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

304.    That between November 2016 and May 17, 2017, and upon information and belief on or about January 11, 2017, Defendant JASON MICHAEL RAULERSON, engaged, perpetrated and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18 U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant JASON MICHAEL RAULERSON for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XXXV
## CAUSE OF ACTION AGAINST JASON MICHAEL RAULERSON

### Battery. F.S. 784.03 and 772.102(1)(a)(14)

305.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

306.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

307.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the

Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

308.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

309.    That between November 2016 and May 17, 2017, and upon information and belief on or about January 11, 2017, Defendant JASON MICHAEL RAULERSON intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

310.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant JASON MICHAEL RAULERSON for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XXXVI
## CAUSE OF ACTION AGAINST JASON MICHAEL RAULERSON

**Intentional Infliction of Mental Distress**

311.　Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

312.　Defendant JASON MICHAEL RAULERSON intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

313.　Defendant JASON MICHAEL RAULERSON intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

314.　The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant JASON MICHAEL RAULERSON will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

315.　As a direct and proximate result of being sex-trafficked, raped and battered by Defendant JASON MICHAEL RAULERSON, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant JASON MICHAEL RAULERSON for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

## COUNT XXXVII

### Sex trafficking of Children under 18 U.S.C. 1591 and 1595 against Choice
### Hotels International

316.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

317.    On or about March 3, April 7, and May 12, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Shawn Christopher Henson in rooms located at the Quality Inn at 1125 North Young Blvd, Chiefland, Florida.

318.    The Quality Inn located at 1125 North Young Blvd, Chiefland, Florida is a franchise of Defendant Choice which benefitted financially from the sex trafficking occurring on their franchisee's premises by virtue of receiving franchise fees and other financial benefits.

319.    By allowing, promoting, or ignoring sex-trafficking on the premises of the Quality Inn, Defendant Choice participated in the sex-trafficking venture that they knew of should have known was illegal, immoral, and contributed to, caused and allowed the injuries to the Plaintiff as enumerated below.

320.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

**WHEREFORE**, Plaintiff demands judgment against Defendant Choice for the enumerated damages outlined below and for any and all other relief as is just under the premises.

## COUNT XXXVIII

**Negligent Training, Supervision, and Management against Choice**

321. Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

322. As set out in detail above, Defendant Choice franchised the Quality Inn which was the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

323. Defendant Choice had a duty to properly train, supervise and manage its franchisees and their managers and employees about the warning signs, red flags and other indications of sex trafficking or prostitution going on at their location.

324. Defendant Choice failed to train, supervise, or manage or failed to properly train manage or supervise the employees at the Quality Inn location named above.

325. As a direct and proximate result of the failure to train, manager or supervise or properly train, manage or supervise the management and staff at the Quality Inn, Plaintiff suffered repeated rapes and sexual assaults, battery, physical and psychological and emotional harm.

WHEREFORE, Plaintiff demands judgment against Defendant CHOICE, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XXXIX

**Sex Trafficking of Children 18 USC 1591 and 1595 against Wyndham Hotels and Resorts**

326.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

327.    On or about April 7, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Shawn Christopher Henson in rooms located at the Days Inn at 809 NW 21st Avenue, Chiefland, Florida.

328.    The Days Inn located at 809 NW 21st Avenue, Chiefland, Florida is a franchise of Wyndham which benefitted financially from the sex trafficking occurring on their premises by virtue of receiving franchise fees and other financial benefits.

329.    By allowing, promoting, or ignoring sex-trafficking on the premises of the Days Inn, Defendant Wyndham participated in the sex-trafficking venture that they knew or should have known was illegal, immoral, and contributed to, caused and allowed the injuries to the Plaintiff as enumerated below.

330.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

**WHEREFORE,** Plaintiff demands judgment against Defendant Wyndham for the enumerated damages outlined below and for any and all other relief as is just under the premises.

## COUNT XXXX

**Negligent Training, Supervision and Management against Wyndham**

331.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

332.    As set out in detail above, Defendant Wyndham franchised the Days Inn which was the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

333.    Defendant Wyndham had a duty to properly train, supervise and manage its franchisees and their managers and employees about the warning signs, red flags and other indications of sex trafficking or prostitution going on at their location.

334.    Defendant Wyndham failed to train, supervise, or manage or failed to properly train manage or supervise the employees at the Days Inn location named above.

335.    As a direct and proximate result of the failure to train, manager or supervise or properly train, manage or supervise the management and staff at the Days Inn, Plaintiff suffered repeated rapes and sexual assaults, battery, physical and psychological and emotional harm.

WHEREFORE,    Plaintiff    demands    judgment    against    Defendant WYNDHAM, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XXXXI

**Sex Trafficking of Children 18 USC 1591 and 1595 against IHG Hotels and Resorts**

336.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

337.    On or about February 5, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Luigi Barile in rooms located at the Holiday Inn & Suites Ocala Conference Center, 3600 SW 38th Avenue, Ocala, Florida.

338.    The Holiday Inn & Suites Ocala Conference Center, 3600 SW 38th Avenue, Ocala Florida is a franchisee of IHG which benefitted financially from the sex trafficking occurring on their premises by virtue of receiving franchise fees and other financial benefits.

339.    By allowing, promoting or ignoring sex-trafficking on the premises of the Holiday Inn & Suites Ocala Conference Center, Defendant IHG participated in the sex-trafficking venture that they knew of should have known was illegal, immoral and contributed to, caused and allowed the injuries to the Plaintiff as enumerated below.

340.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

WHEREFORE, Plaintiff demands judgment against Defendant IHG for the enumerated damages outlined below and for any and all other relief as is just under the premises.

## COUNT XXXXII

**Negligent Training, Supervision and Management against IHG**

341.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

342.    As set out in detail above, Defendant IHG franchised the Holiday Inn which was the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

343.    Defendant IHG had a duty to properly train, supervise and manage its franchisees and their managers and employees about the warning signs, red flags and other indications of sex trafficking or prostitution going on at their location.

344.    Defendant IHG failed to train, supervise, or manage or failed to properly train manage or supervise the employees at the Holiday Inn location named above.

345.    As a direct and proximate result of the failure to train, manager or supervise or properly train, manage or supervise the management and staff at the Holiday Inn, Plaintiff suffered repeated rapes and sexual assaults, battery, physical and psychological and emotional harm.

WHEREFORE, Plaintiff demands judgment against Defendant IHG, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against each Defendant in excess of $75,000.00 as follows:

a.  All available compensatory damages for the described losses with respect to each cause of action;

b.  Past and future medical expenses, as well as the costs associated with past and future life care;

c.  Past and future mental distress;

d.  Consequential and/or special damages;

e.  All available economic damages, including without limitation, conscious pain and suffering, past, present, and future injuries, physical injuries, emotional/mental and psychiatric/psychologic injuries, and loss of enjoyment of life;

f.  Disgorgement of profits obtained through unjust enrichment;

g.  Restitution;

h.  Reasonable and recoverable attorneys fees as allowed by TVPRA;

i.  Punitive damages with respect to each cause of action;

j.  Costs of this action;

k.  Pre-judgment and all other interest recoverable.

## **JURY DEMAND**

Plaintiff requests a jury trial as to all counts of her Complaint.

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing, and the facts

alleged are true to the best of my knowledge and belief.

_____

I.H.

Dated: _June 25th, 2024_

The Law Offices of Travis R. Walker, P.A.

By: _____

Travis R. Walker, Esquire
Florida Bar No. 36642
1100 SE Federal Highway
Stuart Florida 34494
(772) 708-0952
Travis@traviswalkerlaw.com
service@traviswalkerlaw.com

# EXHIBIT A

## IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
## IN AND FOR HERNANDO COUNTY

STATE OF FLORIDA,

vs.

CASE NO: 2019-CF-944
HCSO NO:  2017-18444
OSP NO.: 2017-0191-TPA

(a) K███████ F███ H████████
(b) SHAWN CHRISTOPHER HENSON
(c) LUIGI BARILE
(d) BRYAN JOSEPH GIGUERE
(e) JAMES WILLIAM HANCOCK
(f) JOSEPH ANDREW EASTON
(g) LAWRENCE EDWARD KEMBLE
(h) LATCHMAN KALADEEN
(i) MATTHEW CHRISTOPHER DOYLE
(j) JASON MICHAEL RAULERSON

_____

### ***SEALED***

### APPLICATION AND AFFIDAVIT FOR ARREST WARRANTS

BEFORE ME, the Honorable *George G. Angeliadis*, a Judge of the Circuit Court of the

Fifth Judicial Circuit in and for Hernando County, Florida personally appeared Detective Jill

Morrell of the Hernando County Sheriff's Office ("Affiant"), who, being first duly sworn by me,

gave sworn testimony and requested that an arrest warrant be issued for:

### (a) K███████ F███ H████████

for offenses of:
Human Trafficking, F.S. §787.06(3)(g)
Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Unlawful Use of a Two-Way Communication Device, F.S. §934.215

### (b) SHAWN CHRISTOPHER HENSON

for offenses of:
Human Trafficking, F.S. §787.06(3)(g)
Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Lewd or Lascivious Battery, F.S. §800.04 (a)

2019 MAY 14  PM 3: 14

FILED FOR RECORD
DOUG CHORVAT CLERK
HERNANDO COUNTY, FL

### (c) LUIGI BARILE

for offenses of:
Human Trafficking, F.S. §787.06(3)(g)
Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Lewd or Lascivious Battery, F.S. §800.04 (a)

### (d) BRYAN JOSEPH GIGUIRE

for offenses of:
Human Trafficking, F.S. §787.06(3)(g)
Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(a)(g) and §777.04(1)
Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Lewd or Lascivious Battery, F.S. §800.04 (a)

### (e) JAMES WILLIAM HANCOCK

for offenses of:
Human Trafficking, F.S. §787.06(3)(g)
Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Lewd or Lascivious Battery, F.S. §800.04 (a)

### (f) JOSEPH ANDREW EASTON

for offenses of:
Human Trafficking, F.S. §787.06(3)(g)
Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Lewd or Lascivious Battery, F.S. §800.04 (a)

### (g) LAWRENCE EDWARD KEMBLE

for offenses of:
Human Trafficking, F.S. §787.06(3)(g)
Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Lewd or Lascivious Battery, F.S. §800.04 (a)

### (h) LATCHMAN KALADEEN

for offenses of:
Human Trafficking, F.S. §787.06(3)(g)
Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(a) and/or (g) and §777.04(1)
Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Lewd or Lascivious Battery, F.S. §800.04 (a)

### (i) **MATTHEW CHRISTOPHER DOYLE**

for offenses of:
Human Trafficking, F.S. §787.06(3)(g)
Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(a) and/or (g) and §777.04(1)
Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Lewd or Lascivious Battery, F.S. §800.04 (a)

### (j) **JASON MICHAEL RAULERSON**

for offenses of:
Human Trafficking, F.S. §787.06(3)(g)
Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(a) and/or (g) and §777.04(1)
Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Lewd or Lascivious Battery, F.S. §800.04 (a)

## AFFIANT'S BACKGROUND AND EXPERIENCE

Your Affiant, Detective Jill Morell is currently assigned as a detective to the Major Crimes Section. Through my training and experience, I am familiar with the methods utilized by offenders to recruit, coerce, produce, possess, and engage in both human trafficking, sex crimes against children and/or the distribution of child pornography. I am aware criminals utilize a multitude of mass media to facilitate their criminal activities.

Your Affiant, Jill Morrell, has been in law enforcement for over twenty-five (25) years to include presently being a sworn Hernando County (FL) deputy for fourteen (14) years and previously being sworn City of Hialeah (FL) police officer for eleven (11) years, both of which being assigned to various specialized investigative units as a detective. These assignments have afforded me the opportunity to investigate and/or arrest and prosecute several hundred individual(s) involved in the distribution and/or possession of controlled substance(s), investigations involving homicide, crimes against persons, crimes related to child pornography and human sex trafficking, and other sexual related crimes. Your Affiant has successfully investigated these crimes committed in Hernando County, Florida and the City of Hialeah, Florida.

Your Affiant is currently assigned to the Tri-County Human Trafficking Response Team and the Tampa Bay Human Trafficking Task Force. Your Affiant has previously assisted with/or executed search warrants based upon investigations including warrants for cell phones, business, forms of electronic communication, and the data contained therein.

The following is an overview of courses where your Affiant has received training and gained a level of proficiency: Your Affiant has attended numerous school(s) and received specialized training in the field of narcotics, human trafficking, crimes against children and related child sex offenses, violent crimes against person(s) and death investigations. Your Affiant attended these schools through courses offered by St. Pete Community College and IPTM (Institute of Police Technology and Management). Your Affiant is currently tasked with the investigation of K███████ F██ H███████, SHAWN CHRISTOPHER HENSON, LUIGI BARILE, BRYAN JOSEPH GIGUERE, JAMES WILLIAM HANCOCK, JOSEPH ANDREW EASTON, LAWRENCE EDWARD KEMBLE, LATCHMAN KALADEEN, MATTHEW CHRISTOPHER DOYLE, AND JASON MICHAEL RAULERSON since May 17, 2017.

