## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

JANE DOE, I.H., an individual,                    **CASE NO.:  8:24-cv-10678-SDM-NHA**
        Plaintiff,

    v.

SALESFORCE,
BACKPAGE.COM, LLC,
CARL FERRER, Individually,
MICHAEL LACEY, Individually,
JOHN BRUNST, Individually,
SCOTT SPEAR, Individually,
GOSAI 9, LLC., d/b/a Quality Inn,
GOSAI 9, LLC., d/b/a Days Inn by Wyndham,
MGM HOTELS LLC., d/b/a Holiday Inn & Suites,
JOHN DOE, the person, or entity that owned the
property located at 31199 Longwood Drive, Brooksville, Florida,
BRIAN J. GRIGUERE, Individually,
JOSEPH A. EASTON, Individually,
JAMES W. HANCOCK, Individually,
JASON M. RAULERSON, Individually,
LUIGI BARILE, Individually,
LAWRENCE E. KEMBLE, Individually,
MATTHEW C. DOYLE, Individually,
SHAWN C. HENSON, Individually
LACHMAN KALADEEN, Individually,
WYNDHAM HOTELS AND RESORTS, INC.
CHOICE HOTELS INTERNATIONAL, INC.
HOLIDAY HOSPITALITY FRANCHISING, LLC
        Defendants.
_____/

1

## FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES AND JURY DEMAND

COMES NOW the Plaintiff JANE DOE I.H., ("I.H.") by and through the undersigned counsel, and her Verified Complaint for Damages and Jury Demand against Defendants: Salesforce, Backpage.com, LLC., Carl Ferrer, Michael Lacey, John Brunst, Scott Spear, Quality Inn, Days Inn, Holiday Inn & Suites, John Doe, and Brian J. Griguere, Joseph A. Easton, James W. Hancock, Jason M. Raulerson, Luigi Barile, Lawrence E. Kemble, Matthew C. Doyle, Shawn C. Henson, and Lachman Kaladeen, Wyndham Hotels and Resorts, Inc., Choice Hotels International, Inc., and Holiday Hospitality Franchising, LLC, makes the following averments.

### PARTIES

1.      Jane Doe (I.H.) is a natural person who is currently a resident of Pinellas County, Florida and is a survivor of sex trafficking. She is now over the age of majority and is otherwise sui juris. The Plaintiff was born on June 20, 2000, in St. Petersburg, Florida. I.H.'s father was in and out of prison for most of her life and was never present. She was raised by her mother, Kristina Hughes, who was an alcoholic and user of methamphetamine and cocaine. In 2016, Plaintiff was relocated to 31199 Longwood Drive, Brooksville, Florida 34602, by her mother. I.H. was in the 11th grade and would have graduated the following year. Upon relocation to Brooksville, Florida, I.H.'s mother refused to enroll her in school. Shortly after her arrival at her new home in Brooksville, I.H. found herself in a home with no electricity and no food to eat. Conditions worsened

for the Plaintiff when her mother introduced and encouraged the Plaintiff's use of methamphetamine, cocaine, and alcohol. During her time at the home located at 3119 Longwood Drive, Brooksville, Florida 34602, the Plaintiff was forced by her mother into providing sexual services to "customers", hereinafter described as ("Johns") in exchange for monetary income. The Plaintiff was 16 years old when her mother began listing the Plaintiff on Backpage.com, LLC., for sexual services. The Plaintiff has suffered lifelong mental, emotional, and physical damages as a result of the actions of the Defendants listed herein. Jane Doe (I.H) files this civil lawsuit seeking compensation for the harm she suffered as a result of being sex trafficked and sold for sexual services on public platforms including but not limited to Backpage and Salesforce and through the Hotel Defendants and John Doe, was repeated raped, sexually assaulted, used, abused, humiliated and whose young life was destroyed by the Johns named herein.

2.    Due to the sensitive, private, and potentially retaliatory nature of these allegations, this complaint identifies I.H. by her initials, only. Plaintiff will move the court to proceed under a pseudonym in all filings, and all public Court proceedings, and to limit the disclosure of information about Plaintiff's identity to protect Plaintiff and Plaintiff's identity.

3.    Typically, pleadings must include the names of all parties involved. However, exceptions exist when revealing the issues may lead to retaliation or harm to the Plaintiff. For good cause, the Court can issue an order to protect a party or person from undue harm and burdens. To preserve her privacy and safety, the Plaintiff should not be required to disclose her identity. The Plaintiff's interest in privacy significantly outweighs

the standard practice of judicial transparency, and the Defendants will not be disadvantaged. The Plaintiff is willing to disclose her identity to the Defendants solely for the purpose of investigating her claims, provided that a protective order is in place. She requests only the redaction of her personally identifying information from the public docket and assurances that the Defendants will not use or publish her identity in a way that could jeopardize her personal life, future safety, employment prospects, or privacy rights, especially given her history as a victim of multiple sexual abuses and assaults.

4.      Defendant Backpage.com, LLC ("Backpage") was a Delaware Limited Liability Corporation registered to do business and doing business in Florida at the time of the damages outlined in this cause. All references to Backpage include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. The term also includes any director, officer, agent (either with direct/actual authority and implied/apparent authority), employee, person, firm, or corporation acting on behalf of Backpage now or at any time relevant to the claims herein. In April 2018, Backpage was shut down by the United States Department of Justice as part of a 93-count indictment of the company and seven executives and former owners for facilitating prostitution under the U.S Travel Act, money laundering, and conspiracy. Backpage.com ceased operations at that time.

5.      All references to "Backpage" herein include Defendants Backpage.com, LLC, Carl Ferrer, Michael Lacey, John Brunst, and Scott Spear.

6.     Defendant Carl Ferrer is a resident of Texas who at all times material hereto was conducting business in Florida. Defendant Ferrer was the CEO of Backpage.com, LLC, which functioned as a front for Ferrer's illegal activities. At all times material hereto, Defendant Ferrer transacted business in Hernando County, Florida, as well as the State of Florida. Carl Ferrer is over the age of majority and is otherwise sui juris.

7.     Defendant Michael Lacey is a resident of Arizona and at all times material hereto, was conducting business in Florida. Defendant Lacey was the co-founder of Backpage.com, LLC, which functioned as a front for Lacey's illegal activities. At all times material hereto, Defendant Lacey transacted business in Hernando County, Florida, as well as the State of Florida. Michael Lacey is over the age of majority and is otherwise sui juris. Michael Lacey has recently been sentenced to five years in prison and fined 3 million dollars as a result of money laundering charges connected with his operation of Backpage.

8.     Defendant John Brunst is a resident of Arizona and at all times material hereto, was conducting business in Florida. Defendant Brunst was the co-founder and CFO of Backpage.com, LLC, which functioned as a front for Brunst's illegal activities. At all times material hereto, Defendant Brunst transacted business in Hernando County, Florida, as well as the State of Florida. John Brunst is over the age of majority and is otherwise sui juris.

9.     Defendant Scott Spear is a resident of Arizona and at all times material hereto, was conducting business in Florida. Defendant Spear was the Vice President of Backpage.com, LLC, which functioned as a front for Spear's illegal activities. At all times

material hereto, Defendant Spear transacted business in Hernando County, Florida, as well as the State of Florida. Scott Spear is over the age of majority and is otherwise sui juris.

10.    Defendant Salesforce.com, Inc. ("Salesforce") is a foreign corporation organized under the laws of Delaware with its principal place of business in California. Salesforce is registered to do business in the State of Florida. Salesforce is a software provider focusing on service platforms. Salesforce does business in a systematic and continuous manner throughout this District and Division. All references to Salesforce include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. The term also includes any director, officer, agent (either with direct/actual authority and implied/apparent authority), employee, person, firm, or corporation acting on behalf of Salesforce now or at any time relevant to the claims herein.

11.    Defendant, GOSAI 9, LLC., d/b/a Quality Inn is registered to do business in the State of Florida, including its location at 1125 North Young Blvd, Chiefland, Florida.

12.    Defendant, GOSAI 9, LLC., d/b/a Days Inn by Wyndham is registered to do business in Florida, including its location at 809 NW 21st Ave, Chiefland, Florida.

13.    Defendant, MGM HOTELS LLC., d/b/a. Holiday Inn Suites – Ocala Conference Center is registered to do business in Florida, including its location at 3600 SW 38th Ave, Ocala, Florida 32274.

14.    References herein to "Hotel Defendants" refer to Defendants, GOSAI 9, LLC and MGM Hotels, LLC, owners of the Hotels used by the Defendants to sex traffic the Plaintiff, as more fully set out herein.

15.    Defendant, Wyndham Hotels and Resorts Inc., is based in Parsippany, New Jersey, and is licensed to do business in Florida. Wyndham claims to be the largest hotel franchisor in the world with 9100 locations and does business in numerous Florida locations, including the Days Inn located at 809 NW 21st Avenue, Chiefland, Florida.

16.    Defendant Choice Hotels International, Inc. is based in North Bethesda Maryland and is licensed to do business in Florida. Choice has over 7000 franchises worldwide, including the Quality Inn at 1125 North Young Blvd, Chiefland, Florida.

17.    Defendant Holiday Hospitality Franchising, LLC is a Delaware corporation, registered to do business in Florida and franchises IHG Hotels and Resorts(International Hotels Group) branded facilities and is the United States branch or division of IHG, a British multinational hospitality company with headquarters in Windsor, England, and claims more than 6000 hotels and resorts, including the Holiday Inn – Ocala Conference Center.

18.    Wyndham Hotels and Resorts ("Wyndham"), Choice Hotels International ("Choice"), and Holiday Hospitality Franchising, LLC ("HHF") are collectively referred to herein as "Branded Hotels."

