## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JANE DOE, I.H., an individual,

    Plaintiff,

    v.

SALESFORCE;
BACKPAGE.COM, LLC, et al.

    Defendants.

Case No. 8:24-cv-01678-SDM-NHA

## CHOICE HOTELS INTERNATIONAL, INC.'S
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
## AND MEMORANDUM IN SUPPORT

Defendant Choice Hotels International, Inc. ("Choice") respectfully requests, pursuant to Federal Rule of Civil Procedure 12(b)(6), that the Court dismiss with prejudice Plaintiff's First Amended Complaint (ECF No. 14, "Complaint" or "Compl."). A Memorandum of Law in support of this Motion is incorporated herein.

## INTRODUCTION

Plaintiff claims that on three days (March 3, April 7, and May 12, 2017) she was "trafficked and prostituted" by her mother, Kristina Hughes, to Defendant Shawn Christopher Henson at a hotel owned and operated by Defendant GOSAI 9, LLC ("GOSAI"). *See, e.g.*, Compl. ¶¶ 1, 14, 317. Plaintiff admits that Choice's only connection to her allegations is as an alleged franchisor of one of the GOSAI-owned and operated properties. *Id.* at ¶ 318 ("The Quality Inn located at 1125 North Young Blvd, Chiefland, Florida").

Recognizing Choice's incredibly tangential connection to her allegations, she constructs her liability claims by claiming Choice was "complicit" in her alleged trafficking. *Id.* at ¶ 71 (Subheading "D"). Fatally, for her claims, neither of Plaintiff's Trafficking Victims Protection Reauthorization Act ("TVPRA") claims provide liability for those "complicit" in trafficking. Instead, Plaintiff's "perpetrator claim," brought under 18 U.S.C. 1591, requires allegations that Choice criminally violated the TVPRA, and her "participant" (or "beneficiary") claim, brought under 18 U.S.C. 1595, requires plausibly pleading Choice's "participation in a venture" that Choice actually or constructively knew caused Plaintiff's trafficking. The Complaint here fails to plausibly allege either.

Significantly, Plaintiff has not alleged that Choice ever knew about Plaintiff or her alleged traffickers, much less encountered them. No viable claim exists by which Choice can be held liable for what it did not know and could not prevent. Both the Eleventh Circuit and courts through the country have rejected far more robust pleadings than Plaintiff's.[1]

---

[1] *See, e.g.*, *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) (affirming the dismissal of four separate lawsuits against franchisors); *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. 2024) (affirming the dismissal of claims against an operator of a hotel, a party far closer to alleged trafficking than a franchisor); *Jane Doe (G.N.C.) v. Uniquest Hospitality, LLC*, No. 23-cv-7980 (PKC), 2024 WL 4149251, at *1 (S.D.N.Y. Sept. 11, 2024); *K.O. v. G6 Hosp., LLC*, --- F. Supp. 3d ---, Case No. 22-11450, 2024 WL 1396269, at * (E.D. Mich. Mar. 31, 2024); *Doe (A.S.) v. Wyndham Hotels & Resorts*, Case No. 6:23-cv-00033-C, ECF No. 67 (N.D. Tex. June 10, 2024); *Doe v. Wyndham Hotels & Resorts*, Case No. 8:23-cv-01554-JVS (JDEx), 2024 WL 2104596 (C.D. Cal. Feb. 28, 2024); *B.J. v. G6 Hosp., LLC, et al.*, Case No.: 22-cv-03765, 2023 WL 6120682 (N.D. Cal. Sept. 18, 2023); *A.B. v. Extended Stay Am. Inc.*, No. 3:22-CV-05939-DGE, 2023 WL 5951390 (W.D. Wash. Sept. 13, 2023); *J.K. v. Ramada Worldwide, Inc.*, Civil Action File No. 1:23-cv-108-TWT, 2023 WL 5621913 (N.D. Ga. Aug. 30, 2023); *K.M. v. CPA Hotels of Atlanta, LLC*, Civil Action File No. 1:23-cv-190-TWT, 2023 WL 5747490 (N.D. Ga. Ag. 30, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, Case No. 2:22-cv- 646, 2023 *(footnote continued on following page …)*

2

Plaintiff's common law negligence claim for failure to properly train, supervise, and manage a property Choice never operated or owned is equally flawed. It lacks any plausible allegations as to duty, breach, or proximate cause and exemplifies the barebones copying and pasting of legal standards that *Twombly* and *Iqbal* rejected.

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Colon v. Bur. Of Alcohol*, No: 8:23-cv-223, 2024 WL 1050581, at *2 (M.D. Fla. Mar. 11, 2024). The tenet that a court should accept factually allegations as true is "inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy the pleading requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation

