## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JANE DOE, I.H. an individual,

      Plaintiff,

v.                           CASE NO.: 8:24-cv-01678-SDM-NHA

SALESFORCE, et al.,

      Defendants.

_____/

## DEFENDANT WYNDHAM HOTELS & RESORTS, INC.'S
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Wyndham Hotels & Resorts, Inc., incorrectly named as Wyndham Hotels and Resorts, Inc. ("WHR"), by and through undersigned counsel, files this Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 14 ("Amended Complaint")) for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and in support thereof WHR respectfully submits the following Memorandum of Law.

## I.    INTRODUCTION

Plaintiff asserts claims against more than twenty defendants, including a claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), based on allegations that Plaintiff's mother trafficked her at various hotels in Florida between November 2016 and May 2017. As to WHR, the ultimate parent company of various hotel franchisors, Plaintiff alleges that she was trafficked at an independently owned and operated Days Inn guest lodging facility in Chiefland,

Florida on April 7, 2017 (the "Days Inn Facility"). Based on this single instance of alleged trafficking, Plaintiff asserts two causes of action against WHR: (1) Count XXXIX purports to state a claim under Section 1595(a) of the TVPRA; and (2) Count XXXX purports to state a claim for negligence. Plaintiff's Amended Complaint fails to state either claim.

As to the Section 1595(a) claim, Plaintiff alleges that WHR knowingly benefited from participating in a sex trafficking venture that WHR knew or should have known was trafficking Plaintiff by "allowing, promoting, or ignoring sex-trafficking on the premises …" at the franchised Days Inn Facility. ECF No. 14 at ¶ 329. But Plaintiff fails to allege any basis to suggest that WHR knew of, interacted with, or had any involvement whatsoever with Plaintiff or her alleged trafficker. Rather, relying on impermissible shotgun pleading, the crux of the Amended Complaint is that trafficking occurs at hotels and the hospitality industry, including WHR, should have done more to prevent it. That is not the law. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021) ("*Red Roof*"). Plaintiff also fails to state a claim for negligence because, among other reasons, Plaintiff does not (and cannot) establish a duty on the part of WHR to prevent Plaintiff's alleged trafficking at the Days Inn Facility.

## II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff's Amended Complaint begins with a horrific summary of her alleged trafficking—Plaintiff alleges that her mother "pimped her out" when she was a minor, forcing her to engage in sex for money between November 2016 to May 2017 (ECF No. 14 at ¶ 34)—but it offers few, if any, allegations regarding WHR or any particular

hotel. Instead, Plaintiff relies on group pleading, referring to WHR and Defendants Choice Hotels International, Inc. and Holiday Hospitality Franchising, LLC jointly as "Branded Hotels," and Plaintiff identifies three hotels in Florida at which she alleges she was trafficked, including the Days Inn Facility in Chiefland, Florida, that were owned and operated by different entities that Plaintiff refers to as the "Hotel Defendants." *Id.* at ¶¶ 14-18. Plaintiff acknowledges that WHR was a "hotel franchisor" (*id.* at ¶ 15), as opposed to the hotel operator. Plaintiff then attacks the hotel industry, referring broadly to "hotels and motels in general" and "Hotel Defendants and Branded Hotel Defendants" (*id.* at ¶¶ 71-85) without differentiating between them or asserting any specific allegations as to the Days Inn Facility in particular.

As to the "Hotel Defendants"—the owners and operators as opposed to the franchisors or their parent companies—Plaintiff refers to "warning signs" that should have indicated the presence of sex-trafficking. ECF No. 14 at ¶ 82. These purported "warning signs" of trafficking included persons being malnourished, sleep deprived, and having untreated illnesses or injuries; requesting additional housekeeping services, but denying entry; sex paraphernalia in rooms; and paying for the hotel room in "cash, cash substitutes, or prepaid credit cards." *Id.* Plaintiff goes on to allege, implausibly, that the Branded Hotels were somehow complicit in the franchisees' conduct and that they failed to properly train the franchisee's employees. *Id.* at ¶ 100.

