## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

JANE DOE, I.H., an individual,

                                **CASE NO.: 8:24-cv-10678-SDM-NHA**

        Plaintiff,

   v.

SALESFORCE,
BACKPAGE.COM, LLC,
CARL FERRER, Individually,
MICHAEL LACEY, Individually,
JOHN BRUNST, Individually,
SCOTT SPEAR, Individually,
GOSAI 9, LLC., d/b/a Quality Inn,
GOSAI 9, LLC., d/b/a Days Inn by Wyndham,
MGM HOTELS LLC., d/b/a Holiday Inn & Suites,
JOHN DOE, the person, or entity that owned the
property located at 31199 Longwood Drive, Brooksville, Florida,
SHAWN C. HENSON, Individually,
LUIGI BARILE, Individually,
BRYAN J. GRIGUERE, Individually,
JAMES W. HANCOCK, Individually,
JOSEPH A. EASTON, Individually,
LAWRENCE E. KEMBLE, Individually,
LACHMAN KALADEEN, Individually,
MATTHEW C. DOYLE, Individually,
JASON M. RAULERSON, Individually,

        Defendants.
_____/

//

//

//

//

## SECOND AMENDED VERIFIED COMPLAINT
## FOR DAMAGES AND JURY DEMAND

**COMES NOW** the Plaintiff Jane Doe I.H., ("Plaintiff") by and through the

undersigned counsel, files this Second Amended Verified Complaint for Damages

and Jury Demand against Defendants: Salesforce, Backpage.com, LLC., Carl Ferrer,

Michael Lacey, John Brunst, Scott Spear, Quality Inn, Days Inn, Holiday Inn &

Suites, John Doe, Shawn C. Henson, Luigi Barile, Bryan J. Griguere, James W.

Hancock, Joseph A. Easton, Lawrence E. Kemble, Lachman Kaladeen, Matthew C.

Doyle, and Jason M. Raulerson (collectively, "Defendants") makes the following

averments.

## PARTIES

1.      Plaintiff Jane Doe I.H. ("I.H.") is a natural person and a resident of

Pinellas County, Florida. She is a survivor of sex trafficking. I.H. was born on June

20, 2000, in St. Petersburg, Florida, and is now over the age of majority and is

otherwise *sui juris*. Between November 2016 and May 2017, I.H. was subjected to

coercion, threats, and intimidation. During this period, she was harbored and forced

to engage in commercial sex acts, including oral and vaginal intercourse, for the

financial benefit of her traffickers and Defendants.

      a. Due to the sensitive, private, and potentially retaliatory nature of these

          allegations, this Complaint identifies I.H. by her initials only. Plaintiff

          will move the court to proceed under a pseudonym in all filings, and all

public court proceedings, and to limit the disclosure of information about I.H.'s to protect Plaintiff and Plaintiff's identity.

b. Generally, pleadings must include the names of all parties involved. However, exceptions exist when revealing the issues may lead to retaliation or harm to the Plaintiff. For good cause, the Court may issue an order to protect a party or person from undue harms and burdens.

c. To preserve her privacy and safety, Plaintiff should not be compelled to disclose her identity. Plaintiff's interest in privacy significantly outweighs the standard practice of judicial transparency, and the Defendants will not be disadvantaged. Plaintiff will agree to disclose her identity to Defendants solely for the limited purpose of investigating her claims once the parties have entered into a protective order that is in place.

d. Plaintiff requests only the redaction of her personally identifying information from the public docket and assurances that the Defendants will not use or publish her identity in a way that could jeopardize her personal life, future safety, employment prospects, or privacy rights, especially given her history as a victim of multiple sexual abuses and assaults.

2. Defendant Backpage.com, LLC ("Backpage") was a Delaware Limited

Liability Corporation registered to do business and doing business in Florida at the time of the damages outlined in this cause.

    a. All references to Backpage include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. The term also includes any director, officer, agent (either with direct/actual authority and implied/apparent authority), employee, person, firm, or corporation acting on behalf of Backpage now or at any time relevant to the claims herein.

    b. In April 2018, Backpage was shut down by the United States Department of Justice as part of a 93-count indictment of the company and seven executives and former owners for facilitating prostitution under the U.S Travel Act, money laundering, and conspiracy. Backpage.com ceased operations at that time.

    c. All references to "Backpage" herein include Defendants Backpage.com, LLC, Carl Ferrer, Michael Lacey, John Brunst, and Scott Spear.

3. Defendant Carl Ferrer ("Ferrer") is a resident of Texas who at all times material hereto was conducting business in Florida. Defendant Ferrer was the CEO of Backpage.com, LLC, which functioned as a front for Ferrer's illegal activities. At all times material hereto, Defendant Ferrer transacted business in Hernando County,

Florida, as well as the State of Florida. Defendant Ferrer is over the age of majority and is otherwise *sui juris*.

4.    Defendant Michael Lacey ("Lacey") is a resident of Arizona and at all times material hereto, was conducting business in Florida. Defendant Lacey was the co-founder of Backpage.com, LLC, which functioned as a front for Lacey's illegal activities. At all times material hereto, Defendant Lacey transacted business in Hernando County, Florida, as well as the State of Florida. Defendant Lacey is over the age of majority and is otherwise *sui juris*. Defendant Lacey has recently been sentenced to five (5) years in prison and fined 3 million dollars as a result of money laundering charges connected with his operation of Backpage.

5.    Defendant John Brunst ("Brunst") is a resident of Arizona and at all times material hereto, was conducting business in Florida. Defendant Brunst was the co-founder and CFO of Backpage.com, LLC, which functioned as a front for Brunst's illegal activities. At all times material hereto, Defendant Brunst transacted business in Hernando County, Florida, as well as the State of Florida. Defendant Brunst is over the age of majority and is otherwise *sui juris*.

6.    Defendant Scott Spear ("Spear") is a resident of Arizona and at all times material hereto, was conducting business in Florida. Defendant Spear was the Vice President of Backpage.com, LLC, which functioned as a front for Spear's illegal activities. At all times material hereto, Defendant Spear transacted business in

Hernando County, Florida, as well as the State of Florida. Defendant Spear is over the age of majority and is otherwise *sui juris*.

7.    Defendant Salesforce.com, Inc. ("Salesforce") is a foreign corporation organized under the laws of Delaware with its principal place of business in California. Salesforce is registered to do business in the State of Florida. Salesforce is a software provider focusing on service platforms. Salesforce does business in a systematic and continuous manner throughout this District and Division.

   a.    All references to Salesforce include any department, division, office, agency, subsidiary, or corporate affiliate whether domestic, foreign, and/or international. The term also includes any director, officer, agent (either with direct/actual authority and implied/apparent authority), employee, person, firm, or corporation acting on behalf of Salesforce now or at any time relevant to the claims herein.

8.    Defendant GOSAI 9, LLC ("GOSAI") is a corporation licensed to do business under the laws of the State of Florida and is registered with the Florida Secretary of State. Its principal place of business is located in Chiefland, Florida. Defendant GOSAI owns and operates the Quality Inn, located at 1125 North Young Blvd, Chiefland, Florida, and the Days Inn by Wyndham, located at 809 NW 21st Ave, Chiefland, Florida. Defendant GOSAI may be served with process through its registered agent, Hitendra J. Gosai, at 809 NW 21st Avenue, Chiefland, Florida.

a. Any references in this Complaint to GOSAI include their respective
agents, directors, officers, principals, representatives, servants, masters,
partners, trustees, associates, affiliates, subsidiaries, franchisers,
persons, firms, corporate affiliates, co-conspirators, employers, and/or
employees acting within the course and scope of such capacities, with
direct/actual authority and/or implied/apparent, within the scope of
their conspiracies, and with actual and/or constructive knowledge of
one another's actions acting on behalf of GOSAI now or at any time
relevant to the claims herein.

9.      Defendant MGM Hotels LLC ("MGM") is a corporation licensed to do
business under the laws of the State of Florida and is registered with the Florida
Secretary of State. Its principal place of business is located in Ocala, Florida.
Defendant MGM owns and operates the Holiday Inn Suites – Ocala Conference
Center, located at 3600 SW 38th Ave, Ocala, Florida 32274. Defendant MGM may
be served with process through its registered agent, Digvijay Gaekwad, at 11980 SE
22nd Avenue Road, Ocala, Florida.

a. Any references in this Complaint to MGM include their respective
agents, directors, officers, principals, representatives, servants, masters,
partners, trustees, associates, affiliates, subsidiaries, franchisers,
persons, firms, corporate affiliates, co-conspirators, employers, and/or

employees acting within the course and scope of such capacities, with

direct/actual authority and/or implied/apparent, within the scope of

their conspiracies, and with actual and/or constructive knowledge of

one another's actions acting on behalf of MGM now or at any time

relevant to the claims herein.

10.     Defendants GOSAI and MGM (collectively referred to as "Hotel

Defendants") owns and operates the Quality Inn, Days Inn by Wyndham, and

Holiday Inn Suites (hereinafter, the "Hotel or Hotels") that were used by Defendants

for the purpose of sex trafficking the Plaintiff, as more fully set forth herein.

11.     Defendant Shawn C. Henson ("Henson") is over the age of majority

and is otherwise *sui juris*. Defendant Henson was in direct violation of Florida

Statute 784.03, which makes it unlawful to actually or intentionally touch or strike

another person against the will of the other or intentionally cause bodily harm to

another person. As a result of his involvement in the trafficking of the Plaintiff herein

Defendant Henson was charged with Human Trafficking and sex with a minor,

among other sex crimes in Hernando County Case Number: 2019-CF-944-BXMX

and should be made to pay the Plaintiff for the everlasting damages he has caused to

her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13,**

**2019, marked as Exhibit "A".)**

12.     Defendant Luigi Barile ("Barile") is over the age of majority and is

otherwise *sui juris*. Defendant Barile was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Defendant Barile was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-CXMX and should be made to pay the Plaintiff for the everlasting damages he has caused to her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

13.    Defendant, Bryan Joseph Giguere ("Giguere") is over the age of majority and is otherwise *sui juris*. Defendant Giguere was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result, Defendant Giguere was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-FXMX and should be made to pay Plaintiff for the everlasting damages he has caused to her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

14.    Defendant James W. Hancock ("Hancock") is over the age of majority and is otherwise *sui juris*. Defendant Hancock was in direct violation of Florida

Statute 784.03, which makes it unlawful to actually or intentionally touch or strike

another person against the will of the other or intentionally cause bodily harm to

another person. As a result of his involvement in the trafficking of the Plaintiff

herein, Defendant Hancock was charged with Human Trafficking and sex with a

minor, among other sex crimes in Hernando County Case Number: 2019- CF-944-

EXMX and should be made to pay the Plaintiff for the everlasting damages he has

caused to her. **(See attached Application and Affidavit for Arrest Warrant,
dated May 13, 2019, marked as Exhibit "A".)**

15.     Defendant Joseph A. Easton ("Easton") is over the age of majority and

is otherwise *sui juris*. Defendant Easton was in direct violation of Florida Statute

784.03, which makes it unlawful to actually or intentionally touch or strike another

person against the will of the other or intentionally cause bodily harm to another

person. As a result, Defendant Easton was charged with Human Trafficking and sex

with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-

944-FXMX and should be made to pay the Plaintiff for the everlasting damages he

has caused to her. **(See attached Application and Affidavit for Arrest Warrant,
dated May 13, 2019, marked as Exhibit "A".)**

16.     Defendant Lawrence E. Kemble ("Kemble") is over the age of majority

and is otherwise *sui juris*. Defendant Kemble was in direct violation of Florida

Statute 784.03, which makes it unlawful to actually or intentionally touch or strike

another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Defendant Kemble was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-GXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

17.     Defendant Lachman Kaladeen ("Kaladeen") is over the age of majority and is otherwise *sui juris*. Defendant Kaladeen was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Defendant Kaladeen was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-HXMX and should be made to pay the Plaintiff for the everlasting damages he has caused to her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

18.     Defendant Matthew C. Doyle ("Doyle") is over the age of majority and is otherwise *sui juris*. Defendant Doyle was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another

person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Defendant Doyle was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-CXMX and should be made to pay the Plaintiff for the everlasting damages he has caused to her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

19.    Defendant Jason M. Raulerson ("Rulerson") is over the age of majority and is otherwise *sui juris*. Jason M. Raulerson was in direct violation of Florida Statute 784.03, which makes it unlawful to actually or intentionally touch or strike another person against the will of the other or intentionally cause bodily harm to another person. As a result of his involvement in the trafficking of the Plaintiff herein, Defendant Raulerson was charged with Human Trafficking and sex with a minor, among other sex crimes in Hernando County Case Number: 2019-CF-944-JXMX and should be made to pay the Plaintiff for the everlasting damages he has caused her. **(See attached Application and Affidavit for Arrest Warrant, dated May 13, 2019, marked as Exhibit "A".)**

20.    Defendants Henson, Barile, Giguere, Hancock, Easton, Kemble, Kaladeen, Doyle, and Rulerson (collectively as "Johns" or "Individual Defendants") directly participating in the trafficking and exploitation of the Plaintiff.

21.     Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. 1595 and is thus entitled to bring a civil action against any "perpetrators" knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture that engaged in trafficking-related conduct in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA").

