## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

JANE DOE, I.H., an individual,

          **CASE NO.: 8:24-cv-1678-SDM-NHA**

       Plaintiff,

v.

SALESFORCE, et. al.

       Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT GOSAI 9, LLC D/B/A QUALITY INN'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**COMES NOW**, Plaintiff Jane Doe, I.H. ("Plaintiff"), by and through undersigned counsel, and respectfully submits this Response in Opposition to Defendant GOSAI 9, D/B/A Quality Inn's ("Defendant") Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"). For the reasons set forth below, the Defendant's Motion should be denied in its entirety.

## I. INTRODUCTION AND RELIEF REQUESTED

Plaintiff contends that Defendant's motion distorts the allegations, and disregards well-pleaded factual assertions of Plaintiff SAC. *See*. **SAC ¶¶ 30−33, 69−85, 114−130**, and improperly seeks dismissal based on disputed facts that are to be resolved at trial. Plaintiff's SAC adequately and plausibly alleges that Defendant knowingly benefited from and participated in a sex trafficking venture, in violation of 18 U.S.C. §§ 1591 and 1595 of the Trafficking Victims Protection Reauthorization Act (TVPRA). As detailed in the SAC, Plaintiff alleges multiple

facts demonstrating Defendant's involvement in a sex trafficking venture. Specifically, the Defendant facilitated the trafficking venture by ignoring clear and observable signs of trafficking. *See* **SAC ¶¶ 74–75, 82.** Profiting from room rentals to Plaintiff's trafficker. *See* **SAC ¶¶ 76–77, 84.** Failing to train hotel staff to identify and intervene in suspected trafficking activity. *See* **SAC ¶¶ 80–81, 117.** Plaintiff traffickers openly exhibited clear signs of trafficking, including interactions with hotel staff and behavior in common areas (*See.* **SAC ¶75**), yet Defendant through its ownership, operation, and franchising of the property— failed to act despite being aware of the prevalence of sex trafficking in the hotel industry (*See.* **SAC¶ 72**). Further, the trafficker advertised Plaintiff online, arranged commercial sex encounters with "Johns," and used the hotel premises to threaten, assault, and exploit her. (*See* **SAC ¶73**. Forensic evidence confirms trafficking on Defendant's property multiple times March - May 2017, including text messages, cell phone records, and photographic evidence showing that the trafficker knowingly transported Plaintiff and forced her to engage in commercial sex acts with multiple men—including Defendant Shawn C. Henson ("Henson")— through threats, coercion, and manipulation. (*See.* **SAC ¶¶ 20–22, Exhibit A Pg. 14-18 attached with Plaintiff's SAC (hereinafter "Exhibit A")**. Law enforcement investigation confirmed that the trafficker and Defendant Henson booked Rooms 102 and 112 using their Florida driver's licenses and knowingly transported Plaintiff in her red Dodge Ram vehicle to the hotel. *See* **SAC ¶¶ 20– 22; Exhibit A at pp. 14–18**. Plaintiff further alleges that Defendant's deliberate

indifference caused her severe physical and psychological harm. See SAC ¶¶ 122,

130. These allegations are not merely "conclusory," as Defendant claims, but are

supported by detailed factual assertions and documentary evidence. *See* **Exhibit**

**A**. Finally, Defendant's deliberate indifference caused Plaintiff severe physical and

psychological harm *See*. **SAC ¶¶ 122, 130**. Plaintiff's SAC satisfies the pleading

requirements under Federal Rule of Civil Procedure 8 and the applicable standards

under the TVPRA, asserting that Defendant knowingly benefited from and

participated in the trafficking venture in violation of 18 U.S.C. §§ 1591 and 1595, by

knowingly benefiting from the trafficking venture.

For these reasons, Plaintiff respectfully requests that this Court deny

Defendant's Motion to Dismiss in its entirety, with/without prejudice, and grant

any further relief the Court deems just and proper.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANT GOSAI 9, LLC D/B/A QUALITY INN'S

1. At the age of 16, Plaintiff was trafficked by her mother, Kristina

Hughes ("trafficker"), who forced her to engage in commercial sex acts with

multiple men and introduced her to drugs. She was controlled through threats,

coercion, and manipulation. Plaintiff's trafficker forced her to provide sexual

services to "customers," hereinafter referred to as "Johns," in exchange for money.

*See*. **SAC ¶¶30-33**. Plaintiff's **SAC (¶¶ 69−85**, alleged facts "jointly and severally

to both "Hotel Defendants" and **¶¶ 114−130**, specifically alleged to "Defendant

GOSAI 9, LLC"), which sufficiently details how the Defendant knowingly

permitted, facilitated, and profited from venture sex trafficking at the Quality Inn located at 1125 North Young Boulevard in Chiefland, Florida (hereinafter "Hotel" Premises/Property). *See*. **SAC ¶¶ 69–85 and ¶¶ 114–130**.