## FACTS

Your Affiant and other sworn members of the Hernando County Sheriff's Office and the Marion County Sheriff's Office were involved in an investigation of K███████ F██ H███████ (Hereinafter "K███████"), SHAWN CHRISTOPHER HENSON (Hereinafter "HENSON"), LUIGI BARILE (Hereinafter "BARILE"), BRYAN JOSEPH GIGUERE (Hereinafter "GIGUERE"), JAMES WILLIAM HANCOCK (Hereinafter "HANCOCK"), JOSEPH ANDREW EASTON (Hereinafter "EASTON"), LAWRENCE EDWARD KEMBLE (Hereinafter "KEMBLE"), LATCHMAN KALADEEN (Hereinafter

"KALADEEN"), MATTHEW CHRISTOPHER DOYLE (Hereinafter "DOYLE"), and JASON MICHAEL RAULERSON (Hereinafter "RAULERSON") concerning their involvement in the human trafficking of a minor, ████████ ███████ D.O.B. 06/20/2000 (hereinafter "IH") for the purposes of commercial sexual exploitation in the Fifth and Eighth Judicial Circuits, to wit: Hernando County, Marion County, and Levy County, Florida. Evidence was obtained indicating that while IH was in the custody of and under the control of K████████, K██████ engaged in behavior that subjected IH to commercial sexual exploitation by advertising IH on the internet; transporting IH for the purposes of commercial sexual activity; and otherwise made IH available for commercial sexual activity and that HENSON, BARILE, GIGUERE, HANCOCK, EASTON, KEMBLE, KALADEEN, DOYLE, and RAULERSON utilized the internet to locate the minor child for commercial sex and did in fact engage in commercial sexual activity with the minor child.

## SUMMARY OF INVESTIGATION

On May 16, 2017 information was provided to the Hernando County Sheriff's Office alleging, K██████ was prostituting out ███ then sixteen-year-old ████ IH, from their residence located at ████████████████ Brooksville, Hernando County, Florida. (Hereinafter "THE RESIDENCE"). The tip provided IH's full name and said she was sixteen. IH was not attending school and had not for the last few months. The caller reported K████████ phone number as ██████-2852. It was also reported that K████████ was driving a red Dodge Ram and that K██████ and IH were scheduled to move at the end of May. A check in DHSMV was conducted and a Florida Driver's License was located for IH who was sixteen at the time of the investigation began. This is the photograph that was used at the time of briefing.

On May 17, 2017 an open source search for the number provided by the caller, █████ 2852), revealed the phone number to be associated with several online Backpage escort ads from November through December of 2016. Backpage.com is an online advertising service that requires an electronic computing device with internet capability for access. Backpage.com allows users to create password protected accounts that allow users to save information and access the account from multiple electronic devices. Backpage.com is regularly used for online advertising for sex. Several of the images contained in the online advertisements depicted an underage female (later identified as IH) in nothing but her under garments.

Further investigation revealed several ads on escortresume.com that contained the same photographs used in the Backpage.com ads featuring IH. The ads depicted the name "Belle" and described her measurements. The ad also described her as Mexican-American and a perfect companion. The images in the ad show a female mostly in underwear in various poses. In addition, there were reviews on escortresume.com indicating the time spent with "Belle" was worthwhile.



On May 17, 2017 at approximately 1330 hours a check of the residence located at **THE RESIDENCE** revealed a red Dodge Ram truck bearing Florida tag █████ parked in the driveway. At 1600 hours, additional units established surveillance at the residence while the red

truck was in sight.  On May 17, 2017 Detective S. Pritz responded to an advertisement on Backpage.com listing K&#9608;&#9608;&#9608;&#9608;&#9608; cell phone number of &#9608;&#9608;&#9608;2852. The images depicted a female wearing underwear and the female had a specific tattoo on her right shoulder.  Detective S. Pritz and Detective L. Johnson of the Hernando County Sheriff's Office, utilized an undercover agency vehicle and responded to a pre-determined staging location. At 1751 hours Detective Pritz made a recorded controlled telephone call to &#9608;&#9608;&#9608;2852.  After two rings an unknown female answered the phone and Detective Pritz asked "is this Belle" she stated, "no hold on one second" and provided the telephone to a second female who Detective Pritz assumed was Belle.  Detective Pritz identified himself as "Steve" and explained that he had seen her ad posted online and asked if we could meet.  Belle asked if they had ever met before and where he had located her ad.

After explaining where Detective Pritz located the ad, Belle informed him that she doesn't use the number &#9608;&#9608;&#9608;2852 to schedule dates.  Belle asked when he was looking to meet up and he informed her in approximately one hour.  Detective Pritz asked Belle if she would be willing to meet at the nearby Hampton Inn and she informed him that she doesn't do "any out calls what so ever" and stated he could meet at her house in &#9608;&#9608;&#9608;&#9608; off 75.  Belle then asked if he wanted to know her donation amount[1].  Detective Pritz explained that he was interested in one hour and she stated that she only charged $180.00.  Detective Pritz asked if he was able to bring his wife with him and Belle agreed.  Belle then provided her physical address of &#9608;&#9608;&#9608;&#9608;&#9608; &#9608;&#9608;&#9608; confirming the tip and the initial investigation.

At 1802 hours, Detective Pritz received a text message from telephone number &#9608;&#9608;&#9608;&#9608; 4201 which read "Hey this is Bella I was thinking about it and I'm not quite sure if I'd be

---

[1] Based upon Affiant's training and experience in human trafficking and prostitution investigations, "donation amount" is terminology commonly used in the commercial sex industry as code for charges for sexual acts.

comfortable with it". At approximately 1823 hours, a secondary recorded controlled telephone call was made by Detective Pritz to this newly acquired number. After numerous rings "Bella" answered and Detective Pritz again identified himself as Steve and Bella proceeded to inform him that she was not comfortable with his wife coming inside the residence. Detective Pritz asked if she could stay in the vehicle while he was inside her house. Due to unknown technical issues Detective Pritz lost the connection of the telephone call. Detective Pritz called back and Bella answered the phone and explained she would be comfortable with Steve's wife waiting outside in the vehicle. Detective Pritz asked if he needed to bring condoms and Bella advised "you don't need to bring anything you're fine." Detective Pritz advised he would arrive in 15 minutes. It should be noted Detective L. Johnson was present during all above-mentioned controlled telephone calls and was acting in an undercover (UC) capacity portraying his wife.

At approximately 1847 hours, Detective L. Johnson and Detective Pritz left the staging location and proceeded to **THE RESIDENCE**. Detective Pritz arrived at **THE RESIDENCE** and observed a red Dodge Ram truck bearing Florida tag #█████ parked on the driveway that appeared to be unoccupied. Detective Pritz exited the undercover vehicle and walked to the front door of **THE RESIDENCE**, confirming the truck was unoccupied as he walked directly past the driver's side. Detective Pritz was equipped with audio and video recording devices.

Detective Pritz knocked on the front door and was greeted by an underage white female who had the same facial features as the photograph provided at the briefing, thereby identifying "Bella" as IH. IH was wearing a long unbuttoned light green collared shirt which opened up to a black tank top style shirt that slightly exposed her stomach. She was wearing short black in color spandex style shorts and black high heels. Her hair was straight and medium length and she had

brown eyes. Detective Pritz also noticed that she appeared to be wearing an excessive amount of facial makeup.

Detective Pritz entered through the front door and noticed to his immediate left a small dining area and a kitchen. Detective Pritz was led through a narrow living room area and observed a television on the left corner of the room after walking past a full-length cloth couch. Detective Pritz was led into a rear bedroom on the northeast corner of the residence and **IH** immediately shut the door behind him. Detective Pritz did not initially observe any other persons inside the residence. Detective Pritz was directed to sit at the edge of the bed that filled the majority of space within the room. They continued to speak briefly and Detective Pritz observed **IH** sit near the front of the bed near him and proceed to remove her high heeled shoes leaving them on the floor.

After a brief discussion, Detective Pritz confronted **IH** that she appeared young and asked her age and **IH** informed him "I'm eighteen but I'm turning nineteen in like a week". **IH** stated that she didn't do out calls due to cops and they proceeded to discuss the fee schedule and sexual services that would be offered. **IH** stated that "full service[2]" for one hour would cost $180.00 instead of the $200.00 that was posted on her ad. At one point **IH** stated that Detective Pritz was making her nervous and stated, "you're not like a cop or anything." **IH** again stated that full service meant Detective Pritz would get anything and he continued to ask her to elaborate. **IH** then stated that she was nervous and asked, "you're not like wearing anything are you sure, can you take off your jacket and like your whole shirt too." **IH** then used both of her hands to touch Detective Pritz's upper chest area searching for a device.

Detective Pritz proceeded to remove his hooded zippered jacket and placed it on the bed next to him. After further discussion, about the services offered, Detective Pritz attempted to pay

---

[2] Based upon Your Affiant's training and experience in human trafficking and prostitution investigations, "full service" is terminology used in the commercial sex industry to mean sexual intercourse.

and **IH** stated "I take that after. IH asked Detective Pritz to start removing all of his clothes at which time Detective Pritz stated the take-down phrase to alert the rescue and monitoring assets to make entry into **THE RESIDENCE**. **IH** was taken into custody by the Hernando County Sheriff's Office and Detective Pritz proceeded to exit the residence. While walking through the living room area, Detective Pritz observed other personnel with K█████ who had been located inside an adjacent bedroom. It was learned that K█████ had been inside this adjacent room during Detective Pritz's encounter with **IH** and was aware he was present. **IH** and K█████ were the only two people located in the home K█████ was found with one cell phone in her possession and **IH** also had another cell phone. Your Affiant briefly spoke with K█████ at the residence at which time she confirmed that only K█████ and **IH** resided at **THE RESIDENCE** and that her cell phone number was █████-2852. This is the same phone number Detective Pritz initially phoned to contact the person in the Backpage ad. K█████ was taken to the Sheriff's Office to be further interviewed by Detective Loydgren.

**IH** was initially interviewed by your Affiant on scene. **IH** said her ████ K█████ was home when clients came to the residence and K█████ was fully aware of what was occurring. **IH** advised that the money she earned engaging in commercial sex acts was provided to her ████ to pay some of the bills. **IH** advised that today, K█████ answered the phone when the undercover call was made and K█████ gave **IH** the phone. **IH** then provided a secondary number for the undercover officer call.

On May 17, 2017 a forensic interview was conducted with **IH** at the Child Advocacy Center in Hernando County. **IH** knew the interview was being conducted because of ads posted on Backpage. **IH** stated that K█████ knew adult men ranging from the ages of nineteen to seventy-five were coming to the home to meet with **IH** for the purposes of sex in exchange for

money.  K█████    would be in the home when clients came to visit **IH**. K██████        never

told **IH** to stop and did not tell **IH** she should not be doing this. K██████s cell phone was

initially the contact in the ads.  **IH** would earn up to $4,000 a month and used some of this money

to place a deposit on another property they were going to move to.

On May 17, 2017, Circuit Court Judge Merritt Jr. signed a search warrant for **THE**

**RESIDENCE** and the search was conducted that same day.  **IH** and K██████ cell phones

were recovered from inside the residence.  During the search, it was determined that the room the

undercover was taken to for sexual services by **IH** was K██████s bedroom.  In K██████s

bedroom, the money the undercover left for **IH** was located along with several used condoms.

On May 18, 2017, Circuit Court Judge Toner signed a search warrant for **IH** and

K██████s cell phone and an extraction of the data from **IH's** phone was completed.  In **IH's**

cell phone, numerous numbers were located in the "TextMe" app from persons inquiring about

Backpage ads.  Several text messages were also extracted and revealed inquiries about **IH's**

availability and pricing.  The text messages also showed that **IH** traveled to Marion and Levy

County on more than one occasion to meet with clients.  During the review of the text messages

and further investigation, it was determined K██████ transported **IH** to Marion and Levy

County to meet with clients.

On May 23, 2017, Circuit Court Judge Eineman signed a second search warrant for

K██████ residence to obtain financial documentation.  The warrant was executed and revealed

no current checkbook or financial records to show recent income for K██████  Your Affiant

received a call from **IH** which provided additional information about K██████ employment.

At this time, **IH** confirmed K██████ had no other income and that she gave all money earned

from commercial sex acts to K███████. IH also informed your Affiant that K███████ did take some of the photographs posted in the ads with K███████ cell phone.

During sworn recorded interviews, IH revealed that K███████ first compelled IH to engage in prostitution in November 2016 and that she continued to do so at K███████ insistence until May 17, 2017 when K███████ was arrested. IH advised that K███████ took photographs of IH to be used in the advertisements and K███████ set the rates for the commercial sex acts. It was also K███████ who taught the victim how to post ads on Backpage. IH advised K███████ is the one who chose the name Belle to use in the ads and IH has never used that as a nickname. K███████ initially answered the phone and set dates until she felt IH was ready to manage the ads and answer the phone calls. It was also determined that K███████ took the proceeds of the prostitution from IH to pay for household bills and daily needs. IH further advised that on occasions that she told K███████ she did not want to "work," K███████ would either ignore IH's concerns or would disregard them by guilting IH to continue as the money was needed for living expenses. IH identified which "clients" came to the house where she resided with K███████ and which "clients" were met at hotels. IH advised that K███████ knowingly drove her to locations to meet with "clients" for the purpose of engaging in commercial sex acts.

K███████ was charged by Information with one count of ███████████████ ███████████████████ in the ███ Judicial Circuit in and for ███████ County, Florida on ███████████████ K███████ entered a plea of guilty to that charge and on ███████████ ███ was sentenced to serve five (5) years in the Florida Department of Corrections.