19.    Defendant, Bryan Joseph Giguere, is over the age of majority and is otherwise sui juris and was in direct violation of Florida Statute 784.03.  This statute makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result, Bryan Joseph Giguere was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-FXMX and should be made to

pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

20.    Defendant Joseph A. Easton is over the age of majority and is otherwise sui juris and was in direct violation of Florida Statute 784.03.  This statute makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result, Joseph Easton was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-FXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

21.    Defendant James W. Hancock is over the age of majority and is otherwise sui juris and was in direct violation of Florida Statute 784.03. This statute makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally causes bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, James W. Hancock was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-EXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

22.    Defendant Jason M. Raulerson is over the age of majority and is otherwise sui juris. Jason M. Raulerson was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the

other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Jason M. Raulerson was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-JXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

23.     Defendant Luigi Barile is over the age of majority and is otherwise sui juris. Luigi Barile was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Luigi Barile was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-CXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her.  **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

24.     Defendant Lawrence E. Kemble is over the age of majority and is otherwise sui juris. Lawrence E. Kemble was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Lawrence E. Kemble was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-GXMX and should be made to pay the Plaintiff for the

9

everlasting damages he has caused her. (**See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".**)

25.    Defendant Matthew C. Doyle is over the age of majority and is otherwise sui juris. Matthew C. Doyle was in direct violation of Florida Statute 784.03 which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Matthew C. Doyle was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-CXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. (**See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".**)

26.    Defendant Shawn C. Henson is over the age of majority and is otherwise sui juris. Shawn C. Henson was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein Shawn C. Henson was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-BXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. (**See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".**)

27.    Defendant Lachman Kaladeen is over the age of majority and is otherwise sui juris. Lachman Kaladeen was in direct violation of Florida Statute 784.03 which makes

10

it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein Lachman Kaladeen was charged with Human Trafficking and sex with a minor, among other sex crimes against the Plaintiff (I.H.) in Hernando County Case Number: 2019-CF-944-HXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. (**See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".**)

28.    Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. 1595 and is thus entitled to bring a civil action against the "perpetrators" of any violation of the TVPRA.

29.    The Defendants violated 18 U.S.C. §1595 by seeking out and obtaining sex from the Plaintiff, who was a minor at the time, through the acts and omissions detailed in this Complaint. They did so knowing, or with reckless disregard for the fact, that the victim would be subjected to force, coercion, or fraud. Each Defendant, as a "perpetrator," committed violations of 18 U.S.C. §1595(a) that, in conjunction with other unlawful acts and omissions described in this Complaint, caused the Plaintiff to suffer significant physical and psychological injuries and other damages. These harms were a direct and proximate result of being trafficked and sexually exploited at the Defendants' hotel properties.

11

## JURISDICTION AND VENUE

30.    This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1331 because this action arises in the Constitution, laws, or treaties of the United States, namely, the TVPRA, 18 U.S.C. Section 1595. Additionally, this Court has supplemental jurisdiction over the Plaintiff's claims that do not arise under federal law because each claim, "so relate to claims in the action within [this Court's] original jurisdiction that they form part of the same controversy under Article III of the United States Constitution" 28 U.S.C Section 1367(a). The venue is proper in this district pursuant to 28 U.S. C. Section 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action was brought. Defendants reside and/or conduct business within this District pursuant to 28 U.S.C Section 1391 (b), and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

31.    In addition, Plaintiff invokes the supplemental jurisdiction of this Court with respect to claims based on laws of the State of Florida or any other jurisdiction pursuant to 28 U.S.C. Section 1367.

32.    Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, led to injuries that occurred in the judicial district where this action is brought forth.

33.    At least one individual Defendant is a resident of Hernando County, Florida.

## INTRODUCTION

## SEX TRAFFICKING UNDER FEDERAL LAW

34.    The Plaintiff, I. H., was a victim of sex trafficking. At the age of 16 years old, her mother "pimped her out" to men ranging in age from young adult to men over the age of 75. Between November 2016 and May 2017, the Plaintiff was subjected through coercion, threats, and intimidation to perform sex acts including oral sex, and vaginal intercourse for money which was turned over to her mother. As a result of being subjected to sex trafficking and forced sexual encounters with numerous men, the Plaintiff suffered catastrophic injuries to her mind and body, including but not limited to, being infected with sexually transmitted diseases that will last her lifetime at the hands of the perpetrators and defendants herein.

35.    "Sex trafficking" is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."  The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age."

## Backpage and Salesforce's Role in Sex Trafficking.

**A. Backpage Engaged in Sex Trafficking.**

13

36.     Backpage was founded in 2004 as an online marketplace for various goods and services. However, in 2008, when Craigslist, the leading online marketplace, introduced measures to reduce the number of sex ads on its platform, Backpage experienced significant growth. This growth was driven by strategically optimizing its geographic focus and capitalizing on the influx of ads from Craigslist users looking for alternative platforms.

37.     During the late 2000s, it became apparent that classified ad platforms and social media sites were facilitating and profiting from commercial sex and trafficking.

38.     In 2008, Backpage had been publicly identified by law enforcement, United States Attorneys General, and every state Governor as the biggest and most notorious sex trafficking and pimping website in the United States.

39.      Backpage nonetheless worked to expand its role in online sex trafficking. Backpage's gross revenues increased from $5.3 million in 2008, to $11.7 million in 2009, and to $29 million in 2010.

40.     By 2008, Backpage implemented a policy for its moderators to modify the text of adult advertisements to disguise the true nature of the transactions. By October 2010, Backpage's executives formalized a process for manually and automatically deleting incriminating words and phrases, primarily through a feature called the "Strip Term from Ad Filter." When users, like I.H.'s trafficker, submitted an adult ad with these "stripped" words, the Strip Term from Ad Filter would delete the specific word, allowing the rest of

14

the ad to be published. Although this filter didn't change the actual nature of the transaction, it made Backpage's adult ads appear "cleaner than ever." Manual editing involved removing language similar to what the Strip Term from Ad Filter automatically eradicated, including terms suggestive of sexual exploitation and assault of sex trafficking victims like I.H. By late 2010, the company was editing "70 to 80% of ads" in the adult section either manually or automatically.

41.      Alongside its automatic Strip Term Filter and manual editing efforts, Backpage also modified its electronic filters to assist traffickers in posting seemingly harmless ads that facilitated sexual exploitation. Initially, when users attempted to post an ad containing a forbidden word, they received an error message identifying the problematic term to "assist" them in revising it. By November 2010, Backpage implemented a system that would "strip out a term after the customer submits the ad and before the ad appears in the moderation queue." This meant that if an ad contained a prohibited word associated with human trafficking, the term would be automatically removed before any moderator review. Once the Strip Term from Ad Filter deleted the term, moderators would receive the ad and could address other potential indicators of sexual exploitation. This process effectively concealed the illicit nature of many ads, including those used to exploit and traffic victims like I.H., by systematically removing terms related to sex trafficking and sexual exploitation before the ads reached the moderators.

42.      The sanitization process described was not carried out unintentionally or without awareness by Backpage. The company knew that its sanitization efforts were encouraging and assisting human traffickers and exploiters, including those victimizing

I.H. According to the Senate Subcommittee Report, Backpage moderators reported that everyone at the company knew the adult section ads were for prostitution. Despite this knowledge, Backpage used the sanitization process to shield itself from potential criminal investigations while enhancing sex traffickers' ability to exploit victims undetected.

43.    Furthermore, this sanitization process was deliberately instituted as a systematic procedure, demonstrating a clear company policy aimed at helping human traffickers evade law enforcement and perpetuate the victimization and sexual assault of individuals, including I.H., and other women against their will. In December 2009, Backpage organized a training session for their moderators on the sanitization process. Importantly, the presentation clarified that terms and code words indicating illegal activities required the removal of ads or words. Backpage followed through on this commitment, fully implementing the company-wide sanitization process in early 2010. In an April 2010 email note to himself titled "Adult clean up tasks," CEO Carl Ferrer affirmed that staff were "moderating ads on a 24/7 basis." In a section labeled "Additional Steps," Ferrer acknowledged that "text" could be further cleaned up as users became more inventive.

44.    Backpage went beyond just discussing how to enhance the sanitization process for human trafficking advertisements; they actively updated the list of banned terms. To reduce the need for manually removing the same phrases repeatedly, Backpage instructed moderators to compile lists of phrases to regularly remove. They provided a spreadsheet listing coded terms set for automatic deletion. This document showed that

16

certain words, among others, were removed from adult ads by the Strip Term from Ad Filter before publication:

      a.  Lolita

      b.  Teenage

      c.  Rape

      d.  Young

      e.  GFE (Girl Friend Experience)

45.    When an adult ad containing any of the prohibited words was submitted, Backpage's Strip Term from Ad Filter would quickly remove the specific word, allowing the rest of the ad to be published after moderator review. It is important to understand that the Strip Term from Ad Filter did not change the actual age of the person being sold for sex or the true nature of the transaction. This was not the intention of Backpage.

46.    By July 2010, Backpage was commending its moderation staff for their editing efforts. Ferrer distributed an agenda for a July 2010 meeting with The Backpage Defendants' Phoenix staff, praising moderators for their work on "adult content" and encouraging them to continue their efforts. It is believed that Backpage employed a team of 20 moderators working around the clock to remove any explicit images and code words related to paid sex.

47.    By 2010, Backpage was the unchallenged leader in online advertising for human trafficking and exploitation of women and children. The National Association of Attorneys General described Backpage as a "hub" of "human trafficking, especially the trafficking of minors."

48.    In September 2010, 21 state attorneys general called on Village Voice Media, the owner of Backpage at the time, to shut down its adult services section. Backpage declined this request and continued to profit from the exploitation of women and children. During this period, the company positioned itself as a defender of free speech, challenging and attempting to discredit anyone or any entity that criticized its practices.