WL 5510090 (M.D. Fla. Aug. 25, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, Case No. 2:22-cv-647, 2023 WL 5510266 (M.D. Fla. Aug. 25, 2023); *A.D. v. Choice Hotels Int'l, Inc., et al.*, Case No. 2:22-cv-648, 2023 WL 5510267 (M.D. Fla. Aug. 25, 2023); *A.D. v. Marriott Int'l, Inc.*, Case No. 2:22-cv-644, 2023 WL 5510270 (M.D. Fla. Aug. 25, 2023); *A.D. v. Marriott Int'l, Inc.*, Case No. 2:22-cv-645, 2023 WL 5510268 (M.D. Fla. Aug. 25, 2023); *Lundstrom v. Holiday Hosp. Franchising, LLC*, Case No. 1:22-cv-056, 2023 WL 4424725 (D.N.D. May 22, 2023); *L.H. v. Marriott Int'l Inc.*, No. 21-22894-CIV, 2022 WL 1619637 (S.D. Fla. May 23, 2022); *A.B. v. Wyndham Hotels & Resorts, Inc.*, No. 3:19-cv-01992-IM, 2021 WL 1235241 (D. Or. Mar. 31, 2021); *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-5016, 2021 WL 1186333 (S.D. Tex. Mar. 30, 2021); *J.L. v. Best Western Int'l Inc.*, No. 19-cv-03713-PAB-STV, 2021 WL 719853 (D. Colo. Feb. 24, 2021); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697 (E.D. Mich. 2020); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020); *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214 (N.D. Cal. July 30, 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020); *C.K. v. Wyndham Hotels & Resorts, Inc.*, No. 3:19-cv-1412-J-34MCR, 2020 WL 5523849 (M.D. Fla. July 7, 2020); *J.C. v. Choice Int'l*, No. 20-cv-00155-WHO, 2020 WL 3035794 (N.D. Cal. June 5, 2020); *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-CV-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020), *aff'd sub nom. Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021).

omitted). In other words, the allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

## ARGUMENT

Plaintiff's Complaint should be dismissed for three sets of reasons. First, it is an impermissible "shotgun" pleading, which commingles allegations against Defendants to a degree that frustrates comprehension of her allegations. Second, Plaintiff's TVPRA count leaves unclear whether it intends to bring a perpetrator claim, a participant claim, or both. Regardless, it fails to plead key elements of both types of claims and her theories of liability have already been soundly rejected by the Eleventh Circuit. Third, her negligence claim is also invalid, as she does not plausibly plead any of the three necessary elements: duty, breach, or causation.

### A. Plaintiff's shotgun pleading is vague, conclusory, and does not provide sufficient notice of Plaintiff's claims against Choice.

Plaintiff's Complaint is lengthy, "giving the superficial appearance of a pleading likely to contain detailed allegations of liability on the part of each defendant." *Jane Doe (G.N.C.) v. Uniquest Hospitality, LLC*, No. 23-cv-7980 (PKC), 2024 WL 4149251, at *1 (S.D.N.Y. Sept. 11, 2024). "But the pleading repeatedly blurs lines between defendants, lumping them under groupings, like the ['Hotel Defendants'] or the ['Branded Hotels']," opting to "make[] . . . sweeping collective allegations against all

4

[the] defendants." *Id.* As a result, the Complaint is replete with internally incoherent accusations levied sometimes, without apparent reason, against "Defendants" as a whole and, at other times, against select groups of other defendants, again without clear reason. *Compare* Compl. ¶ 14 (identifying the "Hotel Defendants"); *id.* ¶ 18 (identifying the "Branded Hotels" Defendants) *to id.* ¶ 29 ("Each Defendant, as a 'perpetrator,' committed violations of . . . §1595(a) . . . .").

Even if Plaintiff's allegations were not contradictory (and they are), their failure to distinguish among Defendants amounts to "shotgun pleading," a practice that is prohibited in this Circuit as inherently wasteful and unmanageable. *See Weiland v. Palm City Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015); *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366–67 (11th Cir. 1996). Plaintiff's gamesmanship is exacerbated by her failure to advance clear *factual* assertions that support her conclusory allegations, especially with respect to those few specific to Choice. *See, e.g.*, Compl. ¶¶ 101–02.[2]

## B. Choice is not liable under the TVPRA.

Out of an abundance of caution, Choice assumes Plaintiff intends to pursue two distinct theories of liability under the TVPRA: perpetrator liability—*i.e.*, that Choice directly violated the criminal statute—and participant / beneficiary liability—*i.e.*, that Choice participated and benefited from involvement in a venture that violated the

---

[2] Generally, the appropriate relief in such circumstances is to dismiss while affording the plaintiff an opportunity to amend. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). As Choice will show below, such an opportunity is futile given the significant errors which plague the substance of her Complaint.

criminal statute. Under either theory, Plaintiff fails to articulate any facts to support the statutory elements and her theories of liability contradict the black letter law of this Circuit.

Under 18 U.S.C. § 1595, a victim of an offense under § 1591 may bring either: (i) a "perpetrator claim" against one who directly violates § 1591 (*e.g.*, a criminal trafficker); or (ii) a "participant" (or "beneficiary") claim against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a); *see Treminio v. Crowley Maritime Corp.*, 707 F. Supp. 3d 1234, 1244 (M.D. Fla. 2023) (explaining difference between "perpetrator" and "participant"/"beneficiary" liability).[3] Plaintiff appears to reference both statutes in her Complaint at various points, but neglects to explain which applies to her TVPRA claim against Choice. *E.g.*, Compl. ¶ 319 (by "allowing, promoting, or ignoring" … Choice participated" in a "trafficking venture that they knew of [*sic*] should have known" violated § 1591).