Plaintiff offers no specific allegations as to WHR or the Days Inn Facility, alleging only that (1) Plaintiff was trafficked there "[o]n or about April 7, 2017," (2)

3

that the Days Inn Facility "is a franchise of Wyndham which benefitted financially," and (3) that WHR participated in Plaintiff's alleged trafficking during that single one-day period "[b]y allowing, promoting, or ignoring sex-trafficking on the premises of the Days Inn [Facility] . . . ." ECF No. 14 at ¶¶ 327-29. Plaintiff offers nothing more. Plaintiff does not allege that anyone at the Days Inn Facility interacted with her or her alleged trafficker, and she certainly does not offer any facts to suggest how WHR participated in a venture that WHR knew or could, let alone should have known, kept her there on a single day.

## III.    LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Fid. Nat'l Fin., Inc. v. Attachmate Corp.,* No. 3:15-cv-01400-HES-PDB, 2017 WL 3726687, at *1 (M.D. Fla. Mar. 1, 2017) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Courts are not required to accept as true a legal conclusion couched as a factual allegation. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A complaint that provides labels and conclusions or a formulaic recitation of the elements of a cause of action is not adequate to survive a Rule 12(b)(6) motion to dismiss." *Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotations omitted). "A facially plausible claim must allege facts that are more than merely possible." *Id.* "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678. Moreover, a court need not credit allegations made on "information and belief" when deciding a motion to

dismiss. *See, e.g., Mann v. Palmer,* 713 F.3d 1306, 1315 (11th Cir. 2013) (explaining that courts need not accept allegations made "upon information and belief" when deciding motions to dismiss, as they fail to meet Rule 8's plausibility standard).

## IV.    ARGUMENTS AND AUTHORITIES

### A. The Amended Complaint is an impermissible shotgun pleading.

As a threshold matter, the Amended Complaint is an impermissible shotgun pleading that is "flatly forbidden" by the Federal Rules of Civil Procedure. *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1320 (11th Cir. 2015) (internal quotations omitted); *Vibe Micro, Inc. v. Shabanets,* 878 F.3d 1291, 1295 (11th Cir. 2018) ("Courts in the Eleventh Circuit have little tolerance for shotgun pleadings."). Shotgun pleadings are utilized to "confuse the 'enemy,' and the court, so that theories for relief not provided by law . . . can be masked." *Weiland,* 792 F.3d at 1320.

In particular, the Amended Complaint improperly lumps together the so-called Hotel Defendants and Branded Hotels and attributes allegations to them as a group. *See, e.g., Joseph v. Bernstein,* 612 F. App'x 551, 553 (11th Cir. 2015) ("[T]he complaint failed to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure because it indiscriminately grouped all Defendants together without explaining the factual basis for each of the Defendants' liability."); *Brogan v. Volusia Cnty., Florida,* No. 6:17-cv-745-Orl-40KRS, 2018 WL 2359145, at *3 (M.D. Fla. May 24, 2018) ("Where a plaintiff brings claims against multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping'

multiple defendants together are insufficient to permit the defendants, or the Court, to ascertain exactly what plaintiff is claiming.") (internal quotations omitted).

The allegations relating to the alleged sex trafficking that specifically took place at the Days Inn Facility appear in only two of the more than 300 paragraphs in the Amended Complaint. *See* ECF No. 14 at ¶¶ 145, 327. Otherwise, the Amended Complaint relies on allegations made against the Hotel Defendants and Branded Hotels jointly. *See*, *e.g.*, *id.* at ¶¶ 14, 19. Moreover, the Amended Complaint relies on generalizations about the hotel industry. *See*, *e.g.*, *id.* at ¶ 74 ("the Hotel Defendants and Branded Hotel Defendants had knowledge of the prevalence of sexual trafficking in the hotel industry . . ."); *id.* at ¶ 76 (". . . put the Hotel Defendants and Branded Hotel Defendants on notice that there is a likelihood that illegal acts involving sex-trafficking are occurring on their hotel premises"); *id.* at ¶ 77 ("[t]he Hotel Defendants participated in these criminal activities by renting rooms to individuals. . ."); *id.* at ¶ 79 ("[t]he Branded Hotel Defendants benefited financially by receiving franchise and other fees from the Hotel Defendants . . ."); *id.* at ¶ 81 ("[t]he Hotel Defendants and Branded Hotel Defendants knew or should have known that they have a duty to properly train . . . [and] to identify and respond to "red flags" of criminal activity such as sex-trafficking.").