22.     Defendants knowingly engaged in and financially benefited from a venture that facilitated the trafficking and sexual exploitation of the Plaintiff, a minor at the time, in violation of 18 U.S.C. § 1595. Specifically, Defendants sought out and obtained commercial sex from the Plaintiff through acts and omissions detailed in this Complaint. Defendants acted with actual knowledge, or in reckless disregard of the fact, that Plaintiff was subjected to force, coercion, and fraud in furtherance of her trafficking.

23.     Each Defendant, as a "perpetrator" within the meaning of 18 U.S.C. § 1595(a), directly participated in and contributed to the trafficking and exploitation of Plaintiff in conjunction with other unlawful acts and omissions described in this Complaint. These unlawful acts and omissions, occurring at the Hotel Defendants' Hotels' properties, directly and proximately caused Plaintiff to suffer significant physical and psychological harm and injuries, emotional distress, and other damages.

## JURISDICTION AND VENUE

24.     This Honorable Court has subject matter jurisdiction over this action

pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United

States, specifically 18 U.S.C. § 1595 of the TVPRA. Additionally, this Court has

supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §

1367(a), as those claims are so related to the federal claims in this action that they

form part of the same case or controversy under Article III of the United States

Constitution.

25.     This Court also has diversity jurisdiction under 28 U.S.C. § 1332, as

the parties are citizens of different states, and the amount in controversy exceeds

$75,000, exclusive of interest and costs.

26.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)

because a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred within this District. Specifically, the Defendants' misconduct and

omissions, which led to the Plaintiff's injuries, took place in this District.

27.     At least one individual Defendant resides in Hernando County, Florida,

and Defendants conduct business within this District, further establishing proper

venue under 28 U.S.C. § 1391(b)(1) and (2).

28.     Plaintiff also invokes this Court's supplemental jurisdiction over claims

based on Florida state law or any other applicable jurisdiction pursuant to 28 U.S.C.

§ 1367.

## SEX TRAFFICKING UNDER FEDERAL LAW

29.    "Sex trafficking" is defined by the TVPRA under 22 U.S.C. § 7102(12)

as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or

soliciting of a person for the purpose of a "commercial sex act." The term "severe

forms of trafficking in persons" includes "sex trafficking in which a commercial sex

act is induced by force, fraud, or coercion, or in which the person induced to perform

such act has not attained 18 years of age."

## FACTUAL ALLEGATIONS

30.    Plaintiff I.H. was a victim of sex trafficking. At the age of 16, Plaintiff

was trafficked by her mother, Kristina Hughes, who forced her to engage in

commercial sex acts with numerous men, ranging in age from young adults to men

over the age of 75. Between November 2016 and May 2017, Plaintiff was subjected

to coercion, threats, and intimidation to perform sexual acts, including oral sex and

vaginal intercourse, in exchange for money which was turned over to her mother. As

a direct and proximate result of being trafficked and forced into repeated non-

consensual sexual encounters, Plaintiff suffered severe and catastrophic physical,

emotional, and psychological injuries. These injuries include but are not limited to,

contracting sexually transmitted diseases that will affect her for the rest of her life,

all of which were caused by the actions and omissions of the perpetrators and

Defendants named herein.

31.    Plaintiff's father was absent for most of her life, as he was frequently incarcerated. Plaintiff was raised primarily by her mother, who was an alcoholic and regularly used methamphetamine and cocaine. In 2016, Plaintiff's mother relocated to 31199 Longwood Drive, Brooksville, Florida 34602 (the "home" or "property"). At the time, Plaintiff was in the 11th grade and on track to graduate high school the following year. However, upon moving home, her mother refused to enroll her in school, effectively ending her education. Shortly after the move, Plaintiff found herself living in a home without electricity or adequate food. Conditions deteriorated further when her mother introduced and encouraged Plaintiff to use methamphetamine, cocaine, and alcohol.

32.    During her time at home, Plaintiff was under the complete control of her mother, who acted as her trafficker. Through threats, manipulation, and coercion, Plaintiff's mother forced her to provide sexual services to "customers," hereinafter referred to as "Johns," in exchange for money. Plaintiff was 16 years old when her mother began advertising her for sexual services on Backpage.com, a platform known for facilitating illegal commercial sex acts. Plaintiff's mother used Backpage to solicit customers and arrange encounters, exploiting the Plaintiff for financial gain.

33.    Plaintiff's mother continued to force her to engage in commercial sex

acts. Despite Plaintiff generating what she believed to be a substantial amount of
money, her mother frequently expressed anger and dissatisfaction with the amount
of money Plaintiff was earning and demanded more, further exacerbating the
coercion and control over Plaintiff.

### Backpage and Salesforce's Role in Sex Trafficking

**A.      Backpage Engaged in Sex Trafficking:**

34.      Backpage was founded in 2004 as an online marketplace for various
goods and services. However, in 2008, when Craigslist, the leading online
marketplace, introduced measures to reduce the number of sex ads on its platform,
Backpage experienced significant growth. This growth was driven by strategically
optimizing its geographic focus and capitalizing on the influx of ads from Craigslist
users looking for alternative platforms.

35.      During the late 2000s, it became apparent that classified ad platforms
and social media sites were facilitating and profiting from commercial sex and
trafficking.

36.      In 2008, Backpage had been publicly identified by law enforcement,
United States Attorneys General, and every state Governor as the biggest and most
notorious sex trafficking and pimping website in the United States.

37.      Backpage nonetheless worked to expand its role in online sex
trafficking. Backpage's gross revenues increased from $5.3 million in 2008 to $11.7

million in 2009, and to $29 million in 2010.

38.     By 2008, Backpage implemented a policy for its moderators to modify
the text of adult advertisements to disguise the true nature of the transactions. By
October 2010, Backpage's executives formalized a process for manually and
automatically deleting incriminating words and phrases, primarily through a feature
called the "Strip Term from Ad Filter." When users, like Plaintiff's trafficker,
submitted an adult ad with these "stripped" words, the Strip Term from Ad Filter
would delete the specific word, allowing the rest of the ad to be published. Although
this filter didn't change the actual nature of the transaction, it made Backpage's adult
ads appear "cleaner than ever." Manual editing involved removing language similar
to what the Strip Term from Ad Filter automatically eradicated, including terms
suggestive of sexual exploitation and assault of sex trafficking victims like Plaintiff.
By late 2010, the company was editing "70 to 80% of ads" in the adult section either
manually or automatically.

39.     Alongside its automatic Strip Term Filter and manual editing efforts,
Backpage also modified its electronic filters to assist traffickers in posting seemingly
harmless ads that facilitated sexual exploitation. Initially, when users attempted to
post an ad containing a forbidden word, they received an error message identifying
the problematic term to "assist" them in revising it. By November 2010, Backpage
implemented a system that would "strip out a term after the customer submits the ad

and before the ad appears in the moderation queue." This meant that if an ad contained a prohibited word associated with human trafficking, the term would be automatically removed before any moderator review. Once the Strip Term from Ad Filter deleted the term, moderators would receive the ad and could address other potential indicators of sexual exploitation. This process effectively concealed the illicit nature of many ads, including those used to exploit and traffic victims like Plaintiff, by systematically removing terms related to sex trafficking and sexual exploitation before the ads reached the moderators.

40.     The sanitization process described was not carried out unintentionally or without awareness by Backpage. The company knew that its sanitization efforts were encouraging and assisting human traffickers and exploiters, including those victimizing Plaintiff. According to the Senate Subcommittee Report, Backpage moderators reported that everyone at the company knew the adult section ads were for prostitution. Despite this knowledge, Backpage used the sanitization process to shield itself from potential criminal investigations while enhancing sex traffickers' ability to exploit victims undetected.

41.     Furthermore, this sanitization process was deliberately instituted as a systematic procedure, demonstrating a clear company policy aimed at helping human traffickers evade law enforcement and perpetuate the victimization and sexual assault of individuals, including Plaintiff, and other women against their will.

In December 2009, Backpage organized a training session for their moderators on the sanitization process. Importantly, the presentation clarified that terms and code words indicating illegal activities required the removal of ads or words. Backpage followed through on this commitment, fully implementing the company-wide sanitization process in early 2010. In an April 2010 email note to himself titled "Adult clean up tasks," CEO Carl Ferrer affirmed that staff were "moderating ads on a 24/7 basis." In a section labeled "Additional Steps," Ferrer acknowledged that "text" could be further cleaned up as users became more inventive.

42.    Backpage went beyond just discussing how to enhance the sanitization process for human trafficking advertisements; they actively updated the list of banned terms. To reduce the need for manually removing the same phrases repeatedly, Backpage instructed moderators to compile lists of phrases to regularly remove. They provided a spreadsheet listing coded terms set for automatic deletion. This document showed that certain words, among others, were removed from adult ads by the Strip Term from Ad Filter before publication:

      a.  Lolita

      b.  Teenage

      c.  Rape

      d.  Young

      e.  GFE (Girl Friend Experience)

43.    When an adult ad containing any of the prohibited words was submitted, Backpage's Strip Term from Ad Filter would quickly remove the specific word, allowing the rest of the ad to be published after moderator review. It is important to understand that the Strip Term from Ad Filter did not change the actual age of the person being sold for sex or the true nature of the transaction. This was not the intention of the Backpage.

44.    By July 2010, Backpage was commending its moderation staff for their editing efforts. Ferrer distributed an agenda for a July 2010 meeting with The Backpage Defendants' Phoenix staff, praising moderators for their work on "adult content" and encouraging them to continue their efforts. It is believed that Backpage employed a team of 20 moderators working around the clock to remove any explicit images and code words related to paid sex.

45.    By 2010, Backpage was the unchallenged leader in online advertising for human trafficking and exploitation of women and children. The National Association of Attorneys General described Backpage as a "hub" of "human trafficking, especially the trafficking of minors."

46.    In September 2010, 21 state attorneys general called on Village Voice Media, the owner of Backpage at the time, to shut down its adult services section. Backpage declined this request and continued to profit from the exploitation of women and children. During this period, the company positioned itself as a defender

of free speech, challenging and attempting to discredit anyone or any entity that criticized its practices.

47.    Backpage profited from the exploitation of women and children for an extended period. Anyone who visited Backpage.com or searched for information about the company would quickly see that it primarily facilitated the sale of sex, rather than acting as a general online marketplace. In fact, Backpage.com became the largest and most notorious promoter of commercial and coerced sex in the history of the internet. It dominated online sex trafficking until Federal Law Enforcement authorities shut it down on April 6, 2018.

48.    Between 2013 and 2015, over 99% of Backpage's revenue came from adult advertisements. In 2012, Backpage generated around $71 million in revenue. From January 2013 to May 2015, the company earned approximately $346 million, with nearly $340 million originating from adult advertisements.

49.    In 2013, despite the widespread recognition of Backpage's activities, Salesforce entered into the first of several contracts with Backpage. In return for its technology and assistance, Backpage compensated Salesforce. These contracts were specifically designed to support Backpage's rapid growth, enabling it to meet increasing customer demands and expand its platform into an international hub for sex trafficking. From 2013 until federal authorities shut down Backpage in 2018, Salesforce actively aided and facilitated Backpage's trafficking operations by

providing its CRM software, support services, and development assistance.
Salesforce granted Backpage access to a variety of products and features, including
its top-tier Enterprise Edition and the advanced marketing technology, Pardot.

50.    Salesforce proactively and independently equipped Backpage with the
necessary tools to operate and expand, along with the support needed to utilize those
tools effectively. With a robust CRM strategy in place, a business like Backpage
could gather comprehensive customer data and use it to optimize communications
and business operations. Consequently, Salesforce's software and support
influenced every aspect of Backpage's business, including customer service, sales,
and marketing.

51.    Salesforce actively provided unique technological tools and resources
to Backpage, supporting its online sale of sex, sex trafficking, harbored, and forced
prostitution, including the trafficking of Plaintiff Salesforce also offered
personalized support for these tools, enabling Backpage to engage in these illicit
activities. By supplying technology, implementation skills, and ongoing support,
Salesforce played a crucial role in helping Backpage scale its operations and increase
its trafficking activities. These affirmative actions by Salesforce facilitated
Backpage's sex trafficking operations. From 2013 to 2018, Salesforce and Backpage
maintained a continuous business relationship, establishing a pattern of conduct or
implicit agreement that jointly facilitated a venture knowingly advertising the

trafficking of victims through Backpage, including Plaintiff.

52.    Backpage could not have become a leading entity in human trafficking and child sexual exploitation without Salesforce's assistance, expertise, and ongoing support. Salesforce either knew or should have known that its collaboration with Backpage was linked to violations of anti-trafficking laws.

53.    When Salesforce formed a business partnership with Backpage, it knew—or at the very least, should have been aware—that Backpage was a habitual violator of human rights, a criminal enterprise violating state and federal laws, and a significant facilitator of human trafficking and the sexual exploitation of minors.

54.    Salesforce became aware of Backpage's illegal trafficking operations through direct interactions with Backpage representatives. During the initial negotiations around November 6, 2013, a Certified Salesforce Consulting Partner met with Backpage CEO Carl Ferrer and another senior Backpage executive to introduce themselves and assess Backpage's needs and objectives. The Consulting Partner reported to a Salesforce executive in an email on November 7, 2013, that he "spent most of the time learning of [Backpage] as a business," highlighting the need for security and advanced integration.