2.      Between November 2016 and May 2017, Plaintiff was trafficked, assaulted, and sold for sex at Defendant's Hotel, where Defendant, as the owner and operator, failed to enforce anti-trafficking policies despite having control over training and protocols *See*. **SAC ¶¶ 70-79**. Plaintiff's trafficker coerced her into commercial sex acts while Hotel staff observed clear signs of trafficking, including her malnourished state and multiple men entering and exiting her room, yet took no action. Defendant, aware of trafficking in the Hotel industry through online reviews, surveillance, and inspections, continued renting rooms to traffickers, financially benefiting from the exploitation. Despite industry guidelines and a legal duty under the TVPRA (18 U.S.C. § 1591), Defendant negligently failed to train employees or intervene, allowing traffickers to exploit victims, including minors, and causing severe harm to Plaintiff *See*. **SAC ¶¶ 80-84**.

3.      On or about March 3, 2017, April 7, 2017, and May 12, 2017, Plaintiff, a minor at the time, was trafficked for commercial sex acts at the Hotel property owned and operated by Defendant. Plaintiff was coerced, threatened, and forced to engage in sexual acts with Defendant Henson and multiple other individuals under the control of her trafficker, who knowingly transported Plaintiff for commercial sex trafficking to Hotel property. *See*. **SAC ¶¶114-130**.

4.      Defendant had actual or constructive knowledge of sex trafficking on

its Hotel premises but failed to intervene, report, or prevent it, instead profiting from room rentals to traffickers. Despite clear red flags—including frequent cash payments, lack of identification checks, ignored complaints, high foot traffic, and excessive housekeeping requests—Defendant took no action. Staff and management witnessed multiple men entering Plaintiff's room, observed her distress and underage appearance, noted the absence of luggage, and allowed third-party rentals by known traffickers, yet failed to implement security measures or training to combat trafficking. *See*. **SAC ¶¶118-120**.

5.      Defendant knowingly participated in a trafficking venture by renting rooms to Plaintiff's trafficker, profiting from her exploitation, and failing to prevent sex trafficking despite clear warning signs. As the owner and operator of the Hotel where Plaintiff was repeatedly trafficked, raped, and sexually exploited, Defendant ignored red flags such as cash payments, high foot traffic, and the visible distress of an underage victim. Prioritizing profit over safety, Defendant failed to implement security measures, report criminal activity, or intervene, demonstrating extreme and outrageous conduct that is intolerable in a civilized society. *See*. **SAC ¶¶ 121-130**.

6.      The forensic evidence and Plaintiff's identification confirm a repeated pattern of sex trafficking on Defendant's Hotel property, confirming a pattern of illegal conduct occurring on the Hotel premises. This is not only one occupation Plaintiff was exploited, but evidence also includes text messages extracted from the trafficker's phone on 03/03/2017, 04/07/2017, and 05/12/2017 showing that

Plaintiff was repeatedly sold for sex at the Hotel property to multiple adult men, including Defendant Henson. Plaintiff trafficker booked rooms 102 and 112 and paid cash for these purposes (SAC **¶¶117–118; Exhibit A**). On one occasion, Defendant Henson received a known visitor, suggesting a preexisting relationship and further involvement in the trafficking venture. Plaintiff's trafficker knowingly transported her to the Hotel against her will to engage in commercial sex acts, including oral and vaginal intercourse, for financial gain. The Hotel layout—with rooms isolated in the back and minimal staff interaction—facilitated trafficking, while the trafficker's room rentals were clearly for the purpose of exploitation rather than ordinary business. On October 26, 2017, law enforcement showed Plaintiff a photo lineup to identify individuals who engaged in commercial sex acts, Plaintiff identified Defendant Henson as a man who engaged in commercial sex acts with her at Defendant's Hotel, where her trafficker, in sexual acts with Defendant Henson and multiple other individuals under the control of her trafficker, who knowingly transported Plaintiff for commercial sex trafficking to Hotel property. Plaintiff trafficker rented that room not in the ordinary course of business, but clearly intentionally for the purpose of trafficking the Plaintiff for money. *See*. **SAC ¶¶117-118**; **Exhibit A**.

7.    Defendant violated 18 U.S.C. §§ 1591 and 1595 by knowingly benefiting from and participating in a trafficking venture, receiving financial compensation from the trafficker while failing to act against known sex trafficking on Hotel property. Despite clear signs of exploitation, Defendant's deliberate

indifference and reckless disregard for trafficking victims facilitated the abuse by repeatedly renting rooms to traffickers. As a result of Defendant's actions, Plaintiff suffered severe physical injuries, emotional and psychological trauma, PTSD, anxiety, depression, permanent health consequences, and lasting harm, including Intentional Infliction of Emotional Distress (IIED). *See*. **SAC ¶¶ 114–130**.