On April 10, 2018 K███████'s cell phone was taken to the Pinellas County Sheriff's Office, 10750 Ulmerton Rd, Largo, Florida, 33778 for assistance with the extraction due to a hardware issue. An extraction was completed and the photographs of IH used in the Backpage

ads were located.  In K████████ cell phone, numerous numbers were located in the TextMe app from persons inquiring about Backpage ads.  Several text messages were also extracted and revealed inquiries about **IH's** availability and pricing.  Numerous subpoenas were issued to determine the identity of the persons who responded to the Backpage ads by contacting K████████ and **IH.**

Further investigation continued in an effort to identify persons who engaged in commercial sexual activity with the minor, **IH.**  The extractions of the cell phones recovered in this investigation revealed communications between **IH** and/or K████████ and the following numbers that indicated commercial sexual activity did occur.  As such, efforts were made to identify the persons associated with these phone numbers.  Through various law enforcement investigative databases, as well as open sources, it was determined that the following people were associated with the identified numbers:

> (352) 221-1731 was identified as related to SHAWN CHRISTOPHER HENSON
>
> (352) 573-7678 was identified as related to LUIGI BARILE
>
> (352) 212-6189 was identified as related to BRYAN JOSEPH GIGUERE
>
> (561) 441-6658 was identified as related to JAMES WILLIAM HANCOCK
>
> (954) 245-9518 was identified as related to JOSEPH ANDREW EASTON
>
> (352) 816-4143 was identified as related to LAWRENCE EDWARD KEMBLE
>
> (813) 815-6742 was identified as related to LATCHMAN KALADEEN
>
> (727) 266-3439 was identified as related to MATTHEW CHRISTOPHER DOYLE
>
> (352) 672-7203 was identified as JASON MICHAEL RAULERSON

## THE "JOHNS"

### (b) SHAWN CHRISTOPHER HENSON

The forensic examination of **IH's** cell phone revealed a phone number of 352-221-1731 as a "client" who made contact with **IH** on her cellphone on March 3, 2017. Through a review of the text messages via the TextMe application it was clear that the two had met on several occasions. **IH** was texting using the name "beeellleee." The text messages showed on March 3, 2017 the "client" indicated to **IH** he rented a room at the Quality Inn, located at 1125 North Young Boulevard in Chiefland, Florida. On April 7, 2017 the "client" told **IH** he rented room 102 at the same Quality Inn, 1125 North Young Boulevard in Chiefland, Florida. On April 7, 2017, **IH** told the "client" her roommate secured a room at the Days Inn. The following are the identified text messages.

```
------------------------------
From: From: +13522211731
Timestamp: 3/3/2017 5:04:25 PM(UTC-5)
Source App: TextMe
Body: Hey babe I got the room at that Quality Inn here in Chiefland
------------------------------
From: From: beeellleee
Timestamp: 3/3/2017 5:05:03 PM(UTC-5)
Source App: TextMe
Body: Okay just text me the address and room number
------------------------------
From: From: +13522211731
Timestamp: 3/3/2017 5:08:47 PM(UTC-5)
Source App: TextMe
Body: 1125 north young boulevard chiefland Fl
------------------------------
From: From: +13522211731
Timestamp: 3/3/2017 5:10:57 PM(UTC-5)
Source App: TextMe
Body: that's where our room is
------------------------------
```

From: From:  +13522211731
Timestamp: 3/3/2017 5:10:57 PM(UTC-5)
Source App: TextMe
Body: You sound fine hun don't worry about it LOL .Just call me when you get here at
the hotel and I'll meet you in the parking lot parked behind the building

------------------------------

From: From:  beeellleee
Timestamp: 3/3/2017 5:13:36 PM(UTC-5)
Source App: TextMe
Body: Okay hun. I would just like to inform you that i do have a driver. But they won't be
staying. They'll drop me off and pick me up in the morning, if thats not a problem.

------------------------------

From: From:  +13522211731
Timestamp: 3/8/2017 5:29:33 PM(UTC-5)
Source App: TextMe
Body: It's the truth hun. I really enjoyed my time with you. You are sweet, very attractive
and I just love your personality █████

------------------------------

From: From:  +13522211731
Timestamp: 3/20/2017 8:09:50 PM(UTC-4)
Source App: TextMe
Attachments:
#1: chats\TextMe\attachments\1\2eaa2b46-542e-49e2-b7f8-49df8ba3100a.jpg
Body:
Hey beautiful, you don't have to txt back I that you are busy. I just wanted to send a pic
of my daughter to you.

**PHOTOGRAPH NOT INCLUDED AS IT DEPICTS A MINOR CHILD**

------------------------------

From: From:  +13522211731
Timestamp: 4/7/2017 10:33:01 AM(UTC-4)
Source App: TextMe
Body: Good morning babe, I will txt you the room number when I get to Cheifland. You
remember how to get to the hotel?

------------------------------

From: From:  beeellleee
Timestamp: 4/7/2017 12:26:28 PM(UTC-4)
Source App: TextMe
Body: Can you send me the address again.

------------------------------

From: From:  +13522211731
Timestamp: 4/7/2017 12:30:43 PM(UTC-4)
Source App: TextMe
Body: 1125 North Young Blvd Cheifland, FL 32626

------------------------------

From: From: beeellleee
Timestamp: 4/7/2017 12:43:25 PM(UTC-4)
Source App: TextMe
Body: Hey my room mate just called to get a hotel so she doesn't have to drive all the
way back down...
------------------------------
From: From: beeellleee
Timestamp: 4/7/2017 12:44:57 PM(UTC-4)
Source App: TextMe
Body: She said the place you gave me was booked so she had to booked it at days inn. So
idk if you already booked or not but it might be taken... I don't know. I'm just trying to
help.
------------------------------
From: From: +13522211731
Timestamp: 4/7/2017 5:15:57 PM(UTC-4)
Source App: TextMe
Body: Hey babe, I'm in room 102 backside of the building, bottom floor, north side
------------------------------
From: From: +13522211731
Timestamp: 5/12/2017 9:41:12 AM(UTC-4)
Source App: TextMe
Body: Good morning babe, I got a room reserved for tonight at the usual place and I'm
very excited to see you tonight. What time tonight should I spit you bye
------------------------------
From: From: +13522211731
Timestamp: 5/12/2017 9:41:13 AM(UTC-4)
Source App: TextMe
Body: and are you going to give me a hint on what you got to tell me tonight LOL ?
------------------------------
From: From: +13522211731
Timestamp: 5/12/2017 11:33:31 AM(UTC-4)
Source App: TextMe
Body: I'll be at the hotel around 530 today after work. just come anytime that's good for
you babe
------------------------------
From: From: +13522211731
Timestamp: 5/12/2017 3:38:12 PM(UTC-4)
Source App: TextMe
Body: You remember how to get to the hotel?
------------------------------
From: From: +13522211731
Timestamp: 5/12/2017 5:24:15 PM(UTC-4)
Source App: TextMe
Body: Hi ▮▮▮▮▮ I am in room #112 back of the hotel on the first floor at the Quality Inn
------------------------------

From: From: +13522211731
Timestamp: 5/12/2017 5:47:34 PM(UTC-4)
Source App: TextMe
Body: 1125 north young boulevard cheifland, Fl 32626 and ok babe
-----------------------------
From: From: beeellleee
Timestamp: 5/13/2017 10:54:56 AM(UTC-4)
Source App: TextMe
Body: Shawn baby!
-----------------------------

On May 25, 2017 your Affiant made contact with the Chiefland Police Department requesting assistance to have a unit respond to the Quality Inn located at 1125 North Young Boulevard, Chiefland, Levy County, Florida, 32626 to determine who stayed in room number on March 3, 2017, April 7, 2017, and May 12, 2017. Officer Barnes responded to the Quality Inn and made contact with the front desk. Officer Barnes determined via reservation information that **HENSON**, rented room number 102 on April 7, 2017 and room 112 on May 12, 2017. There was no record found showing **HENSON** rented any rooms under his name on or about March 3, 2017. **HENSON** did provide his Florida driver's license at the time of registration and a copy of his Florida driver's license that was obtained by the clerk at the time **HENSON** checked in.

On June 6, 2017 contact was made with the Chiefland Police requesting assistance to have a unit respond to the Days Inn at 809 NW 21 Avenue, Chiefland, Levy County, Florida, 32626 to determine who stayed in room 102 on April 7, 2017. Officer Barnes responded to the Days Inn and determined via registration paperwork on April 7, 2017, that **K**⬛⬛⬛ rented room 233 and paid cash. **K**⬛⬛⬛ provided a copy of her Florida driver's license and indicated she was driving a red Dodge Ram in the registration paperwork.

On June 12, 2017 a subpoena was served on Verizon Wireless for cellular number 352-221-1731 and the cell phone service appears to be prepaid and came back to an address of Verizon Wireless, 295 Parkshore Drive, Folsom, CA 95630.

On October 26, 2017, **IH** was shown a series of photo lineups in an effort to identify adults who engaged in commercial sex acts with her. **IH** identified **SHAWN CHRISTOPHER HENSON**, W/M, DOB 03/13/1980 as a "client" who engaged in commercial sex acts with her at the Quality Inn in Chiefland, Levy County, Florida. **IH** stated **HENSON** engaged in vaginal sex, oral sex on **IH**, and oral sex on **HENSON** in exchange for money. **IH** also identified **K**&#9608;&#9608;&#9608; as the person who knowingly transported her from Hernando County to the Quality Inn in Chiefland, Levy County, Florida for the purpose of engaging in commercial sexual activity with **HENSON**. **IH** stated she provided money that was earned from the commercial sex act to **K**&#9608;&#9608;&#9608;

### (c) LUIGI BARILE

The forensic examination of **IH's** cell phone revealed a phone number 352-573-7678 as a "client" who made contact with **IH** on her cellphone on or about February 15, 2017 and it was apparent through text messages via TextMe that the two had met on several occasions. **IH** was texting using the name "beeellleee." The following text messages were extracted from the **IH's** cell phone.

```
------------------------------
From: From: beeellleee
Timestamp: 2/15/2017 12:41:24 PM(UTC-5)
Source App: TextMe
Body: Are you still coming?
------------------------------
From: From: +13525737678
Timestamp: 2/15/2017 1:03:39 PM(UTC-5)
Source App: TextMe
Body: 1:30 I'll be there ok
------------------------------
From: From: +13525737678
Timestamp: 2/15/2017 1:31:14 PM(UTC-5)
Source App: TextMe
Body: I'm here
------------------------------
```

From: From: +13525737678
Timestamp: 2/26/2017 3:05:08 PM(UTC-5)
Source App: TextMe
Body: One my guys want to come at 9 am tomorrow ok for you
-------------------------------
From: From: beeellleee
Timestamp: 3/1/2017 10:18:39 AM(UTC-5)
Source App: TextMe
Body: 11 today is fine. See you soon.
-------------------------------
From: From: +13525737678
Timestamp: 3/1/2017 10:48:17 AM(UTC-5)
Source App: TextMe
Body: 11:15 running late
-------------------------------
From: From: +13525737678
Timestamp: 3/1/2017 11:13:56 AM(UTC-5)
Source App: TextMe
Body: I'm here
-------------------------------

The "clients" cellphone number was searched via Facebook and came back to **BARILE**.
A check of the Florida Driver's license database revealed it to be **LUIGI BARILE, W/M, DOB
04/10/1981**. A check in the Hernando County Sheriff's Office report management system showed
**BARILE** provided a phone number of 352-573-7678 as of September 2015. **BARILE** is also the
owner of a local Italian restaurant, Chefs of Napoli with businesses located in Hernando, County,
Sumter County, and Marion County, Florida. On June 12, 2017 a subpoena was obtained for
Verizon Wireless and subscriber information showed the number coming back to Roseann Barile,
3487 Misty View Drive, Spring Hill, Florida in Hernando County. Roseann Barile is believed to
be **BARILE's** wife.

On October 26, 2017, **IH** was shown a series of photo lineups in an effort to identify adults
who engaged in commercial sex acts with her. **IH** identified **LUIGI BARILE, W/M, DOB
04/10/1981** as a "client" she met with at an unknown hotel in Ocala, Florida on February 15, 2017
for the purpose of engaging in sexual activity with him for money. **IH** advised that on that date,

BARILE brought three other adult males along for her to have sex with as well. IH advised she engaged in vaginal sex with all four males at separate times in exchange for money. IH advised that K████████ knowingly drove her to Ocala that day to meet with "clients" for the purpose of engaging in commercial sex acts. IH stated that she also engaged in vaginal sex for money with BARILE and the other adult males at **THE RESIDENCE**. IH indicated BARILE was a restaurant owner and the other adult males had accents. IH stated she provided money that was earned from the commercial sex act to K████████.

On April 10, 2018 K████████s cell phone was taken to the Pinellas County Sheriff's Office, 10750 Ulmerton Rd, Largo, Florida, 33778 for assistance with the extraction due to a hardware issue. The forensic review revealed videos where IH was observed to be on a glass enclosed elevator on February 5, 2017, the day IH said she met with BARILE. In the background was what appeared to be the interior of a hotel. It did not appear as IH was the one taking the video. The text messages that correlate with February 5, 2017 indicated someone texting the phone had picked up food from Cracker Barrel. Your Affiant is aware there is a Cracker Barrel located at I-75 and SR 200 in Ocala. A Google search was conducted for hotels in that area which have an interior consistent with the video described above. Your Affiant identified the Holiday Inn & Suites Ocala Conference Center, 3600 SW 38th Avenue, Ocala, Florida 34474, Marion County, Florida as having the same interior as what was depicted in the video.

Further investigation revealed several photographs of IH at the hotel to be located on K████████ cell phone. The photographs were dated February 5, 2017 at 1125 hours and the latitude and longitude of the photographs matched the coordinates for the Holiday Inn & Suites described above. At 1957 hours on February 5, 2017, a text message was sent from K████████ phone indicating the person who sent the text, believed to be K████████, was with her children.