49.    Backpage profited from the exploitation of women and children for an extended period. Anyone who visited Backpage.com or searched for information about the company would quickly see that it primarily facilitated the sale of sex, rather than acting as a general online marketplace. In fact, Backpage.com became the largest and most notorious promoter of commercial and coerced sex in the history of the internet. It dominated online sex trafficking until Federal Law Enforcement authorities shut it down on April 6, 2018.

50.    Between 2013 and 2015, over 99% of Backpage's revenue came from adult advertisements. In 2012, Backpage generated around $71 million in revenue. From January 2013 to May 2015, the company earned approximately $346 million, with nearly $340 million originating from adult advertisements.

51.    In 2013, despite the widespread recognition of Backpage's activities, Salesforce entered into the first of several contracts with Backpage. In return for its technology and assistance, Backpage compensated Salesforce. These contracts were specifically designed to support Backpage's rapid growth, enabling it to meet increasing customer demands and expand its platform into an international hub for sex trafficking. From 2013 until federal authorities shut down Backpage in 2018, Salesforce actively aided and facilitated Backpage's trafficking operations by providing its CRM software, support

18

services, and development assistance. Salesforce granted Backpage access to a variety of products and features, including its top-tier Enterprise Edition and the advanced marketing technology, Pardot.

52.     Salesforce proactively and independently equipped Backpage with the necessary tools to operate and expand, along with the support needed to utilize those tools effectively. With a robust CRM strategy in place, a business like Backpage could gather comprehensive customer data and use it to optimize communications and business operations. Consequently, Salesforce's software and support influenced every aspect of Backpage's business, including customer service, sales, and marketing.

53.     Salesforce actively provided unique technological tools and resources to Backpage, supporting its online sale of sex, sex trafficking, and forced prostitution, including the trafficking of Plaintiff I.H. Salesforce also offered personalized support for these tools, enabling Backpage to engage in these illicit activities. By supplying technology, implementation skills, and ongoing support, Salesforce played a crucial role in helping Backpage scale its operations and increase its trafficking activities. These affirmative actions by Salesforce facilitated Backpage's sex trafficking operations. From 2013 to 2018, Salesforce and Backpage maintained a continuous business relationship, establishing a pattern of conduct or implicit agreement that jointly facilitated a venture knowingly advertising the trafficking of victims through Backpage, including Plaintiff I.H.

54.     Backpage could not have become a leading entity in human trafficking and child sexual exploitation without Salesforce's assistance, expertise, and ongoing support. Salesforce either knew or should have known that its collaboration with Backpage was linked to violations of anti-trafficking laws.

19

55.    When Salesforce formed a business partnership with Backpage, it knew—or at the very least, should have been aware—that Backpage was a habitual violator of human rights, a criminal enterprise violating state and federal laws, and a significant facilitator of human trafficking and the sexual exploitation of minors.

56.    Salesforce became aware of Backpage's illegal trafficking operations through direct interactions with Backpage representatives. During the initial negotiations around November 6, 2013, a Certified Salesforce Consulting Partner met with Backpage CEO Carl Ferrer and another senior Backpage executive to introduce themselves and assess Backpage's needs and objectives. The Consulting Partner reported to a Salesforce executive in an email on November 7, 2013, that he "spent most of the time learning of [Backpage] as a business," highlighting the need for security and advanced integration.

57.    Additionally, it was widely known that Backpage was a trafficking website during its relationship with Salesforce. Before and during 2014, Backpage frequently appeared in the news. These articles covered various aspects but consistently highlighted that Backpage.com was the leading platform for facilitating sex trafficking and other forms of human exploitation.

58.    Furthermore, throughout the relationship between Backpage and Salesforce, Backpage was frequently under public investigation for criminal activities. Salesforce's partnership with Backpage persisted through several nationwide law enforcement operations, numerous civil lawsuits against Backpage, and a highly publicized Senate hearing.

59.    While Salesforce was conducting business with Backpage, Backpage's CEO, Carl Ferrer, was arrested in Texas on October 6, 2016, for pimping underage children. Despite Ferrer's arrest, Salesforce renewed its contract with Backpage just a month later, on November 17, 2016, with Carl Ferrer still involved.

60.    Salesforce did not end its relationship with Backpage until April 2018, when the Justice Department shut down the Backpage.com website and effectively made it impossible for Salesforce to continue doing business with Backpage.

61.    Salesforce maintained a relationship with Backpage during a time when it was undeniably engaged in human trafficking. Salesforce actively and continuously supported Backpage, knowing that its software and services facilitated the trafficking activities on the platform. By doing so, Salesforce contributed to the success of Backpage's trafficking operations.

62.    Salesforce had the opportunity to learn, and indeed did learn, about Backpage's illegal business practices once their partnership was established. Despite this knowledge, Salesforce chose to continue profiting from its involvement in Backpage's illicit commercial sex trafficking activities. Therefore, Salesforce had actual awareness and understanding of Backpage's involvement in human trafficking, sexual exploitation of women, men, and children, and prostitution.

63.    Alternatively, Salesforce had at least constructive knowledge—it knew or should have known—that Backpage was involved in illegal activities, including human trafficking and the promotion of commercial sex. The illicit nature of Backpage's business was widely reported in popular news sources. Salesforce should have been aware of

Backpage's operations. Any review of Backpage's online activities and business requirements, or even a simple Google search, would have shown that Backpage was engaged in the online sale of sex through human trafficking. It is unlikely that Salesforce was ignorant of Backpage's business activities at any time after their collaboration began. Thus, even if Salesforce was not initially aware of Backpage's illegal practices, it was in a position to learn about them once the partnership was established.

64.    Furthermore, Salesforce was aware—and it was widely reported during the relevant period—that Backpage was involved not only in the illegal sale of commercial sex but specifically in the unlawful trafficking of individuals. In other words, Salesforce knew or should have known that many individuals advertised on Backpage were not engaging in sex acts willingly but were coerced or forced into doing so by traffickers. Additionally, Salesforce knew or should have known that many of these individuals were minors. Despite this knowledge, Salesforce decided to continue its business dealings with Backpage and knowingly derived benefits from participating in a venture involved in criminal sex trafficking.

**B. Salesforce knowingly benefitted from participating in a venture with Backpage. § 18 U.S.C. 1595.**

65.    With full awareness of Backpage's trafficking operations, Salesforce actively chose to establish and sustain a relationship—and to financially benefit—by conducting business with Backpage, which operated as the largest sex trafficking platform in history.

66.     During Backpage's operation and profit from trafficking victims on its website, significant funds were directed towards paying Salesforce for its technology and ongoing support.

C. **Plaintiff (I.H.) was trafficked on Backpage.com with Salesforce's support and participation. § 18 U.S.C. 1595.**

67.     Tragically, before Backpage was seized by the Department of Justice, Plaintiff I.H., a 16-year-old minor, was trafficked by advertisements on Backpage from January 2017 to May 2017. As a result, she was forced to engage in unlawful sex acts, often multiple times a day. If she did not, she would not have any food to eat or any electricity in the home. She was forced by the coercion of her own mother, and, of course, the "Johns" themselves. Throughout I.H.'s trafficking, Salesforce participated in the venture with Backpage to assist Backpage in expanding its trafficking business.

68.     I.H. was trafficked on Backpage in Florida. I.H.'s trafficker would take photos of her and post ads on Backpage. I.H.s trafficker would then communicate with individuals responding to the ads and set up "dates" for I.H.

69.     During the period that Plaintiff was trafficked by and through Backpage, Salesforce was the sole provider, customizer, owner, manager and operator of the platform and technology that allowed Backpage to traffic persons and promote prostitution of others including Plaintiff.

70.     As a result of being trafficked, I.H. suffered significant physical, psychological, and emotional injuries and damage that will negatively affect her for the rest of her life. As a direct and proximate result of Defendants' wrongful actions, Plaintiff

was forced to live out the nightmare that Defendants created until they were all arrested in May of 2019. She is now struggling to take back her life. She is still and will forever live with the damage caused by those involved in her trafficking. She contracted several sexually transmitted diseases, including HPV, which resulted in stage 3 AIS (adenocarcinoma in situ), HSV-1 and HSV-2. Her ability to bear children is in question and she will need treatment for these diseases for the rest of her life.

<u>**Hotel Defendants and Branded Hotels Role in Sex Trafficking.**</u>

**D. Hotel Defendants Were Complicit In Sex Trafficking Of Plaintiff.**

71.    Hotels and motels in general play a significant role in sex-trafficking and have a unique position to be able to identify and prevent sex trafficking on their premises.

72.    As pertains to the Hotel Defendants and Branded Hotel Defendants named herein, at the times alleged in this Complaint, the Plaintiff was sex-trafficked, assaulted, prostituted, and sold for sex on their premises with their actual or constructive knowledge.

73.    As a hotel operator, Hotel and Branded Hotel Defendants controlled the training, policies, and implementation of anti-trafficking policies, protocols, rules, and guidelines for their properties where the Plaintiff was trafficked.

74.    At all times relevant herein, upon information and belief, the Hotel Defendants and Branded Hotel Defendants had knowledge of the prevalence of sexual trafficking in the hotel industry, nonetheless, Hotel Defendants and Branded Hotel Defendants failed to prevent or endeavor to prevent the Plaintiff from being trafficked at their Hotel, all so the Defendants could profit financially.

75.     Hotel Defendants and Branded Hotel Defendants knew or should have known that sex traffickers use threats, coercion, manipulation, and other means to compel women, including the Plaintiff herein, to engage in commercial sex acts on hotel premises.

76.     The passage of TVPRA IN 2008, and the numerous other legislative and judicial responses to this crisis put the Hotel Defendants and Branded Hotel Defendants on notice that there is a likelihood that illegal acts involving sex-trafficking are occurring on their hotel premises, which would warrant a reasonable hotel operator to be even more vigilant and proactive in countering criminal conduct.