Both types of TVPRA claims carry a heavy burden. For a perpetrator claim, Plaintiff must plausibly allege that Choice was an actual criminal trafficker under § 1591. *See* 18 U.S.C. §§ 1591(a), 1595(a); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552 (7th Cir. 2023) (identifying a "street-level trafficker" as a perpetrator). This

---

[3] Some courts, such as the Eleventh Circuit, refer to this type of claim as a "beneficiary claim," while others, such as the Seventh Circuit, call it a "participant claim." Choice adopts the latter term.

requires direct participation in and actual knowledge (or reckless disregard) of Plaintiff's own trafficking. *See A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-120, 2020 WL 8674205, at *2 & n. 1 (E.D. Va. July 22, 2020). Such a claim "targets those who participate in sex trafficking; it does not target [those] who turn a blind eye to the source of their financial sponsorship." *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016).

In contrast, a participant claim must plausibly allege that the defendant: "(1) knowingly benefitted (2) from participating in a venture; (3) that venture violated the TVPRA as to the [plaintiff]; and (4) the franchisors knew or should have known that the venture violated the TVPRA as to the [plaintiff]." *Jane Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021). Consistent with this burden, it is insufficient for Plaintiff to allege that Choice observed, or failed to prevent, Plaintiff's alleged trafficking, much less trafficking in general. *See id.* at 727 ("observing something [i.e., sex trafficking] is not the same as participating in it"). As one Court in this Circuit explained, "[t]he statutory text speaks in singular terms," alleging "knowledge or willful blindness of a general sex traffic problem" is insufficient. *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). This standard fits within a long common law tradition requiring a causal link between a defendant's wrongdoing and plaintiff's injuries. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 485–93 (2023). No such causation is alleged here and Plaintiff's theory would require this Court to find that the TVPRA is akin to strict liability–a finding completely unsupported by the statutory history.

1.    **Plaintiff completely fails to plausibly plead that Choice acted as a criminal "perpetrator" of trafficking.**

Plaintiff's ambiguous and vague Complaint (*see, e.g.*, Compl. ¶ 319) likely did not intend to name Choice as a perpetrator. Perpetrator liability requires direct, knowing participation in criminal sex trafficking. *See* 18 U.S.C. § 1591(a), (e)(4)[4]; *see also Afyare*, 632 F. App'x at 286; *Treminio*, 707 F. Supp. 3d at 1244. "Mere association with sex traffickers is insufficient absent some knowing 'participation' in the form of assistance, support or facilitation." *Does No. 1–6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022).

Plaintiff makes no effort at all to allege any such facts regarding Choice. Plaintiff simply asserts—with no explanation or clarification—that Choice "allow[ed], promot[ed], or ignor[ed]" trafficking activity on the hotel premises. Compl. ¶ 319. Even if such conclusory allegation were assumed to be true, it fails to plausibly allege a criminal sex trafficking venture involving Choice. *See Treminio*, 707 F. Supp. 3d at 1244 (trafficking requires that the defendant "knowingly 'recruit[ed], entice[d], harbor[ed], transport[ed], provid[ed], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed] by any means a person'" (citation omitted)). Nor does it state that Choice knew of (or recklessly disregarded) Plaintiff's age. *See Doe v. Grindr, Inc.*, 709 F. Supp. 3d 1047, 1056 (C.D. Cal. 2023) (knowledge or reckless disregard of

---

[4] *See* 18 U.S.C. § 1591(a), (e)(4) (requiring that the defendant "knowingly . . . harbor[ed] . . . [a person] . . . or benefit[ed] from participation in a venture"—defined as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)" against a person—"knowing or, in reckless disregard of the fact[] that [force, fraud, or threats] will be used to cause the person to engage in a commercial sex act . . . or that the person has not attained the age of 18 years").

plaintiff's age is necessary to make out a perpetrator claim). Plaintiff never alleges anyone from Choice was present at the hotel while Plaintiff was there, much less that Choice had a reasonable opportunity to observe her.[5]

### 2. Plaintiff fails to plausibly allege Choice's liability as a "participant" in a "venture" that criminally violated § 1591.

Plaintiff also fails to plausibly plead a TVPRA participant claim against Choice. *See Red Roof*, 21 F.4th at 719; *see* Compl. ¶¶ 319–20.[6]

### a. Plaintiff fails to plausibly allege that Choice "participated" in a "venture" which criminally violated § 1591 as to her.

A key element of a participant claim is, of course, "participation in a venture." 18 U.S.C. § 1595. This element can be broken down into two components: the "venture" and "participation" in that venture. As to the first, the Eleventh Circuit has held that a "'venture' is an undertaking or enterprise involving risk and potential profit." *Id.* at 724.[7] Within the TVPRA context, the relevant venture must specifically be the venture which committed a criminal trafficking violation against the plaintiff. *See id.* at

---

[5] Plaintiff also asserts that Choice "knew of [*sic*] should have known" that the unspecified "trafficking venture" in which Choice allegedly participated was "illegal, immoral, and" caused Plaintiff's injuries. *Id.* But this too does not state knowing participation in trafficking; or knowing assistance to, support of, or facilitation of a trafficking venture; or knowledge (or reckless disregard) of Plaintiff's age, as is required. *See Afyare*, 632 F. App'x at 283.

[6] *See Red Roof*, 21 F.4th at 719 ("[A] plaintiff must plausibly allege that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff").