Plaintiff's reliance on group allegations, particularly given the absence of any specific allegations directed to WHR or the Days Inn Facility, deprives WHR of the fair notice to which it is entitled under Rule 8, and the Amended Complaint should be dismissed on this basis. *See, e.g., J.R. v. Extended Stay America, et al.*, No. 3:23-cv-63-

6

HES-JBT, ECF No. 58, at 8 (M.D. Fla. Nov. 8, 2023) (dismissing complaint as an impermissible shotgun pleading as the complaint consisted of group pleading and generalizations about the hotel industry); *Doe (G.N.C.) v. Uniquest Hosp., LLC,* No. 23-cv-7980 (PKC), 2024 WL 4149251, at *5 (S.D.N.Y. Sept. 11, 2024) (dismissing complaint for improper group pleading as the complaint repeatedly blurred the lines between the defendants and lumped the defendants into groups).

### B. The Amended Complaint fails to state a "beneficiary" or "participant" theory of liability.

The TVPRA is a criminal statute which creates a civil right of action for victims of sex trafficking. 18 U.S.C. §§ 1591, 1595(a). Section 1595(a) of the TVPRA provides that:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). Section 1595(a) provides for liability against the perpetrator of the trafficking or a participant who knowingly benefits from the venture responsible for the plaintiff's trafficking. *G.G. v. Salesforce.com, Inc.,* 76 F.4th 544, 553 (7th Cir. 2023). As stated by the Eleventh Circuit Court of Appeals, a "beneficiary" claim under the TVPRA requires well-pled allegations plausibly showing that the defendant "(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the

TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *2 (11th Cir. Feb. 9, 2024) (citing *Red Roof,* 21 F. 4th at 726). In this case, the Amended Complaint fails to state a claim under Section 1595(a) because, among other reasons, it lacks any factual allegations that WHR participated in any "venture," "common undertaking," or "enterprise" that committed trafficking crimes against Plaintiff and also fails to plausibly allege that WHR knew or should have known of any venture that trafficked Plaintiff. *Id.*

> **1.  The Amended Complaint fails to allege that WHR participated in a TVPRA "venture."**

A plaintiff must plausibly allege a defendant's "participation in a venture" with one or more criminal traffickers. *See* 18 U.S.C. § 1595(a). "The ordinary meaning of participate or participation is to take part in or share with others in common or in an association." *Red Roof,* 21 F.4th at 725; *In re Facebook, Inc.,* 625 S.W.3d 80, 96 (Tex. 2021) ("'Participation' typically entails, at a minimum, an overt act in furtherance of the venture."). Consistent with its ordinary usage, "venture" is defined in the TVPRA as "any group of two or more individuals associated in fact, whether or not a legal entity." *Bistline v. Parker,* 918 F.3d 849, 873 (10th Cir. 2019) (quoting 18 U.S.C. § 1591(e)(6)); *Ricchio v. McLean,* 853 F.3d 553, 556 (1st Cir. 2017) (recognizing that a "venture" only exists for purposes of Section 1595(a) where "two or more individuals" are "associated in fact"). Put differently, a "venture" is "an undertaking or enterprise involving risk and potential profit." *Red Roof,* 21 F.4th at 724.

The fact that a defendant provides "common products or services," such as the rental of a hotel room, which is then misused in connection with someone's trafficking is not enough to suggest that the defendant participated in a venture that committed trafficking crimes. *See, e.g., G.G.*, 76 F.4th at 562. The rental of a hotel room does not, by itself, create a "venture" or "common undertaking" between the hotel operator and the hotel guest. *See, e.g., id.* (recognizing "participation in a venture" requires more than providing "common products or services" that happen to be used by a trafficker); *Lawson v. Rubin,* No. 17-CV-6404 (BMC), 2018 WL 2012869, at *14 (E.D.N.Y. Apr. 29, 2018) (dismissing TVPRA claim against the owner of a condominium complex, reasoning that leasing a unit to someone who committed trafficking crimes in their unit was not sufficient); *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352 (11th Cir. 2016) (finding amended complaint was insufficient because it did not plausibly allege vendors "shared a common purpose with Spirit").