55.    Additionally, it was widely known that Backpage was a trafficking website during its relationship with Salesforce. Before and during 2014, Backpage frequently appeared in the news. These articles covered various aspects but

consistently highlighted that Backpage.com was the leading platform for facilitating

sex trafficking and other forms of human exploitation.

56.    Furthermore, throughout the relationship between Backpage and

Salesforce, Backpage was frequently under public investigation for criminal

activities. Salesforce's partnership with Backpage persisted through several

nationwide law enforcement operations, numerous civil lawsuits against Backpage,

and a highly publicized Senate hearing.

57.    While Salesforce was conducting business with Backpage, Backpage's

CEO, Carl Ferrer, was arrested in Texas on October 6, 2016, for pimping underage

children. Despite Ferrer's arrest, Salesforce renewed its contract with Backpage just

a month later, on November 17, 2016, with Carl Ferrer still involved.

58.    Salesforce did not end its relationship with Backpage until April 2018,

when the Justice Department shut down the Backpage.com website and effectively

made it impossible for Salesforce to continue doing business with Backpage.

59.    Salesforce maintained a relationship with Backpage during a time when

it was undeniably engaged in human trafficking. Salesforce actively and

continuously supported Backpage, knowing that its software and services facilitated

the trafficking activities on the platform. By doing so, Salesforce contributed to the

success of Backpage's trafficking operations.

60.    Salesforce had the opportunity to learn and indeed did learn, about

Backpage's illegal business practices once their partnership was established. Despite this knowledge, Salesforce chose to continue profiting from its involvement in Backpage's illicit commercial sex trafficking activities. Therefore, Salesforce had actual awareness and understanding of Backpage's involvement in human trafficking, sexual exploitation of women, men, and children, and prostitution.

61.    Alternatively, Salesforce had at least constructive knowledge it knew or should have known that Backpage was involved in illegal activities, including human trafficking and the promotion of commercial sex. The illicit nature of Backpage's business was widely reported in popular news sources. Salesforce should have been aware of Backpage's operations. Any review of Backpage's online activities and business requirements, or even a simple Google search, would have shown that Backpage was engaged in the online sale of sex through human trafficking. It is unlikely that Salesforce was ignorant of Backpage's business activities at any time after their collaboration began. Thus, even if Salesforce was not initially aware of Backpage's illegal practices, it was in a position to learn about them once the partnership was established.

62.    Furthermore, Salesforce was aware, and it was widely reported during the relevant period that Backpage was involved not only in the illegal sale of commercial sex but specifically in the unlawful trafficking of individuals. In other words, Salesforce knew or should have known that many individuals advertised on

Backpage were not engaging in sex acts willingly but were coerced or forced into
doing so by traffickers. Additionally, Salesforce knew or should have known that
many of these individuals were minors. Despite this knowledge, Salesforce decided
to continue its business dealings with Backpage and knowingly derived benefits
from participating in a venture involved in criminal sex trafficking.

**B.**    **Salesforce Knowingly Benefited from Its Venture with Backpage in
Violation of 18 U.S.C. § 1595:**

63.    With full awareness of Backpage's trafficking operations, Salesforce
actively chose to establish and sustain a relationship and to financially benefit by
conducting business with Backpage, which operated as the largest sex trafficking
platform in history.

64.    During Backpage's operation and profit from trafficking victims on its
website, significant funds were directed towards paying Salesforce for its technology
and ongoing support.

**C.**    **Plaintiff Trafficked on Backpage.com with Salesforce's Support in
Violation of 18 U.S.C. § 1595:**

65.    Tragically, before the Backpage was seized by the Department of
Justice, Plaintiff, a 16-year-old minor, was trafficked by advertisements on
Backpage from January 2017 to May 2017. As a result, she was forced to engage in
unlawful sex acts, often multiple times a day. If she did not, she would not have any

food to eat or any electricity in the home. Plaintiff was forced by the coercion of her own mother, and, of course, the "Johns" themselves. Throughout Plaintiff's trafficking, Salesforce participated in the venture with Backpage to assist Backpage in expanding its trafficking business.

66.    Plaintiff was trafficked on Backpage in Florida. Plaintiff's traffickers would take photos of her and post ads on the Backpage. Plaintiff's trafficker would then communicate with individuals responding to the ads and set up "dates" for I.H.

67.    During the period that Plaintiff was trafficked by and through Backpage, Salesforce was the sole provider, customizer, owner, manager and operator of the platform and technology that allowed Backpage to traffic persons and promote prostitution of others including Plaintiff.

68.    As a result of being trafficked, Plaintiff suffered significant physical, psychological, and emotional injuries and damage that will negatively affect her for the rest of her life. As a direct and proximate result of Defendants' wrongful actions, Plaintiff was forced to live out the nightmare that Defendants created until they were all arrested in May of 2019. She is now struggling to take back her life. She is still and will forever live with the damage caused by those involved in her trafficking. She contracted several sexually transmitted diseases, including HPV, which resulted in stage 3 AIS (adenocarcinoma in situ), HSV-1 and HSV-2. Her ability to bear children is in question and she will need treatment for these diseases for the rest of

her life.

## Hotel Defendants' Role in Sex Trafficking

### D.    Hotel Defendants Complicit in Plaintiff's Sex Trafficking:

69.    Hotels and motels in general play a significant role in sex trafficking and have a unique position to be able to identify and prevent sex trafficking on their premises. Despite this, the Hotel Defendants named herein failed to take reasonable steps to prevent the sex trafficking of Plaintiff, which occurred on their properties with their actual or constructive knowledge.

70.    At all times relevant to this Complaint, Plaintiff was trafficked, assaulted, prostituted, and sold for sex on the premises of the Hotel Defendants. The Hotel Defendants, as owners and operators of the Quality Inn, Days Inn, and Holiday Inn & Suites, controlled the training, policies, and implementation of anti-trafficking protocols, rules, and guidelines for their properties. Despite this control, they failed to take adequate measures to prevent the trafficking of Plaintiff.

71.    Between November 2016 and May 2017, Plaintiff was subjected to coercion, threats, intimidation, and forced to engage in commercial sex acts, including oral and vaginal intercourse, for the financial benefit of her trafficker and the Hotel Defendants. During this period, Plaintiff was sexually exploited numerous times. Her trafficker used the Hotel Defendants' premises to conspire, threaten, assault, and batter Plaintiff, forcing her to engage in sex, lewd, and lascivious

conduct with "Johns" on the premises of the Hotel Defendants.

72.     Upon information and belief, the Hotel Defendants were aware of the
prevalence of sex trafficking in the hotel industry. Nonetheless, they failed to
implement or enforce policies to prevent Plaintiff from being trafficked on their
premises, prioritizing financial gain over the safety and well-being of their guests.

73.     Plaintiff was often present at the front desk during check-in with her
trafficker, who repeatedly coerced her into engaging in commercial sex acts. While
staying at the Hotel Defendants' properties, Plaintiff's trafficker posted
advertisements online offering Plaintiff for commercial sex acts and communicated
with "Johns" who responded to these advertisements.

74.     Plaintiff's sexual exploitation occurred repeatedly in rented rooms at
the Hotel Defendants' properties. It was patently obvious to the Hotels' staff that
Plaintiff was a minor and apparent signs of trafficking, including Plaintiff's
malnourished appearance, lack of personal belongings, and the presence of multiple
men entering and exiting her room. Management-level employees were also made
aware of these signs but failed to intervene.

75.     Plaintiff's trafficker exhibited obvious and apparent signs of
trafficking, including in interactions with the front desk staff and in the common
areas of the Hotels. Multiple employees, acting within the scope and course of their
employment, observed and/or were made aware of these signs but failed to take

action.

76.    Hotel Defendants, as owners, operators, and franchisors, were aware of the trafficking due to their monitoring of online reviews, surveillance footage, and inspections of their properties. Despite this knowledge, they took no action to stop the trafficking, instead facilitating it by continuing to provide rooms and amenities for the Plaintiff's traffickers.

77.    Plaintiff alleges that the Hotel Defendants, as owners, operators, and franchisors of the subject Hotels, had the duty and opportunity to stop her trafficking. Instead, they facilitated it by ignoring the open and obvious signs that she was a victim, continuing to provide rooms and amenities to her trafficker, and taking no steps to stop the human trafficking.

78.    Hotel Defendants knew or should have known that sex traffickers use threats, coercion, manipulation, and other means to compel individuals, including Plaintiff, to engage in commercial sex acts on hotel premises. The passage of the TVPRA in 2008, along with other legislative and judicial responses to the trafficking crisis, placed the Hotel Defendants on notice of the likelihood that illegal sex trafficking activities were occurring on their properties. This knowledge warranted reasonable vigilance and proactive measures to counter such criminal conduct.

79.    Hotel Defendants participated in these criminal activities by renting rooms to individuals they knew or should have known were involved in sex

trafficking, including Plaintiff's trafficker. By providing rooms and amenities to these individuals, the Hotel Defendants financially benefited from the sex trafficking occurring on their premises.

80.    As owners, operators, managers, and controllers of the subject Hotels, the Hotel Defendants knew or should have known, based on well-documented indicators of sex trafficking, that such criminal activities were occurring and would continue to occur due to their negligence, malfeasance, or intentional disregard for the safety and well-being of their guests.

81.    Hotel Defendants had a duty to properly train their employees, including front desk staff, housekeeping, security, and management, to identify and respond to "red flags" of sex trafficking. As early as 2012, the American Hotel & Lodging Association (AHLA) and ECPAT-USA (now known as PACT – Protect All Children from Trafficking) provided training materials, videos, and guidelines to help hotel employees recognize and combat sex trafficking. Despite these resources, the Hotel Defendants failed to implement adequate training or protocols to address the issue.

82.    Hotel Defendants, individually and through their agents, servants, employees, and/or staff, were aware of or should have been aware of numerous warning signs indicating the presence of sex trafficking on their premises, including but not limited to:

a. Persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior.

b. Persons lacking freedom of movement or being constantly monitored.

c. Victims dressed in sexually explicit or provocative clothing.

d. Requests for additional housekeeping services (e.g., towels, linens) while denying staff entry to the room at other times.

e. Few or no personal possessions during check-in or within the room.

f. Presence of sex paraphernalia in rooms (e.g., condoms, lubricants, lotions).

g. Large amounts of used condoms, empty lubricant bottles, sex toys, and bodily fluids on sheets and towels.

h. Payments for rooms in cash, cash substitutes, or prepaid credit cards.

i. Checking in with local identification or a local address.

j. Other red flags indicative of trafficking activity.

83.    As a result of the Hotel Defendants' failure to act, negligence, and greed, they allowed their properties to be used for sex trafficking in violation of the TVPRA (18 U.S.C. § 1595). While the Hotel Defendants profited from room rentals, food and beverage sales, ATM fees, and increased property values, Plaintiff suffered

severe bodily injuries, sexual exploitation, emotional distress, mental harm, pain, and suffering at the hands of her trafficker and the individuals who purchased her for sex.

84.    Plaintiff brings this action against the Hotel Defendants for violations of the TVPRA, alleging that they knowingly benefited from sex trafficking, they knew or should have known was occurring on their premises. Hotel Defendants harbored Plaintiff by renting rooms to her trafficker and providing them with services, despite knowing or recklessly disregarding the fact that Plaintiff was a victim of human trafficking. By doing so, they received a financial benefit from participating in a venture with traffickers in violation of the TVPRA. By enabling, harboring, facilitating, and financially benefiting from the sex trafficking of Plaintiff, the Hotel Defendants violated 18 U.S.C. § 1591(a) and (b).

85.    As a direct and proximate result, Plaintiff has suffered lifelong mental, emotional, and physical damages as a result of the actions of the Defendants listed herein. Plaintiff files this civil lawsuit seeking compensation for the harm she suffered as a result of being sex trafficked and sold for sexual services on public platforms including but not limited to Backpage and Salesforce and through the Hotel Defendants and John Doe, was repeatedly raped, sexually assaulted, used, abused, humiliated and whose young life was destroyed by the Johns named herein.

## COUNT I
## CAUSE OF ACTION AGAINST BACK PAGE, FERRER, LACEY,

## BRUNST, and SPEAR
## (Sex Trafficking under 18 U.S.C. § 1595)

86.    Plaintiff incorporates the allegations in paragraphs 1-85 and further alleges that Backpage and the individual Defendants Ferrer, Lacey, Brunst, and Spear, violated the Federal Human Trafficking Statute found at 18 U.S.C. § 1595.

87.    Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1595, as she was trafficked and sold for commercial sex against her will.

88.    Backpage repeatedly and for years violated sex trafficking laws by knowingly advertising women, minors, and those forced into sex trafficking for sale on its website, including Plaintiff. Backpage even created its own content by copying ads from Craigslist and other competitor websites and posting the ads on its own site as part of its business scheme to further its trafficking venture.

89.    Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear knowingly benefitted, by receiving financial and other things of value, through its participation in a venture it knew or should have known involved the trafficking, recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, and/or soliciting of Plaintiff and otherwise furthered the sex trafficking of victims as more fully described elsewhere in this Complaint.

90.    Backpage and the individual Defendants Ferrer, Lacey, Brunst, and Spear received substantial financial benefits from the trafficking described in this Complaint including, but not limited to, advertising and other ancillary fees from

traffickers who utilized the Backpage.com website.