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint, requiring factual allegations that raise a right to relief above the speculative level, assuming all allegations are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). In ruling on a motion to dismiss, the court is limited to the pleadings, which include the complaint and any attached documents. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Documents attached to a motion to dismiss may be considered if they are referenced in the complaint and central to the plaintiff's claims. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Rule 12(b)(6) motions are disfavored and rarely granted. *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The complaint must be liberally construed in the plaintiff's favor, with all facts taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). Dismissal is only appropriate if it appears beyond doubt that the plaintiff can prove no set of facts

entitling them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## IV. ARGUMENTS & AUTHORITIES

### A. The Second Amended Complaint Is a Well-Pleaded Satisfies Federal Pleading Standards Under Rule 8:

Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* also F.R.Civ.P. 8(e). Plaintiff SAC satisfies this standard by setting forth a detailed narrative of the trafficking enterprise and the specific conduct and knowledge attributable to each Defendant, including Quality Inn. Contrary to Defendant's assertion, Plaintiff does not indiscriminately lump together all defendants. The SAC outlines allegations against various Hotel Defendants based on their ownership, control, policies, and profits derived from the trafficking enterprise. The SAC clearly alleges that Quality Inn knew or should have known about Plaintiff's trafficking, failed to intervene, and instead provided rooms, services, and profits that furthered and benefitted from the trafficking venture. See **SAC ¶¶ 117, 69−85.**

### B. Group Allegations Do Not Invalidate the Complaint

Group pleading is not per se improper where, as here, defendants are alleged to have engaged in the same or substantially similar conduct. Courts recognize that

in cases involving corporate defendants with shared practices or joint control (such as franchisors/franchisees or branded hotels under a single umbrella), group allegations may be appropriate where there are multiple defendants so long as the "grouping" does not resemble a "monolith." *See City of Morristown v. AT&T Corp.*, 206 F. Supp. 3d 1321, 1338–39) (citing *Fondren v. Schmidt*, 626 F. Supp. 892, 898 (D. Nev. 1986) (recognizing that in cases involving multiple defendants, a plaintiff should allege the role of each of them, but also noting that "group conduct may be pleaded" when "a category of defendants is allegedly responsible for a continuing course of conduct")).

In this case, Defendant is not prejudiced by these allegations. Plaintiff SAC provides ample factual context to put Defendant on notice of the claims against it—namely, that it failed to act despite clear red flags of sex trafficking on its premises and that it profited from the trafficking by renting rooms and providing services to Plaintiff's traffickers. See. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) Courts have held that group allegations are permissible where, as here, they arise from the same conduct and are supported by specific factual allegations against individual defendants. See *Doe v. Red Roof Inns, Inc.,* 21 F.4th 714, 726 (11th Cir. 2021).

Accordingly, Plaintiff's allegations do not constitute an impermissible "shotgun pleading" because they are grounded in a common course of conduct and provide sufficient detail to give each Defendant fair notice of the claims and the grounds upon which they rest. Where multiple corporate defendants operate

within an integrated system—as is common in franchised hotel chains—group allegations are necessary to reflect the reality of shared policies, practices, and responsibilities. Plaintiff has adequately alleged Defendant's participation in, knowledge of, and failure to prevent the trafficking that occurred on its premises.

## C. Plaintiff Has Sufficiently Alleged All Elements of TVPRA Beneficiary Liability Claim:

Plaintiff asserts that Defendant has failed to meet the burden of proof required to dismiss the claim for beneficiary liability under the TVPRA. Defendant misinterprets both the legal standards, and the factual allegations outlined in the Plaintiff SAC. To succeed on a beneficiary liability theory under § 1595(a)(2), the plaintiff must show that the defendant (1) knowingly benefitted, (2) from participation in a venture; (3) that violated the TVPRA as to the Plaintiff; (3) which they knew or should have known was engaged in conduct that violated the TVPRA." *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021); *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022). Contrary to Defendant's assertions, Plaintiff has sufficiently alleged each element required under 18 U.S.C. § 1595(a)(2) and has met the pleading standards under *Doe v. Red Roof Inns, Inc.,* 21 F.4th 714 (11th Cir. 2021).