A search warrant was served to Holiday Inn & Suites Ocala Conference Center but no records

were located indicating a room was rented by **K**▮▮▮▮▮▮▮▮

### (d) **BRYAN JOSEPH GIGUERE**

The forensic examination of **IH's** cell phone revealed a phone number 352-212-6189 as a

"client" who made contact with **IH** on her cellphone on or about April 17, 2017 and it was apparent

through text messages via TextMe the two had met on several occasions.  **IH** was texting using

the name "beeellleee." The following text messages were extracted from the **IH's** cell phone.

```
-------------------------------
From: From: +13522126189
Timestamp: 4/17/2017 4:01:02 PM(UTC-4)
Source App: TextMe
Body: Hey hey are you available?
-------------------------------
From: From: +13522126189
Timestamp: 4/17/2017 4:15:39 PM(UTC-4)
Source App: TextMe
Body: Looking to come make a visit to you
-------------------------------
From: From: +13522126189
Timestamp: 4/17/2017 4:18:42 PM(UTC-4)
Source App: TextMe
Body: Positive I can be there in 30 minutes
-------------------------------
From: From: +13522126189
Timestamp: 4/17/2017 4:21:00 PM(UTC-4)
Source App: TextMe
Body: Address? 30 $ We never discussed and I'm it fucking cop 😊 promise
From: From: +13522126189
Timestamp: 4/17/2017 4:22:14 PM(UTC-4)
Source App: TextMe
Body: We never discussed price is all I'm saying 30 $ 1- hr$ So I know what to bring
-------------------------------
From: From: beeellleee
Timestamp: 4/17/2017 4:22:46 PM(UTC-4)
Source App: TextMe
Body:
QV 80
Hh 120
```

Hr 180[3]

----------------------------------
From: From: +13522126189
Timestamp: 4/17/2017 4:23:05 PM(UTC-4)
Source App: TextMe
Body: Perfect
----------------------------------
From: From: beeellleee
Timestamp: 4/17/2017 4:27:50 PM(UTC-4)
Source App: TextMe
Body: ██████ ████████ brooksville
----------------------------------
From: From: +13522126189
Timestamp: 4/17/2017 4:32:50 PM(UTC-4)
Source App: TextMe
Attachments:
#1: chats\TextMe\attachments1\b23827e3-f8fd-469c-82b0-73d68960be5b.jpg
Body:



----------------------------------
From: From: +13522126189
Timestamp: 4/17/2017 4:49:02 PM(UTC-4)
Source App: TextMe
Body: I'm on my way , no one wakes there right! Private correct? No surprises
----------------------------------
From: From: beeellleee
Timestamp: 4/17/2017 4:54:58 PM(UTC-4)
Source App: TextMe
Body: I promise you the only person you'll encounter will be me. I have a roommate,
she's a girl. You'll never see anyone else.
----------------------------------

----
[3] Based upon Your Affiants training in experience regarding human trafficking and prostitution, the terms QV, HH
and HR are used to describe a period of time to be spent engaging in commercial sex and the cost for said period of
time.

From: From:  +13522126189
Timestamp: 4/17/2017 5:00:22 PM(UTC-4)
Source App: TextMe
Body: I'm a younger looking 44 year old man . Looking for a regular friend. I used to live
in Tampa. I used to visit with.l a Friend 4 times a week. Sugar dadd
------------------------------
From: From:  +13522126189
Timestamp: 4/17/2017 5:31:49 PM(UTC-4)
Source App: TextMe
Body: Here
------------------------------
From: From:  +13522126189
Timestamp: 4/17/2017 5:32:24 PM(UTC-4)
Source App: TextMe
Body: Red truck?
------------------------------
From: From:  +13522126189
Timestamp: 4/17/2017 6:09:17 PM(UTC-4)
Source App: TextMe
Body: Save me – Bryan
------------------------------
From: From:  +13522126189
Timestamp: 4/21/2017 6:31:32 PM(UTC-4)
Source App: TextMe
Attachments:
#1: chats\TextMe\attachments1\50f92609-72d3-456a-b629-d1f92ac2d1a0.jpg
Body: I have my boys now , my X flaked out on me. I'll have them until Sunday. I'll hit
you up Sunday if that cool .

**PHOTOGRAPH NOT INCLUDED AS IT DEPICTS A MINOR CHILD**

------------------------------
From: From:  +13522126189
Timestamp: 4/28/2017 1:14:14 PM(UTC-4)
Source App: TextMe
Body: I can't see you until Sunday afternoon now. I have my boys this weekend again. I'll
hit you up Sunday afternoon if that cool.
------------------------------
From: From:  +13522126189
Timestamp: 5/1/2017 9:58:31 AM(UTC-4)
Source App: TextMe
Body: I can see you around 5 if your would like a time and your available
------------------------------

From: From:  beeellleee
Timestamp: 5/1/2017 9:59:21 AM(UTC-4)
Source App: TextMe
Body:
Yeah that's perfect
------------------------------
From: From:  +13522126189
Timestamp: 5/1/2017 4:32:56 PM(UTC-4)
Source App: TextMe
Body:
What's the address again ?
------------------------------
From: From:  beeellleee
Timestamp: 5/1/2017 4:33:25 PM(UTC-4)
Source App: TextMe
Body:
██████  ████████████
------------------------------
From: From:  +13522126189
Timestamp: 5/1/2017 5:13:13 PM(UTC-4)
Source App: TextMe
Body: Here
------------------------------
From: From:  +13522126189
Timestamp: 5/1/2017 8:55:06 PM(UTC-4)
Source App: TextMe
Body: I want some more of you
------------------------------

There were two attached photographs to the messages.  One photograph was a Google map

showing directions from an unknown address in Homossasa Springs to **IH's** address at ████

██████████  The other photograph depicts two younger boys playing basketball and

**GIGUERE** refers to them as his children.

Your Affiant was able to identify 352-212-6189 as belonging to **BRYAN JOSEPH**

**GIGUERE**, 7162 Bonaventure Drive, #7162, Rocky Point, Hillsborough County Florida, 33607,

with the use of subscriber information obtained from Bandwith pursuant to a subpoena issued on

June 12, 2017.  A Florida driver's license for **BRYAN JOSPEH GIGUERE**, W/M, DOB

03/03/1973 was located and provided the address of 10604 W Halls River Rd, Homosassa, Fl

On October 26, 2017, **IH** was shown a series of photo lineups in an effort to identify adults

who engaged in commercial sex acts with her. **IH** identified **GIGUERE** as a "client" she met at

**THE RESIDENCE** where she resided with K██████ for the purpose of engaging in sexual

activity with him for money. **IH** advised she engaged in vaginal sex and oral sex on **GIGUERE**

in exchange for one hundred and forty to one hundred and eighty dollars. **IH** stated she provided

money that was earned from the commercial sex act to K██████ Text messages obtained from

**IH** to **GIGUERE** indicate K██████ was home when **GIGUERE** came to the home.

### (e) JAMES WILLIAM HANCOCK

The forensic examination of **IH's** cell phone revealed a phone number 561-441-6658 as a

"client" who made contact with **IH** on her cellphone as of March 4, 2017 and it was apparent

through text messages the two had met. **IH** was texting using the name "beeelleee." The following

text messages were extracted from the **IH's** cell phone.

```
----------------------------
From: From: +15614416658
Timestamp: 3/4/2017 1:07:30 PM(UTC-5)
Source App: TextMe
Attachments:
#1: chats\TextMe\attachments2\7ad996ef-d19e-433a-b73a-e1c4fa6dc513.mp3
Body: voice message where he identifies himself as Jim and gives his cell phone number
----------------------------
From: From: +15614416658
Timestamp: 3/4/2017 7:44:49 PM(UTC-5)
Source App: TextMe
Attachments:
#1: chats\TextMe\attachments2\d6ae78bd-52c2-4b35-bba8-f8d1a45ffdfd.mp3
Body: voice message where he identifies himself as Jim and gives his cell phone number
----------------------------
From: From: +15614416658
From: From: +15614416658
Timestamp: 4/15/2017 1:10:43 PM(UTC-4)
Source App: TextMe
Body: We lost the connection I would like to see you tonight around 9 is that possible?
----------------------------
```

Page 25 of 63

From: From:  +15614416658
Timestamp: 4/15/2017 1:14:46 PM(UTC-4)
Source App: TextMe
Body: I am a well mannered gentleman looking for a fun time.
-------------------------------

From: From:  +15614416658
Timestamp: 4/15/2017 1:16:03 PM(UTC-4)
Source App: TextMe
Body: You wiuld find our time together to be very enjoyable.
-------------------------------

From: From:  +15614416658
Timestamp: 4/15/2017 6:36:27 PM(UTC-4)
Source App: TextMe
Body:
I'm still good for 9 pm...
-------------------------------

From: From:  beeellleee
Timestamp: 4/15/2017 8:49:34 PM(UTC-4)
Source App: TextMe
Body: You lmk when you need the address
-------------------------------

From: From:  +15614416658
Timestamp: 4/15/2017 8:53:19 PM(UTC-4)
Source App: TextMe
Body: Ok, if all goes well should be leaving here around 9:15. ▇ is only about 15 min from me. Will call when I leave here. Getting excited!!!
-------------------------------

From: From:  +15614416658 From: From:  beeellleee
Timestamp: 4/15/2017 9:32:32 PM(UTC-4)
Source App: TextMe
Body: I'm just clearing we discussed donations right?
-------------------------------

Timestamp: 4/15/2017 9:33:18 PM(UTC-4)
Source App: TextMe
Body: Yes 80 for 1 hour
-------------------------------

From: From:  beeellleee
Timestamp: 4/15/2017 9:33:19 PM(UTC-4)
Source App: TextMe
Body: ▇▇  brooksville is my address.
-------------------------------

From: From:  +15614416658
Timestamp: 4/15/2017 9:33:34 PM(UTC-4)
Source App: TextMe
Body: 180
-------------------------------

From: From:  +15614416658
Timestamp: 4/15/2017 11:01:10 PM(UTC-4)
Source App: TextMe
Body: Next time many more positions!

------------------------------

From: From:  beeellleee
Timestamp: 4/15/2017 11:01:28 PM(UTC-4)
Source App: TextMe
Body: I had so much fun!!

------------------------------

From: From:  +15614416658
Timestamp: 4/30/2017 7:36:18 PM(UTC-4)
Source App: TextMe
Body: Hi Belle, I will be over there on the 13th & 14th of May. I would like to see you
on Sat the 13th around 9pm. Will you be available for an hour. I saw you a few weeks
ago when I was seeing my family Jim from Delray Beach

------------------------------

From: From:  +15614416658
Timestamp: 5/3/2017 7:32:59 PM(UTC-4)
Source App: TextMe
Attachments:
#1: chats\TextMe\attachments2\a7048775-b8bf-480e-aaa9-c34e3e41e9a4.mp3
Body: voice message where he identifies himself as Jim and gives his cell phone number

------------------------------

From: From:  +15614416658
Timestamp: 5/12/2017 3:54:17 PM(UTC-4)
Source App: TextMe
Body: Hi Belle, Confirming Saturday night around 9. Will touch with you tomorrow for
final confirmation. Looking forward to seeing you again! We will have a lot of fun! Jim
from Delray Beach

------------------------------

From: From:  +15614416658
Timestamp: 5/12/2017 4:41:51 PM(UTC-4)
Source App: TextMe
Attachments:
#1: chats\TextMe\attachments2\98bf1fe0-0e7a-4379-bdd8-7d52fc4c01b7.mp3
Body: voice message where he identifies himself as Jim and gives his cell phone number

------------------------------

The Hernando County Crime Analysis Unit was able to identify 561-441-6658 as

belonging to **JAMES HANCOCK** with the use of investigative databases. A Florida driver's

license for **JAMES WILLIAM HANCOCK**, W/M, DOB 03/22/1952 was located. On June 12,

2017 a subpoena was obtained for Sprint Corporation and the subscriber information showed the

Page **27** of **63**

number coming back to Jim Hancock at the same address listed on his driver's license of 6699

Moonlit Drive, Delray Beach, Palm Beach County, Florida, 33446.