77.     The Hotel Defendants participated in these criminal activities by renting rooms to individuals that the defendants knew or should have known were involved in sex-trafficking involving the Plaintiff.

78.     The Hotel Defendants financially benefied from the sex-trafficking occurring on their premises by virtue of renting a hotel room for money for the purpose of allowing or promoting sex trafficking.

79.     The Branded Hotel Defendants benefited financially by receiving franchise and other fees from the Hotel Defendants, and in a broader sense, benefited from the overall profits and profitability of the Brand.

80.     The Hotel Defendants and Branded Hotel Defendants, as owners, operators, managers, and controllers of the subject hotels, knew or should have known, based on numerous well-documented indicators of sex-trafficking, that sex-trafficking or other criminal activities were occurring and would continue to occur at the subject hotel due to

their malfeasance, negligence or intentional disregard for the safety and well-being of its customers, guests, and persons using their facilities.

81.    The Hotel Defendants and Branded Hotel Defendants knew or should have known that they have a duty to properly train hotel employees including front desk staff, housekeeping, security, and management to identify and respond to "red flags" of criminal activity such as sex-trafficking. As long ago as 2012, 5 years before the events that form the basis of this complaint occurred, the American Hotel Lodging Association (AHLA) and ECPAT-USA (Child trafficking organization now known as PACT – Protect All Children from Trafficking), provided training materials, videos and other guidelines for training and managing hotel employees as to the threats of indications of child and/or sex trafficking.

82.    Hotel Defendants, individually and by and through their actual agents, servants, employees, and/or staff were aware of and/or should have been aware of several warning signs at their hotels that indicated the presence of sex-trafficking, including as to the Plaintiff herein, but not limited to:

a. Persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior.

b. Persons lacking freedom of movement or being constantly monitored.

c. Victims dressed in sexually explicit or provocative manner.

d. People requesting additional housekeeping services such as towels, and linens but at other times denying staff entry to the room.

e. Few or no personal possessions during check-in or within the room.

f. Sex paraphernalia in rooms (condoms, lubricants, lotions)

26

g.  Large amounts of items such as used condoms, empty lube bottles, sex toys, and bodily fluids on sheets and towels.

h.  Payments for rooms in cash, cash substitutes, or prepaid credit cards.

i.  Checking in with local ID or local address.

j.  Other red flags.

83.    As a result of the Hotel Defendant's failure to act, negligence, and greed, Hotel Defendant's allowed their subject hotels to be used for the carrying out of sex-trafficking in violation of TVPRA (18 USC 1595).

84.    While the Hotel Defendants and Branded Hotel Defendants profited from the room occupancy, including rental fees, food and beverage sales, ATM fees, and increased property values, the Plaintiff was being subjected to repeated dangerous conditions as a sex-trafficked victim resulted in bodily injuries, sexual exploitation, emotional distress, mental harm, pain and suffering at the hands of her sex-traffickers and the men she was sold to for sex.

85.    The Plaintiff sues the Hotel Defendants and Branded Hotel Defendants for violations of TVPRA, knowingly benefitting from sex-trafficking they knew or should have known was occurring on their premises in violation of 18 U.S.C. 1591 (a) and (b) by enabling, harboring, facilitating, and financially benefitting from sex-trafficking in which the Plaintiff was trafficked for sex, sexually exploited, and victimized in violation of TVPRA.

**E. Branded Hotels Complicit in Sex-Trafficking**

86.     Defendants Wyndham Hotels & Resorts (Days Inn), Choice Hotels International (Quality Inn) and Holiday Hospitality Franchising, LLC (Holiday Inn) own the respective franchising rights and brands and entered into contracts with the Hotel Defendants.

87.     By virtue of that contractual relationship, the Hotel Defendants obtain the use of the name, brand, good-will, and reputation of the Branded Hotels.

88.     The Hotel Defendants also agree to abide by certain standards, procedures, policies, and conduct to maintain their franchise with the Branded Hotels.

89.     In return, the Branded Hotels receive franchise fees, commissions, and other remuneration from the Hotel Defendants.

90.     Each of the Branded Hotels had actual and/or constructive knowledge of the blight of sex trafficking and the use of their franchised hotels and motels in the furtherance of sex traffickers before the Plaintiff was sex trafficked on their properties.

91.     As mentioned above, the hotel and motel industry, related trade groups, anti-sex trafficking groups, and governmental agencies published and provided numerous ways for hotel management and employees to identify illegal conduct including prostitution, drug usage and sales and child trafficking and child sex-trafficking. The Branded Hotels and the Hotel Defendants were aware or should have been aware of these guidelines or red flags before the Plaintiff suffered her injuries on their properties.

92.     Any hotel manager or employee witnessing the Plaintiff, her trafficker or her sex customers would or should have become aware of numerous identifiers of the abuse

inflicted upon the Plaintiff, yet none of the Hotel Defendants came to her aid or chose her life and well-being over the daily room rent and profits.

93.     The Branded Hotels are in a unique position of being aware of the use of their franchisee's facilities for illegal conduct including prostitution and sex-trafficking, but also in a position to enforce rules, policies, procedures, training, and conduct of the franchised hotels management and employees.

94.     Each of the Branded Hotels has published anti-trafficking policies and commitments to efforts to combat sex trafficking.

95.     Wyndham touts its commitment to combat human trafficking by donating 1 million Wyndham Rewards Points to Polaris in 2020 and 10 million Wyndham Rewards Points since 2008. Polaris operates the U.S. National Human Trafficking Hotline.

96.     Wyndham Reward Points are worth about 8 cents each. 8 million points over a 12-year period equates to about $53,333.00 per year. Divided by the 9100 facilities operated as Wyndham properties, this donation amounts to about $5.86 per facility per year.

97.     Another way at looking at Wyndham's disingenuous approach to a commitment to fight sex trafficking is that rooms can be rented at various Wyndham resorts based on tiers of 30,000, 15,000, or 7500 Wyndham Rewards Points per night. (The only one listed at 7500 per night on the Wyndham website is in Jerusalem, Israel.) The 1 million point self-serving donation by Wyndham in 2020 would buy, at most, only 133 nights worldwide for Polaris to use for its purposes.

98.     Wyndham also publishes a Human Rights Policy Statement. Wyndham's policy is to be "supportive of laws duly enacted to prevent and punish the crime of sexual

exploitation of children and that Wyndham Hotels and Resorts will cooperate with law enforcement authorities to address such instances of exploitation of which the company becomes aware."

99.    Wyndham does not identify any efforts it makes as a franchisor and owner of the Days Inn brand to train, supervise, manage, educate, and control its franchise locations about child sex trafficking, how to recognize when child trafficking or prostitution is going on at the hotel premises, nor how to respond to evidence of child trafficking or prostitution.

100.    At all times relevant herein, Wyndham failed to properly train, supervise, manage, educate, and control the Days Inn management or employees located at 809 NW 21st Ave., Chiefland, Florida about child sex trafficking, how to recognize when child trafficking or prostitution is going on at the hotel premises, nor how to respond to evidence of child trafficking or prostitution.

101.    Choice Hotels published a Human Rights Policy in 2008 that "condemns human trafficking and child exploitation and commits to raising awareness of this issue among the owners and staff of our franchised hotels." As of 2015, Choice was a member of the ECPAT-USA Tourism Child-Protection Code of Conduct. ECPAT-USA is now known as PACT (Protect All Children from Trafficking)

102.    Choice also donates to Polaris through its Choice Privileges redemption Program. Choice claims to have provided on-line "Combating Human Trafficking in Your Hotel" to the management and staff at their franchised hotels which includes the Quality Inn located at 1125 N. Young Blvd, Chiefland, Florida.

103.   At all times relevant herein, Choice failed to properly train, supervise, manage, educate, and control the Quality Inn management or employees located at 1125 N. Young Blvd. Chiefland Florida about child sex trafficking, how to recognize when child trafficking or prostitution is going on at the hotel premises, and how to respond to evidence of child trafficking or prostitution.

104.   IHG Hotels and Resorts, the British parent or affiliate of HHF published a Modern Slavery Statement in 2017 in accordance with the requirements of the UK Modern Slavery Act of 2014. Beginning in 2013 and again in 2017, HHF carried out assessments of "higher risk locations" and identified high profile events such as the Super Bowl for heightened awareness and increased vigilance by hotel management and staff.

105.   At all times relevant herein, HHF failed to properly train, supervise, manage, educate, and control the Holiday Inn – Ocala Conference Center management or employees located at 3600 SW 38th Ave., Ocala, Florida about child sex trafficking, how to recognize when child trafficking or prostitution is going on at the hotel premises, nor how to respond to evidence of child trafficking or prostitution.

### COUNT I
### CAUSE OF ACTION AGAINST BACK PAGE, FERRER, LACEY, BRUNST and SPEAR

**Sex Trafficking under 18 U.S.C. § 1595,**

106.   Plaintiff incorporates the allegations in paragraphs 1-105 and further alleges that Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear, violated the Federal Human Trafficking Statute found at 18 U.S.C. § 1595 and 18 U.S.C. § 1595.

107.    I.H. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1595, as she was trafficked and sold for commercial sex against her will.

108.    Backpage repeatedly and for years violated sex trafficking laws by knowingly advertising women, minors, and those forced into sex trafficking for sale on its website, including Plaintiff. Backpage even created its own content by copying ads from Craigslist and other competitor websites and posting the ads on its own site as part of its business scheme to further its trafficking venture.

109.    Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear knowingly benefitted, by receiving financial and other things of value, through its participation in a venture it knew or should have known involved the trafficking, recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, and/or soliciting of Plaintiff and otherwise furthered the sex trafficking of victims as more fully described elsewhere in this complaint.