[7] A "venture" is generally defined as an agreement made with a common purpose. *See Venture*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("[a]n undertaking that involves risk; esp., a speculative commercial enterprise").

726. In turn, "'[p]articipation' means 'taking part or sharing in something,'" "beyond an arms-length exchange with the abuser." *Doe #1 v. Apply, Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) (citation omitted); *accord Salesforce.com*, 76 F.4th at 562; *accord Red Roof*, 21 F.4th at 724–25. Thus, reading both components together, the court must "determine whether the [Plaintiff] plausibly alleged that the franchisors took part in the common undertaking of sex trafficking" with the other alleged venture participants. *Red Roof*, 21 F.4th at 726.

Plaintiff's allegations fail to state anything of the sort. Plaintiff is clear, as to Choice, she intends to allege a "sex-trafficking venture." *See* Compl. ¶¶ 318–19. Yet, her venture allegations are non-existent or conclusory at best. *See id.* at ¶ 114 (compare to her allegations regarding the venture alleged against other defendants: "Backpage participated in a venture with, among others, Salesforce, and Plaintiff's traffickers."); *see also id.* at ¶¶ 109, 112, 115. Indeed, the *only* relationship which Choice is alleged to have had is with GOSAI. *See id.* at ¶ 16. Plaintiff fails to allege that the contractual franchising relationship is one that criminally violated § 1591 of the TVPRA, much less as to Plaintiff herself. *See Red Roof*, 21 F.4th at 726–27. In short, Plaintiff does not allege this that the legal business franchising venture "committed one of th[e] crimes against [her]." *Id.* at 725.

Notably, Plaintiff does not identify even a single direct link between Choice and her various alleged traffickers, whether her mother, Compl. ¶ 34, other unnamed traffickers, *id.* at ¶ 40, or the relevant "john," *id.* at ¶ 317. Supposing that these

individuals did form part of some unspecified venture, nothing in the Complaint indicates that Choice had any interaction with them, and, of course, "there can be no participation in a venture unless there is some 'interaction with that venture.'" *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-CV-00871, 2024 WL 2186173, at *3 (N.D. Ohio May 15, 2024).

At best, Plaintiff makes a series of hazy allegations that the "*Hotel Defendants*" (which by definition do not include Choice, *see* Compl. ¶ 14) somehow "participated in these criminal activities" by renting rooms to traffickers and "financially benefited from the sex-trafficking occurring on their premises." *Id.* at ¶¶ 77–78, 84. Choice secondarily benefitted from this, she alleges, in the form of franchising and other fees and sales, as well as in some unclear "broader sense," through "the overall profits and profitability of the Brand." *Id.* at ¶¶ 79, 84. Tellingly, then, the entirety of Choice's alleged "participation" is therefore marked by either a lack of contributory action[8] or, as noted above, a lack of any plausible venture whatsoever.[9]

Problematically for Plaintiff, her theory of liability has been twice considered and twice rejected by the Eleventh Circuit. In *Red Roof*, that Court considered whether TVPRA plaintiffs had plausibly alleged a similar, though far more detailed, participation claim against several hotel franchisors. *See* 21 F.4th at 726. The *Red Roof* plaintiffs

---

[8] *See* Compl. ¶ 72 (asserting that Plaintiff was subjected to specific legal crimes by others while on the hotel premises); *id.* at ¶ 74 (asserting Choice did not prevent or attempt to prevent Plaintiff's trafficking at the hotel); *id.* at 319 (accusing Choice of "allowing, promoting, or ignoring" trafficking).

[9] *See* Compl. ¶ 319 (framing venture as "the sex-trafficking venture," without elaboration as to participants, purpose, scope, time frame, or any other such information).

claimed that those franchisors were "'inextricably connected to the renting of rooms'" and had "financially benefitted from renting [those] rooms to the [plaintiffs'] sex traffickers." *Id.* at 726–27. The Eleventh Circuit rejected those allegations, as they "d[id] nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—i.e., the alleged sex trafficking ventures." *Id.* at 727. Similarly, allegations that the franchisors "participated" by sending inspectors who would have observed trafficking activity or receiving reviews mentioning such activity were also insufficient. As the Court of Appeals explained, "observing something is not the same as participating in it." *Id.*

The Eleventh Circuit would later apply *Red Roof*'s reasoning regarding franchisor liability to dismiss a participant claim against an independent hotel owner/operator in *K.H. v. Riti, Inc.* There, the plaintiff alleged a venture between the owner/operator and the trafficker in which (1) the owner/operator should have known that trafficking was occurring "based on online reviews, police reports, and visible indicators," but (2) "continued to engage in a hotel business relationship and collect rental revenue from [the trafficker] for approximately *four years*." *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (emphasis added). Even with that years-long pattern of conduct—as compared to the three instances of trafficking alleged here, *see* Compl. ¶ 317 (March 3, April 7, and May 12, 2017)—the court found that plaintiff had failed to state claim. The Court of Appeals found that *Red Roof*'s holding regarding franchisors applied equally to the owner/operator: "[A]s we made clear in *Red Roof*, allegations of financial benefit alone are not sufficient to establish that the defendant

participated in a sex trafficking venture and observing signs of sex trafficking 'is not the same as participating in it.'" *Riti,* 2024 WL 505063, at *4 (quoting *Red Roof,* 21 F.4th at 727). Taken together, *Red Roof* and *Riti* bar Plaintiff's TVPRA claim twice over—first at the franchisee level and then against with respect to Choice itself.[10]