The threshold for stating a claim against a hotel brand franchisor—let alone its parent companies—as opposed to a hotel operator, is more difficult. *See G.G.*, 76 F.4th at 562 (noting "[t]he franchisor defendants in that case were one step removed from the sex traffickers (i.e., street-level trafficker → hotel → hotel franchisor)"). Franchisors (and their parent companies) do not own or manage franchised hotels; they license the use of their brands and proprietary business formats to independent hotel owners and operators (i.e., franchisees) pursuant to arms-length franchise agreements. *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 337 (Wis. 2004) (noting a "franchise is a commercial arrangement between two businesses which authorizes the

9

franchisee to use the franchisor's intellectual property and brand identity, marketing experience, and operational method.")

Plaintiff alleges that she was trafficked at the Days Inn Facility during a one-day period in 2017. ECF No. 14 at ¶ 327 ("On or about April 7, 2017, Plaintiff was sex-trafficked . . . ."). She further alleges that during this short period of time WHR "participated in the sex-trafficking venture" by "allowing, promoting, or ignoring sex-trafficking on the premises of the Days Inn." *Id.* at ¶ 329. To plausibly allege that a defendant participated in a TVPRA venture, the plaintiff must "at least" plausibly allege "a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019). Plaintiff's allegations in the Amended Complaint do not plead a continuous relationship, common undertaking, or enterprise and are, therefore, not sufficient to plead a venture. Here, Plaintiff does not allege that WHR knew of Plaintiff's alleged trafficker, let alone that WHR interacted or participated in a venture with her alleged trafficker. Plaintiff has provided no factual content as to any interaction between WHR and Plaintiff's alleged trafficker. *See Doe (T.R.S.) v. Wyndham Hotels & Resorts, Inc. et al.*, No. 2:23-cv-01676-DAD-CSK, 2024 WL 3088722, at *23 (E.D. Cal. June 20, 2024) (dismissing complaint because plaintiff failed to allege that the Wyndham Defendants could be said to have a tacit agreement with plaintiff's traffickers to allow them to traffic plaintiff).

Indeed, Plaintiff's claim against WHR is solely based on WHR's failure to prevent her trafficking during a single one-day period at the Days Inn Facility and does not allege any type of continuous business relationship between WHR and Plaintiff 's alleged trafficker. The recent decision in *Doe (T.R.S.) v. Wyndham Hotels & Resorts, Inc.* found similar allegations insufficient to state a claim. There, the plaintiff alleged that she was trafficked at a Days Inn in Sacramento  during a "one-night stay or a two-day period" and further alleged that the hotel staff reported her trafficking during this stay to WHR. 2024 WL 3088722, at *7. The court found these allegations insufficient to allege the "participation in a venture" element because the plaintiff did not allege that WHR "continued transacting with her traffickers after receiving this report." *Id.* The court further noted that the plaintiff had failed to allege a "continuous business relationship" because there were no allegations that the traffickers were previously reported to WHR for their trafficking activities, "such that [WHR] could be said to have had a tacit agreement with plaintiff's traffickers to allow them to keep operating and ultimately traffic plaintiff." *Id.* Similarly, here, Plaintiff does not allege that she was trafficked at the Days Inn Facility for more than one day, or that WHR allowed her alleged trafficker to continue renting rooms at the Days Inn Facility after receiving a report of Plaintiff's alleged trafficking.

In *Red Roof,* the plaintiffs alleged the defendant franchisors received royalties based on gross room revenue at franchised hotels, including revenue from the rooms in which the plaintiffs were trafficked. 21 F.4th at 726. The Eleventh Circuit held that these "allegations may suggest that the franchisors financially benefitted" from the

11

rental of hotel rooms to the alleged traffickers, but do not "suggest that the franchisors participated in an alleged common undertaking or enterprise" with the traffickers. *Id.* at 726-27. Similarly, in *L.H. v. Marriott International, Inc.,* the district court dismissed an action brought under the same "business venture" theory, reasoning that there was no "factual allegation tying whatever those local business ventures might be to sex trafficking, even in general, and certainly not to the sex trafficking of L.H., in particular." 604 F. Supp. 3d 1346, 1360 (S.D. Fla. 2022). The court explained that the "very venture" in which the defendant participated must "actually commit[] the implicated TVPRA violation itself." *Id.; see also Red Roof,* 21 F.4th at 725 (to state a "beneficiary" claim, plaintiffs "must plead sufficient facts to plausibly allege that the venture in which the franchisors participated committed one of these crimes against them").