91.    Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear knew that they were advertising minors and those forced into sex trafficking for commercial sex on its website.

92.    Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear likewise knew or should have known they were participating in a venture involving the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits, in violation of the TVPRA, 18 U.S.C. § 1595 and 1591, and 1590.

93.    Backpage and the individual Defendants Ferrer, Lacey, Brunst and Spear had notice, both actual and constructive, as a result of the conduct outlined in this Complaint.

94.    Backpage participated in a venture with, among others, Salesforce, and Plaintiff's trafficker. Each of the venturers shared a common purpose— advertising, soliciting, and trafficking women and children and the making of profits. Backpage profited from the trafficking of Plaintiff.

95.    There was a continuous business relationship between Salesforce, the traffickers, and Backpage such that the parties had established a pattern of trafficking conduct or could be said to have a tacit agreement. Backpage took affirmative action in furtherance of the venture by continually supporting the trafficking of women and

children, all the while ignoring the obvious signs of Plaintiff's trafficking, including her being publicly posted for sale on Backpage's website. Backpage's TVPRA violations caused injuries and damages to Plaintiff.

96.    Backpage and the individual Defendants Ferrer, Lacey, Brunst, and Spear knowingly benefitted from participating in a venture it knew was engaged in illegal sex trafficking by engaging in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the trafficker's sale and victimization of Plaintiff for commercial sexual exploitation.

97.    Backpage knew that its repeated failures to address known risks of human trafficking would increase the overall volume of illegal commercial sexual exploitation and victimization, as well as the profits for Backpage, yet knowingly benefitted from facilitating the trafficking of persons on its website.

98.    In the alternative, Backpage had constructive knowledge and notice of a venture involving human trafficking that was operating on Backpage.com.

99.    Plaintiff thereby alleges, and the evidence will establish, that Backpage and the individual Defendants Ferrer, Lacey, Brunst, and Spear directly facilitated sex trafficking through the posting of advertisements for sex trafficking.

   a. providing, assisting, supporting, and facilitating a forum for Plaintiff's trafficker to post her for trafficking.

   b. failing to stop online posting of Plaintiff and other human or sex

trafficking victims.

c.  accepting advertising fees through www.backpage.com from human
    traffickers, including Plaintiff's trafficker, despite actual and/or
    constructive knowledge that those advertisements were for illegal
    activities, such as, but not limited to human trafficking, prostitution,
    and/or sexual exploitation of minors and other victims forced into
    commercial sex.

d.  designing and implementing The Strip Term from Ad Filter to
    automatically sanitize advertisements intended to promote human
    trafficking, prostitution, and/or the sexual exploitation of victims in
    an effort to maximize advertising revenue, customer satisfaction,
    and avoid law enforcement detection of illegal acts to evade law
    enforcement attention.

e.  designing and implementing, in order to maximize revenue, a
    manual moderation system intended to sanitize posted content
    advertising human trafficking, prostitution, and/or the sexual
    exploitation of victims to give those ads the appearance of
    promoting legal escort services as opposed to illegal services.

f.  implementing a corporate policy to maximize revenue of sanitizing
    advertisements promoting human trafficking, prostitution, and/or

sexual exploitation of victims instead of removing those
advertisements from Backpage or reporting those advertisements to
the proper law enforcement officers.

g. knowingly implementing a corporate policy in order to maximize
profit from the adult section of Backpage.com that discouraged
moderators and employees of Backpage from contacting the
authorities and/or advocacy groups when advertisements on
Backpage.com clearly promoted human trafficking, prostitution,
and/or sexual exploitation of victims.

h. knowingly refusing to pull down advertisements (after Backpage
had internally sanitized the ad either manually or with the use of the
Strip Term from Ad Filter) that clearly demonstrated victims were
being exploited and trafficked for sex.

i. knowingly refusing to pull down advertisements after reports and/or
complaints that the advertisement was being used to exploit a
victim.

100.   Backpage and the individual Defendants Ferrer, Lacey, Brunst and
Spear knowingly benefitted from participating in a venture that it knew or should
have known was engaged in illegal sex trafficking by engaging in acts and omissions
that were intended to support, facilitate, harbor, and otherwise further the trafficker's

sale and victimization of Plaintiff for commercial sexual exploitation.

**WHEREFORE**, Plaintiff demands judgment against Defendant Backpage and the individual Defendants Ferrer, Lacey, Brunst, and Spear, for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT II
## CAUSE OF ACTION AGAINST SALESFORCE
## (Sex Trafficking Under 18 U.S.C. § 1595)

101.   Plaintiff realleges and incorporates the allegations in paragraphs 1 through 100 above.

102.   Salesforce violated the federal anti-trafficking statute—the TVPRA and its reauthorizing statutes—under 18 U.S.C. §§ 1591 and 1595.

103.   Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1595, as she was trafficked and sold for commercial sex against her will.

104.   Salesforce knowingly benefitted, by receiving financial and other things of value across multiple contracts with Backpage, through its participation in a venture it knew or should have known involved the trafficking, recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, and/or soliciting of Plaintiff and otherwise furthered the sex trafficking of victims as more fully described elsewhere in this complaint.

105.   Salesforce knowingly received substantial financial benefits from

facilitating trafficking through Backpage, including but not limited to, fees and revenues arising from its relationship with Backpage and Backpage-related entities.

106.    More specifically, Salesforce affirmatively and knowingly participated in, assisted, supported, and facilitated the Backpage sex trafficking venture on an ongoing basis by, at a minimum, the following:

   a. providing, assisting, supporting, and facilitating a world-renowned Customer Relationship Management (CRM) system with support services that were then used by Backpage to operate at maximum efficiency and profitability.

   b. providing, assisting, supporting, and facilitating the trafficking operations of Backpage.com using sophisticated software and related technologies. Salesforce provided support to Backpage in the use of these technologies and had knowledge of the way Backpage operated with these enhanced capabilities.

   c. providing, assisting, supporting, and facilitating Backpage with capabilities and support for direct marketing campaigns, coupled with information gathering such as tracking clicks and tracking internet activity of the sex traffickers to help Backpage manage and track the effectiveness of Backpage's marketing efforts. Salesforce helped Backpage collect and monitor data about the sex traffickers that were

using Backpage to ensure improved outreach to those traffickers and improved customer service. These steps were designed to aid in the success of Backpage.com's trafficking operations.

d. providing, assisting, supporting, and facilitating more personalized outreach with automation using "dynamic content" and automated messaging to target traffickers and sex buyers.

e. providing, assisting, supporting, and facilitating enhanced customer targeting using data from existing traffickers on Backpage and creating cross-selling and upselling opportunities.

f. providing, assisting, supporting, and facilitating the collection of electronically stored information on user and platform interactions and social media interactions, including user preferences ("likes"), to advertise more effectively to traffickers and sex buyers.

g. providing, assisting, supporting, and facilitating surveillance and analysis of customer and user activity with regard to access to ads by tracking "clicks" (mouse clicks), collection of contact information, evaluation of purchasing habits, and correlating outreach and marketing efforts with same.

h. providing, assisting, supporting, and facilitating account planning including customer follow-up, account reminders, modification of

marketing and sales plans, and cross-function customer service capabilities to improve outreach and services to traffickers.

i. providing, assisting, supporting, and facilitating a custom Application Programming Interface (API) for use by Backpage employees, which is a software intermediary that allows two applications to talk to each other. This capability was for use by Backpage and did not enable computer access by the public or non-Backpage personnel.

j. providing, assisting, supporting, and facilitating cutting edge customer analytics to provide analysis of the behaviors of traffickers and sex buyers.

k. providing, assisting, supporting, and facilitating the creation of a secure SMS (text messaging) platform and confidential messaging capabilities for exclusive use of Backpage customers and users to facilitate secure and private communications between sex traffickers and sex buyers.

l. providing, assisting, supporting, and facilitating the ongoing, active monitoring mechanism for Backpage's efforts to track its success, gain information from customers and traffickers, and further automate and develop Backpage's operations.

m. providing, assisting, supporting, and facilitating a secure, custom Payment Processing Interface (PPI) and/or Payment Gateway to

connect payment technology and payment processing networks to
facilitate transactions between traffickers and sex buyers.

n. providing, assisting, supporting, and facilitating the credit card
processing system and account tracking capabilities provided by
Salesforce to accept payments from traffickers.

o. providing, assisting, supporting, and facilitating efficiency enhanced
with automation, such as cutting the time it takes to email and nurture
leads, scoring leads using customer parameters set by the customer
using artificial intelligence (AI), and handling customer questions using
automation such as chatbots.

p. providing, assisting, supporting, and facilitating a secure storage
database with redundancy and backup capabilities.

q. providing, assisting, supporting, and facilitating enhanced accessibility
by use of technology permitting constant communications in support of
customers and users.

r. providing, assisting, supporting, and facilitating Backpage's ability to
expand its trafficking operation both domestically and abroad by
offering technology and support that was essential to the growth of
Backpage.com.

s. providing, assisting, supporting, and facilitating technology that created

a breeding ground for sex traffickers to stalk and entrap survivors on Backpage.com.

t. providing, assisting, supporting, and facilitating Backpage in its capability to maintain control of access to the Backpage.com platform and/or users and customers and thereby to enhance Backpage's efforts to evade detection from law enforcement.

u. providing, assisting, supporting, and facilitating additional acts that constitute participation in a sex trafficking venture with Backpage.

107. Each of the acts of Salesforce in providing, assisting, supporting, and facilitating Backpage was for internal Backpage use and operation only and was inaccessible to public internet users. Salesforce had both actual and constructive knowledge and notice of a venture involving human trafficking through Backpage by way of actions that enticed, harbored, provided, obtained, advertised, maintained, patronized, or solicited victims of trafficking, including Plaintiff.

108. Plaintiff further alleges, and the evidence will establish, that Backpage operated and participated in a venture that was engaged in human trafficking and that Salesforce facilitated that venture.

109. Thus, Plaintiff alleges that Salesforce's own, independent conduct was a substantial factor in her trafficking, sexual abuse, and continuing damages.

110. Plaintiff further alleges that, but for the contributions, technology, and

overall support by Salesforce of Backpage, Backpage would not have achieved the general success it garnered, Backpage would not have escaped increased law enforcement scrutiny, Backpage would have foundered in the financial and payment markets, Backpage would have been unable to maintain its operational efficiency, and Plaintiff would not have been subjected to the criminal conduct at the hands of her traffickers and their accomplices.

111. Salesforce knew that Backpage would achieve markedly greater success in its business operations with the use of Salesforce software and support and that Backpage relied on Salesforce to grow and function. With the foreknowledge of the nature of the operations conducted by Backpage, Salesforce had actual knowledge—or at least constructive knowledge—that by providing technology and support to Backpage, it enabled Backpage to operate and markedly enhanced the success of Backpage's trafficking operation.

112. Salesforce participated in a venture that trafficked Plaintiff and other persons as a result of a continuous business relationship between the traffickers and Backpage and Salesforce such that the traffickers, Backpage, and Salesforce have established a pattern of trafficking conduct.

113. Salesforce knowingly benefitted from participating in a venture it knew or should have known was engaged in illegal sex trafficking by engaging in acts and omissions that were intended to support, facilitate, harbor, and otherwise further the

trafficker's sale and victimization of Plaintiff for commercial sexual exploitation.

**WHEREFORE,** Plaintiff demands judgment against Defendant
SALESFORCE for compensatory damages, punitive damages, costs, and attorney's
fees and for any and all other relief as is just under the premises.

<u>**COUNT III**</u>
<u>**CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a QUALITY INN**</u>
<u>**(Sex Trafficking of Children 18 USC 1591 and 1595)**</u>

114.   Plaintiff realleges and reavers the allegations in Paragraphs 1 through
113 as if fully set out herein.

115.   Under 18 U.S.C. § 1591, it is unlawful for any person or entity to
knowingly benefit, financially or otherwise, from participation in a venture that
engages in sex trafficking of minors or persons subjected to force, fraud, or coercion.

116.   Pursuant to 18 U.S.C. § 1595, a victim of trafficking may bring a civil
action against any entity that knowingly benefits from sex trafficking while
knowing, or acting with reckless disregard of, the trafficking activities.

117.   On or about March 3, 2017, April 7, 2017, and May 12, 2017, Plaintiff,
a minor at the time, was trafficked for commercial sex acts at the Quality Inn, located
at 1125 North Young Blvd, Chiefland, Florida. During these dates, Plaintiff was
coerced, threatened, and forced to engage in sexual acts with Defendant Henson and
multiple other individuals under the control of her trafficker, Kristina Hughes.

118.   Defendant GOSAI as an owner and operator of Quality Inn knowingly

benefited from the sex trafficking occurring on its premises by profiting from the repeated rental of rooms to Plaintiff's trafficker and her buyers. These financial benefits included, but were not limited to:

    a. Direct revenue from room rental fees during the periods when Plaintiff was trafficked;

    b. Additional sales from amenities, food, beverages, and other hotel services purchased by traffickers and sex buyers; and

    c. Sustained profitability from the ongoing and repeated use of its property as a known hub for illicit trafficking activity.