### 1. Plaintiff Has Sufficiently Alleged Defendant Knowingly Benefited:

Under 18 U.S.C. § 1591(a)(2), an entity is liable if it knowingly benefits—financially or otherwise—from participating in a venture engaged in sex trafficking. Liability arises when the defendant knowingly "recruits, entices, harbors,

transports, provides, obtains, advertises, maintains, patronizes, or solicits" a person for commercial sex acts or acts in reckless disregard of the fact that force, fraud, or coercion will be used to compel such acts. *Treminio v. Crowley Mar. Corp.*, 707 F. Supp. 3d 1245, 1252 (S.D. Fla. 2020). For beneficiary liability, Plaintiff must show that Defendant had actual or constructive knowledge that its venture with the trafficker violated the TVPRA. *Id.*; see also *18 U.S.C. § 1595(a)*.

Moreover, Defendants attempt to impose a requirement of "actual knowledge" from criminal sex trafficking into the civil statute even though § 1595 does not require it. The "knowingly benefits financially" element of § 1595 "merely requires that Defendant knowingly receive a financial benefit" and the rental of a hotel room—or royalties from that rental—constitutes a financial benefit sufficient to meet this element. *H.H. v. G6 Hosp.*, LLC, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); *see A.B.*, 455 F.Supp.3d at 188–91; *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, *4 (N.D. Cal. July 30, 2020); <u>A.B. v. Hilton Worldwide Holdings Inc.</u>, 484 F. Supp. 3d 921, 936 (D. Or. 2020).

Furthermore, the allegation that hotel franchisors received benefits from sex trafficking victim's trafficker, including increased revenue every time a hotel room was rented, sufficiently alleged that franchisors knowingly benefited from trafficking venture, as a required element to state a beneficiary liability claim against franchisors under the (TVPRA). 18 U.S.C.A. § 1595(a).

In this case, Plaintiff has sufficiently pleaded that Defendant, as the owner, operator, manager, and franchiser of the Hotel, knowingly benefited from renting rooms to Plaintiff's trafficker while ignoring clear red flags of sex trafficking, including cash payments, and third-party room rentals *See*. **SAC ¶¶ 74–75, 82**, profited from room rentals to Plaintiff's trafficker *See*. **SAC ¶¶ 76–77, 84**) and failed to train the Hotel staff to intervene *See*. **SAC ¶¶ 80–81, 138**. Defendant exercised control over the policies, training, and security of the premises. (*See*. **SAC ¶¶ 70–83**). This constitutes "participation in a venture" under the TVPRA. See *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019) (denying motion to dismiss where hotel franchisor failed to prevent trafficking by not adopting appropriate policies and procedures).

Plaintiff traffickers openly exhibited clear signs of trafficking, including interactions with hotel staff and behavior in common areas (*See*. **SAC¶ 75**), yet Defendant—through its ownership, operation, and franchising of the property— failed to act despite being aware of the prevalence of sex trafficking in the hotel industry (*See*. **SAC¶ 72**). Further, the trafficker advertised Plaintiff online, arranged commercial sex encounters with "Johns," and used the hotel premises to threaten, assault, and exploit her. (*See* **SAC ¶73**. Forensic evidence confirms trafficking on Defendant's property multiple times March - May 2017, including text messages, cell phone records, and photographic evidence showing that the trafficker knowingly transported Plaintiff and forced her to engage in commercial sex acts with multiple men—including Defendant Shawn C. Henson ("Henson")—

through threats, coercion, and manipulation. (*See*. **SAC ¶¶ 20−22, Exhibit A).** Law enforcement investigation confirmed that the trafficker and Defendant Henson booked Rooms 102 and 112 using their Florida driver's licenses and knowingly transported Plaintiff in her red Dodge Ram vehicle to the hotel. *See* **SAC ¶¶ 20−22; Exhibit A at pp. 14−18**. Plaintiff further alleges that Defendant's deliberate indifference caused her severe physical and psychological harm. See SAC ¶¶ 122, 130. These allegations are not merely "conclusory," as Defendant claims, but are supported by detailed factual assertions and documentary evidence. *See* **Exhibit A**. Finally, Defendant's deliberate indifference caused Plaintiff severe physical and psychological harm *See*. **SAC ¶¶ 122, 130**. Plaintiff's SAC satisfies the pleading requirements under Federal Rule of Civil Procedure 8 and the applicable standards under the TVPRA, asserting that Defendant knowingly benefited from and participated in the trafficking venture in violation of 18 U.S.C. §§ 1591 and 1595, by knowingly benefiting from the trafficking venture.