On October 26, 2017, **IH** was shown a series of photo lineups in an effort to identify adults

who engaged in commercial sex acts with her. **IH** identified **JAMES WILLIAM HANCOCK**,

W/M, DOB 03/22/1952 as a "client" she met at **THE RESIDENCE** where she resided with

**K**⬛⬛⬛ for the purpose of engaging in sexual activity with him for money. **IH** advised she

engaged in vaginal sex with **HANCOCK** in exchange for one hundred forty to one hundred eighty

dollars.  **IH** stated she provided money that was earned from the commercial sex act to

**K**⬛⬛⬛

### (f) JOSEPH ANDREW EASTON

The forensic examination of **IH's** cell phone revealed a phone number 954-245-9518 as a

"client" who made contact with **IH** on her cellphone as of May 13, 2017 and it was apparent

through text messages the two had met. **IH** was texting using the name "beeellleee." The following

text messages were extracted from the **IH's** cell phone:

```
------------------------
From: From: +19542459518
Timestamp: 5/13/2017 10:18:39 PM(UTC-4)
Source App: TextMe
Body: I saw your add on bp and I was wondering are you available?
------------------------
From: From: beeellleee
Timestamp: 5/13/2017 10:59:53 PM(UTC-4)
Source App: TextMe
Body: Hey thanks for messaging me! Here's some information on me, if your interested
message me back!!!
Donations:
QV: $80
HH: $120
HR: $180
OVERNIGHTS REG: $400
OVERNIGHTS ONE: $800
(Regulars get a half discount for overnights)
Location: ⬛⬛⬛⬛⬛
```

Brooksville, FL  34602
United States
I give my actually address if you set something up. (I do ONLY Incalls, I only do outcalls
for people I've already met with)
*I send this message to anyone who contacts me*
------------------------------
From: From: +19542459518
Timestamp: 5/13/2017 11:22:46 PM(UTC-4)
Source App: TextMe
Body: I only have 100
------------------------------
From: From: beeellleee
Timestamp: 5/13/2017 11:23:04 PM(UTC-4)
Source App: TextMe
Body: 20 mins
------------------------------
From: From: beeellleee
Timestamp: 5/13/2017 11:48:49 PM(UTC-4)
Source App: TextMe
Body: Okay I have a red truck out front
------------------------------
From: From: +19542459518
Timestamp: 5/14/2017 12:19:04 AM(UTC-4)
Source App: TextMe
Body: I'm here lol
------------------------------
From: From: +19542459518
Timestamp: 5/14/2017 12:38:29 AM(UTC-4)
Source App: TextMe
Body: Damn I kinda wanted to go round 2
------------------------------
From: From: +19542459518
Timestamp: 5/14/2017 12:41:45 AM(UTC-4)
Source App: TextMe
Body:
I just feel like I wasted my money
------------------------------
From: From: +19542459518
Timestamp: 5/14/2017 12:42:59 AM(UTC-4)
Source App: TextMe
Body: Wish I could have fucked you right
------------------------------
From: From: +19542459518
Timestamp: 5/14/2017 12:44:49 AM(UTC-4)
Source App: TextMe
Body: You gotta let me fuck you again

Page 29 of 63

---------------------------------
From: From: +19542459518
Timestamp: 5/14/2017 12:45:11 AM(UTC-4)
Source App: TextMe
Body: I'll last longer next time
---------------------------------
From: From: beeellleee
Timestamp: 5/14/2017 12:45:50 AM(UTC-4)
Source App: TextMe
Body: Can I make it up to you next time. I really don't know what to tell you you only
paid for 20 mins and like you stayed for 19 minutes.
---------------------------------
From: From: beeellleee
Timestamp: 5/14/2017 12:46:10 AM(UTC-4)
Source App: TextMe
Body: If you wanted straight fucking and no talking you should've just told me.
---------------------------------
From: From: +19542459518
Timestamp: 5/14/2017 12:47:35 AM(UTC-4)
Source App: TextMe
Body: Lmao that ass was too much for me
---------------------------------
From: From: +19542459518
Timestamp: 5/14/2017 12:49:58 AM(UTC-4)
Source App: TextMe
Body: Next time I'm gonna do you right
---------------------------------

The Hernando County Crime Analysis Unit was able to identify 954-245-9518 as

belonging to **JOSEPH EASTON** with the use of investigative databases. A Florida driver's

license for **JOSEPH ANDREW EASTON**, W/M, DOB 10/12/1994 was located. On June 12,

2017 a subpoena was obtained for T-Mobile and the subscriber information showed the number

coming back to **JOSEPH W EASTON IV**, at 6500 NW 114th Avenue, Apt 102 (no further

information).

On October 26, 2017, **IH** was shown a series of photo lineups in an effort to identify adults

who engaged in commercial sex acts with her. **IH** identified **JOSEPH ANDREW EASTON**,

W/M, DOB 10/12/1994 as a "client" she met at **THE RESIDENCE** where she resided with

**K**⬛⬛⬛ for the purpose of engaging in sexual activity with him for money. **IH** advised she

engaged in vaginal sex and oral sex with **EASTON** in exchange for one hundred dollars. **IH** stated she provided money that was earned from the commercial sex act K█████████

### (g) LAWRENCE EDWARD KEMBLE

The forensic examination of **IH's** cell phone revealed a phone number 352-816-4143 as a "client" who made contact with **IH** on her cellphone as of February 6, 2017 and it was apparent through text messages the two had met. **IH** was texting using the name "beeellleee." The following text messages were extracted from the **IH's** cell phone.

```
-----------------------------
Start Time: 2/6/2017 9:57:22 PM(UTC-5)
Last Activity: 5/17/2017 3:15:56 AM(UTC-4)
Participants: beeellleee, +13528164143
From: From: +13528164143
Timestamp: 2/6/2017 9:57:22 PM(UTC-5)
Source App: TextMe
Body:A ADULT site. Had about 4 or 5 guys ask me about u. Told them u r the bomb and
a sweet heart. Hopefully u will get a few more clients. LOL Hope you had
-----------------------------
From: From: +13528164143
Timestamp: 2/6/2017 9:57:22 PM(UTC-5)
Source App: TextMe
Body: Hey Belle, sent a text to your other number, just wanted to make sure that I wanted
YOU to know that I posted a nice review on the Ocala and G'ville US
-----------------------------
From: From: +13528164143
Timestamp: 3/6/2017 11:14:07 PM(UTC-5)
Source App: TextMe
Body: Just wanted to let you know that U have a bad review on the Tampa B/P Lars
-----------------------------
From: From: +13528164143
Timestamp: 3/8/2017 12:18:22 PM(UTC-5)
Source App: TextMe
Attachments:
#1: chats\TextMe\attachments1\2a5ecf8d-1a95-40d3-99ee-b9f34641567a.jpg
Body: His handle on the USASEXGUIDE is Rockey7373.
Lars
```



------------------------------
From: From: +13528164143
Timestamp: 3/28/2017 9:14:42 PM(UTC-4)
Source App: TextMe
Body: Good evening Hun, FYI, had another gentlemen contact me about U today. Lars
------------------------------
From: From: +13528164143
Timestamp: 4/7/2017 9:16:56 PM(UTC-4)
Source App: TextMe
Body: Good evening Belle, friend of mine just texted me and said U r in Slocala tonight.
Wishing you good luck, knock'em dead, make lots of money, but stay
------------------------------
From: From: +13528164143
Timestamp: 4/12/2017 8:16:42 PM(UTC-4)
Source App: TextMe
Body: Hey Belle, nice to hear back from you, I was thinking maybe we can
------------------------------
From: From: +13528164143
Timestamp: 4/12/2017 8:16:42 PM(UTC-4)
Source App: TextMe
Body: hook up on Saturday May 6? Let me know if that works for you, than
------------------------------
From: From: +13528164143
Timestamp: 4/12/2017 8:16:43 PM(UTC-4)
Source App: TextMe
Body: ks. ☺ Lars
------------------------------

From: From: beeellleee
Timestamp: 4/12/2017 8:28:39 PM(UTC-4)
Source App: TextMe
Body: That is perfect

------------------------------

From: From: +13528164143
Timestamp: 4/12/2017 8:31:22 PM(UTC-4)
Source App: TextMe
Body: OK gr8, thanks. And I want to see if U would like to take a trip to Daytona Beach later in the summer. We can talk about it when you come on the 6th. Thanks
Lars

------------------------------

From: From: beeellleee
Timestamp: 4/21/2017 8:37:56 PM(UTC-4)
Source App: TextMe
Body: Hey hun. I was just fishing around and stuff and was wondering if girls post ads on USA SG

------------------------------

From: From: beeellleee
Timestamp: 4/21/2017 8:38:13 PM(UTC-4)
Source App: TextMe
Body: you know a lot more about it than I do, and I can say the least it's extremely confusing.

------------------------------

From: From: +13528164143
Timestamp: 4/21/2017 8:46:31 PM(UTC-4)
Source App: TextMe
Body: NOT very many do and I have no idea why they don't. I personally think if you have an Ad USA CLASSIFIEDS, to me it just seems to be just s little bit classier. I would post one on there. Does it cost money? Lars

------------------------------

From: From: beeellleee
Timestamp: 4/21/2017 8:47:42 PM(UTC-4)
Source App: TextMe
Body: I'm not really sure how to even post on there. I assumed you did. It's too confusing for me, I'm getting to understanding it better.

------------------------------

From: From: +13528164143
Timestamp: 4/22/2017 8:56:04 PM(UTC-4)
Source App: TextMe
Body: HEY Hun, checked out how to post an Ad on USA ADULT CLASSIFIEDS, looks pretty easy and I don't think that U have to pay for the Ad. Lars

------------------------------

From: From: +13528164143
Timestamp: 4/22/2017 10:18:44 PM(UTC-4)
Source App: TextMe
Body: O sure we can. LOL don't know what is on the second page, but we wi
------------------------------
From: From: +13528164143
Timestamp: 4/22/2017 10:18:44 PM(UTC-4)
Source App: TextMe
Body: ll find out. For me it is easier to do stuff on my PC then my phone
------------------------------
From: From: +13528164143
Timestamp: 4/27/2017 11:16:52 PM(UTC-4)
Source App: TextMe
Body: Belle, r we still on for next weekend? Can't wait to see you. Lars
------------------------------
From: From: beeellleee
Timestamp: 4/28/2017 12:55:48 PM(UTC-4)
Source App: TextMe
Body: Yeah of course, I can't wait to see you and catch up.
------------------------------
From: From: +13528164143
Timestamp: 5/2/2017 9:49:50 AM(UTC-4)
Source App: TextMe
Body: Good morning Belle, I just gave a friend of mine, Phil, your number, he said he
was coming to Brooksville on a business trip today and wanted to see
------------------------------
From: From: beeellleee
Timestamp: 5/2/2017 11:16:14 AM(UTC-4)
Source App: TextMe
Body: No of course I don't mind. What's the Kentucky derby
------------------------------
From: From: beeellleee
Timestamp: 5/5/2017 2:47:09 PM(UTC-4)
Source App: TextMe
Body: Hey is everything still good for tomorrow??
------------------------------
From: From: +13528164143
Timestamp: 5/5/2017 3:29:56 PM(UTC-4)
Source App: TextMe
Body: Yeah I'm good to go. How about you? Lars
------------------------------
From: From: beeellleee
Timestamp: 5/6/2017 8:19:45 AM(UTC-4)
Source App: TextMe
Body: Yeah everything is good.
------------------------------

From: From:  beeellleee
Timestamp: 5/6/2017 4:52:52 PM(UTC-4)
Source App: TextMe
Body: What time did you want me to come?

------------------------------

From: From:  +13528164143
Timestamp: 5/6/2017 4:54:19 PM(UTC-4)
Source App: TextMe
Body: Whenever you are ready. If you want, I can cook us something to eat? Lars

------------------------------

From: From:  beeellleee
Timestamp: 5/6/2017 5:19:04 PM(UTC-4)
Source App: TextMe
Body: I'll be around 7:30

------------------------------

From: From:  +13528164143
Timestamp: 5/6/2017 6:57:20 PM(UTC-4)
Source App: TextMe
Body: Just letting you know, just got done watching Derby, shower time. Lars

------------------------------

From: From:  beeellleee
Timestamp: 5/6/2017 7:25:48 PM(UTC-4)
Source App: TextMe
Body: Do you mind re giving me your address

------------------------------

From: From:  +13528164143
Timestamp: 5/6/2017 7:26:35 PM(UTC-4)
Source App: TextMe
Body: 1230 NW 105TH TER Ocala Florida 34482. Lars

------------------------------

From: From:  +13528164143
Timestamp: 5/7/2017 10:06:46 AM(UTC-4)
Source App: TextMe
Body: Hey Belle, found your bracelet under the pillow. LOL Lars

------------------------------

From: From:  +13528164143
Timestamp: 5/7/2017 10:29:41 AM(UTC-4)
Source App: TextMe
Body: OK, thanks for the gr8 time. Lars

------------------------------

From: From:  +13528164143
Timestamp: 5/8/2017 7:16:18 PM(UTC-4)
Source App: TextMe
Body: Good evening Belle, just giving you a heads up, I gave your number to a
gentlemen on the USASEXGUIDE, hope you don't mind that, also I gave you a revi

------------------------------

From: From:  +13528164143
Timestamp: 5/8/2017 7:16:18 PM(UTC-4)
Source App: TextMe
Body: ew on the Ocala, G'vile and Tampa USASEXGUIDE. Stay well and stay safe.
Lars
------------------------------

The following review was located and attached to a Backpage ad dated May 16; 2017:



On June 9, 2017 a subpoena was obtained for 352-816-4143 for Verizon Wireless and

subscriber information showed the number coming back to **LAWRENCE EDWARD KEMBLE**

at 10589 NW 11 Pl, Ocala, Florida, 34482.

On March 29, 2019, **IH** was shown a series of photo lineups in an effort to identify adults who engage in commercial sex acts with her. **IH** identified **LAWRENCE EDWARD KEMBLE**, W/M, DOB 06/10/1948 as a "client" she had met at his residence for the purpose of engaging in sexual activity with him for money. **IH** advised she engaged in vaginal sex and oral sex with **KEMBLE** in exchange for four hundred dollars to stay overnight at **KEMBLE'S** residence. K███████ did transport her to **KEMBLE'S** residence. **IH** stated she provided money that was earned from the commercial sex act to K██████.