110.    Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear received substantial financial benefits from the trafficking described in this complaint including, but not limited to, advertising and other ancillary fees from traffickers who utilized the Backpage.com website.

111.    Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear knew that they were advertising minors and those forced into sex trafficking for commercial sex on its website.

112.    Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear likewise knew or should have known they were participating in a venture involving the

trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits, in violation of the TVPRA, 18 U.S.C. § 1595 and 1591, and 1590.

113.    Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear had notice, both actual and constructive, as a result of the conduct outlined in this complaint.

114.    Backpage participated in a venture with, among others, Salesforce, and Plaintiff's traffickers. Each of the venturers shared a common purpose— advertising, soliciting, and trafficking women and children and the making of profits. Backpage profited from the trafficking of Plaintiff.

115.    There was a continuous business relationship between Salesforce, the traffickers, and Backpage such that the parties had established a pattern of trafficking conduct or could be said to have a tacit agreement. Backpage took affirmative action in furtherance of the venture by continually supporting the trafficking of women and children, all the while ignoring the obvious signs of Plaintiff's trafficking, including her being publicly posted for sale on Backpage's website. Backpage's TVPRA violations caused injuries and damages to Plaintiff.

116.    Backpage and the individual Defendants Ferrer, Lacey, Brunst, and Spear knowingly benefitted from participating in a venture it knew was engaged in illegal sex trafficking by engaging in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of Plaintiff for commercial sexual exploitation.

117.    Backpage knew that its repeated failures to address known risks of human trafficking would increase the overall volume of illegal commercial sexual exploitation and

victimization, as well as the profits for Backpage, yet knowingly benefitted from facilitating the trafficking of persons on its website.

118.    In the alternative, Backpage had constructive knowledge and notice of a venture involving human trafficking that was operating on Backpage.com.

119.    Plaintiff thereby alleges, and the evidence will establish, that Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear directly facilitated sex trafficking through the posting of advertisements for sex trafficking.

a.  providing, assisting, supporting, and facilitating a forum for Plaintiff's trafficker to post her for trafficking.

b.  failing to stop online posting of Plaintiff and other human or sex trafficking victims.

c.  accepting advertising fees through www.backpage.com from human traffickers, including Plaintiff's trafficker, despite actual and/or constructive knowledge that those advertisements were for illegal activities, such as, but not limited to human trafficking, prostitution, and/or sexual exploitation of minors and other victims forced into commercial sex.

d.  designing and implementing The Strip Term from Ad Filter to automatically sanitize advertisements intended to promote human trafficking, prostitution, and/or the sexual exploitation of victims in an effort to maximize advertising revenue, customer satisfaction, and avoid law enforcement detection of illegal acts to evade law enforcement attention.

e.  designing and implementing, in order to maximize revenue, a manual moderation system intended to sanitize posted content advertising human trafficking, prostitution, and/or the sexual exploitation of victims to give those ads the appearance of promoting legal escort services as opposed to illegal services.

f.  implementing a corporate policy to maximize revenue of sanitizing advertisements promoting human trafficking, prostitution, and/or sexual exploitation of victims instead of removing those advertisements from Backpage or reporting those advertisements to the proper law enforcement officers.

g.  knowingly implementing a corporate policy in order to maximize profit from the adult section of Backpage.com that discouraged moderators and employees of Backpage from contacting the authorities and/or advocacy groups when advertisements on Backpage.com clearly promoted human trafficking, prostitution, and/or sexual exploitation of victims.

h.  knowingly refusing to pull down advertisements (after Backpage had internally sanitized the ad either manually or with the use of the Strip Term from Ad Filter) that clearly demonstrated victims were being exploited and trafficked for sex.

i.  knowingly refusing to pull down advertisements after reports and/or complaints that the advertisement was being used to exploit a victim.

120.    Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear knowingly benefitted from participating in a venture that it knew or should have known was engaged in illegal sex trafficking by engaging in acts and omissions that were intended

to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of Plaintiff for commercial sexual exploitation.

WHEREFORE, Plaintiff demands judgment against Defendant Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear, for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT II
## CAUSE OF ACTION AGAINST SALESFORCE

### Sex Trafficking Under 18 U.S.C. § 1595

121.    Plaintiff realleges and incorporates the allegations in paragraphs 1 through 105 above.

122.    Salesforce violated the federal anti-trafficking statute—the TVPRA and its reauthorizing statutes—under 18 U.S.C. §§ 1591 and 1595.

123.    Plaintiff, I.H. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1595, as she was trafficked and sold for commercial sex against her will.

124.    Salesforce knowingly benefitted, by receiving financial and other things of value across multiple contracts with Backpage, through its participation in a venture it knew or should have known involved the trafficking, recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, and/or soliciting of Plaintiff and otherwise furthered the sex trafficking of victims as more fully described elsewhere in this complaint.

36

125.    Salesforce knowingly received substantial financial benefits from facilitating trafficking through Backpage, including but not limited to, fees and revenues arising from its relationship with Backpage and Backpage-related entities.

126.    More specifically, Salesforce affirmatively and knowingly participated in, assisted, supported, and facilitated the Backpage sex trafficking venture on an ongoing basis by, at a minimum, the following:

a.  providing, assisting, supporting, and facilitating a world-renowned Customer Relationship Management (CRM) system with support services that were then used by Backpage to operate at maximum efficiency and profitability.

b.  providing, assisting, supporting, and facilitating the trafficking operations of Backpage.com using sophisticated software and related technologies. Salesforce provided support to Backpage in the use of these technologies and had knowledge of the way Backpage operated with these enhanced capabilities.

c.  providing, assisting, supporting, and facilitating Backpage with capabilities and support for direct marketing campaigns, coupled with information gathering such as tracking clicks and tracking internet activity of the sex traffickers to help Backpage manage and track the effectiveness of Backpage's marketing efforts. Salesforce helped Backpage collect and monitor data about the sex traffickers that were using Backpage to ensure improved outreach to those traffickers and improved customer service. These steps were designed to aid in the success of Backpage.com's trafficking operations.

d. providing, assisting, supporting, and facilitating more personalized outreach with automation using "dynamic content" and automated messaging to target traffickers and sex buyers.

e. providing, assisting, supporting, and facilitating enhanced customer targeting using data from existing traffickers on Backpage and creating cross-selling and upselling opportunities.

f. providing, assisting, supporting, and facilitating the collection of electronically stored information on user and platform interactions and social media interactions, including user preferences ("likes"), to advertise more effectively to traffickers and sex buyers.

g. providing, assisting, supporting, and facilitating surveillance and analysis of customer and user activity with regard to access to ads by tracking "clicks" (mouse clicks), collection of contact information, evaluation of purchasing habits, and correlating outreach and marketing efforts with same.

h. providing, assisting, supporting, and facilitating account planning including customer follow-up, account reminders, modification of marketing and sales plans, and cross-function customer service capabilities to improve outreach and services to traffickers.

i. providing, assisting, supporting, and facilitating a custom Application Programming Interface (API) for use by Backpage employees, which is a software intermediary that allows two applications to talk to each other. This

capability was for use by Backpage and did not enable computer access by the public or non-Backpage personnel.

j. providing, assisting, supporting, and facilitating cutting edge customer analytics to provide analysis of the behaviors of traffickers and sex buyers.

k. providing, assisting, supporting, and facilitating the creation of a secure SMS (text messaging) platform and confidential messaging capabilities for exclusive use of Backpage customers and users to facilitate secure and private communications between sex traffickers and sex buyers.

l. providing, assisting, supporting, and facilitating the ongoing, active monitoring mechanism for Backpage's efforts to track its success, gain information from customers and traffickers, and further automate and develop Backpage's operations.

m. providing, assisting, supporting, and facilitating a secure, custom Payment Processing Interface (PPI) and/or Payment Gateway to connect payment technology and payment processing networks to facilitate transactions between traffickers and sex buyers.

n. providing, assisting, supporting, and facilitating the credit card processing system and account tracking capabilities provided by Salesforce to accept payments from traffickers.

o. providing, assisting, supporting, and facilitating efficiency enhanced with automation, such as cutting the time it takes to email and nurture leads, scoring

leads using customer parameters set by the customer using artificial intelligence (AI), and handling customer questions using automation such as chatbots.

p.  providing, assisting, supporting, and facilitating a secure storage database with redundancy and backup capabilities.

q.  providing, assisting, supporting, and facilitating enhanced accessibility by use of technology permitting constant communications in support of customers and users.

r.  providing, assisting, supporting, and facilitating Backpage's ability to expand its trafficking operation both domestically and abroad by offering technology and support that was essential to the growth of Backpage.com.

s.  providing, assisting, supporting, and facilitating technology that created a breeding ground for sex traffickers to stalk and entrap survivors on Backpage.com.

t.  providing, assisting, supporting, and facilitating Backpage in its capability to maintain control of access to the Backpage.com platform and/or users and customers and thereby to enhance Backpage's efforts to evade detection from law enforcement.

u.  providing, assisting, supporting, and facilitating additional acts that constitute participation in a sex trafficking venture with Backpage.

127.    Each of the acts of Salesforce in providing, assisting, supporting, and facilitating Backpage was for internal Backpage use and operation only and was inaccessible to public internet users. Salesforce had both actual and constructive

40

knowledge and notice of a venture involving human trafficking through Backpage by way of actions that enticed, harbored, provided, obtained, advertised, maintained, patronized, or solicited victims of trafficking, including Plaintiff.

128.   Plaintiff further alleges, and the evidence will establish, that Backpage operated and participated in a venture that was engaged in human trafficking and that Salesforce facilitated that venture.