In the end, Plaintiff's real claim is, to borrow her words, that Choice "failed to prevent or endeavor to prevent [her] from being trafficked." Compl. ¶ 74. But court after court has rejected such a theory. *See, e.g., A.D. v. Marriott Int'l, Inc.,* No. 22-cv-645, 2023 WL 2991042, at *4 (M.D. Fla. Apr. 18, 2023) ("The Complaint . . . fault[s] Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture."); *C.C. v. H.K. Grp. of Co., Inc.,* No. 1:21-CV-1345, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 2022) (holding that a hotel's failure to identify and prevent trafficking is not tantamount to "participation in a venture" under the TVPRA).[11]

These rejections make good sense. To countenance a claim like Plaintiff's would entail rewriting the TVPRA to hold hotel franchisors—"several steps removed from daily hotel operations," *R.C. v. Choice Hotels Int'l, Inc.,* No. 23-cv-00872, 2024 WL 1443412, at *3 (N.D. Ohio Apr. 2, 2024)—liable for the criminal activities of third-parties that they cannot observe, much less control. Such an outcome would erase the word "participation" from the statute and instead impose a strict liability regime

---

[10] By contrast, a properly pleaded TVPRA venture involves far more detailed allegations. *See, e.g., id.* at *3 (discussing *Ricchio v. McLean,* 853 F.3d 553 (1st Cir. 2017)).

[11] *See also A.B. v. Wyndham Hotels & Resorts, Inc.,* 532 F. Supp. 3d 1018, 1027 (D. Or. 2021); *B.M. v. Wyndham Hotels & Resorts, Inc.,* No. 20-cv-00656, 2020 WL 4368214, at *7 (N.D. Cal. July 30, 2020); *A.B. v. Marriott Int'l, Inc.,* 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020).

requiring no showing of an *actus reus* or causation. But, as the Supreme Court recently recognized in a similar context, such a result would run counter to a long common law tradition against punishing *in*action.[12]  Congress could perhaps have enacted a statute to Plaintiff's liking, but it did not. The Court should decline Plaintiff's request "to rewrite the statute that Congress has enacted." *Puerto Rico v. Franklin Cal. Tax–Free Trust,* 579 U.S. 115, 130 (2016) (citation and internal quotation marks omitted).

> **b. Plaintiff fails to allege Choice knew or should have known it was participating in a venture which criminally violated § 1591.**

The TVPRA also requires "that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Red Roof*, 21 F.4th at 719. In other words, Choice must have known that the alleged venture in which it participated carried out Plaintiff's *own* trafficking. *See Treminio*, 707 F. Supp. 3d at 1244.

Once again, Plaintiff's allegations fall far short of this exacting standard. Plaintiff's Complaint lacks any details at all regarding her or her traffickers' interactions with hotel staff (employed by GOSAI), much less with anyone employed by Choice. In the exhibit attached to her original pleading (presumably incorporated by reference in her operative Complaint), she includes the arrest warrant for her "john." *See* Dkt. No. 1, Ex. A, at 14–18. Messages included in that document indicate that it was the "john"

---

[12] *See Twitter, Inc., v. Taamneh*, 143 S. Ct. 1206, 1227 (2023) ("At bottom, then, the claim here rests less on affirmative misconduct and more on an alleged failure to stop [a criminal perpetrator] from using these platforms. But . . . both tort and criminal law have long been leery of imposing aiding-and-abetting liability for mere passive nonfeasance.").

who procured the rooms on the three relevant days.[13]  There are no allegations that GOSAI employees ever encountered Plaintiff or even knew that she was even on the premises. In such circumstances, is impossible to conclude that Choice—a franchisor based in another State, (Compl. ¶ 16), that did not own or operate the hotel—could have even hypothesized, much less known, that Plaintiff was there, much less being trafficked.

Instead of offering details, Plaintiff instead alleges that the "*Hotel Defendants*" (not Choice)—through their employees (not Choice's)—"were aware of and/or should have been aware of several warning signs at their hotels that indicated the presence of sex-trafficking, including as to the Plaintiff." *Id.* at ¶ 82. But *Riti* upheld the dismissal of a complaint containing an identical list of warning signs. *See* 2024 WL 505063, at *1 & nn. 3–4. That is entirely logical, as such "warning signs" "are equally consistent with criminal conduct other than sex trafficking, e.g., prostitution." *B.J. v. G6 Hosp., LLC*, No. 22-CV-03765, 2023 WL 3569979, at *6 (N.D. Cal. May 19, 2023) (finding no "actual or constructive knowledge of . . . participation in a TVPRA-violating venture" when "housekeeping staff observed [plaintiff's] buyers violently attack her" and "witnessed a buyer swiftly depart [plaintiff's] room in a state of complete undress").[14]

---

[13] *See* Dkt. No. 1, Ex. A, at 14 ("I got the room at that Quality Inn here in Chiefland"); *id.* at 15 ("I'm in room 102"); *id.* ("I am in room #112 back of the hotel").