In *K.H. v. Riti, Inc.,* the plaintiff alleged that the defendant owner and manager of the subject hotel had continuous commercial dealings with her traffickers because the traffickers rented rooms at the subject hotel over the course of several years on numerous occasions for multi-night stays, and the defendant collected rental fees from those room rentals. 2024 WL 505063, at *1-2. The plaintiff alleged that the defendant had constructive knowledge of trafficking occurring at the hotel because hotel staff were familiar with the trafficker, observed plaintiff's malnourished condition, housekeeping was denied access to plaintiff's room after requests for additional linens were made, and four separate incidents of police responses to reports of sex trafficking occurred at the subject hotel. *Id.* at *3, n.3. The Eleventh Circuit affirmed dismissal of

the TVPRA claim, reasoning that allegations that a defendant financially benefitted from renting hotel rooms to an alleged trafficker and observed signs of sex trafficking were insufficient to establish the defendant participated in a sex trafficking venture. *Id.* at \*4. The Court reiterated that the kind of allegations made in *Ricchio v. McLean* would support that the hotel operator and trafficker were working together, and that the hotel operator participated in a sex trafficking venture. *K.H.,* 2024 WL 505063, at \*3-4; *see also Red Roof,* F.3d at 726-27 (holding that the "allegations may suggest that the franchisors benefitted" from the rental of hotel rooms to the alleged traffickers, but they do not "suggest that the franchisors participated in an alleged common undertaking or enterprise" with the traffickers); *Ricchio,* 853 F.3d at 555 (plaintiff alleged that the hotel owner had "prior commercial dealings" with the trafficker, which they wished to reinstate, and that while plaintiff was being held at the hotel against her will, the hotel owner "exchang[ed] high-fives" with the trafficker "while speaking about 'getting this thing going again'").

Plaintiff primarily faults WHR for failing to prevent Plaintiff's alleged trafficking (ECF No. 14 at ¶ 74), despite unidentified staff of the hotel operator witnessing "red flags" of sex trafficking (*id*. at ¶ 82). These allegations are not well pled inasmuch as they lack any specificity in connection with Plaintiff's alleged trafficking, such as who saw the guests enter the hotel or any room, or when they observed such activity. *Cf. Ricchio,* 853 F.3d at 555 (denying motion to dismiss where plaintiff pled that the hotel owner "visit[ed] the rented quarters to demand further payment" and where "in plain daylight view of the front office of the motel, either of the [hotel

owners] on duty there would have seen [the trafficker] grab [plaintiff], kick her, and force her back toward the rented quarters when she had tried to escape"). Moreover, Plaintiff's allegations here fail because the TVPRA does not create a duty to prevent trafficking. Alleged nonfeasance—the failure to prevent trafficking—is not "participation" in a venture. *See A.B. v. Wyndham Hotels & Resorts, Inc.,* 532 F. Supp. 3d 1018, 1027 (D. Or. 2021); *see also Red Roof,* 21 F.4th at 727 ("[O]bserving something is not the same as participating in it."). There must be "some level of active engagement" in the trafficking. *Doe 1 v. Deutsche Bank Aktiengesellschaft,* 671 F. Supp. 3d 387, 405 (S.D.N.Y. 2023). Indeed, each of Plaintiff's allegations against WHR is rooted in nonfeasance. *See, e.g.,* ECF No. 14 at ¶ 74 (" . . . Hotel Defendants and Branded Hotel Defendants failed to prevent or endeavor to prevent the Plaintiff from being trafficked at their Hotel, all so the Defendants could profit financially.") Thus, the Amended Complaint does not plausibly plead "participation in a venture." *See A.D. v. Marriott Int'l, Inc.,* No. 2:22-CV-645-JES-NPM, 2023 WL 2991042, at *4 (M.D. Fla. Apr. 18, 2023) ("The Complaint . . . fault[s] Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture.")