119. Defendant GOSAI participated in a sex trafficking venture by willfully ignoring, allowing, and enabling the trafficking of Plaintiff on its premises. Specifically:

    a. The hotel failed to implement, enforce, or adhere to reasonable anti-trafficking policies, despite industry-wide awareness of human trafficking occurring in hotels.

    b. Hotel employees, including front desk staff, housekeeping, and management, observed clear and unmistakable signs of Plaintiff's trafficking, which included:

        i. Plaintiff's malnourished appearance, poor hygiene, exhaustion, and visible distress;

    ii.  A constant stream of men entering and exiting Plaintiff's room within short periods;

    iii.  Plaintiff's lack of personal belongings, restricted freedom of movement, and visible control by her trafficker; and

    iv.  Presence of sex paraphernalia (e.g., condoms, lubricants) and bodily fluids in Plaintiff's room.

  c.  Despite these blatant red flags, the hotel's staff and management took no reasonable action to investigate, report, or intervene, thereby actively facilitating and enabling the trafficking of Plaintiff.

120.  Defendant GOSAI had actual or constructive knowledge that sex trafficking was occurring on its premises, evidenced by:

  a.  The repeated and obvious indicators of trafficking witnessed by hotel staff, as outlined above;

  b.  The hotel's failure to provide proper training to its employees, despite the availability of industry-wide resources and guidelines from organizations such as the American Hotel & Lodging Association (AHLA) and PACT (Protect All Children from Trafficking); and

  c.  The hotel's financial motivation to turn a blind eye, as it knowingly and repeatedly profited from the rental of rooms to traffickers and

their buyers.

121.    Defendant GOSAI knowingly benefited from participation in a venture that engaged in sex trafficking in direct violation of 18 U.S.C. § 1591(a) and (b). Specifically, Defendant:

    a.  Knowingly received financial benefits from the repeated rental of rooms used for Plaintiff's trafficking and sexual exploitation;

    b.  Provided a safe haven for trafficking by allowing its premises to be used for repeated trafficking activities without intervention; and

    c.  Had actual or constructive knowledge that the trafficking of Plaintiff and other victims was occurring on its premises yet failed to take any reasonable measures to stop it.

122.    As a direct and proximate result of Defendant GOSAI's acts, omissions, and deliberate indifference, Plaintiff suffered severe and lasting harm, including but not limited to:

    a.  Physical injuries from repeated sexual abuse and assault;

    b.  Severe emotional distress, psychological trauma, and mental anguish resulting from her trafficking and exploitation;

    c.  Permanent health consequences, including sexually transmitted infections and other medical conditions; and

    d.  Loss of dignity, personal autonomy, and opportunities for a normal

life, irreparably altering her future.

123.   Pursuant to 18 U.S.C. § 1595(a), Defendant GOSAI is liable for compensatory damages, punitive damages, attorney's fees, and costs for its violations of the 18 USC 1591 of TVPRA.

**WHEREFORE**, Plaintiff demands judgment against Defendant GOSAI for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

## COUNT IV
## CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a QUALITY INN
### (Intentional Infliction of Emotional Distress)

124.   Plaintiff realleges and reavers the allegations in Paragraphs 1 through 123 as if fully set out herein.

125.   Defendant GOSAI owned, operated, managed, and controlled Quality Inn the premises where Plaintiff was repeatedly sex trafficked, raped, and sexually exploited, despite clear warning signs and red flags indicative of ongoing human trafficking activity.

126.   Defendant GOSAI's actions were extreme and outrageous in that it:

127.   Knowingly permitted traffickers to use its rooms to facilitate the commercial sexual exploitation of minors, including Plaintiff;

      a. Ignored obvious signs of trafficking, such as men entering and leaving Plaintiff's room at all hours, the presence of an underage

victim appearing fearful and malnourished, and repeated cash
transactions for room rentals by third parties;

b. Failed to implement security measures or policies to prevent the
known and widespread problem of sex trafficking in the hotel
industry; and

c. Profited financially from the trafficking venture while failing to
intervene or notify law enforcement despite clear evidence of
criminal activity.

128.   Defendant GOSAI had actual and constructive knowledge that sex
trafficking was occurring on its premises, yet intentionally and/or recklessly
permitted its facilities to be used as a hub for this criminal enterprise, prioritizing
profit over the safety and well-being of victims, including Plaintiff.

129.   Defendant GOSAI's conduct—knowingly permitting, facilitating, and
failing to prevent the egregious and heinous acts committed against Plaintiff—was
extreme, outrageous, and utterly intolerable in a civilized society. Defendant's
inaction and indifference in the face of blatant human trafficking on its property
constitute conduct that shocks the conscience and goes beyond all bounds of
decency.

130.   As a direct and proximate result of Defendant GOSAI's actions and
omissions, Plaintiff suffered and continues to suffer extreme and severe emotional

distress, including but not limited to PTSD, anxiety, depression, nightmares, and

other psychological trauma, for which she requires ongoing medical and

psychological treatment.

WHEREFORE, Plaintiff demands judgment against Defendant GOSAI for

compensatory damages, punitive damages, attorney's fees, and costs and for any and

all other relief as is just under the premises.

**COUNT V**
**CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a DAYS INN BY
WYNDHAM**
**(Sex Trafficking of Children 18 USC 1591 and 1595)**

131.   Plaintiff realleges and reavers the allegations in Paragraphs 1 through

130 as if fully set out herein.

132.   Under 18 U.S.C. § 1591, it is unlawful for any person or entity to

knowingly benefit, financially or otherwise, from participation in a venture that

engages in sex trafficking of minors or persons subjected to force, fraud, or coercion.

133.   Pursuant to 18 U.S.C. § 1595, a victim of trafficking may bring a civil

action against any entity that knowingly benefits from sex trafficking while

knowing, or acting with reckless disregard of, the trafficking activities.

134.   On or about April 7, 2017, Plaintiff, a minor at the time, was sex-

trafficked and forced into commercial sexual activity at the Days Inn by Wyndham

owned and operated by Defendant GOSAI located at 809 NW 21st Avenue,

Chiefland, Florida.

135.   Plaintiff was coerced, threatened, and forced to engage in sexual acts with Defendant Henson and multiple other individuals under the control of her trafficker, Kristina Hughes.

136.   Defendant GOSAI as an owner and operator of Days Inn by Wyndham had actual or constructive knowledge that sex trafficking was occurring on its premises, yet failed to take any action to intervene, report, or prevent such crimes.

137.   Defendant GOSAI knowingly benefited from sex trafficking by receiving room rental fees and other financial incentives from traffickers, including but not limited to:

a.   Frequent and extended cash payments from individuals involved in trafficking;

b.   A pattern of renting rooms to traffickers without requiring proper identification or recordkeeping;

c.   Ignoring reports, complaints, or visible evidence of trafficking, including the presence of underage victims, high foot traffic, excessive requests for linens and cleaning supplies; and

d.   Failing to implement security measures or training to prevent trafficking despite widespread awareness of the problem in the hospitality industry.

138.   Defendant GOSAI's staff and management observed multiple red flags

consistent with sex trafficking, including:

    a. Multiple men entering and leaving Plaintiff's room within short timeframes.

    b. Plaintiff appearing visibly distressed, underage, and in poor physical condition.

    c. Lack of luggage or personal belongings in the room, indicating short-term occupancy.

    d. Cash payments and third-party room rentals by known traffickers.

139. Defendant GOSAI's failure to take reasonable steps to prevent sex trafficking, despite clear indicators of illegal activity, constitutes knowing participation in a trafficking venture and for ignoring obvious signs of trafficking, and continuing a financial relationship with the trafficker.

140. By knowingly renting rooms to sex traffickers and financially benefitting from the exploitation of Plaintiff, Defendant actively participated in the trafficking venture.

141. Defendant GOSAI's failure to act despite overwhelming evidence of sex trafficking aided and abetted the trafficking of Plaintiff.

142. As a direct and proximate result of Defendant GOSAI's acts, omissions, and deliberate indifference, Plaintiff suffered severe and lasting harm, including but not limited to:

a. Physical injuries from repeated sexual abuse and assault;

b. Severe emotional distress, psychological trauma, and mental anguish resulting from her trafficking and exploitation;

c. Permanent health consequences, including sexually transmitted infections and other medical conditions; and

d. Loss of dignity, personal autonomy, and opportunities for a normal life, irreparably altering her future.

143. Pursuant to 18 U.S.C. § 1595(a), Defendant GOSAI is liable for compensatory damages, punitive damages, attorney's fees, and costs for its violations of the 18 USC 1591 of TVPRA.

**WHEREFORE**, Plaintiff demands judgment against Defendant GOSAI for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

**COUNT VI**
**CAUSE OF ACTION AGAINST GOSAI 9, LLC d/b/a DAYS INN BY WYNDHAM**
**(Intentional Infliction of Emotional Distress)**

144. Plaintiff realleges and reavers the allegations in Paragraphs 1 through 143 as if fully set out herein.

145. Defendant GOSAI owned, operated, managed, and controlled Days Inn by Wyndham, the premises where Plaintiff was repeatedly sex trafficked, raped, and sexually exploited, despite clear warning signs and red flags indicative of ongoing

human trafficking activity.

146. Defendant GOSAI's actions were extreme and outrageous in that it:

147. Knowingly permitted traffickers to use its rooms to facilitate the commercial sexual exploitation of minors, including Plaintiff;

    a. Ignored obvious signs of trafficking, such as men entering and leaving Plaintiff's room at all hours, the presence of an underage victim appearing fearful and malnourished, and repeated cash transactions for room rentals by third parties;

    b. Failed to implement security measures or policies to prevent the known and widespread problem of sex trafficking in the hotel industry; and

    c. Profited financially from the trafficking venture while failing to intervene or notify law enforcement despite clear evidence of criminal activity.

148. Defendant GOSAI had actual and constructive knowledge that sex trafficking was occurring on its premises, yet intentionally and/or recklessly permitted its facilities to be used as a hub for this criminal enterprise, prioritizing profit over the safety and well-being of victims, including Plaintiff.

149. Defendant GOSAI's conduct—knowingly permitting, facilitating, and failing to prevent the egregious and heinous acts committed against Plaintiff—was

extreme, outrageous, and utterly intolerable in a civilized society. Defendant's inaction and indifference in the face of blatant human trafficking on its property constitute conduct that shocks the conscience and goes beyond all bounds of decency.

150.    As a direct and proximate result of Defendant GOSAI's actions and omissions, Plaintiff suffered and continues to suffer extreme and severe emotional distress, including but not limited to PTSD, anxiety, depression, nightmares, and other psychological trauma, for which she requires ongoing medical and psychological treatment.

**WHEREFORE**, Plaintiff demands judgment against Defendant GOSAI for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

**COUNT VII**
**CAUSE OF ACTION AGAINST MGM HOTELS, LLC, d/b/a HOLIDAY INN & SUITES OCALA CONFERENCE CENTER**
**(Sex Trafficking of Children 18 USC 1591 and 1595)**

151.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 150 as if fully set out herein.

152.    Under 18 U.S.C. § 1591, it is unlawful for any person or entity to knowingly benefit, financially or otherwise, from participation in a venture that engages in sex trafficking of minors or persons subjected to force, fraud, or coercion.

153.    Pursuant to 18 U.S.C. § 1595, a victim of trafficking may bring a civil

action against any entity that knowingly benefits from sex trafficking while knowing, or acting with reckless disregard of, the trafficking activities.

154.   On or about February 5, 2017, Plaintiff, a minor at the time, was sex-trafficked and forced into commercial sexual activity at the Holiday Inn & Suites Ocala Conference Center, owned and operated by Defendant MGM located at 3600 SW 38th Avenue, Ocala, Florida.

155.   Plaintiff was coerced, threatened, and forced to engage in sexual acts with Defendant Barile and multiple other individuals under the control of her trafficker, Kristina Hughes.

156.   Plaintiff's trafficker, Kristina Hughes, checked into the hotel while Plaintiff stood in plain view of staff, and they were assigned a room visible from the lobby. Shortly after, Defendant Barile and three other men entered the hotel separately and proceeded to the room, passing through common areas without intervention. Over the next 2–3 hours, Plaintiff was forced to engage in commercial sex acts with all four men inside the hotel room.

157.   Defendant MGM as an owner and operator of Holiday Inn & Suites Ocala Conference Center had actual or constructive knowledge that sex trafficking was occurring on its premises, yet failed to take any action to intervene, report, or prevent such crimes.

158.   Defendant MGM knowingly benefited from sex trafficking by

receiving room rental fees and other financial incentives from traffickers, including but not limited to:

    a. Frequent and extended cash payments from individuals involved in trafficking;

    b. A pattern of renting rooms to traffickers without requiring proper identification or recordkeeping;

    c. Ignoring reports, complaints, or visible evidence of trafficking, including the presence of underage victims, high foot traffic, excessive requests for linens and cleaning supplies; and

    d. Failing to implement security measures or training to prevent trafficking despite widespread awareness of the problem in the hospitality industry.

159. Defendant MGM's staff and management observed multiple red flags consistent with sex trafficking, including:

    a. Multiple men entering and leaving Plaintiff's room within short timeframes.

    b. Plaintiff appearing visibly distressed, underage, and in poor physical condition.

    c. Lack of luggage or personal belongings in the room, indicating short-term occupancy.

      d. Cash payments and third-party room rentals by known traffickers.