Defendant failed to train staff to recognize trafficking indicators, allowing the exploitation to persist unchecked. Defendant repeatedly rented rooms to Plaintiff's trafficker, who used them to force Plaintiff into commercial sex acts with multiple "Johns" *See*. **SAC ¶¶ 70−71.** Despite obvious signs of trafficking, Defendant continued to profit from these rentals, demonstrating deliberate indifference to the criminal activity occurring on its premises *See*. **SAC ¶¶ 76−79.** As the owner and operator, Defendant had day-to-day control over the Hotel's policies, training, and security *See*. **SAC ¶¶ 80−83**. Despite industry standards

(e.g., AHLA and ECPAT-USA guidelines), Defendant failed to implement adequate training for staff to recognize or report trafficking *See*. **SAC ¶¶ 80–83**. Management-level employees observed trafficking indicators but failed to act *See*. **SAC ¶¶ 74–75**. Courts have held that room rentals constitute a "benefit" under the TVPRA. *Jane Doe (S.A.S.) v. ESA P Portfolio LLC*, No. C23-6038 TMC, Dkt. No. 102 at 17 (D.S.C. 2024) (citing *M.A. v. Wyndham Hotels & Resorts*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019)). Even a single transaction can support a TVPRA claim when paired with constructive knowledge of trafficking. *S.Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F. Supp. 3d 1069, 1081 (M.D. Fla. 2021). Here, Plaintiff alleges repeated instances of trafficking at Defendant's Hotel, with multiple red flags that Defendant ignored, thereby sufficiently stating a claim under the TVPRA.

### 2. Plaintiff Has Sufficiently Alleged Defendant Participated in a Venture:

The Court recognizes two ways to establish participation in a venture under the TVPRA. First, a plaintiff may plead with facts that allow a court to infer a common purpose, shared profits and risk, or control. See *S.A.S. v. ESA P Portfolio LLC*, No. C23-6038 TMC, Dkt. No. 102 at 11 (D.S.C. 2024) (quoting *Doe 1 v. Apple Inc.*, 96 F.4th 403, 416 (D.C. Cir. 2024)). Second, a plaintiff may demonstrate that a "direct and continuous relationship" existed between the defendant and the trafficker. *Id.* Where a defendant provides "assistance, support, or facilitation" to the trafficker through an ongoing business relationship, a court or jury may infer

the existence of a tacit agreement sufficient to establish participation under § 1595. See *G.G. v. Salesforce.com, Inc.*, 76 F.4th 559, 573 (7th Cir. 2023) (quoting *M.A. v. Wyndham Hotels & Resorts*, 425 F. Supp. 3d 959, 970–71 (S.D. Ohio 2019)).

In this case, Plaintiff has sufficiently alleged that Defendant participated in the trafficking venture by providing Plaintiff's trafficker with repeated access to Hotel rooms despite clear trafficking indicators *See*. **SAC ¶¶ 70–71**. Plaintiff's trafficker used rooms at Defendant's Hotel property multiple times, yet Defendant failed to act on visible red flags, including Plaintiff's malnourished appearance, distress, lack of belongings, multiple men entering and exiting her room, excessive housekeeping requests, and cash transactions See. **SAC ¶¶ 72–75, 114–130**. As an owner, operator, manager, and franchiser of the Hotel, Defendant maintained control of anti-trafficking policies requiring employees to report such signs, yet no reports were made despite the ongoing and obvious nature of the trafficking *See*. **SAC ¶¶ 114–121**. Defendant directly profited from room rentals while disregarding Plaintiff's exploitation *See*. **SAC ¶¶ 76–79**. Moreover, On October 26, 2017, law enforcement showed Plaintiff a photo lineup to identify individuals who engaged in commercial sex acts, Plaintiff identified Defendant Henson as a man who engaged in commercial sex acts with her at Defendant's Hotel, where her trafficker, in sexual acts with Defendant Henson and multiple other individuals under the control of her trafficker, who knowingly transported Plaintiff for commercial sex trafficking to Hotel property. Plaintiff trafficker rented that room not in the ordinary course of business, but clearly intentionally for the purpose of

trafficking the Plaintiff for money. *See*. **SAC ¶¶117-119**; **Exhibit A**.

Courts have consistently held that repeated transactions with traffickers, coupled with ignored red flags, establish participation in a trafficking venture. See *S.Y. v. Wyndham Hotels & Resorts*, 519 F. Supp. 3d 1069, 1081 (M.D. Fla. 2021). Defendant's failure to act, despite actual or constructive knowledge, constitutes "support or facilitation" of the trafficking venture. See *G.G.*, 76 F.4th at 573. Plaintiff's SAC satisfies both methods of proving participation under § 1595: (a) a continuous business relationship through repeated room rentals and ignored warnings and (b) shared financial benefit and control via Defendant's policies and failure to intervene.