### (h) LATCHMAN KALADEEN

The forensic examination of **IH's** cell phone revealed a phone number 813-815-6742 as a "client" who made contact with **IH** on her cellphone as of March 8, 2017 and it was apparent through text messages and several calls that the two had met. **IH** referred to the client as "Jerry" in text. **IH** was texting using the name "beeellleee." The following text messages were extracted from the **IH's** cell phone.

```
-------------------------------
From: From: +18138156742
Timestamp: 3/8/2017 3:19:05 PM(UTC-5)
Source App: TextMe
Body: On my way baby
-------------------------------
From: From: beeellleee
Timestamp: 3/8/2017 3:38:07 PM(UTC-5)
Source App: TextMe
Body: Okay stop texting my old number
-------------------------------
From: From: beeellleee
Timestamp: 3/9/2017 5:13:45 PM(UTC-5)
Source App: TextMe
Body: Jerry i couldn't, I have to help out my roommate with her pulley. Please stop being
pushy. I'm really stressed out right now, dinner is the last thing I'm thinking about.
-------------------------------
From: From: +18138156742
Timestamp: 3/10/2017 7:43:11 PM(UTC-5)
Source App: TextMe
Body: So r u making lots of money
```

---

From: From:  +18138156742
Timestamp: 3/11/2017 12:02:16 AM(UTC-5)
Source App: TextMe
Body: If u need any money I can bring it in morning before u go to your apm

---

From: From:  +18138156742
Timestamp: 3/11/2017 4:01:09 PM(UTC-5)
Source App: TextMe
Body: Text me is not working for you

---

From: From:  beeellleee
Timestamp: 3/12/2017 4:55:31 PM(UTC-4)
Source App: TextMe
Body: CALL MEEEE

---

From: From:  +18138156742
Timestamp: 3/12/2017 5:04:53 PM(UTC-4)
Source App: TextMe
Body:
Call 3/12/2017 9:04:53 PM(UTC+0)

---

From: From:  +18138156742
Timestamp: 3/12/2017 5:18:31 PM(UTC-4)
Source App: TextMe
Body: On my way

---

From: From:  +18138156742
Timestamp: 3/12/2017 5:51:58 PM(UTC-4)
Source App: TextMe
Body: I'm here

---

On June 12, 2017 a subpoena was issued to Bandwith.com, Inc. for number 813-815-6742

and an additional subpoena was reissued to Cellco Partnership D/B/A Verizon Wireless due to

Bandwith advising the number belonged to Verizon Wireless.  A response was received from

Verizon Wireless that the number belonged to Pinger, Inc.  A subpoena was issued to Pinger, Inc.

for   number   813-815-6742   who   provided   information   the   account   belonged   to

jerryboodo@gmail.com with an IP address of 47.197.10.163 and listed two most commonly used

IP addresses of 72.187.195.232 and 47.197.21.168.

On May 22, 2018 Circuit Court Judge Hitzman signed a search warrant for the Google account of jerryboodo@gmail.com. Google results linked the account with Narinie D Deokaran and a check in DAVID showed her at an address of 26300 Lawrence Avenue in Wesley Chapel, Florida. An address check in DAVID showed a Jenna Kaladeen and Jermy Kaladeen also reside at that address. Jenna Kaladeen had a US birth certificate listed in her documents which listed Narinie Deokaran as her mother and **LATCHMAN KALADEEN** (DOB 04/12/1970 from Guyana) as her father. Information was also found for vijayboodo@gmail.com. An image of **LATCHMAN KALADEEN** was found with a woman as well as an image of a permanent resident card with the name Ryan Singh.

A criminal history check of **LATCHMAN KALADEEN** revealed he used an alias of Jerry Kaladeen and Vijay Singh. It also showed on October 11, 2017, he was arrested in a Polk County for Solicitation for Prostitution using the name Vijay Singh. An open source check found a Facebook account for Jerry Singh which showed an image of **LATCHMAN KALADEEN** with same woman in the image from his Google account. The Facebook account lists him as married and from New Amsterdam, Guyana. Other images from his Facebook account show Narinie Deokaran and Jenna Kaladeen.

On March 29, 2018, **IH** was shown a series of photo lineups in an effort to identify adults who engaged in commercial sex acts with her. **IH** identified **LATCHMAN KALADEEN**, B/M, DOB 04/12/1970 as a "client" she met at **THE RESIDENCE** where she resided with **K**▮▮▮▮▮▮ for the purpose of engaging in sexual activity with him for money. **IH** advised she engaged in vaginal sex and oral sex multiple times with **KALADEEN** in exchange for one hundred dollars. **IH** advised that she had told **K**▮▮▮▮▮▮ that she did not want to have sexual contact with

KALADEEN but K███████ compelled **IH** to continue to do so. **IH** stated she provided money that was earned from the commercial sex act K███████.

### (i) <u>MATTHEW CHRISTOPHER DOYLE</u>

The forensic examination of **IH's** cell phone revealed a phone number 727-266-3439 as a "client" who made contact with **IH** on her cellphone as of March 15, 2017 and it was apparent through text messages the two had met. **IH** was texting using the name "beeellleee." The following text messages were extracted from the **IH's** cell phone.

```
------------------------------
From: From: +17272663439
Timestamp: 3/15/2017 4:43:33 PM(UTC-4)
Source App: TextMe
Body: Hey interested in seeing you how much for your time
------------------------------
From: From: beeellleee
Timestamp: 3/15/2017 4:49:18 PM(UTC-4)
Source App: TextMe
Body:120hh 180hr
------------------------------
From: From: +17272663439
Timestamp: 3/15/2017 4:50:02 PM(UTC-4)
Source App: TextMe
Body: Location
------------------------------
From: From: beeellleee
Timestamp: 3/15/2017 4:50:30 PM(UTC-4)
Source App: TextMe
Body: Brooksville
------------------------------
From: From: +17272663439
Timestamp: 3/15/2017 4:50:51 PM(UTC-4)
Source App: TextMe
Body: Where in Brooksville address?
------------------------------
From: From: +17272663439
Timestamp: 3/15/2017 4:57:02 PM(UTC-4)
Source App: TextMe
Body: Rdy for me now
------------------------------
```

From: From: +17272663439
Timestamp: 3/15/2017 5:15:13 PM(UTC-4)
Source App: TextMe
Body: Hey sorry already headed back south. I'd like to meet up this week though. You rather a call?

------------------------------

From: From: +17272663439
Timestamp: 3/15/2017 5:25:13 PM(UTC-4)
Source App: TextMe
Body: Called u back tried to find out where I'd go for future will help when I'm in the area on business

------------------------------

From: From: +17272663439
Timestamp: 3/16/2017 10:50:24 AM(UTC-4)
Source App: TextMe
Body: What's up gorgeous. U took ur post down ?

------------------------------

From: From: beeellleee
Timestamp: 3/16/2017 10:51:36 AM(UTC-4)
Source App: TextMe
Body: Yeah I do that before I sleep

------------------------------

From: From: +17272663439
Timestamp: 3/16/2017 10:52:06 AM(UTC-4)
Source App: TextMe
Body: How come? So what's ur day look luke?

------------------------------

From: From: beeellleee
Timestamp: 3/16/2017 10:53:57 AM(UTC-4)
Source App: TextMe
Body: Why are you trying to set something up?

------------------------------

From: From: +17272663439
Timestamp: 3/16/2017 10:54:21 AM(UTC-4)
Source App: TextMe
Body: Do you not recall talking to me yesterday

------------------------------

From: From: beeellleee
Timestamp: 3/16/2017 10:55:16 AM(UTC-4)
Source App: TextMe
Body: You were looking to set something up around 12?

------------------------------

From: From: +17272663439
Timestamp: 3/16/2017 10:56:46 AM(UTC-4)
Source App: TextMe
Body: Yes ma'am gonna be more like 1 I'd say.

Page **41** of 63

------------------------------------
From: From: +17272663439
Timestamp: 3/16/2017 10:59:41 AM(UTC-4)
Source App: TextMe
Body: I'm gonna need an address to know where I'm going
------------------------------------
From: From: beeellleee
Timestamp: 3/16/2017 11:00:29 AM(UTC-4)
Source App: TextMe
Body: Can I give you something that is close and then you tell me when ur there
I'll send you my actual address?
------------------------------------
From: From: beeellleee
Timestamp: 3/16/2017 11:03:03 AM(UTC-4)
Source App: TextMe
Body: Well actually I've never met with you before so I'm more cautious than I usually
am.
------------------------------------
From: From: beeellleee
Timestamp: 3/16/2017 11:04:34 AM(UTC-4)
Source App: TextMe
Body: ██████ brooksville fl
------------------------------------
From: From: beeellleee
Timestamp: 3/16/2017 12:08:52 PM(UTC-4)
Source App: TextMe
Body: Hey your gunna have to come later I'm stepping out for a bit to help my friend
with something.
------------------------------------
From: From: +17272663439
Timestamp: 3/16/2017 1:08:26 PM(UTC-4)
Source App: TextMe
Body: OK well headed back down south was hoping to meet you :-/
------------------------------------
From: From: +17272663439
Timestamp: 3/21/2017 6:59:09 PM(UTC-4)
Source App: TextMe
Body: Hey Belle. I'd like to see you tomorrow are you available?
------------------------------------
From: From: beeellleee
Timestamp: 3/21/2017 6:59:42 PM(UTC-4)
Source App: TextMe
Body: What time?
------------------------------------

From: From: +17272663439
Timestamp: 3/21/2017 7:00:00 PM(UTC-4)
Source App: TextMe
Body: What time is good for you? And how much for your time?

------------------------------

From: From: beeellleee
Timestamp: 3/21/2017 7:01:29 PM(UTC-4)
Source App: TextMe
Body: 120 hh 180 hr  And how's 12?

------------------------------

From: From: +17272663439
Timestamp: 3/21/2017 7:02:00 PM(UTC-4)
Source App: TextMe
Body: 12 is perfect. Location?

------------------------------

From: From: beeellleee
Timestamp: 3/21/2017 7:02:24 PM(UTC-4)
Source App: TextMe
Body: We've talked before you know that right?

------------------------------

From: From: +17272663439
Timestamp: 3/21/2017 7:03:12 PM(UTC-4)
Source App: TextMe
Body: Yes I know. You had made a time with me, had to help a friend and couldn't make it. Gave me your address but I have since erased the messages.

------------------------------

From: From: +17272663439
Timestamp: 3/21/2017 7:07:42 PM(UTC-4)
Source App: TextMe
Body: OK wasn't sure since last time you dissapeared. I had felt comfortable enough since we actually talked on the phone. So did you want to give me your address and I'll be there at 12

------------------------------

From: From: beeellleee
Timestamp: 3/21/2017 7:08:24 PM(UTC-4)
Source App: TextMe
Body: I'll give it to you around 1130

------------------------------

From: From: beeellleee
Timestamp: 3/21/2017 8:45:12 PM(UTC-4)
Source App: TextMe
Body: What do you do?

------------------------------

From: From: +17272663439
Timestamp: 3/21/2017 8:46:15 PM(UTC-4)
Source App: TextMe

Body: Medical. Deal with patients but if there aren't any I just wait for someone to get sick or hurt lol. You? Go to school or anything?

------------------------------

From: From: beeellleee
Timestamp: 3/21/2017 9:30:11 PM(UTC-4)
Source App: TextMe
Body: Have you heard about the arrests they've made in Polk county?

------------------------------

From: From: +17272663439
Timestamp: 3/21/2017 9:30:38 PM(UTC-4)
Source App: TextMe
Body: I have not why?

------------------------------

From: From: beeellleee
Timestamp: 3/21/2017 9:31:48 PM(UTC-4)
Source App: TextMe
Body: I'm just curious. But I would like to just say your only coming over just to talk.

------------------------------

From: From: +17272663439
Timestamp: 3/21/2017 9:33:32 PM(UTC-4)
Source App: TextMe
Body: Well yeah I am only asking for your time nothing else. That's what I said at the beginning. Asked about your time. Also why I'm asking you questions to get to know you. I enjoy getting to know people

------------------------------

From: From: +17272663439
Timestamp: 3/22/2017 9:47:26 AM(UTC-4)
Source App: TextMe
Body: You ready to send me the address?

------------------------------

From: From: beeellleee
Timestamp: 3/22/2017 9:57:51 AM(UTC-4)
Source App: TextMe
Body: ███████████

------------------------------

From: From: +17272663439
Timestamp: 3/22/2017 10:53:40 AM(UTC-4)
Source App: TextMe
Body: 10 mins out can u meet me outside so I know which house and ease

------------------------------

From: From: +17272663439
Timestamp: 3/22/2017 10:59:26 AM(UTC-4)
Source App: TextMe
Body: K 5 out

------------------------------

From: From:  beeellleee
Timestamp: 3/22/2017 10:59:31 AM(UTC-4)
Source App: TextMe
Body: I'll have a red truck out front you won't miss it

------------------------------

From: From:  +17272663439
Timestamp: 3/22/2017 11:03:58 AM(UTC-4)
Source App: TextMe
Body: Here

------------------------------

From: From:  +17272663439
Timestamp: 3/22/2017 12:16:36 PM(UTC-4)
Source App: TextMe
Body: That was awesome. You're gorgeous and fun to be around

------------------------------

From: From:  +17272663439
Timestamp: 3/22/2017 4:19:40 PM(UTC-4)
Source App: TextMe
Body: How's the Dr's appt going

------------------------------

From: From:  beeellleee
Timestamp: 3/22/2017 4:31:24 PM(UTC-4)
Source App: TextMe
Body: Omg so glad you asked. Sorry i didn't responded earlier I was busy. But it went well actually, glad I didn't have anything really bad. They gave my steroids for something like some type of vascular inflammation.

------------------------------

From: From:  +17272663439
Timestamp: 3/22/2017 5:16:27 PM(UTC-4)
Source App: TextMe
Body: Lol of course, I enjoyed you and like you so I am concerned for your health and well being. Wanna make sure you stay alive so I can see you again, take you out sometime too. So stay alive ok? 😊😊. What did they give you glucocorticoids or solumedrol? So they said it was a vascular inflammation and not a infection like upper respiratory infection?

------------------------------

From: From:  beeellleee
Timestamp: 3/22/2017 5:18:51 PM(UTC-4)
Source App: TextMe
Body: They gave me prednisone

------------------------------

From: From:  +17272663439
Timestamp: 3/22/2017 5:21:26 PM(UTC-4)
Source App: TextMe
Body: Yeah That's A gluco. That'll bulk u up. Tajes a while to take affect. so you'll stay alive longer then?