129.   Thus, Plaintiff alleges that Salesforce's own, independent conduct was a substantial factor in her trafficking, sexual abuse, and continuing damages.

130.   Plaintiff further alleges that, but for the contributions, technology, and overall support by Salesforce of Backpage, Backpage would not have achieved the general success it garnered, Backpage would not have escaped increased law enforcement scrutiny, Backpage would have foundered in the financial and payment markets, Backpage would have been unable to maintain its operational efficiency, and Plaintiff would not have been subjected to the criminal conduct at the hands of her traffickers and their accomplices.

131.   Salesforce knew that Backpage would achieve markedly greater success in its business operations with the use of Salesforce software and support and that Backpage relied on Salesforce to grow and function. With the foreknowledge of the nature of the operations conducted by Backpage, Salesforce had actual knowledge—or at least constructive knowledge—that by providing technology and support to Backpage, it enabled Backpage to operate and markedly enhanced the success of Backpage's trafficking operation.

132.    Salesforce participated in a venture that trafficked Plaintiff and other persons as a result of a continuous business relationship between the traffickers and Backpage and Salesforce such that the traffickers, Backpage, and Salesforce have established a pattern of trafficking conduct.

133.    Salesforce knowingly benefitted from participating in a venture it knew or should have known was engaged in illegal sex trafficking by engaging in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of Plaintiff for commercial sexual exploitation.

WHEREFORE, Plaintiff demands judgment against Defendant SALESFORCE for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT III
## CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a QUALITY INN

**Sex Trafficking of Children 18 USC 1591 and 1595**

134.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

135.    On or about March 3, April 7, and May 12, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Shawn Christopher Henson in rooms located at the Quality Inn at 1125 North Young Blvd, Chiefland, Florida.

136.    The Quality Inn located at 1125 North Young Blvd, Chiefland, Florida benefitted financially from the sex trafficking occurring on their premises by virtue of receiving rent for the room and other financial benefits.

137.    By allowing, promoting, or ignoring sex-trafficking on the premises of the Quality Inn, Defendant Quality Inn participated in the sex-trafficking venture that they knew of should have known was illegal, immoral, and contributed to, caused, and allowed the injuries to the Plaintiff as enumerated below.

138.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

**WHEREFORE**, Plaintiff demands judgment against Defendant GOSAI 9, LLC d/b/a Quality Inn for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT IV
## CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a QUALITY INN

**Intentional Infliction of Emotional Distress**

139.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

140.    As set out in detail above, Defendant GOSAI 9, LLC d/b/a QUALITY INN, provided the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

141.    Defendant GOSAI 9, LLC d/b/a QUALITY INN, intentionally and/or recklessly allowed their rooms to be used for illegal activities including the sex-trafficking of the Plaintiff.

142.    Allowing their rooms and facilities to be used for these purposes is outrageous, shocks the conscious and is unacceptable in a civil society.

143.    As a direct and proximate result of being sex-trafficked, raped, and used by the other Defendants in rooms provided by Defendant GOSAI 9, LLC d/b/a QUALITY INN, Plaintiff suffered and still suffers from extreme and severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant GOSAI 9, LLC d/b/a Quality Inn, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT V
## CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a DAYS INN

**Sex Trafficking of Children 18 USC 1591 and 1595**

144.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

145.    On or about April 7, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Shawn Christopher Henson in rooms located at the Days Inn at 809 NW 21st Avenue, Chiefland, Florida.

146.    The Days Inn located at 809 NW 21st Avenue, Chiefland, Florida benefitted financially from the sex trafficking occurring on their premises by virtue of receiving rent for the room and other financial benefits.

147.    By allowing, promoting, or ignoring sex-trafficking on the premises of the Days Inn, Defendant Days Inn participated in the sex-trafficking venture that they knew or should have known was illegal, immoral, and contributed to, caused and allowed the injuries to the Plaintiff as enumerated below.

148.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

**WHEREFORE,** Plaintiff demands judgment against Defendant GOSAI 9 LLC d/b/a Days Inn for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

<u>**COUNT VI**</u>
<u>**CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a DAYS INN**</u>

**Intentional Infliction of Emotional Distress**

149.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

150.    As set out in detail above, Defendant GOSAI 9, LLC d/b/a DAYS INN, provided the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

151.    Defendant GOSAI 9, LLC d/b/a DAYS INN, intentionally and/or recklessly allowed their rooms to be used for illegal activities including the sex-trafficking of the Plaintiff.

152.    Allowing their rooms and facilities to be used for these purposes is outrageous, shocks the conscious and is unacceptable in a civil society.

153.    As a direct and proximate result of being sex-trafficked, raped, and used by the other Defendants in rooms provided by Defendant GOSAI 9, LLC d/b/a DAYS INN, Plaintiff suffered and still suffers from extreme and severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant GOSAI 9, LLC d/b/a Days Inn, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

**COUNT VII**
**CAUSE OF ACTION AGAINST MGM HOTELS, LLC, d/b/a HOLIDAY INN &**
**SUITES OCALA CONFERENCE CENTER**

**Sex Trafficking of Children 18 USC 1591 and 1595**

154.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

155.    On or about February 5, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Luigi Barile in rooms located at the Holiday Inn & Suites Ocala Conference Center, 3600 SW 38th Avenue, Ocala, Florida.

156.    The Holiday Inn & Suites Ocala Conference Center, 3600 SW 38th Avenue, Ocala Florida benefitted financially from the sex trafficking occurring on their premises by virtue of receiving rent for the room and other financial benefits.

157.    By allowing, promoting or ignoring sex-trafficking on the premises of the Holiday Inn & Suites Ocala Conference Center, Defendant Holiday Inn & Suites Ocala Conference Center participated in the sex-trafficking venture that they knew of should have known was illegal, immoral and contributed to, caused and allowed the injuries to the Plaintiff as enumerated below.

158.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

WHEREFORE, Plaintiff demands judgment against Defendant MGM HOTELS, LLC d/b/a Holiday Inn & Suites Ocala Conference Center for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT VIII
## CAUSE OF ACTION AGAINST MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER

**Intentional Infliction of Emotional Distress**

159.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

160.    As set out in detail above, Defendant MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER, provided the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

161.    Defendant MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER, intentionally and/or recklessly allowed their rooms to be used for illegal activities including the sex-trafficking of the Plaintiff.

162.    Allowing their rooms and facilities to be used for these purposes is outrageous, shocks the conscious and is unacceptable in a civil society.

163.    As a direct and proximate result of being sex-trafficked, raped, and used by the other Defendants in rooms provided by Defendant MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER, Plaintiff suffered and still suffers from extreme and severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT IX
## CAUSE OF ACTION AGAINST JOHN DOE

**Sex Trafficking of Children 18 USC 1591 and 1595**

164.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

165.    Plaintiff's sex-trafficker, her mother, rented, leased, or otherwise occupied a residence located at 31199 Longwood Drive, Brooksville, Florida.

166.    The plaintiff was sex-trafficked multiple times at the residence located at 31199 Longwood Drive, Brooksville, Florida. According to the Application and Affidavit for Arrest Warrants entered in the criminal case in Hernando County (case 2019-CF-000944, HCSO No: 2017-18444 and OSP No,: 2017-0191-TPA), sex-trafficking of the Plaintiff occurred between January 2017 and May 2017 with the following perpetrators: Luigi Barile, Bryan Joseph Giguere, James William Hancock, Joseph Andrew Easton, Latchman Kaladeen, Matthew Christopher Doyle and Jason Michael Raulerson, and upon information and belief, many others.

167.    At all times material to this matter, John Doe was the owner of the residence and real property located at 31199 Longwood Drive, Brooksville, Florida.

168.    John Doe benefited financially from the sex trafficking occurring within his property by virtue of rent or other consideration paid by Plaintiff's mother and sex-trafficker to allow the Plaintiff and her mother to use the premises for illegal activity, to wit: sex trafficking of a minor.

169.    At all times material to this matter, John Doe knew or should have known that illegal activities were occurring within his property. The same red flags or warnings that were enumerated regarding the Hotel Defendants apply to this landlord, John Doe, as well.

170.    By allowing, promoting, or ignoring sex trafficking on the premises and property owned by John Doe, Defendant John Doe participated in the sex trafficking venture that they knew or should have known was illegal, and immoral and contributed to, caused, and allowed the injuries to the Plaintiff as enumerated below.

171.    Pursuant to 18 U.S.C 1595 (a), Defendant John Doe is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

**WHEREFORE**, Plaintiff demands judgment against Defendant John Doe for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT X
## CAUSE OF ACTION AGAINST SHAWN CHRISTOPHER HENSON

**Sex Trafficking of Children 18 USC 1591 and 1595**

172.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

173. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, …in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

174. 18 U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

175. That between November 2016 and May 17, 2017, and upon information and belief on or about March 3, 2017, April 7, 2017 and May 5, Defendant SHAWN CHRISTOPHER HENSON, engaged, perpetrated and participated in commercial sex acts with the Plaintiff, a minor under the age of 18 at a motel in Chiefland, Florida in violation of 18 U.S.C. Section 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant SHAWN CHRISTOPHER HENSON for illegal sex-trafficking of a minor, the Plaintiff, in violation of 18 U.S.C. Section 1595 and demands compensatory damages, punitive damages, attorney's fees and costs and for any and all other relief as is just under the premises.