[14] *See also E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. Jan. 4, 2021); *Doe #9 v. Wyndham Hotels & Resorts*, No. 4:19-CV-5016, 2021 WL 1186333, at *2 (S.D. Tex. Mar. 20, 2021); *S.J.*, 473 F. Supp. 3d at 150–51.

More fundamentally, nowhere does Plaintiff explain how Choice could have observed any of this. "To support her direct liability theory, Plaintiff must allege facts showing these Defendants knew or should have known of her trafficking – and she fails to do so in her Complaint." *B.M.*, 2020 WL 4368214, at *6 ("The Complaint fails to allege facts as to *how* Wyndham (the ultimate parent company of the franchisor) and Choice (the franchisor) knew or should have known Plaintiff was being trafficked."). Instead, she simply asserts, without explanation, that "[t]he Branded Hotels are in a unique position of being aware of the use of their franchisee's facilities for illegal conduct including prostitution and sex-trafficking [*sic*]." Compl. ¶ 93. This is precisely the kind of "naked assertion[] devoid of further factual enhancement" that the Supreme Court has admonished against. *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). It fails to even approach the allegations necessary to show actual or constructive knowledge on Choice's part. *Compare A.B. v. Shilo Inn, Salem, LLC*, No. 3:23-cv-00388-IM, 2023 WL 5237714, at *3, *6 (D. Or. Aug. 15, 2023) (observing that while plaintiff pleaded that the hotel had "numerous surveillance cameras throughout the hotel," she "fail[ed] to allege facts to establish that any particular [hotel] employee *witnessed* these signs or was otherwise aware of [her] trafficking").

Having failed to plead that Choice had any knowledge as to her, Plaintiff suggests that Choice's general awareness of the social problem of trafficking somehow also counts as knowledge of her own alleged trafficking. *See* Compl. ¶¶ 101–02. This too has been roundly rejected. *See, e.g.*, *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-cv-00871, 2024 WL 1429114, at *4 (N.D. Ohio Apr. 2, 2024) ("Although Defendants had

general knowledge that sex trafficking afflicts the hotel industry, the Defendants had no contact with [plaintiff's] traffickers and received no specific notice of [plaintiff's] trafficking. Without direct contact, there can be no direct liability."). As one influential decision has explained, "to conclude that franchisors . . . are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'" *S.J.*, 473 F. Supp. 3d at 154.[15] Plaintiff's participant claim can be separately dismissed on this ground.

### c. Plaintiff fails to plausibly allege Choice "knowingly benefitted" from participation in a venture which trafficked her.

In addition to participation and knowledge, the TVPRA requires Plaintiff to allege that Choice "knowingly benefitted" from its participation in the venture which allegedly trafficked her. *See Red Roof*, 21 F.4th at 726 (citing 18 U.S.C. § 1595(a)). Plaintiff alleges, once again in the aggregate, that the "Branded Hotel Defendants" received "franchise and other fees," as well as some poorly explained benefits in the form "overall profits and profitability of the Brand." Compl. ¶ 79.[16] But she does not

---

[15] *See also S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-CV-00871, 2024 WL 277117, at *1 (N.D. Ohio Jan. 25, 2024) ("general knowledge about sex trafficking's prevalence is not enough on its own to show that [a defendant] should have known about [a plaintiff's own] trafficking"); *E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. Jan. 4, 2021) ("General knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff." (citation and internal quotation marks omitted)).

[16] Strangely, Plaintiff also claims that "the Hotel Defendants *and* the Branded Hotel Defendants" also profited from room rental fees, ATM fees, food and beverage sales, and—perplexingly, given her allegations of trafficking at the hotel—increased property values. Compl. ¶ 84. It is unclear from her

*(footnote continued on following page ...)*

explain how Choice's receipt of these fees constitutes "knowingly benefitting" from participation in a venture that caused her trafficking. If said benefits are from some inchoate, unpleaded venture involving her traffickers, Choice has already explained how the Complaint fails to allege facts showing any involvement by Choice in those activities. *See supra* at 9–14. Certainly, it cannot be from the franchising "venture" between Choice and GOSAI—that venture did not traffic Plaintiff. Choice simply "collected a percentage of room rentals from [its] franchisee[]. Nothing more." *S.C.*, 2024 WL 1429114, at *4. Plaintiff's allegations fail to show that Choice "knowingly benefitted" as the TVPRA requires.

### C. Plaintiff's negligence claim is meritless.

Plaintiff's remaining claim against Choice (her thirty-eighth overall) is for "negligent training, supervision, and management." Compl. ¶¶ 321–25. This claim fails at every level. Under Florida law[17], Choice lacked the amorphous and impossible "duty" to prevent trafficking conceived of by Plaintiff. Plaintiff's Complaint is so bereft of details that the claim is difficult to parse, much less plausible. Significantly, Plaintiff fails to bring any claims for agency, vicarious, or other grounds for liability against Choice for the actions of those it did not employ or control.

---

pleading, which, if any, of these various benefits actually flowed to Choice, rather than the franchisee, particularly given that she only alleges three instances of trafficking. *See id.* at ¶ 317.