### 2. The Amended Complaint fails to plausibly allege that WHR knew or should have known about Plaintiff's trafficking.

Plaintiff's participant claim further fails because the Complaint fails to adequately plead that WHR "knew or should have known" the venture in which it allegedly participated committed sex trafficking crimes against Plaintiff. *See Red Roof,* 21 F.4th at 723; *M.A.,* 425 F. Supp. 3d at 964. Instead, the Amended Complaint resorts

to allegations of general knowledge in the hospitality industry, but such knowledge does not satisfy the "knew or should have known" requirement. *See, e.g., Red Roof,* 21 F.4th at 725; *A.B. v. Hilton Worldwide Holdings Inc.,* 484 F. Supp. 3d 921, 938 (D. Or. 2020) (hereinafter, "*A.B. v. Hilton*") ("General knowledge of commercial sex activity occurring at hotels across the United States is insufficient.").

A defendant must have known or should have known that the specific "venture" in which it participated trafficked a particular plaintiff. *See, e.g., Red Roof,* 21 F.4th at 725 ("[T]he defendant must have either actual or constructive knowledge that the *venture*—in which it voluntarily participated and from which it knowingly benefited— violated the *TVPRA as to the plaintiff."* (emphasis added)). Plaintiff, therefore, must allege that WHR had either actual or constructive knowledge of a venture in violation of the TVPRA as to Plaintiff. *See Lundstrom v. Choice Hotels Int'l, Inc.,* No. 21-CV-00619-PAB-SKC, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021) ("Plaintiff alleges that defendant was on notice about the prevalence of sex trafficking generally at its hotels and in the hotel industry. But this is not sufficient to show that defendant should have known about what happened to plaintiff.") (internal citations omitted); *J.M. v. Choice Hotels Int'l, Inc.,* No. 2:22-CV-00672-KJM-JDP, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022) (finding plaintiff's allegations regarding defendants' general knowledge of sex trafficking problems in the hotel industry, or even at defendants' franchised hotels, is insufficient to demonstrate defendants should have known about plaintiff's trafficking). Plaintiff fails to plausibly allege that WHR knew or should have known of the venture that is alleged to have trafficked her.

15

To conclude that a defendant is liable under the TVPRA because they were generally aware that sex trafficking sometimes occurs in hotels "unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'" *S.J. v. Choice Hotels Int'l, Inc.,* 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). If such allegations were sufficient:

> [T]he liability of franchisors—which are further removed from the sex trafficking than the actual hotels are—would be much easier proven than the liability of the hotels themselves. This would make no sense. If a plaintiff must show, at least, that a franchisee hotel was or should have been aware of specific sex trafficking conduct in order to violate the TVPRA, there is no interpretive logic by which a franchisor can be held liable under the same statute for having only an abstract awareness of sex trafficking in general.

*Id.*; *accord Doe #9 v. Wyndham Hotels & Resorts, Inc.,* No. 4:19-CV-5016, 2021 WL 1186333, at *2 (S.D. Tex. Mar. 30, 2021) ("Plaintiff has not plausibly alleged how Defendants 'knew or should have known' that she was being trafficked at the La Quinta.").

Consistent with *Red Roof,* numerous courts have dismissed "beneficiary" claims against hotel brand franchisors for failing to allege any facts suggesting that the franchisor "knew or should have known" about *the plaintiff's* alleged trafficking. *See, e.g., J.L. v. Best W. Int'l, Inc.,* 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) ("Plaintiff alleges that Wyndham was on notice about the prevalence of sex trafficking generally at its hotels. But this is not sufficient to show that Wyndham should have known about what happened to this plaintiff.") (internal citation omitted); *E.S. Best W. Int'l Inc.,* 510 F. Supp. 3d 420, 428 (N.D. Tex. 2021) ("[T]he FAC does not state how Movant

Defendants knew or should have known that Plaintiff was being trafficked."); *A.B. v. Hilton,* 484 F. Supp. 3d at 938 ("[A]lthough Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants."); *B.M. v. Wyndham Hotels & Resorts, Inc.,* No. 20-cv-00656-BLF, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020) ("The Complaint fails to allege facts as to *how* Wyndham (the ultimate parent company of the franchisor) and Choice (the franchisor) knew or should have known Plaintiff was being trafficked. . . . Plaintiff must allege facts showing these Defendants knew or should have known of her trafficking—and she fails to do so in her Complaint.").