160. Defendant's failure to take reasonable steps to prevent sex trafficking, despite clear indicators of illegal activity, constitutes knowing participation in a trafficking venture and for ignoring obvious signs of trafficking, and continuing a financial relationship with the trafficker.

161. By knowingly renting rooms to sex traffickers and financially benefitting from the exploitation of Plaintiff, Defendant actively participated in the trafficking venture.

162. Defendant's failure to act despite overwhelming evidence of sex trafficking aided and abetted the trafficking of Plaintiff.

163. As a direct and proximate result of Defendant MGM's acts, omissions, and deliberate indifference, Plaintiff suffered severe and lasting harm, including but not limited to:

      a. Physical injuries from repeated sexual abuse and assault;

      b. Severe emotional distress, psychological trauma, and mental anguish resulting from her trafficking and exploitation;

      c. Permanent health consequences, including sexually transmitted infections and other medical conditions; and

      d. Loss of dignity, personal autonomy, and opportunities for a normal life, irreparably altering her future.

164.    Pursuant to 18 U.S.C. § 1595(a), Defendant MGM is liable for compensatory damages, punitive damages, attorney's fees, and costs for its violations of the 18 USC 1591 of TVPRA.

**WHEREFORE**, Plaintiff demands judgment against Defendant MGM for compensatory damages, punitive damages, costs, and attorney's fees and for any and all other relief as is just under the premises.

**COUNT VIII**
**CAUSE OF ACTION AGAINST MGM HOTELS, LLC, d/b/a HOLIDAY**
**INN & SUITES OCALA CONFERENCE CENTER**
**(Intentional Infliction of Emotional Distress)**

165.    Plaintiff realleges and reavers the allegations in Paragraphs 1 through 164 as if fully set out herein.

166.    Defendant MGM owned, operated, managed, and controlled Holiday Inn & Suites Ocala Conference Center, the premises where Plaintiff was repeatedly sex trafficked, raped, and sexually exploited, despite clear warning signs and red flags indicative of ongoing human trafficking activity.

167.    Defendant MGM's actions were extreme and outrageous in that it:

168.    Knowingly permitted traffickers to use its rooms to facilitate the commercial sexual exploitation of minors, including Plaintiff;

      a. Ignored obvious signs of trafficking, such as men entering and leaving Plaintiff's room at all hours, the presence of an underage victim appearing fearful and malnourished, and repeated cash

transactions for room rentals by third parties;

b. Failed to implement security measures or policies to prevent the known and widespread problem of sex trafficking in the hotel industry; and

c. Profited financially from the trafficking venture while failing to intervene or notify law enforcement despite clear evidence of criminal activity.

169. Defendant MGM had actual and constructive knowledge that sex trafficking was occurring on its premises, yet intentionally and/or recklessly permitted its facilities to be used as a hub for this criminal enterprise, prioritizing profit over the safety and well-being of victims, including Plaintiff.

170. Defendant MGM's conduct—knowingly permitting, facilitating, and failing to prevent the egregious and heinous acts committed against Plaintiff—was extreme, outrageous, and utterly intolerable in a civilized society. Defendant's inaction and indifference in the face of blatant human trafficking on its property constitute conduct that shocks the conscience and goes beyond all bounds of decency.

171. As a direct and proximate result of Defendant MGM's actions and omissions, Plaintiff suffered and continues to suffer extreme and severe emotional distress, including but not limited to PTSD, anxiety, depression, nightmares, and

other psychological trauma, for which she requires ongoing medical and psychological treatment.

WHEREFORE, Plaintiff demands judgment against Defendant MGM for compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT IX
## CAUSE OF ACTION AGAINST JOHN DOE
### Sex Trafficking of Children 18 USC 1591 and 1595

172. Plaintiff realleges and reavers the allegations of Paragraphs 1 through 171 as if fully set out herein.

173. Plaintiff's trafficker, Kristina Hughes, rented, leased, or otherwise occupied a residence located at 31199 Longwood Drive, Brooksville, Florida (the "property").

174. Plaintiff was sex-trafficked multiple times at this property between January 2017 and May 2017, as documented in the Application and Affidavit for Arrest Warrants in the criminal case pending in Hernando County (Case No. 2019-CF-000944, HCSO No. 2017-18444, and OSP No. 2017-0191-TPA). The named perpetrators of the trafficking include Luigi Barile, Bryan Joseph Giguere, James William Hancock, Joseph Andrew Easton, Latchman Kaladeen, Matthew Christopher Doyle, and Jason Michael Raulerson, and upon information and belief, many others.

175.   At all times material to this action, John Doe was the owner of the property and knowingly permitted it to be used as a site for human trafficking and commercial sexual exploitation of a minor.

176.   At all times material to this matter, Defendant John Doe benefited financially from the ongoing sex trafficking at the property through rent payments or other financial considerations provided by Plaintiff's trafficker, which enabled the continued use of the premises for illegal activity.

177.   At all times material to this matter, John Doe benefited financially from the sex trafficking occurring within his property by virtue of rent or other consideration paid by Plaintiff's mother and sex- trafficker to allow Plaintiff and her mother to use the premises for illegal activity, to wit: sex trafficking of a minor.

178.   At all times material to this matter, Defendant John Doe knew or should have known that illegal activities were occurring at the property. The same red flags and warning signs applicable to the Hotel Defendants—including frequent visits from multiple men, excessive foot traffic, extended stays without legitimate purpose, and obvious signs of distress from the victim—were present at the property, making it inconceivable that John Doe was unaware of the trafficking activities occurring within his premises.

179.   By allowing, promoting, or ignoring sex trafficking on his property, John Doe knowingly participated in a sex-trafficking venture that was illegal,

immoral, and directly contributed, caused, and allowed the injuries to the Plaintiff.

180.   Pursuant to 18 U.S.C 1595 (a), Defendant John Doe is liable for
damages and reasonable attorney's fees for violation of 18 USC 1591.

181.   **WHEREFORE**, Plaintiff demands judgment against Defendant John
Doe for compensatory damages, punitive damages, costs, and attorney's fees and for
any and all other relief as is just under the premises.

## COUNT X
## CAUSE OF ACTION AGAINST SHAWN CHRISTOPHER HENSON
## (Sex Trafficking of Children 18 USC 1591 and 1595)

182.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through
181 as if fully set out herein.

183.   18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force,
fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving
> anything of value, from participating in a venture which has engaged
> in an act described in violation of paragraph (1), knowing, or, ...in
> reckless disregard of the fact, that means of force, fraud, coercion
> described in subsection (e) (2), or any combination of such means
> will be used to cause the person to engage in a commercial sex act,
> or that the person has not attained the age of 18 years and will be
> caused to engage in a commercial sex act, shall be punished as
> provided in subsection (b)."

184.   18 U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may
> bring a civil action against the perpetrator (or whoever knowingly
> benefits, or attempts or conspires to benefit, financially or by
> receiving anything of value from participation in a venture which
> that person knew or should have known has engaged in an act in
> violation of this chapter) in an appropriate district court of the

United States and may recover damages and reasonable attorney's
fees."

185.   That between November 2016 and May 17, 2017, and upon information

and belief on or about March 3, 2017, April 7, 2017, and May 5, Defendant Henson,

engaged, perpetrated, and participated in commercial sex acts with Plaintiff, a minor

under the age of 18 at a motel in Chiefland, Florida in violation of 18 U.S.C. Section

1595, injuring and causing damage to the Plaintiff.

**WHEREFORE,** Plaintiff demands judgment against Defendant Henson for

illegal sex-trafficking of a minor, the Plaintiff, in violation of 18 U.S.C. Section 1595

and demands compensatory damages, punitive damages, attorney's fees and costs

and for any and all other relief as is just under the premises.

## COUNT XI
## CAUSE OF ACTION AGAINST SHAWN CHRISTOPHER HENSON
## (Battery. F.S. 784.03 and 772.102(1)(a)(14))

186.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through

185 as if fully set out herein.

187.   Florida Statutes 784.03 (Battery) provides that the offense of battery

occurs when a person actually and intentionally touches or strikes another person

against the will of the other; or (2) Intentionally causes bodily harm to another

person.

188.   Florida Statutes 772.101 (Civil Remedies for Criminal Practices)

provides in Section 772.102 (1)(14) that criminal activities include those under

Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

189.  Florida Statutes 772.104 (2) provides that;

> "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

190.  On or about March 3, 2017, April 7, 2017, and May 12, 2017, Defendant Henson intentionally touched Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases, and other injuries.

191.  The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience is outrageous and unacceptable in a civil society, and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands a judgment against Defendant Henson for compensatory damages, interest, costs, attorney's fees, and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XII
## CAUSE OF ACTION AGAINST SHAWN CHRISTOPHER HENSON
## (Intentional Infliction of Mental Distress)

192.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 191 as if fully set out herein.

193.    Defendant Henson intentionally engaged in illegal sexual activity with Plaintiff, a minor at the time of the incidents. Defendant Henson's actions were deliberate, unlawful, and constituted a violation of Plaintiff's bodily autonomy and dignity.

194.    Defendant Henson intentionally and/or recklessly engaged in the sex trafficking of Plaintiff. His conduct was extreme, outrageous, and beyond the bounds of decency in a civilized society. Specifically, Defendant Henson:

> a.  Participated in the repeated sexual exploitation of Plaintiff, knowing that she was a minor and a victim of sex trafficking;
>
> b.  Subjected Plaintiff to physical and psychological trauma through his actions; and
>
> c.  Acted with deliberate indifference to the severe harm his conduct would cause Plaintiff.

195.    As a direct and proximate result of Defendant Henson's actions, Plaintiff has suffered and continues to suffer severe emotional distress, including repeated sexual assaults, sexually transmitted diseases, anxiety, depression, PTSD,

diminished self-worth, and an inability to form healthy relationships.

**WHEREFORE,** Plaintiff demands judgment against Defendant Henson for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs, and for any and all other relief as is just and under the premises.

**COUNT XIII**
**CAUSE OF ACTION AGAINST LUIGI BARILE**
**(Sex Trafficking of Children 18 USC 1591 and 1595)**

196.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 195 as if fully set out herein.

197.    18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, ...in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

198.    18. U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

199.   That between November 2016 and May 17, 2017, and upon information and belief on or about February 5 and February 15, 2017, Defendant Barile, engaged, perpetrated, and participated in commercial sex acts with Plaintiff, a minor under the age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant Barile for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XIV
## CAUSE OF ACTION AGAINST LUIGI BARILE
## (Battery. F.S. 784.03 and 772.102(1)(a)(14))

200.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 199 as if fully set out herein.

201.   Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

202.   Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102

(1)(15) relating to kidnapping or human trafficking.

203.   Florida Statutes 772.104 (2) provides that;

> "any person who proves by clear and convincing evidence that he or
> she has been injured by reason of any violation of the provisions of
> 772.103 due to sex trafficking or human trafficking shall have a
> cause of action for threefold the amount gained from the sex
> trafficking or human trafficking and in any such action is entitled to
> minimum damages in the amount of $200 and reasonable attorney's
> fees and court costs in the trial and appellate courts."

204.   That between November 2016 and May 17, 2017, and upon information

and belief on or about February 5 and February 15, 2017, Defendant Barile

intentionally touched Plaintiff for the purpose of engaging in commercial sex acts.

Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the

touching and caused bodily harm to Plaintiff, to wit: sexual activity with a minor,

physical harm, sexually transmitted diseases, and other injuries.

205.   The sexual activity and physical battery of this child by this Defendant

is against the moral fibers of the community, shocks the conscience is outrageous

and unacceptable in a civil society, and justifies the imposition of punitive damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant Barile for

compensatory damages, interest, costs, attorney's fees, and upon a showing of the

application of Florida Statute 768.73, punitive damages and for any and all other

relief as is just under the premises.

## COUNT XV
## CAUSE OF ACTION AGAINST LUIGI BARILE
### (Intentional Infliction of Mental Distress)

206.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 205 as if fully set out herein.

207.    Defendant Barile intentionally engaged in illegal sexual activity with Plaintiff, a minor at the time of the incidents. Defendant Barile's actions were deliberate, unlawful, and constituted a violation of Plaintiff's bodily autonomy and dignity.

208.    Defendant Barile intentionally and/or recklessly engaged in the sex trafficking of Plaintiff. His conduct was extreme, outrageous, and beyond the bounds of decency in a civilized society. Specifically, Defendant Barile:

      a. Participated in the repeated sexual exploitation of Plaintiff, knowing that she was a minor and a victim of sex trafficking;

      b. Subjected Plaintiff to physical and psychological trauma through his actions; and

      c. Acted with deliberate indifference to the severe harm his conduct would cause Plaintiff.

209.    As a direct and proximate result of Defendant Barile's actions, Plaintiff has suffered and continues to suffer severe emotional distress, including repeated sexual assaults, sexually transmitted diseases, anxiety, depression, PTSD, diminished self-worth, and an inability to form healthy relationships.

**WHEREFORE**, Plaintiff demands judgment against Defendant Barile for the

intentional infliction of emotional distress and demands, compensatory damages,

punitive damages, attorney's fees, and costs, and for any and all other relief as is just

and under the premises.