### 3. Plaintiff Has Sufficiently Alleged Defendant Venture Violated the TVPRA as to Plaintiff:

There is no dispute that Plaintiff qualifies as a victim of trafficking under 18 U.S.C. § 1591(a)(1). Plaintiff has sufficiently alleged that her trafficker engaged in recruitment, harboring, and coercion, all of which constitute violations of the TVPRA. See *Doe v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 551–53 (7th Cir. 2023); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019). Courts have recognized victim status as a threshold requirement, meaning that a plaintiff must demonstrate that she was subjected to force, threats of force, fraud, or coercion that resulted in her engagement in commercial sex acts. See *G.G.*, 76 F.4th at 552; 18 U.S.C. § 1591(a).

In this case, Plaintiff has sufficiently pleaded that she was a victim of sex trafficking under 18 U.S.C. § 1591(a)(1), alleging that her trafficker engaged in recruitment, harboring, and coercion—each constituting a violation of the TVPRA. She was subjected to threats, psychological manipulation, and force, compelling her into commercial sex acts while being held at the Defendant's Hotel. These allegations are supported by specific factual details and forensic evidence. *See*. **Exhibit A**.

8.    Between November 2016 and May 2017, Plaintiff was trafficked, assaulted, and sold for sex at Defendant's Hotel, where Defendant failed to enforce anti-trafficking policies despite controlling hotel training and protocols *See*. **SAC ¶¶ 70-71**. Her trafficker used the Hotel to conspire, threaten, and force her into commercial sex acts, while Hotel staff observed clear signs of trafficking, including her malnourished appearance, lack of belongings, and the frequent presence of multiple men in her room, but took no action *See*. **SAC ¶¶ 72-75**. By continuing to rent rooms to the trafficker, Defendant knowingly facilitated Plaintiff's trafficking in violation of 18 U.S.C. § 1591(a). On one occasion, Defendant Henson received a known visitor, suggesting a preexisting relationship and further involvement in the trafficking venture. Plaintiff's trafficker knowingly transported her to the Hotel against her will to engage in commercial sex acts, including oral and vaginal intercourse, for financial gain. The Hotel layout—with rooms isolated in the back and minimal staff interaction—facilitated trafficking, while the trafficker's room rentals were clearly for the purpose of exploitation rather than

ordinary business. On October 26, 2017, law enforcement showed Plaintiff a photo lineup to identify individuals who engaged in commercial sex acts, Plaintiff identified Defendant Henson as a man who engaged in commercial sex acts with her at Defendant's Hotel, where her trafficker, in sexual acts with Defendant Henson and multiple other individuals under the control of her trafficker, who knowingly transported Plaintiff for commercial sex trafficking to Hotel property. Plaintiff trafficker rented that room not in the ordinary course of business, but clearly intentionally for the purpose of trafficking the Plaintiff for money. *See*. **SAC ¶¶117-118**; **Exhibit A**. Finally, Defendant's deliberate indifference caused Plaintiff severe physical and psychological harm *See*. **SAC ¶¶ 122, 130**. These allegations are not "conclusory," as Defendant claims, but are supported by substantial evidence. Plaintiff trafficker rented that room not in the ordinary course of business, but clearly intentionally for the purpose of trafficking the Plaintiff for money. *See*. **SAC ¶¶120-121**; **Exhibit A**.

### 4. Plaintiff Has Sufficiently Alleged Defendant Knew or Should Have Known About the Trafficking violated TVPRA:

The TVPRA holds liable anyone who knowingly harbors a person, aware that force, threats, fraud, or coercion will be used to compel commercial sex acts (18 U.S.C. § 1591(a)(1)). As outlined in *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-00672-KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023), the court clarified that plaintiffs must allege defendants knowingly harbored or maintained a person with knowledge that fraud or force would be used to force them into

prostitution. The court further emphasized that liability requires awareness of an established modus operandi indicating a likelihood of future trafficking.

In this case, Plaintiff has sufficiently pleaded that Defendant violated 18 U.S.C. § 1591(a)(1) by knowingly harboring her while aware that force, threats, or coercion would compel her into commercial sex acts. Her trafficker engaged in recruitment, harboring, and coercion, all of which constituted violations under the TVPRA. Specifically, she was subjected to threats, psychological manipulation, and force, compelling her into commercial sex acts while being held at Defendant's Hotel. Between November 2016 and May 2017, Plaintiff was trafficked, assaulted, prostituted, and sold for sex at Defendant's Hotel. Despite Defendant's control over hotel training, policies, and anti-trafficking protocols, it failed to take reasonable steps to prevent the trafficking. Plaintiff's trafficker used the Hotel to conspire, threaten, and force her into commercial sex acts. As alleged in (*See*. **SAC ¶¶ 70–71)** Defendant failed to act on clear signs of trafficking, including Plaintiff's malnourished appearance, lack of personal belongings, and the presence of multiple men entering and exiting her room (*See*. **SAC ¶¶ 72–75**). Further, forensic evidence supports Plaintiff's claims of trafficking on Defendant's Hotel premises. For example, text messages from March and May 2017 confirm that Plaintiff was repeatedly sold for sex at Defendant's Hotel to multiple adult men, including Defendant Henson *See*. **Exhibit A**. In addition, the Plaintiff trafficker rented that room not in the ordinary course of business, but clearly intentionally for the purpose of trafficking the Plaintiff for money and went down the stairs to