---------------------------------
From: From:  beeellleee
Timestamp: 3/22/2017 5:27:48 PM(UTC-4)
Source App: TextMe
Body: For you, definitely.
---------------------------------
From: From: +17272663439
Timestamp: 3/22/2017 5:28:50 PM(UTC-4)
Source App: TextMe
Body: Oh strictly for me? I feel so special lol. I wanna see you soon again. Thinking
Friday. Depending on if I get stuck at work.
---------------------------------
From: From: +17272663439
Timestamp: 3/22/2017 8:41:56 PM(UTC-4)
Source App: TextMe
Body: Roiiiiiiiight. Well I'm finishing up Donner with my oldest. Call u when I get
home. Call this number?
---------------------------------
From: From:  beeellleee
Timestamp: 3/22/2017 8:45:21 PM(UTC-4)
Source App: TextMe
Body: Well I would give you my personal number nobody haves if you'd do the same?
But if your totally not right we can just talk off this one.
---------------------------------
From: From:  +17272663439
Timestamp: 3/22/2017 9:15:09 PM(UTC-4)
Source App: TextMe
Body: Ready to call lol need the number fool
---------------------------------
From: From:  beeellleee
Timestamp: 3/22/2017 9:15:53 PM(UTC-4)
Source App: TextMe
Body: █████████
---------------------------------
From: From:  +17272663439
Timestamp: 5/16/2017 7:50:44 AM(UTC-4)
Source App: TextMe
Body: Guess I got the gfe :-( I really liked you.
---------------------------------
A secondary number of 352-410-2306 was located in IH's cell phone and marked as Matt
Cams Boyfriend:
1 Name: Matt Cams Boyfriend
Photos: photo1.jpg
Created: 3/23/2017 4:46:05 PM(UTC-4)



------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 3:36:04 PM(UTC-4)
Read: help. I have a bachelor's in many things that can
help. I LIKE YOU you say I'm sweet take it fool
------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 3:36:03 PM(UTC-4)
Read: when I can. U see u didn't want it at the time I
backed off. But I'm hoping you're ready now.
Whatever you're investing in I'm sure it's good but
I can
------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 3:35:53 PM(UTC-4)
Read: You didn't quite finish were saying u were
investing your money in something I'd like to know
what it is.
Listen I like you. It's rare I do. So I strike
------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 3:15:35 PM(UTC-4)
Read: Baaaaaaaaaaabbbbby. I really want to try and
work something with you and now that you are
moving I'm assuming you're changing your job?
Which you said yo
------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 3:08:12 PM(UTC-4)
Read: Was he trying to meet up today? Because I can
tell you I have my children so I won't leave the
house
------------------------------

+13524102306 Matt Cams Boyfriend *
5/13/2017 3:03:11 PM(UTC-4)
Read: It wasn't ducking me. I have your actual number. I
still have that other app but I haven't texted u from
it since I have your actual number. What did he
say?
----------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 3:01:58 PM(UTC-4)
Sent A guy messaged me from the app, saying
everything, you only pointed out during our visit.
None of my other clients cared about that stuff.
----------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 2:59:18 PM(UTC-4)
Read: What? Idk what you're talking about. And didn't
yiu tell me that someone else came weird smelly
used your shower and didn't pay the full price?
What's go
----------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 2:58:15 PM(UTC-4)
Sent You were the only person who ever went in my
shower
----------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 2:56:51 PM(UTC-4)
Read: Well first why you say that? I have never
mispronounced your name. And second if you
have interest in me and and obviously have
interest in you. Why didn
----------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 2:54:26 PM(UTC-4)
Read: Yeah I know you told me your name was Belle not
bella. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ I know this
already.
----------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 2:53:48 PM(UTC-4)
Sent My name is spelled ▓▓▓▓ not ▓▓▓▓ that
really annoys me
----------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 2:52:58 PM(UTC-4)
Read: Lol. Ypur shower works i took a shower in it. So

what happened? Did you not have interest in me?
I don't mind if you didn't just kind of wanted the
truth.
------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 2:51:36 PM(UTC-4)
Sent Well I'm first trying to get out of the house with no
floors and a broken shower
------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 2:51:03 PM(UTC-4)
Read: Oh nice good for you. When do you move? Still
trying to do the school thing?
------------------------------
+13524102306 Matt Cams Boyfriend *
5/13/2017 2:50:27 PM(UTC-4)
Sent I have a house in Dunnellon
------------------------------

On June 12, 2017 a subpoena was issued to T-Moble for cell phone number 352-410-2306

and the subscriber was Matthew C Doyle. On June 12, 2017 a subpoena was issued to

Bandwith.com, Inc. for cell phone number 727-266-3439 and the subpoena was reissued to Pinger,

Inc. due to a response from Bandwith that the number belonged to Pinger, Inc.  Pinger, Inc.

provided information the account belonged to mmdoylepc@aol.com with an IP address of

172.58.168.57.  On March 15, 2018 a subpoena was issued to AOL, Inc, for the subscriber

information of mmdoylepc@aol.com.

Crime Analysis completed a search of databases and found Matthew Doyle has a daughter

named Arianna Doyle and listed his job with the Eastlake Fire Rescue. Matthew also has a brother

named Brandon Doyle. On June 21, 2018 Circuit Court Judge Eineman signed a search warrant

for content of the email account: mmdoylepc@aol.com.  In response to the Search Warrant, AOL,

Inc. provided account information which showed the registered owner as "Matt Doyle."  The list

of contacts for mmdoylepc@aol.com, provided by AOL, Inc., included Arianna Doyle, Brandon

Doyle, and an email address for the East Lake Fire Rescue.  In addition, several emails were

identified where mmdoylepc@aol.com responded to other Backpage ads that were posted by persons other than **IH**.

On March 29, 2018, **IH** was shown a series of photo lineups in an effort to identify adults who engaged in commercial sex acts with her. **IH** identified **MATTHEW CHRISTOPHER DOYLE**, W/M, DOB 03/11/1980 as a "client" she met at **THE RESIDENCE** where she resided with **K████████** for the purpose of engaging in sexual activity with him for money. **IH** advised she engaged in vaginal sex and oral sex multiple times with **DOYLE** in exchange for money. **IH** stated she provided money that was earned from the commercial sex act **K████████**

### (j) JASON MICHAEL RAULERSON

The forensic examination of **IH's** cell phone revealed a phone number 352-672-7203 as a "client" who made contact with **IH** on her cellphone as of January 5, 2017 through text messages.

Read 1/5/2017 12:42:16 PM (UTC-5)
From +13526727203
Read Hello. I saw your ad
------------------------------
Sent 1/5/2017 12:42:53 PM (UTC-5)
To +13526727203
Sent Hey
------------------------------
Read 1/5/2017 12:43:07 PM (UTC-5)
From +13526727203
Read Do you have an incall?
------------------------------
Sent 1/5/2017 12:43:59 PM (UTC-5)
To +13526727203
Sent No im only doing outcalls today
------------------------------
Read 1/5/2017 12:43:59 PM (UTC-5)
From +13526727203
Read Oh ok.
------------------------------
Read 1/5/2017 1:05:36 PM (UTC-5)
From +13526727203
Read I can't get a place today
------------------------------

Sent 1/11/2017 2:45:05 PM (UTC-5)
To +13526727203
Sent Hey I have a place in ocala.

---------------------------

Read 1/11/2017 3:38:12 PM (UTC-5)
From +13526727203
Read Who's this? I'm sorry I got a new phone and most of my contact did not come over

---------------------------

Sent 1/11/2017 3:38:12 PM (UTC-5)
To +13526727203
Sent ████████

---------------------------

Read 1/11/2017 3:46:08 PM (UTC-5)
From +13526727203
Read Send me a pic please

---------------------------

Sent 1/11/2017 3:49:52 PM (UTC-5)
To +13526727203
Sent Where are you located

---------------------------

Read 1/11/2017 3:50:11 PM (UTC-5)
From +13526727203
Read Gainesville. I got to Ocala a lot though

---------------------------

Sent 1/11/2017 3:56:40 PM (UTC-5)
To +13526727203
Sent Do you remember me

---------------------------

Read 1/11/2017 3:50:11 PM (UTC-5)
From +13526727203
Read Oh yeah. Lol. Sorry.

---------------------------

Read 1/11/2017 4:07:00 PM (UTC-5)
From +13526727203
Read I'm not down there today. How long you have s place for?

---------------------------

Sent 1/11/2017 4:30:04 PM (UTC-5)
To +13526727203
Sent Till tomorrow morning

---------------------------

On October 11, 2018 a subpoena was issued to Cellco Partnership dba Verizon Wireless

for cell phone number 352-672-7203 and subscriber information shows the number is registered

to Jason Raulerson at 23748 NW 142nd Ave, High Springs, Fl 32643.

On March 29, 2018, **IH** was shown a series of photo lineups in an effort to identify adults who engaged in commercial sex acts with her. **IH** identified **JASON MICHAEL RAULERSON**, W/M, DOB 02/10/1973 as a "client" she met at **THE RESIDENCE** where she resided with K███████ for the purpose of engaging in sexual activity with him for money. **IH** advised she engaged in vaginal sex four to five times with **RAULERSON** in exchange for one hundred twenty to one hundred forty dollars each time. **IH** stated she provided money that was earned from the commercial sex act K███████.

## CHARGES

### COUNT 1
### HUMAN TRAFFICKING OF A MINOR FOR COMMERCIAL SEXUAL ACTIVITY

Beginning on or about November 2016 and continuing through on or about May 17, 2017, in Hernando, Marion and Levy Counties, Florida, K███████ F███ H███████ **SHAWN CHRISTOPHER HENSON, LUIGI BARILE, BRYAN JOSEPH GIGUERE, JAMES WILLIAM HANCOCK, JOSPEH ANDREW EASTON, LAWRENCE EDWARD KEMBLE, LATCHMAN KALADEEN, MATTHEW CHRISTOPHER DOYLE, and JASON MICHAEL RAULERSON** did knowingly, or in reckless disregard of the facts, engaged in, or attempted to engage in, or benefitted financially by receiving something of value from participation in a venture that subjected a minor child, that is **IH**, to human trafficking in violation of Florida Statute F.S. §787.06(3)(g), a crime that was facilitated by the use of the internet for the purposes of Florida Statute §16.56.

## COUNT 2
## CONSPIRACY TO COMMIT HUMAN TRAFFICKING FOR
## COMMERCIAL SEXUAL EXPLOITATION OF A MINOR

Beginning on or about November of 2016 and continuing through on or about May 17, 2017, in Hernando, Marion, and Levy Counties, K██████ F██ H██████ SHAWN CHRISTOPHER HENSON, LUIGI BARILE, BRYAN JOSEPH GIGUERE, JAMES WILLIAM HANCOCK, JOSEPH ANDREW EASTON, LAWRENCE EDWARD KEMBLE, LATCHMAN KALADEEN, MATTHEW CHRISTPHER DOYLE, and JASON MICHAEL RAULERSON agreed, conspired, combined or confederated with each other to knowingly, or in reckless disregard of the facts, engaged in, or attempted to engage in, or benefitted financially by receiving something of value from participation in a venture that subjected a minor child, that is IH to human trafficking in violation of Florida Statute F.S. §787.06(3)(g) and §777.04(1), a crime that was facilitated by the use of the internet for the purposes of Florida Statute §16.56.

## COUNT 3
## UNLAWFUL USE OF A TWO-WAY COMMUNICATION DEVICE

Beginning on or about November of 2016 and continuing through on or about May 17, 2017, in Hernando, Marion, Levy, Palm Beach and Hillsborough Counties, K██████ F██ H██████ SHAWN CHRISTOPHER HENSON, LUIGI BARILE, BRYAN JOSEPH GIGUERE, JAMES WILLIAM HANCOCK, JOSEPH ANDREW EASTON, LAWRENCE EDWARD KEMBLE, LATCHMAN KALADEEN, MATTHEW CHRISTOPHER DOYLE, and JASON MICHAEL RAULERSON did use a two-way communications device, including, but not limited to, a portable two-way wireless communications device, to facilitate or further the commission of any felony offense, to wit: Human Trafficking (F.S. §787.06(3)(g)); Conspiracy to Commit Human Trafficking (F.S. §787.06(3)(g) and §777.04), and/or Lewd and Lascivious

Battery (F.S. §800.04(a)) in violation of Florida Statute §934.215, a crime related to F.S. §787.06, for purposes of Florida Statute §16.56.

### COUNT 4
### LEWD OR LASCIVIOUS BATTERY

Between November 2016 and on or about May 17, 2017, **SHAWN CHRISTOPHER HENSON**, a person over the age of 18, did engage in sexual activity with a person 12 years of age or older but less than 16 years, to wit: **IH**, in violation of Florida Statute §800.04(4)(a)(1), a crime that was facilitated by the use of the internet and said offense was related to and part of the perpetration of a violation §787.06 for the purposes of Florida Statute §16.56.

### COUNT 5
### LEWD OR LASCIVIOUS BATTERY

Between November 2016 and on or about May 17, 2017, **LUIGI BARILE**, a person over the age of 18, did engage in sexual activity with a person 12 years of age or older but less than 16 years, to wit: **IH**, in violation of Florida Statute §800.04(4)(a)(1), a crime that was facilitated by the use of the internet and said offense was related to and part of the perpetration of a violation §787.06 for the purposes of Florida Statute §16.56.

### COUNT 6
### LEWD OR LASCIVIOUS BATTERY

Between November 2016 and on or about May 17, 2017, **BRYAN JOSEPH GIGUERE**, a person over the age of 18, did engage in sexual activity with a person 12 years of age or older but less than 16 years, to wit: **IH**, in violation of Florida Statute §800.04(4)(a)(1), a crime that was facilitated by the use of the internet and said offense was related to and part of the perpetration of a violation §787.06 for the purposes of Florida Statute §16.56.

## COUNT 7
## LEWD OR LASCIVIOUS BATTERY

Between November 2016 and on or about May 17, 2017, **JAMES WILLIAM HANCOCK**, a person over the age of 18, did engage in sexual activity with a person 12 years of age or older but less than 16 years, to wit: **IH**, in violation of Florida Statute §800.04(4)(a)(1), a crime that was facilitated by the use of the internet and said offense was related to and part of the perpetration of a violation §787.06 for the purposes of Florida Statute §16.56.