## COUNT XI
## CAUSE OF ACTION AGAINST SHAWN CHRISTOPHER HENSON

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

176.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

177.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

178.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

179.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

180.    On or about March 3, 2017, April 7, 2017, and May 12, 2017, Defendant SHAWN CHRISTOPHER HENSON intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

181.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant SHAWN CHRISTOPHER HENSON for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

<u>COUNT XII</u>
<u>CAUSE OF ACTION AGAINST SHAWN CHRISTOPHER HENSON</u>

**Intentional Infliction of Mental Distress**

182.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

183.    Defendant SHAWN CHRISTOPHER HENSON intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

184.    Defendant SHAWN CHRISTOPHER HENSON intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

185.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant SHAWN CHRISTOPHER HENSON will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

186.   As a direct and proximate result of being sex-trafficked, raped and battered by Defendant SHAWN CHRISTOPHER HENSON, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant SHAWN CHRISTOPHER HENSON for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

### COUNT XIII
### CAUSE OF ACTION AGAINST LUIGI BARILE

**Sex Trafficking of Children 18 USC 1591 and 1595**

187.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

188. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, …in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

189.   18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from

participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

190.    That between November 2016 and May 17, 2017, and upon information and belief on or about February 5 and February 15, 2017, Defendant LUIGI BARILE, engaged, perpetrated, and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant LUIGI BARILE for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XIV
## CAUSE OF ACTION AGAINST LUIGI BARILE

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

191.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

192.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

193.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

194.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

195.    That between November 2016 and May 17, 2017, and upon information and belief on or about February 5 and February 15, 2017, Defendant LUIGI BARILE intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

196.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant LUIGI BARILE for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XV
## CAUSE OF ACTION AGAINST LUIGI BARILE

**Intentional Infliction of Mental Distress**

197.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

198.    Defendant LUIGI BARILE intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

199.    Defendant LUIGI BARILE intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

200.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant LUIGI BARILE will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

201.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant LUIGI BARILE, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant LUIGI BARILE for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

## COUNT XVI
## CAUSE OF ACTION AGAINST BRYAN JOSEPH GIGUERE

**Sex Trafficking of Children 18 USC 1591 and 1595**

202.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

203. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, …in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

204. 18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

205. That between November 2016 and May 17, 2017, and upon information and belief on or about April 17, 2017, Defendant BRYAN JOSEPH GIGUERE, engaged, perpetrated, and participated in commercial sex acts with Plaintiff, a minor under the age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant BRYAN JOSEPH GIGUERE for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XVII
## CAUSE OF ACTION AGAINST BRYAN JOSEPH GIGUERE

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

206.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

207.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

208.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

209.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

210.    That between November 2016 and May 17, 2017, and upon information and belief on or about April 17, 2017, Defendant BYRAN JOSEPH GIGUERE intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

211.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant BRYAN JOSEPH GIGUERE for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

**COUNT XVIII**
**CAUSE OF ACTION AGAINST BRYAN JOSEPH GIGUERE**

**Intentional Infliction of Mental Distress**

212.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

213.    Defendant BYRAN JOSEPH GIGUERE intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

214.    Defendant BRYAN JOSEPH GIGUERE intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

215.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant BRYAN JOSEPH GIGUERE will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

216.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant BRIAN JOSEPH GIGUERE, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant BRYAN JOSEPH GIGUERE for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

**COUNT XIX**
**CAUSE OF ACTION AGAINST JAMES WILLIAM HANCOCK**

**Sex Trafficking of Children 18 USC 1591 and 1595**

217.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

218. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, …in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

219.    18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court

of the United States and may recover damages and reasonable attorney's fees."

220.    That between November 2016 and May 17, 2017, and upon information and belief on or about April 15, 2017, Defendant JAMES WILLIAM HANCOCK, engaged, perpetrated, and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant JAMES WILLIAM HANCOCK for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

**COUNT XX**
**CAUSE OF ACTION AGAINST JAMES WILLIAM HANCOCK**

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

221.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

222.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

223.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

224.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

225.    That between November 2016 and May 17, 2017, and upon information and belief on or about April 15, 2017, Defendant JAMES WILLIAM HANCOCK intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

226.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant JAMES WILLIAM HANCOCK for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XXI
## CAUSE OF ACTION AGAINST JAMES WILLIAM HANCOCK

**Intentional Infliction of Mental Distress**

227.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

228.    Defendant JAMES WILLIAM HANCOCK intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

229.    Defendant JAMES WILLIAM HANCOCK intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

230.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant JAMES WILLIAM HANCOCK will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

231.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant JAMES WILLIAM HANCOCK, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant JAMES WILLIAM HANCOCK for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

## COUNT XXII
## CAUSE OF ACTION AGAINST JOSEPH ANDREW EASTON

**Sex Trafficking of Children 18 USC 1591 and 1595**

232.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

233.   18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, …in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

234.   18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

235.   That between November 2016 and May 17, 2017, and upon information and belief on or about May 14, 2017, Defendant JOSEPH ANDREW EASTON, engaged, perpetrated and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18 U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant JOSEPH ANDREW EASTON for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XXIII
## CAUSE OF ACTION AGAINST JOSEPH ANDREW EASTON

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

236.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

237.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

238.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

239.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

240.    That between November 2016 and May 17, 2017, and upon information and belief on or about May 14, 2017, Defendant JOSEPH ANDREW EASTON intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

241.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant JOSEPH ANDREW EASTON for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

**COUNT XXIV**
**CAUSE OF ACTION AGAINST JOSEPH ANDREW EASTON**

**Intentional Infliction of Mental Distress**

242.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

243.    Defendant JOSEPH ANDREW EASTON intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

244.    Defendant JOSEPH ANDREW EASTON intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

245.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant JOSEPH ANDREW EASTON will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

246.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant JOSEPH ANDREW EASTON, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant JOSEPH ANDREW EASTON for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

## COUNT XXV
## CAUSE OF ACTION AGAINST LAWRENCE EDWARD KEMBLE

**Sex Trafficking of Children 18 USC 1591 and 1595**

247.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

248. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, …in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

249.    18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

250.    That between November 2016 and May 17, 2017, and upon information and belief on or about May 6, 2017, LAWRENCE EDWARD KEMBLE, engaged, perpetrated and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18.U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant LAWRENCE EDWARD KEMBLE for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

### COUNT XXVI
### CAUSE OF ACTION AGAINST LAWRENCE EDWARD KEMBLE

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

251.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

252.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

253.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

254.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the

provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

255.    That between November 2016 and May 17, 2017, and upon information and belief on or about May 6, 2017, Defendant LAWRENCE EDWARD KEMBLE intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

256.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant LAWRENCE EDWARD KEMBLE for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

**COUNT XXVII**
**CAUSE OF ACTION AGAINST LAWRENCE EDWARD KEMBLE**

**Intentional Infliction of Mental Distress**

257.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 104 as if fully set out herein.

258.    Defendant LAWRENCE EDWARD KEMBLE intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

259.    Defendant LAWRENCE EDWARD KEMBLE intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

260.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant LAWRENCE EDWARD KEMBLE will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

261.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant LAWRENCE EDWARD KEMBLE, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant LAWRENCE EDWARD KEMBLE for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

## COUNT XXVIII
## CAUSE OF ACTION AGAINST LATCHMAN KALADEEN

**Sex Trafficking of Children 18 USC 1591 and 1595**

262.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

263.    18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

"Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, …in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

264.    18.U.S.C. Section 1595 (Civil Remedy) provides that:

"An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

265.    That between November 2016 and May 17, 2017, and upon information and belief on or about March 12, 2017, Defendant LATCHMAN KALADEEN, engaged, perpetrated, and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant LATCHMAN KALADEEN for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

**COUNT XXIX**
**CAUSE OF ACTION AGAINST LATCHMAN KALADEEN**

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

266.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

71

267.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

268.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

269.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

270.    That between November 2016 and May 17, 2017, and upon information and belief on or about March 12, 2017, Defendant LATCHMAN KALADEEN intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

271.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant LATCHMAN KALADEEN for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

**COUNT XXX**
**CAUSE OF ACTION AGAINST LATCHMAN KALADEEN**

**Intentional Infliction of Mental Distress**

272.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

273.    Defendant LATCHMAN KALADEEN intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

274.    Defendant LATCHMAN KALADEEN intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

275.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant LATCHMAN KALADEEN will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

276.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant LATCHMAN KALADEEN, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant LATCHMAN KALADEEN for the intentional infliction of emotional distress and demands,

compensatory damages, punitive damages, attorney's fees, and costs and for any and all

other relief as is just und ether premises.

## COUNT XXXI
## CAUSE OF ACTION AGAINST MATTHEW CHRISTOPHER DOYLE

**Sex Trafficking of Children 18 USC 1591 and 1595**

277.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as

if fully set out herein.

278.    18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud,

or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of
> value, from participating in a venture which has engaged in an act described
> in violation of paragraph (1), knowing, or, …in reckless disregard of the fact,
> that means of force, fraud, coercion described in subsection (e) (2), or any
> combination of such means will be used to cause the person to engage in a
> commercial sex act, or that the person has not attained the age of 18 years
> and will be caused to engage in a commercial sex act, shall be punished as
> provided in subsection (b)."

279.    18.U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil
> action against the perpetrator (or whoever knowingly benefits, or attempts or
> conspires to benefit, financially or by receiving anything of value from
> participation in a venture which that person knew or should have known has
> engaged in an act in violation of this chapter) in an appropriate district court
> of the United States and may recover damages and reasonable attorney's
> fees."