[17] Though Plaintiff neglects to specify which law applies to her negligence claim, it is clear that Florida law governs. *See Sanchez v. Hobby Lobby Stores, Inc.*, No. 6:21-cv-2150-CEM-LHP, 2023 WL 2403890, at *2 n. 3 (M.D. Fla. Mar. 8, 2023); *see also* Compl. ¶ 1 (Plaintiff is a Florida resident); *id.* at ¶ 16 (relevant hotel is located in Florida); *id.* at ¶ 322 (alleged negligence took place in Florida)

**1. Florida law sets a high bar for negligence claims against franchisors.**

Franchising is a key driver of economic and small business growth both in Florida and across the country. It is therefore unsurprising that Florida law sets a high standard for negligence claims against franchisors based on acts carried out by third-parties within facilities owned or operated by franchisees. In the canonical case of *Mobil Oil Corp. v. Bransford*, the Florida Supreme Court considered a negligence claim brought against Mobil Oil Corporation, which owned a gas station, but leased it to a franchisee. *See* 648 So. 2d 119, 120 (Fla. 1995) (*per curiam*). The plaintiff was a customer who had been attacked by one of franchisee's employees, an individual "who allegedly had a history of assaulting customers." *Id.*

The Florida Supreme Court rejected the plaintiff's negligence claim, explaining that, "[i]n today's world, it is well understood that the mere use of franchise logos and related advertisements does not necessarily indicate that the franchisor has actual or apparent control over any substantial aspect of the franchisee's business or employment decisions." *Id.* at 120. Rather, to make out such a claim would require an agency relationship, such that "the franchisor has directly or apparently participated in some substantial way in directing or managing the acts of franchisee, beyond the mere fact of providing contractual franchise support activities." *Id.*[18] On the facts before it, the Florida Supreme Court ruled that the "prominent use of Mobil symbols and products

---

[18] *See id.* at 121 (apparent agency requires "(a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation").

throughout the station" and "the provision of support activities" fell below "even the minimum level of a 'representation' necessary to create an apparent agency relationship." *Id.*

As subsequent cases have clarified, "the mere use here of a uniform name and logo by the franchisee, and the franchisor's regular and ongoing support and oversight in furtherance of the franchisor's goal of providing standardization of products and services through its independently owned and operated franchisee" do not support that the franchisor has "any actual or apparent control over the franchisee's management, including the hiring and firing of the franchisee's managers and employees, and any of their actions on behalf of the franchisee." *Ferrer v. Jewelry Repair Enters., Inc.*, 310 So. 3d 428, 429 (Fla. 4th D.C.A. 2021); *see also Red Roof*, 21 F.4th at 729 (under Georgia law, franchisor "does not owe a duty to patrons of the franchise" unless "franchisor retains a right to control the day-to-day operations of the franchise").[19] Here, no such allegations or even agency claim is brought against Choice as to GOSAI.[20]

## 2. Plaintiff fails to plausibly plead her negligence claim.

Against this legal background, Plaintiff fails to state a negligence claim against Choice. Under Florida law, "[t]o maintain an action for negligence, a plaintiff must

---

[19] *See also Goldberg v. Casanave*, 513 So. 2d 751, 752 (Fla. 4th D.C.A. 1987) (*per curiam*) (no agency relationship where franchisor "ha[s] neither the right nor the opportunity to supervise the financial activities" of franchisee).

[20] Even in the case of *employees*, rather than franchisees, "[t]he general rule is that an employer cannot be held liable for the tortious or criminal acts of an employee, unless they were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer." *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So.2d 1076, 1078 (Fla. 5th D.C.A. 1985). Plaintiff's claim fails even under that more exacting standard.

establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused the plaintiff damages." *Fla. Dep't of Corr. v. Abril,* 969 So. 2d 201, 204 (Fla. 2007). Plaintiff fails to plausibly plead any duty, any breach, or any causation.

### a. Choice owed no duty to Plaintiff.

A franchisor owes no duty to a franchisee's customer absent the presence of an agency relationship between the franchisor and franchisee. *See Mobil Oil*, 648 So.2d at 121; *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 28 (Fla. 2d D.C.A. 2011 (observing "the general common law rule 'that there is no duty to prevent the misconduct of third persons'" (citing *Michael & Philip, Inc. v. Sierra*, 776 So.2d 294, 297 (Fla. 4th DCA 2000)). Plaintiff pleads nothing to show that Choice "participated in some substantial way in directing or managing the acts of franchisee, beyond the mere fact of providing contractual franchise support activities." *Mobil Oil*, 648 So. 2d at 120. Instead, she advances just three conclusory allegations about the "Hotel Defendants" and "Branded Hotels": "[B]y virtue of th[eir] contractual relationship, the Hotel Defendants obtain the use of the name, brand, good-will, and reputation of the Branded Hotels"; "[t]he Hotel Defendants [] agree to abide by certain standards, procedures, policies, and conduct to maintain their franchise with the Branded Hotels"; and, "[i]n return, the Branded Hotels receive franchise fees, commissions, and other remuneration from the Hotel Defendants." Compl. ¶¶ 87–89.

"[N]othing in [these allegations] goes beyond a typical franchise relationship and into the realm of 'directing or managing' [the franchisee's] business." *Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 637 F. Supp. 2d 1029, 1041 (M.D. Fla. 2009) (no agency

relationship when franchisor allowed franchisee "to use its trade dress and reservation system" and franchisee was required to maintain certain standards, use certain customer and dispute resolution systems, and maintain performance benchmarks). Indeed, all Plaintiff has done is allege, in scattershot fashion, the basic tenets of a franchising relationship. This is simply a "[t]hreadbare recital[]" of a "legal conclusion," *Iqbal*, 556 U.S. at 678, and it plainly fails to show that Choice owed Plaintiff any cognizable duty.