Moreover, alleged observations of "red flags" of trafficking are not enough to establish knowledge as to the plaintiff's trafficking. *See, e.g., Red Roof,* 21 F.4th at 727 (finding no knowledge where plaintiff's "only allegations as to the franchisors' knowledge or participation in those sex trafficking ventures are that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels.")*; A.D. v. Holistic Health Healing Inc.,* No. 2:22-cv-641-JES-NPM, 2023 WL 2242507, at *3 (M.D. Fla. Feb. 27, 2023) (allegations of observing well-known red flags, as well as a "'personal relationship between various hotel staff and A.D.'s trafficker' and 'direct employee encounters with A.D. and her trafficker inside the Conty's Motel Naples'" was insufficient to satisfy knowledge requirement).

Plaintiff's conclusory allegations that WHR had specific knowledge of Plaintiff's alleged trafficking and "should have known" about her trafficking because of the hospitality industry's general awareness that sex activity occurs at hotels are insufficient. Plaintiff attempts to bolster her allegations, asserting with zero support and purely based "upon information and belief," that the "Hotel Defendants and Branded Hotel Defendants had knowledge of the prevalence of sexual trafficking in the hotel industry" . . . and "failed to prevent" Plaintiff's trafficking so that the "Defendants could profit financially." ECF No. 14 at ¶ 74. Plaintiff has alleged zero facts in support of this conclusory allegation, which must be ignored.

Plaintiff further alleges vaguely that WHR should have known of Plaintiff's trafficking "based on numerous well-documented indicators of sex-trafficking, that sex-trafficking or other criminal activities were occurring and would continue to occur at the subject hotel . . . ." ECF No. 14 at ¶ 80. The Amended Complaint further alleges that WHR should have known of Plaintiff's trafficking due to the various publications and training materials published by the hotel industry, anti-sex trafficking groups, and government agencies, as well as its own published policies. *Id.* at ¶¶ 81, 91, 94. However, the Amended Complaint does not suggest how any of these allegations specifically pertain to Plaintiff or Plaintiff's alleged trafficker. The Amended Complaint further alleges that hotel staff (i.e., staff of the independent franchisee, not employees of WHR) "were aware of and/or should have been aware of several warning signs" of trafficking—e.g., persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, and injuries; persons being constantly monitored;

requests for additional housekeeping items, but denying entry; and "[o]ther red flags." *Id.* at ¶ 82. However, the Amended Complaint offers no plausible basis to suggest that WHR (as opposed to staff at the franchised hotel) were or should have been on notice of the specific alleged sex trafficking at the Days Inn Facility. "Something more" is needed but not alleged. *See S.J.*, 473 F. Supp. 3d at 154 (recognizing complaint lacked well-pled allegations supporting a plausible inference that hotel brand franchisors "should have known" about crimes committed by the sex trafficking "venture" that trafficked the plaintiff). Plaintiff's conclusory allegations are insufficient to plausibly infer that WHR knew or should have known of Plaintiff's alleged sex-trafficking at the Days Inn Facility.

### C. The Amended Complaint fails to state a negligence claim and, in any event, is time-barred.

Plaintiff asserts a claim for negligent training, supervision, and management (Count XXXX) based on nothing more than the conclusory allegation that WHR "failed to train, supervise, or manage . . . the employees at the Days Inn [Facility] . . . ." ECF No. 14 at ¶ 333-34. Plaintiff's negligence claim should be dismissed because it fails to allege facts that plausibly suggest that WHR owed or breached any duty of care to Plaintiff.

With regards to duty, Plaintiff alleges that WHR "had a duty to properly train, supervise and manage its franchisees and their managers and employees about the warning signs, red flags and other indications of sex trafficking . . . ." ECF No. 14 at ¶ 333. That is not the law. A duty of care arises when it is the defendant who created the

risk of harm to the plaintiff or if a special relationship exists between the defendants and an injured party. Florida courts have recognized that franchisees, not franchisors or parent companies of franchisors like WHR, control the "day to day operations" of their premises, while franchisors are responsible for implementing brand standards aimed at ensuring "uniformity in the standardization of products and services." *Madison v. Hollywood Subs, Inc.*, 997 So. 2d 1270, 1270 (Fla. 4th DCA 2009). Plaintiff acknowledges that WHR was a "hotel franchisor" (ECF No. 14 at ¶ 15), as opposed to the hotel operator, and that the "Hotel Defendants" are the "owners of the Hotels" (*id.* at ¶ 14). The Amended Complaint lacks any well-pled allegations that WHR was present at, let alone possessed or controlled, the premises of the Days Inn Facility, and lacks any facts that plausibly suggest that WHR owed a duty of care to Plaintiff.