## COUNT XVI
## CAUSE OF ACTION AGAINST BRYAN JOSEPH GIGUERE
## (Sex Trafficking of Children 18 USC 1591 and 1595)

210.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through

209 as if fully set out herein.

211.   18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force,

fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving
> anything of value, from participating in a venture which has engaged
> in an act described in violation of paragraph (1), knowing, or, …in
> reckless disregard of the fact, that means of force, fraud, coercion
> described in subsection (e) (2), or any combination of such means
> will be used to cause the person to engage in a commercial sex act,
> or that the person has not attained the age of 18 years and will be
> caused to engage in a commercial sex act, shall be punished as
> provided in subsection (b)."

212.   18. U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may
> bring a civil action against the perpetrator (or whoever knowingly
> benefits, or attempts or conspires to benefit, financially or by
> receiving anything of value from participation in a venture which
> that person knew or should have known has engaged in an act in
> violation of this chapter) in an appropriate district court of the
> United States and may recover damages and reasonable attorney's
> fees."

213.   That between November 2016 and May 17, 2017, and upon information

and belief on or about April 17, 2017, Defendant Giguere, engaged, perpetrated, and

participated in commercial sex acts with Plaintiff, a minor under the age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

**WHEREFORE,** Plaintiff demands judgment against Defendant Giguere for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

### COUNT XVII
### CAUSE OF ACTION AGAINST BRYAN JOSEPH GIGUERE
### Battery. F.S. 784.03 and 772.102(1)(a)(14)

214. Plaintiff realleges and reavers the allegations of Paragraphs 1 through 213 as if fully set out herein.

215. Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

216. Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

217. Florida Statutes 772.104 (2) provides that;

> "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of

772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

218.  That between November 2016 and May 17, 2017, and upon information and belief on or about April 17, 2017, Defendant Giguere intentionally touched Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases, and other injuries.

219.  The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience is outrageous and unacceptable in a civil society, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant Giguere for compensatory damages, interest, costs, attorney's fees, and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XVIII
## CAUSE OF ACTION AGAINST BRYAN JOSEPH GIGUERE
### (Intentional Infliction of Mental Distress)

220.  Plaintiff realleges and reavers the allegations of Paragraphs 1 through 219 as if fully set out herein.

221.  Defendant Giguere intentionally engaged in illegal sexual activity with

Plaintiff, a minor at the time of the incidents. Defendant Giguere's actions were deliberate, unlawful, and constituted a violation of Plaintiff's bodily autonomy and dignity.

222.    Defendant Giguere intentionally and/or recklessly engaged in the sex trafficking of Plaintiff. His conduct was extreme, outrageous, and beyond the bounds of decency in a civilized society. Specifically, Defendant Giguere:

  a.  Participated in the repeated sexual exploitation of Plaintiff, knowing that she was a minor and a victim of sex trafficking;

  b.  Subjected Plaintiff to physical and psychological trauma through his actions; and

  c.  Acted with deliberate indifference to the severe harm his conduct would cause Plaintiff.

223.    As a direct and proximate result of Defendant Giguere's actions, Plaintiff has suffered and continues to suffer severe emotional distress, including repeated sexual assaults, sexually transmitted diseases, anxiety, depression, PTSD, diminished self-worth, and an inability to form healthy relationships.

**WHEREFORE**, Plaintiff demands judgment against Defendant Giguere for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs, and for any and all other relief as is just and under the premises.

## COUNT XIX
## CAUSE OF ACTION AGAINST JAMES WILLIAM HANCOCK
### (Sex Trafficking of Children 18 USC 1591 and 1595)

224.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through

223 as if fully set out herein.

225.    18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force,

fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving
> anything of value, from participating in a venture which has engaged
> in an act described in violation of paragraph (1), knowing, or, ...in
> reckless disregard of the fact, that means of force, fraud, coercion
> described in subsection (e) (2), or any combination of such means
> will be used to cause the person to engage in a commercial sex act,
> or that the person has not attained the age of 18 years and will be
> caused to engage in a commercial sex act, shall be punished as
> provided in subsection (b)."

226.    18. U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may
> bring a civil action against the perpetrator (or whoever knowingly
> benefits, or attempts or conspires to benefit, financially or by
> receiving anything of value from participation in a venture which
> that person knew or should have known has engaged in an act in
> violation of this chapter) in an appropriate district court of the
> United States and may recover damages and reasonable attorney's
> fees."

227.    That between November 2016 and May 17, 2017, and upon information

and belief on or about April 15, 2017, Defendant Hancock, engaged, perpetrated,

and participated in commercial sex acts with Plaintiff, a minor under the age of 18,

in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant Hancock for

illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XX
## CAUSE OF ACTION AGAINST JAMES WILLIAM HANCOCK
### (Battery. F.S. 784.03 and 772.102(1)(a)(14))

228.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 227 as if fully set out herein.

229.   Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

230.   Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

231.    Florida Statutes 772.104 (2) provides that;

> "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

232.   That between November 2016 and May 17, 2017, and upon information

and belief on or about April 15, 2017, Defendant Hancock intentionally touched
Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under
the age of 18 at the time, could not give legal consent to the touching and caused
bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually
transmitted diseases, and other injuries.

233.   The sexual activity and physical battery of this child by this Defendant
is against the moral fibers of the community, shocks the conscience is outrageous
and unacceptable in a civil society, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant Hancock for
compensatory damages, interest, costs, attorney's fees, and upon a showing of the
application of Florida Statute 768.73, punitive damages and for any and all other
relief as is just under the premises.

### COUNT XXI
### CAUSE OF ACTION AGAINST JAMES WILLIAM HANCOCK
### (Intentional Infliction of Mental Distress)

234.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through
233 as if fully set out herein.

235.   Defendant Hancock intentionally engaged in illegal sexual activity with
Plaintiff, a minor at the time of the incidents. Defendant Hancock's actions were
deliberate, unlawful, and constituted a violation of Plaintiff's bodily autonomy and
dignity.

236.    Defendant Hancock intentionally and/or recklessly engaged in the sex trafficking of Plaintiff. His conduct was extreme, outrageous, and beyond the bounds of decency in a civilized society. Specifically, Defendant Hancock:

    a.    Participated in the repeated sexual exploitation of Plaintiff, knowing that she was a minor and a victim of sex trafficking;

    b.    Subjected Plaintiff to physical and psychological trauma through his actions; and

    c.    Acted with deliberate indifference to the severe harm his conduct would cause Plaintiff.

237.    As a direct and proximate result of Defendant Hancock's actions, Plaintiff has suffered and continues to suffer severe emotional distress, including repeated sexual assaults, sexually transmitted diseases, anxiety, depression, PTSD, diminished self-worth, and an inability to form healthy relationships.

**WHEREFORE,** Plaintiff demands judgment against Defendant Hancock for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs, and for any and all other relief as is just and under the premises.

## COUNT XXII
## CAUSE OF ACTION AGAINST JOSEPH ANDREW EASTON
### (Sex Trafficking of Children 18 USC 1591 and 1595)

238.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through

237 as if fully set out herein.

239.  18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force,

fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, …in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

240.  18. U.S.C. Section 1595 (Civil Remedy) provides that:

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

241.  That between November 2016 and May 17, 2017, and upon information

and belief on or about May 14, 2017, Defendant Easton, engaged, perpetrated, and

participated in commercial sex acts with Plaintiff, a minor under the age of 18, in

violation of 18 U.S.C. 1595, injuring and causing damage to the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant Easton for

illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages,

punitive damages, attorney's fees, and costs and for any and all other relief as is just

under the premises.

## COUNT XXIII
## CAUSE OF ACTION AGAINST JOSEPH ANDREW EASTON
## (Battery. F.S. 784.03 and 772.102(1)(a)(14))

242.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 241 as if fully set out herein.

243.    Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

244.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

245.    Florida Statutes 772.104 (2) provides that;

> "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

246.    That between November 2016 and May 17, 2017, and upon information and belief on or about May 14, 2017, Defendant Easton intentionally touched Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused

bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases, and other injuries.

247.   The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience is outrageous and unacceptable in a civil society, and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant Easton for compensatory damages, interest, costs, attorney's fees, and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

**COUNT XXIV**
**CAUSE OF ACTION AGAINST JOSEPH ANDREW EASTON**
**(Intentional Infliction of Mental Distress)**

248.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 247 as if fully set out herein.

249.   Defendant Easton intentionally engaged in illegal sexual activity with Plaintiff, a minor at the time of the incidents. Defendant Easton's actions were deliberate, unlawful, and constituted a violation of Plaintiff's bodily autonomy and dignity.

250.   Defendant Easton intentionally and/or recklessly engaged in the sex trafficking of Plaintiff. His conduct was extreme, outrageous, and beyond the bounds of decency in a civilized society. Specifically, Defendant Easton:

a. Participated in the repeated sexual exploitation of Plaintiff, knowing that she was a minor and a victim of sex trafficking;

b. Subjected Plaintiff to physical and psychological trauma through his actions; and

c. Acted with deliberate indifference to the severe harm his conduct would cause Plaintiff.

251.    As a direct and proximate result of Defendant Easton's actions, Plaintiff has suffered and continues to suffer severe emotional distress, including repeated sexual assaults, sexually transmitted diseases, anxiety, depression, PTSD, diminished self-worth, and an inability to form healthy relationships.

**WHEREFORE**, Plaintiff demands judgment against Defendant Easton for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs, and for any and all other relief as is just and under the premises.

### COUNT XXV
### CAUSE OF ACTION AGAINST LAWRENCE EDWARD KEMBLE
### (Sex Trafficking of Children 18 USC 1591 and 1595)

252.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 251 as if fully set out herein.

253.    18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

"Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, ...in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

254.    18. U.S.C. Section 1595 (Civil Remedy) provides that:

"An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

255.    That between November 2016 and May 17, 2017, and upon information and belief on or about May 6, 2017, Defendant Kemble, engaged, perpetrated, and participated in commercial sex acts with Plaintiff, a minor under the age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant Kemble for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## COUNT XXVI
## CAUSE OF ACTION AGAINST LAWRENCE EDWARD KEMBLE

**(Battery. F.S. 784.03 and 772.102(1)(a)(14))**

256.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 255 as if fully set out herein.

257.   Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

258.   Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

259.   Florida Statutes 772.104 (2) provides that;

> "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

260.   That between November 2016 and May 17, 2017, and upon information and belief on or about May 6, 2017, Defendant Kemble intentionally touched Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually

transmitted diseases, and other injuries.

261.   The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience is outrageous and unacceptable in a civil society, and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant Kemble for compensatory damages, interest, costs, attorney's fees, and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XXVII
## CAUSE OF ACTION AGAINST LAWRENCE EDWARD KEMBLE
### (Intentional Infliction of Mental Distress)

262.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 261 as if fully set out herein.

263.   Defendant Kemble intentionally engaged in illegal sexual activity with Plaintiff, a minor at the time of the incidents. Defendant Kemble's actions were deliberate, unlawful, and constituted a violation of Plaintiff's bodily autonomy and dignity.

264.   Defendant Kemble intentionally and/or recklessly engaged in the sex trafficking of Plaintiff. His conduct was extreme, outrageous, and beyond the bounds of decency in a civilized society. Specifically, Defendant Kemble:

> a.  Participated in the repeated sexual exploitation of Plaintiff, knowing

that she was a minor and a victim of sex trafficking;

b. Subjected Plaintiff to physical and psychological trauma through his actions; and

c. Acted with deliberate indifference to the severe harm his conduct would cause Plaintiff.

265.  As a direct and proximate result of Defendant Kemble's actions, Plaintiff has suffered and continues to suffer severe emotional distress, including repeated sexual assaults, sexually transmitted diseases, anxiety, depression, PTSD, diminished self-worth, and an inability to form healthy relationships.

**WHEREFORE**, Plaintiff demands judgment against Defendant Kemble for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs, and for any and all other relief as is just and under the premises.

**COUNT XXVIII**
**CAUSE OF ACTION AGAINST LATCHMAN KALADEEN**
**(Sex Trafficking of Children 18 USC 1591 and 1595)**

266.  Plaintiff realleges and reavers the allegations of Paragraphs 1 through 265 as if fully set out herein.

267.  18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

"Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, ...in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

268.    18. U.S.C. Section 1595 (Civil Remedy) provides that:

"An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees."

269.    That between November 2016 and May 17, 2017, and upon information and belief on or about March 12, 2017, Defendant Kaladeen, engaged, perpetrated, and participated in commercial sex acts with Plaintiff, a minor under the age of 18, in violation of 18. U.S.C. 1595, injuring and causing damage to the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant Kaladeen for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory damages, punitive damages, attorney's fees, and costs and for any and all other relief as is just under the premises.

## <u>COUNT XXIX</u>
## <u>CAUSE OF ACTION AGAINST LATCHMAN KALADEEN</u>
## <u>(Battery. F.S. 784.03 and 772.102(1)(a)(14))</u>

270.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through

269 as if fully set out herein.

271.   Florida Statutes 784.03 (Battery) provides that the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

272.   Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

273.   Florida Statutes 772.104 (2) provides that;

> "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

274.   That between November 2016 and May 17, 2017, and upon information and belief on or about March 12, 2017, Defendant Kaladeen intentionally touched Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases, and other injuries.