the main room and sat on the couches in the room watching television, where she would have spent the remainder of her time until the "Johns" were finished. She would have been in clear eyeshot of the Hotel staff the entire time. *See*. **Exhibit A**.

These facts demonstrate that Defendant either had actual knowledge of trafficking or should have known, given the obvious red flags and corporate monitoring systems in place. As held in *Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD, 2020 WL 6121939, at *5 (S.D. Fla. Sept. 30, 2020), constructive knowledge is sufficient to establish liability under the TVPRA.

Further, the Plaintiff's allegations distinguish this case from *A.B. v. Hilton Worldwide*, 484 F. Supp. 3d 921, 938 (D. Or. 2020), where the knowledge was generalized and instead aligned with *C.S. v. Wyndham Hotels*, 538 F. Supp. 3d 1288, 1296 (S.D. Cal. 2021), where visible distress and suspicious activity were sufficient to establish knowledge. Plaintiff has sufficiently alleged that Defendant failed to respond to clear signs of trafficking, despite policies requiring intervention upon recognizing trafficking indicators. Defendant's failure to act on these signs, coupled with its continued financial benefit from renting rooms to Plaintiff's trafficker, establishes its constructive knowledge of the trafficking venture and satisfies the knowledge requirement for liability under § 1595(a).

## D. Plaintiff's Claim for IIED Is Timely and Legally Sufficient:

Defendant's argument that Plaintiff's IIED claim is time-barred and legally insufficient without merit. Under well-established Florida law, the statute of limitations is subject to tolling under the discovery rule and continuing tort

doctrine, both of which apply here. Moreover, Plaintiff has adequately pled each element of IIED under Florida law.

## 1. The Discovery Rule Tolls the Statute of Limitations Due to Plaintiff's Psychological Trauma

Under Florida law, a cause of action for IIED does not accrue until the plaintiff knows, or reasonably should have known, of the wrongful conduct that caused the injury. *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000). Florida courts have recognized that trauma and psychological injury—such as PTSD, dissociation, or repressed memory—may toll the statute of limitations. See *Hearndon*, 767 So. 2d at 1184; see also *Bradley v. U.S. by Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991).

Here, Plaintiff was trafficked as a minor and endured repeated sexual abuse between November 2016 and May 2017. (*See*. **SAC ¶¶ 70–71, 75, 117–119**). She suffered extreme psychological harm, including PTSD, depression, and anxiety, which prevented her from recognizing the legal basis for her injuries until much later. (See. **SAC ¶¶ 127–130**). Accordingly, the statute of limitations was tolled under the discovery rule until Plaintiff was capable of understanding and asserting her legal rights.

## 2. The Continuing Tort Doctrine Applies to Defendant's Ongoing Conduct

Florida courts also recognize the continuing tort doctrine, which provides that when tortious conduct is ongoing, the statute of limitations does not begin to run until the conduct ceases. See *Frazier v. Philip Morris USA Inc.*, 89 So. 3d 937,

939 (Fla. 3d DCA 2012); *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 784
F.3d 771, 781 (11th Cir. 2015); *Patten v. Winderman*, 965 So. 2d 1222, 1224 (Fla.
4th DCA 2007).

Plaintiff alleges that she was trafficked on Defendant's hotel premises on
multiple occasions, specifically on March 3, 2017, April 7, 2017, and May 12, 2017
(*See*. **SAC ¶¶ 117–119**). Defendant's failure to intervene, report the activity, or
protect her—despite clear signs of trafficking—constitutes ongoing tortious
conduct. Defendant profited from the abuse by continuing to rent rooms to
traffickers while ignoring red flags. (*See*. **SAC ¶¶ 69–85, 114–130**). Because this
course of conduct extended over time, Plaintiff's IIED claim did not accrue until
the conduct ceased, and her filing in July 2024 is therefore timely.