## COUNT 8
## LEWD OR LASCIVIOUS BATTERY

Between November 2016 and on or about May 17, 2017, **JOSEPH ANDREW EASTON**, a person over the age of 18, did engage in sexual activity with a person 12 years of age or older but less than 16 years, to wit: **IH**, in violation of Florida Statute §800.04(4)(a)(1), a crime that was facilitated by the use of the internet and said offense was related to and part of the perpetration of a violation §787.06 for the purposes of Florida Statute §16.56.

## COUNT 9
## LEWD OR LASCIVIOUS BATTERY

Between November 2016 and on or about May 17, 2017, **LAWRENCE EDWARD KEMBLE**, a person over the age of 18, did engage in sexual activity with a person 12 years of age or older but less than 16 years, to wit: **IH**, in violation of Florida Statute §800.04(4)(a)(1), a crime that was facilitated by the use of the internet and said offense was related to and part of the perpetration of a violation §787.06 for the purposes of Florida Statute §16.56.

## COUNT 10
## LEWD OR LASCIVIOUS BATTERY

Between November 2016 and on or about May 17, 2017, **LATCHMAN KALADEEN**, a person over the age of 18, did engage in sexual activity with a person 12 years of age or older but less than 16 years, to wit: **IH**, in violation of Florida Statute §800.04(4)(a)(1), a crime that was facilitated by the use of the internet and said offense was related to and part of the perpetration of a violation §787.06 for the purposes of Florida Statute §16.56.

## COUNT 11
## LEWD OR LASCIVIOUS BATTERY

Between November 2016 and on or about May 17, 2017, **MATTHEW CHRISTOPHER DOYLE**, a person over the age of 18, did engage in sexual activity with a person 12 years of age or older but less than 16 years, to wit: **IH**, in violation of Florida Statute §800.04(4)(a)(1), a crime that was facilitated by the use of the internet and said offense was related to and part of the perpetration of a violation §787.06 for the purposes of Florida Statute §16.56.

## COUNT 12
## LEWD OR LASCIVIOUS BATTERY

Between November 2016 and on or about May 17, 2017, **JASON MICHAEL RAULERSON**, a person over the age of 18, did engage in sexual activity with a person 12 years of age or older but less than 16 years, to wit: **IH**, in violation of Florida Statute §800.04(4)(a)(1), a crime that was facilitated by the use of the internet and said offense was related to and part of the perpetration of a violation §787.06 for the purposes of Florida Statute §16.56.

## DEFENDANTS

### (a) K████████ F████ H████████

**RACE: WHITE**
**SEX: FEMALE**
**DOB: 10/07/1981**
**FL DL:** ██████████
**SSN:** ████ 5 ████
**LKA:** ██████████████████

Violated the following Florida Statutes and requests a warrant for her arrest be issued for:

| | |
|---|---|
| Count 1: | Human Trafficking, F.S. §787.06(3)(g) |
| Count 2: | Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1) |
| Count 3: | Unlawful Use of a Two-Way Communication Device, F.S. §934.215 |

### (b) SHAWN CHRISTOPHER HENSON

**RACE: WHITE**
**SEX: MALE**
**DOB: 03/13/1980**
**FL DL: H525-783-80-093-0**
**SSN:** ████████
**LKA: 27619 W Newberry Road, Newberry, FL  32669**

Violated the following Florida Statutes and requests a warrant for her arrest be issued for:

| | |
|---|---|
| Count 1: | Human Trafficking, F.S. §787.06(3)(g) |
| Count 2: | Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1) |
| Count 3: | Unlawful Use of a Two-Way Communication Device, F.S. §934.215 |
| Count 4: | Lewd or Lascivious Battery, F.S. §800.04(a) |

### (c) LUIGI BARILE

**RACE: WHITE**
**SEX: MALE**
**DOB: 04/10/1981**
**FL DL: B640-520-81-130-0**
**SSN:** ████████
**LKA: 3487 Misty View Drive, Spring Hill, FL 34609**

violated the following Florida Statutes and requests a warrant for her arrest be issued for:

| | |
|---|---|
| Count 1: | Human Trafficking, F.S. §787.06(3)(g) |
| Count 2: | Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1) |
| Count 3: | Unlawful Use of a Two-Way Communication Device, F.S. §934.215 |
| Count 5: | Lewd or Lascivious Battery, F.S. §800.04(a) |

### (d) BRYAN JOSEPH GIGUIRE

**RACE: WHITE**
**SEX: MALE**
**DOB: 03/03/1973**
**FL DL: G260-070-73-083-0**
**SSN:** ▮▮▮
**LKA: 10604 W Hall River Road, Homosassa, FL 34448**

violated the following Florida Statutes and requests a warrant for her arrest be issued for:

Count 1:      Human Trafficking, F.S. §787.06(3)(g)
Count 2:      Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Count 3:      Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Count 6:      Lewd or Lascivious Battery, F.S. §800.04(a)

### (e) JAMES WILLIAM HANCOCK

**RACE: WHITE**
**SEX: MALE**
**DOB: 03/22/1952**
**FL DL: H522-459-52-102-0**
**SSN:** ▮▮▮
**LKA: 6699 Moonlit Drive, Delray Beach, FL 33446**

violated the following Florida Statutes and requests a warrant for her arrest be issued for:

Count 1:      Human Trafficking, F.S. §787.06(3)(g)
Count 2:      Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Count 3:      Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Count 7:      Lewd or Lascivious Battery, F.S. §800.04(a)

### (f) JOSEPH ANDREW EASTON

**RACE: WHITE**
**SEX: MALE**
**DOB: 10/12/1994**
**FL DL: E235-481-94-372-0**
**SSN:** ▮▮▮
**LKA: 6607 E Sage Street, Inverness, FL 34452**

violated the following Florida Statutes and requests a warrant for her arrest be issued for:

Count 1:      Human Trafficking, F.S. §787.06(3)(g)
Count 2:      Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Count 3:      Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Count 8:      Lewd or Lascivious Battery, F.S. §800.04(a)

### (g) LAWRENCE EDWARD KEMBLE

**RACE: WHITE**
**SEX: MALE**
**DOB: 06/10/1948**
**FL DL: K514-525-48-210-0**
**LKA: 10641 NW 10TH Street Road, Ocala, FL 34482**

violated the following Florida Statutes and requests a warrant for her arrest be issued for:

Count 1:      Human Trafficking, F.S. §787.06(3)(g)
Count 2:      Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Count 3:      Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Count 9:      Lewd or Lascivious Battery, F.S. §800.04(a)

### (h) LATCHMAN KALADEEN

**RACE: BLACK**
**SEX: MALE**
**DOB: 04/12/1970**
**FL DL: K435-520-70-132-0**
**LKA: 26300 Lawrence Avenue, Wesley Chapel, Florida 33544**

violated the following Florida Statutes and requests a warrant for her arrest be issued for:

Count 1:      Human Trafficking, F.S. §787.06(3)(g)
Count 2:      Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Count 3:      Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Count 10:     Lewd or Lascivious Battery, F.S. §800.04(a)

### (i) MATTHEW CHRISTOPHER DOYLE

**RACE: WHITE**
**SEX: MALE**
**DOB: 03/11/1980**
**FL DL: D400-543-80-091-0**
**LKA: 2237 Anchor Avenue, Spring Hill, Fl 34608**

violated the following Florida Statutes and requests a warrant for her arrest be issued for:

Count 1:      Human Trafficking, F.S. §787.06(3)(g)
Count 2:      Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Count 3:      Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Count 11:     Lewd or Lascivious Battery, F.S. §800.04(a)

### (j)  JASON MICHAEL RAULERSON

**RACE: WHITE**
**SEX: MALE**
**DOB: 02/10/1973**
**FL DL: R462-433-73-050-0**
**LKA: 23748 NW 142ⁿᵈ Ave, High Springs, Fl 32643**

violated the following Florida Statutes and requests a warrant for her arrest be issued for:

Count 1:       Human Trafficking, F.S. §787.06(3)(g)
Count 2:       Conspiracy to Commit Human Trafficking, F.S. §787.06(3)(g) and §777.04(1)
Count 3:       Unlawful Use of a Two-Way Communication Device, F.S. §934.215
Count 11:     Lewd or Lascivious Battery, F.S. §800.04(a)

## REQUEST FOR ORDER SEALING PLEADINGS UNTIL DEFENDANTS' ARREST

Lastly, the Affiant requests that this Affidavit and Application be ordered "sealed" until the Defendants are in custody.

In addition, due to the sensitive nature of the charges and the age of the victim, it is requested the upon unsealing and prior to filing with the clerk and other disclosure, the Affidavit and Application should be redacted so as to protect the identity of the minor victim pursuant to *Marsy's Law* (Florida Const. Article I, Section 16, effective January 8, 2019); Florida Statute § 92.56 which governs Judicial proceedings and court records involving sexual offenses and human trafficking; and Florida Statute §119.071(2)(h) which governs the General exemptions from inspection or copying of public records as it specifically relates to victims of human trafficking and other crimes of sexual abuse and exploitation of children. Specifically, any names, addresses, reference to custody or other information which could reasonably lead to the identification of the victim should be redacted. A redacted copy of this Application and Affidavit is being provided with this Original for the Court's review and approval.

In conclusion, the Affiant requests that:

1. An Arrest Warrant be issued commanding all sheriff's or any of their duly authorized deputies, all chiefs of police and their officers, and the Executive Directors of the Florida

Department of Law Enforcement or any of their duly authorized special agents to arrest the above-named Defendants and bring them before the court so that they may be dealt with according to law;

2. That bonds be set at as follows:

| COUNT | CHARGE | DEGREE/MAX | BOND |
|---|---|---|---|
| 1 | Human Trafficking | 1st Degree PBL | No Bond |
| 2 | Conspiracy to Commit Human Trafficking | 1st Degree 30 years | $500,000.00 |
| 3 | Unlawful Use of a Two-Way Communications Device | 3rd Degree 5 years | $50,000.00 |
| 4 | Lewd or Lascivious Battery | 2nd Degree 15 years | $100,000.00 |
| 5 | Lewd or Lascivious Battery | 2nd Degree 15 years | $100,000.00 |
| 6 | Lewd or Lascivious Battery | 2nd Degree 15 years | $100,000.00 |
| 7 | Lewd or Lascivious Battery | 2nd Degree 15 years | $100,000.00 |
| 8 | Lewd or Lascivious Battery | 2nd Degree 15 years | $100,000.00 |
| 9 | Lewd or Lascivious Battery | 2nd Degree 15 years | $100,000.00 |
| 10 | Lewd or Lascivious Battery | 2nd Degree 15 years | $100,000.00 |
| 11 | Lewd or Lascivious Battery | 2nd Degree 15 years | $100,000.00 |
| 12 | Lewd or Lascivious Battery | 2nd Degree 15 years | $100,000.00 |

3. That this Application and any Arrest Warrants stemming from it be maintained and sealed until further Order of the Court and upon unsealing but prior to disclosure it be redacted pursuant to *Marsy's Law* (Florida Const. Article I, Section 16, effective January 8, 2019); Florida Statute § 92.56 and Florida Statute §119.071(2)(h), as provided.

4. That the following special conditions be imposed should the Defendant(s) bond out of jail pending trial:

   (a) The Defendant is prohibited from communicating orally or in any written form, either in person, telephonically, electronically, including social media, or in any other manner, either directly or indirectly through a third person, with the minor victim, "IH."

(b) The Defendant is prohibited from having intentional contact with any child under the age of 18.

(c) The Defendant is prohibited from possessing, accessing, or using any computers or devices with an internet connection or internet capabilities.

(d) The Defendant is prohibited from being within 500 feet of the minor female victim's residence, vehicle, school or employment.

(e) The Defendant is prohibited from working for pay or as a volunteer or as a student at any place where children regularly congregate, including but not limited to any school, child care facilities, park playground, pet store, library, zoo, theme park, shopping mall, or health care facility.

(f) The Defendant is prohibited from possessing, carrying, or owning any firearms.

(g) The Defendant is prohibited from possessing, viewing, accessing or owning obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services that are relevant to the offenders deviant behavior pattern.

(h) The Defendant is prohibited from committing a new violation of law. A conviction in a court of law is not necessary for such a violation of law to constitute a violation of pre-trial release.

(i) The Defendant is prohibited from associating with any person engaged in criminal activity.

(j) The Defendant is prohibited from using intoxicants to excess or possess any drugs or narcotics unless prescribed by a physician. The Defendant is also prohibited from visiting places where intoxicants, drugs or other dangerous substances are unlawfully sold, dispensed or used.

(k) The Defendant shall be placed on a GPS monitor and the Defendant shall surrender his/her passport.

The Affiant swears and affirms that the information contained herein is true and accurate to the best of the Affiant's knowledge. The Affiant is also aware that, because of the amount of documentation in this investigation, and because the Application is in many ways a summary of the case, there is almost certainly some relevant evidence pertaining to the Defendants which has

not been covered in this Application.  The events described herein took place within the Fifth and

Eighth Judicial Circuits in the State of Florida and all were facilitated by the use of the internet.

Sworn and subscribed to in Hernando County, Florida, this ⎿3 day of May, 2019

_____
Detective Jill Morrell #902
Hernando County Sheriff's Office


Sworn and subscribed to before me, Honorable _George G. Angeliadis_, Judge of the
Circuit Court of the Fifth Judicial Circuit, in and for Hernando County, Florida, this 6 day of
May, 2019.

_____
Circuit Court Judge
Fifth Judicial Circuit of Florida

UNOFFICIAL DOCUMENT