280.    That between November 2016 and May 17, 2017, and upon information and

belief on or about March 22, 2017, Defendant MATTHEW CHRISTOPHER DOYLE,

engaged, perpetrated and participated in commercial sex acts with the Plaintiff, a minor

under the age of 18, in violation of 18 U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant MATTHEW CHRISTOPHER DOYLE for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XXXII
## CAUSE OF ACTION AGAINST MATTHEW CHRISTOPHER DOYLE

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

281.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

282.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

283.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

284.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in

any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

285.    That between November 2016 and May 17, 2017, and upon information and belief on or about March 22, 2017, Defendant MATTHEW CHRISTOPHER DOYLE intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

286.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant MATTHEW CHRISTOPHER DOYLE for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XXXIII
## CAUSE OF ACTION AGAINST MATTHEW CHRISTOPHER DOYLE

**Intentional Infliction of Mental Distress**

287.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

288.    Defendant MATTHEW CHRISTOPHER DOYLE intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

76

289.   Defendant MATTHEW CHRISTOPHER DOYLE intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

290.   The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant MATTHEW CHRISTOPHER DOYLE will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

300.   As a direct and proximate result of being sex-trafficked, raped and battered by Defendant MATTHEW CHRISTOPHER DOYLE, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant MATTHEW CHRISTOPHER DOYLE for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

### COUNT XXXIV
### CAUSE OF ACTION AGAINST JASON MICHAEL RAULERSON

**Sex Trafficking of Children 18 USC 1591 and 1595**

301.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

302. 18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, …in reckless disregard of the fact,

that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

303.  18.U.S.C. Section 1595 (Civil Remedy) provides that:

"An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

304.  That between November 2016 and May 17, 2017, and upon information and belief on or about January 11, 2017, Defendant JASON MICHAEL RAULERSON, engaged, perpetrated and participated in commercial sex acts with the Plaintiff, a minor under the age of 18, in violation of 18 U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant JASON MICHAEL RAULERSON for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

**COUNT XXXV**
**CAUSE OF ACTION AGAINST JASON MICHAEL RAULERSON**

**Battery. F.S. 784.03 and 772.102(1)(a)(14)**

305.  Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

306.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

307.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

308.    Florida Statutes 772.104 (2) provides that "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

309.    That between November 2016 and May 17, 2017, and upon information and belief on or about January 11, 2017, Defendant JASON MICHAEL RAULERSON intentionally touched the Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to the Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases and other injuries.

310.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society and justifies the imposition of punitive damages.

79

**WHEREFORE**, Plaintiff demands judgment against Defendant JASON MICHAEL RAULERSON for compensatory damages, interest, costs, attorney's fees and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

**COUNT XXXVI**
**CAUSE OF ACTION AGAINST JASON MICHAEL RAULERSON**

**Intentional Infliction of Mental Distress**

311.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 105 as if fully set out herein.

312.    Defendant JASON MICHAEL RAULERSON intentionally engaged in illegal sexual activity with a minor, the Plaintiff.

313.    Defendant JASON MICHAEL RAULERSON intentionally and/or recklessly engaged in the sex-trafficking of the Plaintiff.

314.    The Plaintiff, a victim of sex-trafficking, repeated rapes, being sold for sex and used for sex by men, including the Defendant JASON MICHAEL RAULERSON will, and in this case did suffer physical injuries including sexually transmitted diseases and severe emotional distress

315.    As a direct and proximate result of being sex-trafficked, raped and battered by Defendant JASON MICHAEL RAULERSON, Plaintiff suffered severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant JASON MICHAEL RAULERSON for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just und ether premises.

## COUNT XXXVII

## Sex trafficking of Children under 18 U.S.C. 1591 and 1595 against Choice Hotels International

316. Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

317. On or about March 3, April 7, and May 12, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Shawn Christopher Henson in rooms located at the Quality Inn at 1125 North Young Blvd, Chiefland, Florida.

318. The Quality Inn located at 1125 North Young Blvd, Chiefland, Florida is a franchise of Defendant Choice which benefitted financially from the sex trafficking occurring on their franchisee's premises by virtue of receiving franchise fees and other financial benefits.

319. By allowing, promoting, or ignoring sex-trafficking on the premises of the Quality Inn, Defendant Choice participated in the sex-trafficking venture that they knew of should have known was illegal, immoral, and contributed to, caused and allowed the injuries to the Plaintiff as enumerated below.

81

320.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

**WHEREFORE**, Plaintiff demands judgment against Defendant Choice for the enumerated damages outlined below and for any and all other relief as is just under the premises.

## COUNT XXXVIII

**Negligent Training, Supervision, and Management against Choice**

321.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

322.    As set out in detail above, Defendant Choice franchised the Quality Inn which was the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

323.    Defendant Choice had a duty to properly train, supervise and manage its franchisees and their managers and employees about the warning signs, red flags and other indications of sex trafficking or prostitution going on at their location.

324.    Defendant Choice failed to train, supervise, or manage or failed to properly train manage or supervise the employees at the Quality Inn location named above.

325.    As a direct and proximate result of the failure to train, manager or supervise or properly train, manage or supervise the management and staff at the Quality Inn, Plaintiff

suffered repeated rapes and sexual assaults, battery, physical and psychological and emotional harm.

WHEREFORE, Plaintiff demands judgment against Defendant CHOICE, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XXXIX

**Sex Trafficking of Children 18 USC 1591 and 1595 against Wyndham Hotels and Resorts**

326.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

327.    On or about April 7, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Shawn Christopher Henson in rooms located at the Days Inn at 809 NW 21st Avenue, Chiefland, Florida.

328.    The Days Inn located at 809 NW 21st Avenue, Chiefland, Florida is a franchise of Wyndham which benefitted financially from the sex trafficking occurring on their premises by virtue of receiving franchise fees and other financial benefits.

329.    By allowing, promoting, or ignoring sex-trafficking on the premises of the Days Inn, Defendant Wyndham participated in the sex-trafficking venture that they knew

or should have known was illegal, immoral, and contributed to, caused and allowed the injuries to the Plaintiff as enumerated below.

330.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

**WHEREFORE,** Plaintiff demands judgment against Defendant Wyndham for the enumerated damages outlined below and for any and all other relief as is just under the premises.

## COUNT XXXX

**Negligent Training, Supervision and Management against Wyndham**

331.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

332.    As set out in detail above, Defendant Wyndham franchised the Days Inn which was the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

333.    Defendant Wyndham had a duty to properly train, supervise and manage its franchisees and their managers and employees about the warning signs, red flags and other indications of sex trafficking or prostitution going on at their location.

334.    Defendant Wyndham failed to train, supervise, or manage or failed to properly train manage or supervise the employees at the Days Inn location named above.

335.   As a direct and proximate result of the failure to train, manager or supervise or properly train, manage or supervise the management and staff at the Days Inn, Plaintiff suffered repeated rapes and sexual assaults, battery, physical and psychological and emotional harm.

WHEREFORE, Plaintiff demands judgment against Defendant WYNDHAM, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XXXXI

**Sex Trafficking of Children 18 USC 1591 and 1595 against Holiday Hospitality Franchising, LLC (HHF)**

336.   Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

337.   On or about February 5, 2017, Plaintiff was sex-trafficked and prostituted to Defendant Luigi Barile in rooms located at the Holiday Inn & Suites Ocala Conference Center, 3600 SW 38th Avenue, Ocala, Florida.

338.   The Holiday Inn & Suites Ocala Conference Center, 3600 SW 38th Avenue, Ocala Florida is a franchisee of HHF, which benefitted financially from the sex trafficking occurring on their premises by virtue of receiving franchise fees and other financial benefits.

339.    By allowing, promoting, or ignoring sex trafficking on the premises of the Holiday Inn & Suites Ocala Conference Center, Defendant HHF participated in the sex-trafficking venture that they knew or should have known was illegal, immoral and contributed to, caused and allowed the injuries to the Plaintiff as enumerated below.

340.    Pursuant to 18 U.S.C. 1595 (a), Defendant is liable for damages and reasonable attorney's fees for violation of 18 USC 1591.

WHEREFORE, Plaintiff demands judgment against Defendant HHF for the enumerated damages outlined below and for any and all other relief as is just under the premises.

## COUNT XXXXII

**Negligent Training, Supervision and Management against HHF**

341.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 105 as if fully set out herein.

342.    As set out in detail above, Defendant HHF franchised the Holiday Inn which was the facility used by the other Defendants to carry out the sex-trafficking of the Plaintiff.

343.    Defendant HHF had a duty to properly train, supervise, and manage its franchisees and their managers and employees about the warning signs, red flags, and other indications of sex trafficking or prostitution going on at their location.

344.    Defendant HHF failed to train, supervise, or manage or failed to properly train manage or supervise the employees at the Holiday Inn location named above.

345.    As a direct and proximate result of the failure to train, manager or supervise or properly train, manage or supervise the management and staff at the Holiday Inn, Plaintiff suffered repeated rapes and sexual assaults, battery, physical and psychological and emotional harm.

WHEREFORE, Plaintiff demands judgment against Defendant HHF, for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against each Defendant in excess of $75,000.00 as follows:

a.  All available compensatory damages for the described losses with respect to each cause of action;

b.  Past and future medical expenses, as well as the costs associated with past and future life care;

c.  Past and future mental distress;

d.  Consequential and/or special damages;

e.  All available economic damages, including without limitation, conscious pain and suffering, past, present, and future injuries, physical injuries, emotional/mental and psychiatric/psychologic injuries, and loss of enjoyment of life;

f.  Disgorgement of profits obtained through unjust enrichment;

g.  Restitution;

h.  Reasonable and recoverable attorneys fees as allowed by TVPRA;

i.  Punitive damages with respect to each cause of action;

j.  Costs of this action;

k.  Pre-judgment and all other interest recoverable.

### JURY DEMAND

Plaintiff requests a jury trial as to all counts of her Complaint.

### VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged are true to the best of my knowledge and belief.

I.H.

Dated: 9/6/24

The Law Offices of Travis R. Walker, P.A.

By: _____
Travis R. Walker, Esquire
Florida Bar No. 36693
1100 SE Federal Highway
Stuart Florida 34494
(772) 708-0952
travis@traviswalkerlaw.com
service@traviswalkerlaw.com
jim.oster@traviswalkerlaw.com