### b. Choice did not breach any duty to Plaintiff.

Even assuming an unidentified duty was owed, Plaintiff fails to plead any kind of breach. Plaintiff's allegations are conclusory and *de minimus*: "Choice failed to train, supervise, or manage or failed to properly train manage [*sic*] or supervise the employees at the [hotel]." Compl. ¶ 324; *see id.* at ¶ 103. It is challenging to conceive of a pleading that better exemplifies the Supreme Court's warning against "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678.

Plaintiff's pleading provides no details on who should have been trained managed, and supervised; when this should have happened; or of what the supposed training, management, and supervision should have consisted. These basic building blocks of such a claim are entirely absent from the Complaint. *See, e.g.*, *Rogers v. Hartford Life & Acc. Ins. Co.*, No. 12–0019–WS–B, 2012 WL 887482, at *5 (S.D. Ala. Mar. 5, 2012) (rejecting that "conclusory allegation of negligent hiring, training or supervision— without any accompanying facts that there was a pattern of abuse or that [defendant] was otherwise on notice of propensities of its employees to engage in tortious behavior toward insureds through fraudulent statements or otherwise, much less that [defendant]

failed to take corrective action—is sufficient to buoy such a claim through the pleadings stage"; collecting other cases).

A complaint does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Yet Plaintiff has arrived with just that—legal conclusions bereft of factual details.

### c. Plaintiff fails to plead proximate causation.

Plaintiff's claim fails for lack of proximate causation. "Under Florida law, a 'harm is "proximate" in a legal sense if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question.'" *Colon v. Twitter, Inc.*, 14 F.4th 1213, 1224 (11th Cir. 2021) (quoting *Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 260 So.3d 977, 982 (Fla. 2018)).

For Plaintiff's claim, that means that she must plead that Choice's purported failure to "train, supervise and manage" GOSAI and GOSAI's employees made it foreseeable that she would be trafficked at the hands of third-party criminals. That is, Plaintiff must allege foreseeability notwithstanding the independent actions of two separate parties: GOSAI and her traffickers. *See Salesforce*, 76 F.4th at 562 ("The franchisor defendants in that case were one step removed from the sex traffickers (i.e., street-level trafficker — > hotel — > hotel franchisor).") Carrying this burden is as challenging as it sounds. *See, e.g.*, *Wometco Theatres Corp. v. Rath*, 123 So.2d 472, 473 (Fla. 3d DCA 1960) ("Mere knowledge that a person may be a child molester is not knowledge that he would become violent, nor is it sufficient knowledge from which the

defendant's employees could have reasonably anticipated violence which would or might result in injury to another patron.").

Remarkably, Plaintiff makes no effort at all to meet this standard. Plaintiff does not claim that her injuries were a foreseeable consequence of Choice's purported negligence, much less allege that they could be foreseeable given the intervening conduct of both GOSAI and Plaintiff's alleged traffickers (as implausible as such an allegation would be). Instead, following her standard approach, Plaintiff flatly asserts that Choice's alleged negligence was the proximate cause of her injuries. *See* Compl. ¶ 325. But "[s]imply repeating the term 'proximate cause' throughout h[er] pleadings fails to satisfy the burden here." *Gargano v. Philip Morris USA, Inc.*, No. 10–24042, 2011 WL 2445869, at *3 (S.D. Fla. June 20, 2011). If *Twombly* and *Iqbal* teach anything, it is "formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The Court should reject Plaintiff's effort to circumvent this instruction.

## CONCLUSION

For all the foregoing reasons, Choice's Motion to Dismiss Plaintiff's Complaint should be granted, all claims asserted against Choice should be dismissed with prejudice, and any other relief this Court deems proper.[21]

Respectfully submitted this 23rd day of September, 2024.

*/s/ Sara M. Turner*
Sara M. Turner (Lead Counsel)

---

[21] Plaintiff has already amended her complaint once. She should not be given another opportunity. Her claims against Choice, where they are discernable, are based on legal theories that have been soundly rejected in this jurisdiction. In such circumstances, "amendment would be futile." *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1014 (11th Cir. 2005) (citation and internal quotation marks omitted).

(*Admitted pro hac*)
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
420 20th Street North, Suite 1400
Birmingham, Alabama 35203
Phone: (205) 328-0480
smturner@bakerdonelson.com

/s/ *Marisa Rosen Dorough*
Marisa Rosen Dorough
Florida Bar No. 73152
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**
200 South Orange Avenue, Suite 2900
Orlando, Florida 32801
Phone: (407) 422-6600
mdorough@bakerdonelson.com

*Counsel for Defendant Choice Hotels International, Inc.*

**CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 3.10(g)**

The undersigned hereby certifies that counsel for Choice conferred with Plaintiff's counsel on September 23, 2024, by telephone and Plaintiff's counsel opposed this motion.

/s/ Sara M. Turner

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was electronically filed through the Court's Electronic Case Filing System (CM/ECF) on September 23, 2024 and notice will thus be sent to all registered parties.

/s/ Sara M. Turner

25