Similarly, an employer—in this case the franchisee—may be held liable for negligent training for "reasonably foreseeable damages resulting from the negligent training of its employees and agents." *Clary v. Armor Correctional Health Svcs., Inc.*, No. 6:13-cv-90-Orl-31KRS, 2014 WL 505126, at *4 (M.D. Fla. Feb. 7, 2014). Such liability may arise when "during the course of the employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment." *Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1324 (S.D. Fla. 2020). In other words, to state a claim for negligent training, retention, or supervision, a plaintiff must plausibly allege that an employee hired or retained by that

defendant was unfit for the role, the defendant knew or should have known of that unfitness, and that specific unfitness caused the plaintiff's damages.

The Amended Complaint does not plausibly allege that WHR hired or employed anyone who worked at the Days Inn Facility or caused harm to Plaintiff, that any such persons had any harmful propensity or unfitness, or that WHR knew or should have known about such harmful propensity or unfitness. *See Clary*, 470 F. Supp. 3d at 1326 (dismissing negligent training and supervision claim because plaintiff's conclusory allegations failed to identify the employees who mistreated him or how defendant fell short in regards to the employees' training or supervision). Again, Plaintiff acknowledges that WHR did not own, operate, manage, or control the franchised hotel at issue or anyone who worked there.

Even if Plaintiff could articulate a duty and state a claim for negligence, Plaintiff's claim should also be dismissed because it is apparent from the face of the Amended Complaint that the claim is barred by the statute of limitations. *See United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018).

Under Florida law, a negligence claim is subject to a four-year statute of limitations. Fla. Stat. § 95.11(3)(a) (2017). The statute of limitations period may be tolled by the plaintiff's status as a minor, until the plaintiff turns 18. Fla. Stat. § 95.051(1)(i) (2024) ("The running of the time under any statute of limitations . . . is tolled by the minority . . . of the person entitled to sue . . . the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action." In this case, Plaintiff alleges she was born on June 20, 2000 (ECF No. 14 at ¶ 1) and that

the alleged trafficking at the Days Inn occurred on April 7, 2017 (*id.* at ¶ 327), when she was sixteen years old. Once Plaintiff obtained the age of majority (on June 20, 2018), the statute of limitations began to run. Fla. Stat. § 95.051(1)(i); *See, e.g.*, *Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002) ("The Florida Legislature has stated that a cause of action accrues or begins to run when the last element of the cause of action occurs."). The statute of limitations expired on June 20, 2022, but Plaintiff did not commence this action until July 17, 2024. (ECF No. 1).

## V.    CONCLUSION

For the reasons set forth above, WHR respectfully requests that the Amended Complaint be dismissed with prejudice as to WHR.

DATED: September 23, 2024                    **DLA PIPER LLP (US)**

*/s/ Janelly Crespo*
Janelly Crespo, Esq.
Florida Bar No. 124073
**DLA PIPER LLP (US)**
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131-5341
T:  305.423.8502 | F: 305.675.0702
Email: janelly.crespo@us.dlapiper.com

– and –

David S. Sager, Esq.
(*revised pro hac vice forthcoming*)
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway,
Suite 120

Short Hills, New Jersey 07078-2704
T: 973.520.2570 | F: 973.215.2604
Email: david.sager@us.dlapiper.com

*Attorneys for Defendant*
*Wyndham Hotels & Resorts, Inc.*

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned certifies that counsel for Wyndham Hotels & Resorts, Inc. reached out to Plaintiff via email on September 23, 2024, articulating the bases for its motion and requesting a call to discuss WHR's position in this Motion and to confirm whether Plaintiff opposes the relief sought herein. WHR has not received a response as of the filing of this Motion.

*/s/ Janelly Crespo*
Janelly Crespo

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 23, 2024 a true and correct copy of this document was electronically filed with the Clerk of the Court U.S. District Court, Middle District of Florida, using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Janelly Crespo*
Janelly Crespo