275.   The sexual activity and physical battery of this child by this Defendant

is against the moral fibers of the community, shocks the conscience and is outrageous and unacceptable in a civil society, and justifies the imposition of punitive damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant Kaladeen for compensatory damages, interest, costs, attorney's fees, and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XXX
## CAUSE OF ACTION AGAINST LATCHMAN KALADEEN
### (Intentional Infliction of Mental Distress)

276.  Plaintiff realleges and reavers the allegations of Paragraphs 1 through 275 as if fully set out herein.

277.  Defendant Kaladeen intentionally engaged in illegal sexual activity with Plaintiff, a minor at the time of the incidents. Defendant Kaladeen's actions were deliberate, and unlawful, and constituted a violation of Plaintiff's bodily autonomy and dignity.

278.  Defendant Kaladeen intentionally and/or recklessly engaged in the sex trafficking of Plaintiff. His conduct was extreme, outrageous, and beyond the bounds of decency in a civilized society. Specifically, Defendant Kaladeen:

      a.  Participated in the repeated sexual exploitation of Plaintiff, knowing that she was a minor and a victim of sex trafficking;

   b.  Subjected Plaintiff to physical and psychological trauma through his

        actions; and

   c.  Acted with deliberate indifference to the severe harm his conduct

        would cause Plaintiff.

279.   As a direct and proximate result of Defendant Kaladeen's actions,

Plaintiff has suffered and continues to suffer severe emotional distress, including

repeated sexual assaults, sexually transmitted diseases, anxiety, depression, PTSD,

diminished self-worth, and an inability to form healthy relationships.

   **WHEREFORE**, Plaintiff demands judgment against Defendant Kaladeen for

the intentional infliction of emotional distress and demands, compensatory damages,

punitive damages, attorney's fees, and costs, and for any and all other relief as is just

and under the premises.

**COUNT XXXI**
**CAUSE OF ACTION AGAINST MATTHEW CHRISTOPHER DOYLE**
**(Sex Trafficking of Children 18 USC 1591 and 1595)**

280.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through

279 as if fully set out herein.

281.   18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force,

fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving
> anything of value, from participating in a venture which has engaged
> in an act described in violation of paragraph (1), knowing, or, ...in
> reckless disregard of the fact, that means of force, fraud, coercion

described in subsection (e) (2), or any combination of such means
will be used to cause the person to engage in a commercial sex act,
or that the person has not attained the age of 18 years and will be
caused to engage in a commercial sex act, shall be punished as
provided in subsection (b)."

282.    18. U.S.C. Section 1595 (Civil Remedy) provides that:

"An individual who is a victim of a violation of this chapter may
bring a civil action against the perpetrator (or whoever knowingly
benefits, or attempts or conspires to benefit, financially or by
receiving anything of value from participation in a venture which
that person knew or should have known has engaged in an act in
violation of this chapter) in an appropriate district court of the
United States and may recover damages and reasonable attorney's
fees."

283.    That between November 2016 and May 17, 2017, and upon information

and belief on or about March 22, 2017, Defendant Doyle, engaged, perpetrated, and

participated in commercial sex acts with Plaintiff, a minor under the age of 18, in

violation of 18 U.S.C. 1595, injuring and causing damage to the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant Doyle for

illegal sex-trafficking of a minor, Plaintiff, and demands compensatory damages,

punitive damages, attorney's fees, and costs and for any and all other relief as is just

under the premises.

## COUNT XXXII
## CAUSE OF ACTION AGAINST MATTHEW CHRISTOPHER DOYLE
### (Battery. F.S. 784.03 and 772.102(1)(a)(14))

284.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through

283 as if fully set out herein.

285.    Florida Statutes 784.03 (Battery) provides that the offense of battery

occurs when a person actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

286.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

287.    Florida Statutes 772.104 (2) provides that;

> "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in
>
> any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

288.    That between November 2016 and May 17, 2017, and upon information and belief on or about March 22, 2017, Defendant Doyle intentionally touched Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases, and other injuries.

289.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience is outrageous

and unacceptable in a civil society, and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant Doyle for compensatory damages, interest, costs, attorney's fees, and upon a showing of the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

## COUNT XXXIII
## CAUSE OF ACTION AGAINST MATTHEW CHRISTOPHER DOYLE
### (Intentional Infliction of Mental Distress)

290.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 289 as if fully set out herein.

291.   Defendant Doyle intentionally engaged in illegal sexual activity with Plaintiff, a minor at the time of the incidents. Defendant Doyle's actions were deliberate, and unlawful, and constituted a violation of Plaintiff's bodily autonomy and dignity.

292.   Defendant Doyle intentionally and/or recklessly engaged in the sex trafficking of Plaintiff. His conduct was extreme, outrageous, and beyond the bounds of decency in a civilized society. Specifically, Defendant Doyle:

> a. Participated in the repeated sexual exploitation of Plaintiff, knowing that she was a minor and a victim of sex trafficking;
>
> b. Subjected Plaintiff to physical and psychological trauma through his actions; and

    c. Acted with deliberate indifference to the severe harm his conduct
would cause Plaintiff.

293.   As a direct and proximate result of Defendant Doyle's actions, Plaintiff has suffered and continues to suffer severe emotional distress, including repeated sexual assaults, sexually transmitted diseases, anxiety, depression, PTSD, diminished self-worth, and an inability to form healthy relationships.

**WHEREFORE**, Plaintiff demands judgment against Defendant Doyle for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs, and for any and all other relief as is just and under the premises.

## COUNT XXXIV
## CAUSE OF ACTION AGAINST JASON MICHAEL RAULERSON
### (Sex Trafficking of Children 18 USC 1591 and 1595)

294.   Plaintiff realleges and reavers the allegations of Paragraphs 1 through 293 as if fully set out herein.

295.   18 U.S.C Section 1591 (a)(2) (Sex Trafficking of children or by force, fraud, or coercion) applies to this matter as follows:

> "Whoever knowingly... benefits, financially, or by receiving anything of value, from participating in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, ...in reckless disregard of the fact, that means of force, fraud, coercion described in subsection (e) (2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

296.    18. U.S.C. Section 1595 (Civil Remedy) provides that:

"An individual who is a victim of a violation of this chapter may
bring a civil action against the perpetrator (or whoever knowingly
benefits, or attempts or conspires to benefit, financially or by
receiving anything of value from participation in a venture which
that person knew or should have known has engaged in an act in
violation of this chapter) in an appropriate district court of the
United States and may recover damages and reasonable attorney's
fees."

297.    That between November 2016 and May 17, 2017, and upon information

and belief on or about January 11, 2017, Defendant Raulerson, engaged, perpetrated,

and participated in commercial sex acts with Plaintiff, a minor under the age of 18,

in violation of 18 U.S.C. 1595, injuring and causing damage to the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant Raulerson

for illegal sex-trafficking of a minor, the Plaintiff, and demands compensatory

damages, punitive damages, attorney's fees, and costs and for any and all other relief

as is just under the premises.

## COUNT XXXV
## CAUSE OF ACTION AGAINST JASON MICHAEL RAULERSON
### Battery. F.S. 784.03 and 772.102(1)(a)(14)

298.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through

297 as if fully set out herein.

299.    Florida Statutes 784.03 (Battery) provides that the offense of battery

occurs when a person actually and intentionally touches or strikes another person

against the will of the other; or (2) Intentionally causes bodily harm to another

person.

300.    Florida Statutes 772.101 (Civil Remedies for Criminal Practices) provides in Section 772.102 (1)(14) that criminal activities include those under Chapter 784 of the Florida Statutes relating to assault and battery and 772.102 (1)(15) relating to kidnapping or human trafficking.

301.    Florida Statutes 772.104 (2) provides that

> "any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of 772.103 due to sex trafficking or human trafficking shall have a cause of action for threefold the amount gained from the sex trafficking or human trafficking and in any such action is entitled to minimum damages in the amount of $200 and reasonable attorney's fees and court costs in the trial and appellate courts."

302.    That between November 2016 and May 17, 2017, and upon information and belief on or about January 11, 2017, Defendant Raulerson intentionally touched Plaintiff for the purpose of engaging in commercial sex acts. Plaintiff, a minor under the age of 18 at the time, could not give legal consent to the touching and caused bodily harm to Plaintiff, to wit: sexual activity with a minor, physical harm, sexually transmitted diseases, and other injuries.

303.    The sexual activity and physical battery of this child by this Defendant is against the moral fibers of the community, shocks the conscience is outrageous and unacceptable in a civil society, and justifies the imposition of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant Raulerson for compensatory damages, interest, costs, attorney's fees, and upon a showing of

the application of Florida Statute 768.73, punitive damages and for any and all other relief as is just under the premises.

**COUNT XXXVI**
**CAUSE OF ACTION AGAINST JASON MICHAEL RAULERSON**
**(Intentional Infliction of Mental Distress)**

304.    Plaintiff realleges and reavers the allegations of Paragraphs 1 through 303 as if fully set out herein.

305.    Defendant Raulerson intentionally engaged in illegal sexual activity with Plaintiff, a minor at the time of the incident. Defendant Raulerson's actions were deliberate, and unlawful, and constituted a violation of Plaintiff's bodily autonomy and dignity.

306.    Defendant Raulerson intentionally and/or recklessly engaged in the sex trafficking of Plaintiff. His conduct was extreme, outrageous, and beyond the bounds of decency in a civilized society. Specifically, Defendant Raulerson:

> a.  Participated in the repeated sexual exploitation of Plaintiff, knowing that she was a minor and a victim of sex trafficking;
>
> b.  Subjected Plaintiff to physical and psychological trauma through his actions; and
>
> c.  Acted with deliberate indifference to the severe harm his conduct would cause Plaintiff.

307.    As a direct and proximate result of Defendant Raulerson's actions,

Plaintiff has suffered and continues to suffer severe emotional distress, including repeated sexual assaults, sexually transmitted diseases, anxiety, depression, PTSD, diminished self-worth, and an inability to form healthy relationships.

**WHEREFORE**, Plaintiff demands judgment against Defendant Raulerson for the intentional infliction of emotional distress and demands, compensatory damages, punitive damages, attorney's fees, and costs, and for any and all other relief as is just and under the premises.

## DAMAGES

308.   Defendants' wrongful acts and omissions described above, individually and collectively, caused Plaintiff to sustain legal damages.

309.   Plaintiff did suffer the following injuries as a direct and proximate result of Defendants' and each of their, wrongful actions and inactions alleged herein, and as such Plaintiff is entitled to be compensated for past and future personal injuries, non-economic damages, and economic damages see, e.g., 18 U.S.C. §§ 1591, 1595, including:

  a.  actual damages;

  b.  direct damages;

  c.  incidental and consequential damages;

  d.  lost earnings and lost earning capacity;

  e.  necessary medical expenses;

Page 101 of 104

f.  life care expenses;

g.  physical pain and suffering;

h.  physical impairment;

i.  mental anguish and emotional distress damages (until trial and in the future);

j.  restitution;

k.  unjust enrichment; and

l.  disgorgement of profits.

310.  Plaintiffs are entitled to pre-and post-judgment interest at the maximum legal rates.

## PUNITIVE DAMAGES

311.  Plaintiffs are entitled to punitive damages under the applicable statutes against Defendants, and each of them, for each and every cause of action alleged herein, as a result of Defendants' outrageous, wanton, willful, and malicious conduct underlying Plaintiff's claims.

## ATTORNEY FEES

312.  Plaintiff is entitled to recover their costs and reasonable, necessary, or customary attorneys' fees from Defendants under the applicable statutes. See 18 U.S.C. § 1595(a).

313.  All conditions precedent to Plaintiff's recovery of its costs and

attorneys' fees have occurred or will occur prior to entry of judgment in this suit.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against each Defendant in excess of $75,000.00 and prays that this case be set for trial before a jury and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants jointly and severally for:

a. all economic damages to which they are entitled;

b. all actual damages to which they are entitled;

c. all compensatory damages available for the losses described with respect to each cause of action;

d. all incidental and consequential and/or special damages;

e. all mental anguish and emotional distress damages to which they are entitled;

f. past and future medical expenses, as well as the costs associated with past and future life care;

g. past and future mental distress;

h. all restitution damages to which they are entitled;

i. all disgorgement of profits to which they are entitled;

j. all unjust enrichment damages to which they are entitled;

k. all available economic damages, including without limitation,

conscious pain and suffering, past, present, and future injuries, physical injuries, emotional/mental and psychiatric/psychologic injuries, and loss of enjoyment of life;

l. exemplary, treble, and/or punitive damages;

m. attorneys' fees and costs of this suit;

n. pre-judgment and post-judgment interest at the highest rate allowed by law; and

o. all other relief to which they are entitled in law or in equity.

## JURY DEMAND

Plaintiff requests a jury trial as to all courts of her Complaint

Dated: 14 March 2025

Respectfully submitted,

THE LAW OFFICES OF TRAVIS R. WALKER, P.A.

By: __/s/ Travis R. Walker__
    Travis R. Walker Esq.
    Florida Bar No. 33693
    1100 SE Federal Highway
    Stuart, Florida 34994
    Telephone: (772) 708-0952
    travis@traviswalkerlaw.com
    izzy.leiva@traviswalkerlaw.com
    wasi@traviswalkerlaw.com
    service@traviswalkerlaw.com