### 3. Defendant's Conduct Was Extreme, Outrageous, and Legally Actionable

To state a claim for IIED under Florida law, a plaintiff must allege: (1)
extreme and outrageous conduct; (2) intent to cause or reckless disregard of the
likelihood of causing emotional distress; (3) causation; and (4) severe emotional
distress. *Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d 1264, 1269 (S.D. Fla. 2016);
*Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985). Conduct
is "outrageous" where it is "so extreme in degree as to go beyond all bounds of
decency." *McCarson*, 467 So. 2d at 278. Courts have found hotel operators liable
for IIED where they knowingly failed to act in the face of trafficking indicators. See
*Doe v. City of Miami*, No. 19-cv-23973, 2019 WL 7193998, at *12 (S.D. Fla. Dec.

26, 2019); *Doe v. Harbourview Inn, LLC*, No. 2:21-cv-00050, 2023 WL 112527, at
*9 (D.S.C. Jan. 4, 2023).

Here, Plaintiff alleges that Defendant's hotel allowed repeated trafficking to
occur despite obvious warning signs (*See*. **SAC ¶¶ 45–50, 74–78**); accepted
payments and rented rooms to traffickers with knowledge of illicit activities (*See*.
**SAC ¶¶ 51–55, 79–83**); and failed to train staff or implement anti-trafficking
protocols despite ongoing abuse (*See*. **SAC ¶¶ 56–59, 84–87**). Defendant's
conduct rises to the level of outrageousness under Florida law.

### 4. Defendant's Conduct Was Directed at Plaintiff and Caused Severe Harm:

An IIED claim does not require that Defendant personally interact with
Plaintiff—it requires that Defendant's actions were likely to cause severe emotional
distress. *Williams v. City of Minneola*, 575 So. 2d 683, 691 (Fla. 5th DCA 1991)
(finding liability where defendant's inaction foreseeably caused severe emotional
distress). It is sufficient that the defendant acted with reckless disregard of a high
probability of causing emotional distress. See *Williams v. City of Minneola*, 575
So. 2d 683, 691 (Fla. 5th DCA 1991). As in *Doe v. Rickey Patel, LLC*, No. 20-cv-
22269, 2020 WL 6121939, at *7 (S.D. Fla. Oct. 16, 2020), where the hotel's inaction
in the face of trafficking indicators supported a finding of reckless indifference,
Defendant here knowingly failed to intervene, which directly enabled Plaintiff's
continued sexual exploitation. (*See*. **SAC ¶¶ 60–63**). In this case, Plaintiff alleges
that Defendant's intentional failure to intervene—despite obvious indicators that

Plaintiff was being trafficked in their Hotel property—directly enabled her continued exploitation and inflicted severe emotional harm (*See.* **SAC ¶¶ 60-63, 88-90)**. Courts have found similar conduct sufficient to sustain an IIED claim. See *Doe v. Rickey Patel, LLC*, No. 20-cv-22269, 2020 WL 6121939, at *7 (S.D. Fla. Oct. 16, 2020) (holding that a hotel's failure to address known trafficking risks could constitute reckless disregard for a victim's well-being). Defendant's inaction in the face of clear trafficking indicators supports a finding of reckless disregard. Moreover, the destruction or concealment of hotel records following a warrant further supports Plaintiff's allegations of intentional misconduct. (*See.* **SAC Exhibit A**).

## V. CONCLUSION

Plaintiff has sufficiently alleged that Defendant knowingly benefited from and participated in a sex trafficking venture in violation of 18 U.S.C. §§ 1591 and 1595 and engaged in extreme and outrageous conduct supporting an IIED claim. Defendant's motion misinterprets the TVPRA's broad scope of liability and ignores well-pleaded factual allegations. For these reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety with/without prejudice and grant any further relief the Court deems just and proper.

Dated: 12 May 2025

Respectfully submitted,

THE LAW OFFICES OF TRAVIS R. WALKER, P.A.

By: ___*/s/ Travis R. Walker*___

Travis R. Walker Esq.
Florida Bar No. 33693
1100 SE Federal Highway
Stuart, Florida 34994
Telephone: (772) 708-0952
travis@traviswalkerlaw.com
service@traviswalkerlaw.com
wasi@traviswalkerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I **HEREBY CERTIFY** that on May 12th, 2025, I electronically filed and
served the document titled "**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT GOSAI 9, LLC D/B/A QUALITY INN'S MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**" with the Clerk
of Court using the CM/ECF system and in compliance with Florida Rules of
Judicial Administration 2.515 and 2.516(3), which will automatically transmit an
electronic copy to counsel of record.

Respectfully submitted,

THE LAW OFFICES OF TRAVIS R. WALKER, P.A.

By: ___*/s/ Travis R. Walker*___
Travis R. Walker Esq.
Florida Bar No. 33693
1100 SE Federal Highway
Stuart, Florida 34994
Telephone: (772) 708-0952
travis@traviswalkerlaw.com
service@traviswalkerlaw.com
wasi@traviswalkerlaw.com